E-FILED
Tuesday, 26 September, 2006  01:39:32 PM
Clerk, U.S. District Court, ILCD

IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

---

| | | |
|---|---|---|
| United States of America ex rel. | ) | |
| DAVID ALLEN GREER, | ) | |
| | ) | |
| Petitioner, | ) | No. 06-4048 |
| | ) | |
| vs. | ) | The Honorable |
| | ) | Michael M. Mihm, |
| AUSTIN RANDOLPH, Warden, | ) | Judge Presiding. |
| Illinois River Correctional Center, | ) | |
| | ) | |
| Respondent. | ) | |

---

## MOTION TO DISMISS,
## OR, IN THE ALTERNATIVE, ANSWER TO
## PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS

Respondent, Austin Randolph, by his attorney, LISA MADIGAN, Attorney

General of Illinois, pursuant to 28 U.S.C. §2254(b)(1), hereby files this Motion to

Dismiss petitioner's petition for writ of habeas corpus for petitioner's failure to

exhaust his State remedies, and states as follows:

1.      Petitioner, David Allen Greer, identified as prisoner number N72100,

is incarcerated at Illinois River Correctional Center in Canton, Illinois, where he is

in the custody of the warden of that facility, Austin Randolph.

2.      Following a jury trial in the Circuit Court of Rock Island County,

Illinois, petitioner was convicted of first-degree murder and sentenced to 50 years'

imprisonment.  *See* Exhibit D, at 2.  On appeal, his conviction was reversed and

remanded for a new trial.  *Id.*  After a second jury trial, petitioner was again

-1-

convicted of first-degree murder and again received a 50-year term of imprison-

ment.  *See* Exhibit J, at 1.

> 3.    On direct appeal, petitioner raised several claims:

> A.    the trial court erred when, over petitioner's objections, it permitted the jury to take into the jury room during deliberations the transcripts of a prior consistent statement by State eyewitness Steve Fuhlman, where there was no evidence that the prior statement was made before he had a motive to lie;

> B.    the trial court erred when, over petitioner's objections, it permitted the jury to take into the jury room during deliberations the transcripts of a prior consistent statement by State eyewitness Gary Davis, given that the statement contained prejudicial information that petitioner was a gang member; and

> C.    the trial court erred in allowing the State's request that Gary Davis testify as a court's witness because the State failed to establish a proper foundation for the procedure and there was no need for Davis' testimony.

*See* Exhibit G.  On December 28, 2001, the state appellate court affirmed.  *See*

Exhibit J.  Petitioner filed a petition for leave to appeal (PLA) in the Illinois

Supreme Court, raising eight claims:

> A.    the trial court erred in allowing the transcript of Steve Fuhlman's prior statement to be published to the jury;

> B.    the trial court erred in allowing the transcript of Gary Davis' prior statement to be published to the jury;

> C.    the trial court erred in making Gary Davis a court witness;

> D.    the trial court erred in allowing Gary Davis, a court witness, to be cross-examined by the State about why his story changed;

> E.    the trial court erred in denying petitioner's motion for a mistrial based on Gary Davis mentioning the prior trial;

F.      the trial court abused its discretion in not ensuring that the jury remained impartial after exposing the jury to the statements of Steve Fuhlman and Gary Davis during deliberation;

G.      the jury could not remain impartial during the trial proceedings and during deliberation after exposure to statements of Steve Fuhlman and Gary Davis; and

H.      trial counsel was ineffective for failing to object to the admission of the statements of Steve Fuhlman and Gary Davis.

*See* Exhibit K.  On May 30, 2002, the Illinois Supreme Court denied the PLA.

Exhibit L.

4.      On July 15, 2002, petitioner filed a pro se petition for post-conviction relief (725 ILCS 5/122–1, *et seq.*) (Exhibit M), and on February 3, 2003, counsel filed an amended petition, raising three claims:

A.      trial counsel was ineffective for failing to object to the admission of the prior statements by witnesses Steve Fuhlman and Gary Davis because Fuhlman's statement mentioned petitioner selling drugs and Davis' statement mentioned petitioner's gang affiliation;

B.      trial counsel was ineffective because counsel's objection to the publication of Steve Fuhlman and Gary Davis' statements did not point out the improper matters they discussed; and

C.      appellate counsel was ineffective when he argued that Steve Fuhlman and Gary Davis' statements should not have been published to the jury, but failed to mention the improper and prejudicial material those statements contained.

*See* Exhibit N.  On August 18, 2003, the trial court denied the petition.  *See* Exhibit O, at 11.

5.      Petitioner appealed the denial of the petition, but his counsel filed a motion to withdraw, pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987), because there were no meritorious issues.  *See* Exhibit P.  Petitioner filed a

-3-

response to this motion, asserting that he had one meritorious issue: appellate

counsel was ineffective for failing to argue that trial counsel was ineffective for

failing to object to admission of evidence concerning gang affiliation.  *See* Exhibit Q.

The state appellate court affirmed on March 1, 2005.  *See* Exhibit R.

      6.     Petitioner filed a PLA in the Illinois Supreme Court raising three

claims:

      A.    trial counsel was ineffective for failing to object to the admission of
prior inconsistent statements that mentioned petitioner's prior illegal
activity and gang affiliation;

      B.    appellate counsel was ineffective when he argued that Steve Fuhlman
and Gary Davis' statements should not have been published to the
jury, but failed to mention the improper and prejudicial material those
statements contained; and

      C.    petitioner should have been given an opportunity to question
prospective jurors about gang bias, or to instruct the jury on this issue.

*See* Exhibit S.  On March 29, 2005, the supreme court denied the petition.  *See*

Exhibit T.

      7.     On July 10, 2006, petitioner filed a pro se petition for relief from

judgment pursuant to section 2–1401 of the Code of Civil Procedure (735 ILCS

5/2–1401).  *See* Exhibit U.  A hearing on this petition has been set for September 26,

2006 (*see* Exhibit O, at 12), confirming that the petition remains pending in the

Circuit Court of Rock Island County.

      8.     On July 28, 2006, petitioner filed a habeas petition in this Court,

raising two claims:

      I.     petitioner was denied a fair trial because prospective jurors were never
questioned about gang bias; and

II.    trial counsel was ineffective for failing to object to the admission of gang-related evidence.

9.    In compliance with Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts, respondent has filed Exhibits A-U, under separate cover with the Clerk of this Court:

Exhibit A:    Petitioner's Opening Brief on First Direct Appeal, *People v. Greer*, No. 3-95-0195;

Exhibit B:    The State's Brief on First Direct Appeal, *People v. Greer*, No. 3-95-0195;

Exhibit C:    Petitioner's Reply Brief on First Direct Appeal, *People v. Greer*, No. 3-95-0195;

Exhibit D:    Rule 23 Order Reversing and Remanding, *People v. Greer*, Illinois Appellate Court, Third District, No. 3-95-0195;

Exhibit E:    The State's PLA, *People v. Greer*, No. 85056;

Exhibit F:    Order Denying PLA, *People v. Greer*, Illinois Supreme Court, No. 85056 (June 3, 1998);

Exhibit G:    Petitioner's Opening Brief on Second Direct Appeal, *People v. Greer*, No. 3-99-0706;

Exhibit H:    The State's Brief on Second Direct Appeal, *People v. Greer*, No. 3-99-0706;

Exhibit I:    Petitioner's Reply Brief on Second Direct Appeal, *People v. Greer*, No. 3-99-0706;

Exhibit J:    Rule 23 Order, *People v. Greer*, Illinois Appellate Court, Third District, No. 3-99-0706;

Exhibit K:    PLA, *People v. Greer*, No. 93450;

Exhibit L:    Order Denying PLA, *People v. Greer*, Illinois Supreme Court, No. 93450 (May 30, 2002);

Exhibit M:    Petitioner's Pro Se Petition for Post-Conviction Relief, *People v. Greer*, No. 94-CF-649;

Exhibit N:    Petitioner's Counseled Amended Petition for Post-Conviction Relief, *People v. Greer*, No. 94-CF-649;

Exhibit O:    Docket Sheet, *People v. Greer*, Circuit Court of Rock Island County, No. 94-CF-649;

Exhibit P:    Petitioner's Counsel's *Finley* Motion to Withdraw, *People v. Greer*, No. 3-03-0704;

Exhibit Q:    Petitioner's Pro Se Response to Counsel's *Finley* Motion, *People v. Greer*, No. 3-03-0704;

Exhibit R:    Rule 23 Order, *People v. Greer*, Illinois Appellate Court, Third District, No. 3-03-0704;

Exhibit S:    PLA, *People v. Greer*, No. 101906;

Exhibit T:    Order Denying PLA, *People v. Greer*, Illinois Supreme Court, No. 101906 (Mar. 29, 2006); and

Exhibit U:    Petitioner's Petition for Section 2–1401 Relief, *People v. Greer*, No. 94-CF-649.

10.    As noted above, petitioner has a collateral appeal pending in the Circuit Court of Rock Island County in the form of his section 2-1401 petition.  *See* Exhibits O, at 12, & U.  This petition contains a claim not raised in his federal habeas petition, challenging the requirement that he join the sex offender registry.  *See* Exhibit U.  As explained in greater detail below, this Court should dismiss this federal habeas petition without prejudice for failure to exhaust state remedies without staying the petition until the state proceedings conclude.  Of course, this Court could allow petitioner, if he so chooses, to proceed now with his two federal habeas claims, but these claims are procedurally defaulted.

11.    In general, a federal habeas petition "should be dismissed if the prisoner has not exhausted available state court remedies as to any of his federal claims." *Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *see also Rose v. Lundy*, 455 U.S. 509, 518-20 (1982) (federal courts should dismiss mixed habeas petitions containing both exhausted and unexhausted claims); *Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004); 28 U.S.C. § 2254(b). In this context, the Seventh Circuit has stated that a petitioner cannot receive federal relief while collateral proceedings are pending in state court. *Fernandez v. Sternes*, 227 F.3d 977, 980-81 (7th Cir. 2000); 28 U.S.C. §2244(d)(2).

12.    Exhaustion promotes federal-state comity by giving state courts the first opportunity to address and correct potential violations of a petitioner's federal rights. *Perruquet*, 390 F.3d at 513 (*citing Picard v. Connor*, 404 U.S. 270, 275 (1971) and *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999)); *see also Coleman*, 501 U.S. at 731 (state courts should have the first opportunity to address and correct alleged violations of a state prisoner's federal rights). To achieve comity, the petitioner must fairly present to each appropriate state court his constitutional claims before seeking relief in federal court. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *Boerckel*, 526 U.S. at 845; *Picard*, 404 U.S. at 275; *Momient-El v. DeTella*, 118 F.3d 535, 538 (7th Cir. 1997). Here, petitioner has filed a federal habeas petition that does not contain the claim currently pending in the 2-1401 petition filed in the Circuit Court of Rock Island County. Proceeding now on the federal

habeas petition would almost certainly bar federal habeas review of that pending claim, as discussed further below.

13.     Moreover, this Court should not stay this habeas petition.  In *Rhines v. Weber*, 544 U.S. 269 (2005), the Supreme Court addressed the issue of staying federal habeas petitions that include both exhausted and unexhausted claims.  The district court in *Rhines* held that some of the petitioner's claims were unexhausted 18 months after he had filed his habeas petition.  *Rhines*, 544 U.S. at 272.  As a result, if the district court dismissed the petition to allow a return to state court to exhaust the unexhausted claims, the petitioner would be time-barred from returning to have his claims reviewed under 28 U.S.C. §2244(d)(1) because the one-year limitations period is not tolled during the pendency of a federal habeas petition.  *Id.* at 272-73.  In contrast, if the district court stayed federal habeas proceedings, the petitioner would not face a time-bar issue.  *Id.* at 275-76.

Even in light of time-bar concerns, *Rhines* cautions that too-frequent usage of stay-and-abeyance frustrates AEDPA's twin purposes of reducing delays in enforcing state and federal criminal sentences and streamlining federal habeas proceedings.  *Id.* at 276.  As a result, "stay and abeyance should be available only in limited circumstances," namely, when:  (1) the petitioner had good cause for his failure to exhaust; (2) the unexhausted claims are potentially meritorious; and (3) there is no evidence that petitioner deliberately engaged in "dilatory litigation tactics."  *Id.* at 277.  In other words, the Supreme Court has recently shown its preference that stays be implemented less frequently than the Seventh Circuit had

previously endorsed.  *Compare Newell v. Hanks*, 283 F.3d 827, 834 (7th Cir. 2002) *with Rhines*, 544 U.S. at 277.  Petitioner does not mention—much less establish—good cause for his failure to exhaust his state court remedies before coming to federal court.  Therefore, this Court should dismiss the habeas petition without prejudice for failure to exhaust rather than stay the petition because of the pending action in the state circuit court.  *See Coleman*, 501 U.S. at 731; 28 U.S.C. § 2254(b)(2).

14.    Should this Court dismiss the present federal habeas petition, respondent intends to assert all available defenses to any future petition filed by petitioner upon conclusion of his state court proceedings, including the defense of time-bar under section 2244(d)(1).

<div align="center">

**IN THE ALTERNATIVE:
ANSWER TO PETITIONER'S PETITION FOR
WRIT OF HABEAS CORPUS**

</div>

**Procedural Default Principles**

A federal court is not permitted to reach the merits of a habeas claim "if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment."  *Coleman*, 501 U.S. at 729-30; *Martin v. Evans*, 384 F.3d 848, 854 (7th Cir. 2004).  The failure to satisfy state procedural requirements, with regard to the claims raised in federal court, deprives the state courts of an opportunity to address those claims in the first instance, contrary to the rules of comity and federalism.  *Coleman*, 501 U.S. at 731.

Procedural default commonly occurs in one of two ways: (1) when a petitioner fails to raise an issue on direct appeal or post-conviction review but then asserts the claim as a reason for habeas relief (*Rodriguez v. Peters*, 63 F.3d 546, 555 (7th Cir. 1995)), or (2) when the state court bases its judgment on an independent finding of procedural default, or "waiver," under state law grounds, where such grounds are "independent of the federal question and adequate to support the judgment" (*Franklin v. Gilmore*, 188 F.3d 877, 881 (7th Cir. 1999)). In order for this Court to rely on state grounds in pronouncing procedural default, the relevant state-court holdings "must rest upon firmly established and regularly followed state practice." *Id.* at 882. Therefore, absent cause and prejudice or a miscarriage of justice, this Court cannot review a question raised by petitioner if he has failed to present that question at the time, or in the manner or forum, required by Illinois state law. *Coleman*, 501 U.S. at 729. In short, "[a] state is entitled to treat as forfeited a proposition that was not presented in the right court, in the right way, and at the right time – as state rules define those courts, ways, and times." *Szabo v. Walls*, 313 F.3d 392, 395 (7th Cir. 2002).

As previously stated, to excuse a procedural default, petitioner must show "cause for the default and actual prejudice as a result of the alleged violation of federal law," or that the failure to consider the claims will result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. The "fundamental miscarriage of justice" pathway is limited to the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent."

*Schlup v. Delo*, 513 U.S. 298, 321 (1995); *see also* <u>House v. Bell</u>, 126 S.Ct. 2064, 2077 (2006). A petitioner who asserts actual innocence to excuse a default "must *demonstrate* innocence; the burden is his, not the state's, for the state has the benefit of the jury's verdict." *Buie v. McAdory*, 341 F.3d 623, 627 (7th Cir. 2003) (emphasis in original).

## Procedural Default in the Present Case

The instant petition raises two claims: (1) petitioner was denied a fair trial because prospective jurors were never questioned about gang bias; and (2) trial counsel was ineffective for failing to object to the admission of gang-related evidence. These two claims, however, are procedurally defaulted because they were not litigated in one complete round of the Illinois courts. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Lewis v. Sternes*, 390 F.3d 1019, 1027 (7th Cir. 2004). Claim one was only raised in petitioner's post-conviction PLA (*see* Exhibit S, at 4-5), so it was never presented to the Illinois trial or appellate courts. Claim two was raised in petitioner's amended post-conviction petition (*see* Exhibit N, at 1-3) and in his post-conviction PLA (*see* Exhibit S, at 3), but it was never presented to the appellate court in his pro se response to counsel's *Finley* motion to withdraw. *See* Exhibit Q. Petitioner only asserted ineffective assistance of *appellate* counsel on direct appeal, which is a distinct claim from the underlying claim of ineffective assistance of trial counsel. *Lewis*, 390 F.3d at 1026.

There are two exceptions to procedural default—the cause-and-prejudice and the fundamental miscarriage of justice exceptions. *Bousley v. United States*, 523

-11-

U.S. 614, 622-23 (1998). Petitioner has not argued either exception, and the Seventh Circuit has declined to analyze an exception when it is not invoked by the petitioner. *See, e.g., Franklin v. Gilmore*, 188 F.3d 877, 884-85 (7th Cir. 1999). Thus, the two claims are procedurally defaulted because they were not raised in the state appellate court (*Boerckel*, 526 U.S. at 845), and because neither exception applies that would allow for review despite the defaults.

As a result, this Court can deny petitioner's federal habeas petition on the merits notwithstanding the failure to exhaust. 28 U.S.C. § 2254(b)(2). However, doing so would severely limit the viability of a second or successive federal habeas petition. Successive federal habeas petitions must be approved by the Seventh Circuit (28 U.S.C. § 2244(b)(3); *Lambert v. Davis*, 449 F.3d 774, 777 (7th Cir. 2006)), and, by statute, such approval is appropriate only if: (1) claims depend on a new retroactive constitutional rule, or (2) their factual predicate was not previously discoverable through due diligence, and those facts establish by clear and convincing evidence that but for the constitutional error, no reasonable factfinder would have found the petitioner guilty. 28 U.S.C. § 2244(b)(2). The 2-1401 claim could satisfy none of these predicates.

In sum, this Court should dismiss the habeas petition without prejudice in light of petitioner's pending section 2–1401 petition and not stay the petition given *Rhines*' generally expressed opposition to stay-and-abeyance in federal habeas cases. In the alternative, this Court should deny the petition because the two claims are procedurally defaulted.

## <u>CONCLUSION</u>

WHEREFORE, based on the foregoing, respondent respectfully requests that this Court dismiss—and not stay—the habeas petition without prejudice. In the alternative, this Court should deny the habeas petition because its claims are procedurally defaulted. Should this Court stay the federal habeas petition, respondent respectfully requests an opportunity to fully address the merits and/or procedural defaults of the claims when that stay is lifted.

<div style="margin-left:40%">

Respectfully submitted,

LISA MADIGAN
Attorney General of Illinois

By: <u>s/ Leah C. Myers</u>
    LEAH C. MYERS, Bar #6278107
    Assistant Attorney General
    100 West Randolph Street, 12th Floor
    Chicago, Illinois 60601
    Telephone: (312) 814-5029
    Fax: (312) 814-2253
    E-mail: lmyers@atg.state.il.us

</div>

IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

---

| | | |
|---|---|---|
| United States of America ex rel. | ) | |
|   DAVID ALLEN GREER, | ) | |
| | ) | |
|           Petitioner, | ) | No. 06-4048 |
| | ) | |
|     vs. | ) | The Honorable |
| | ) | Michael M. Mihm, |
| AUSTIN RANDOLPH, Warden, | ) | Judge Presiding. |
|   Illinois River Correctional Center, | ) | |
| | ) | |
|           Respondent. | ) | |

---

## NOTICE OF ELECTRONIC FILING

PLEASE TAKE NOTICE that on September 26, 2006, I presented the attached Motion to Dismiss to the Clerk of the Court for filing and uploading to the CM/ECF system, and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participant:

David Allen Greer, #N72100
Illinois River Correctional Center
Route 9 West
P.O. Box 999
Canton, Illinois 61520.

Lisa Madigan
Attorney General of Illinois

By: s/ Leah C. Myers
Leah C. Myers, Bar #6278107
Assistant Attorney General
100 West Randolph Street, 12th Floor
Chicago, Illinois 60601
Telephone: (312) 814-5029
Fax: (312) 814-2253
E-mail: lmyers@atg.state.il.us

**E-FILED**
Tuesday, 26 September, 2006  01:39:54 PM
Clerk, U.S. District Court, ILCD

IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

---

| | | |
|---|---|---|
| United States of America ex rel. | ) | |
|   DAVID ALLEN GREER, | ) | |
| | ) | |
| Petitioner, | ) | No. 06-4048 |
| | ) | |
| vs. | ) | The Honorable |
| | ) | Michael M. Mihm, |
| AUSTIN RANDOLPH, Warden, | ) | Judge Presiding. |
|   Illinois River Correctional Center, | ) | |
| | ) | |
| Respondent. | ) | |

---

<u>TO THE CLERK OF THE UNITED STATES DISTRICT COURT</u>

In compliance with Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts, Exhibits A-U to Respondent's Motion to Dismiss Petitioner's Petition for Writ of Habeas Corpus have been electronically filed with this Court:

> Exhibit A:   Petitioner's Opening Brief on First Direct Appeal, *People v. Greer*, No. 3-95-0195;
>
> Exhibit B:   The State's Brief on First Direct Appeal, *People v. Greer*, No. 3-95-0195;
>
> Exhibit C:   Petitioner's Reply Brief on First Direct Appeal, *People v. Greer*, No. 3-95-0195;
>
> Exhibit D:   Rule 23 Order Reversing and Remanding, *People v. Greer*, Illinois Appellate Court, Third District, No. 3-95-0195;
>
> Exhibit E:   The State's PLA, *People v. Greer*, No. 85056;

Exhibit F:   Order Denying PLA, *People v. Greer*, Illinois Supreme Court, No. 85056 (June 3, 1998);

Exhibit G:   Petitioner's Opening Brief on Second Direct Appeal, *People v. Greer*, No. 3-99-0706;

Exhibit H:   The State's Brief on Second Direct Appeal, *People v. Greer*, No. 3-99-0706;

Exhibit I:   Petitioner's Reply Brief on Second Direct Appeal, *People v. Greer*, No. 3-99-0706;

Exhibit J:   Rule 23 Order, *People v. Greer*, Illinois Appellate Court, Third District, No. 3-99-0706;

Exhibit K:   PLA, *People v. Greer*, No. 93450;

Exhibit L:   Order Denying PLA, *People v. Greer*, Illinois Supreme Court, No. 93450 (May 30, 2002);

Exhibit M:   Petitioner's Pro Se Petition for Post-Conviction Relief, *People v. Greer*, No. 94-CF-649;

Exhibit N:   Petitioner's Counseled Amended Petition for Post-Conviction Relief, *People v. Greer*, No. 94-CF-649;

Exhibit O:   Docket Sheet, *People v. Greer*, Circuit Court of Rock Island County, No. 94-CF-649;

Exhibit P:   Petitioner's Counsel's *Finley* Motion to Withdraw, *People v. Greer*, No. 3-03-0704;

Exhibit Q:   Petitioner's Pro Se Response to Counsel's *Finley* Motion, *People v. Greer*, No. 3-03-0704;

Exhibit R:   Rule 23 Order, *People v. Greer*, Illinois Appellate Court, Third District, No. 3-03-0704;

Exhibit S:   PLA, *People v. Greer*, No. 101906;

Exhibit T:   Order Denying PLA, *People v. Greer*, Illinois Supreme Court, No. 101906 (Mar. 29, 2006); and

Exhibit U:   Petitioner's Petition for Section 2–1401 Relief,
             *People v. Greer*, No. 94-CF-649.


                         LISA MADIGAN
                         Attorney General of Illinois


             By:   s/ Leah C. Myers
                   LEAH C. MYERS, Bar #6278107
                   Assistant Attorney General
                   100 West Randolph Street, 12th Floor
                   Chicago, Illinois 60601
                   Telephone:(312) 814-5029
                   Fax:  (312) 814-2253
                   E-mail: lmyers@atg.state.il.us

FILE COPY

No.  3-95-0195

RECEIVED

MAR - 5 1997

THIRD DISTRICT
APPELLATE COURT

IN THE APPELLATE COURT OF ILLINOIS

THIRD JUDICIAL DISTRICT

PEOPLE OF THE STATE OF ILLINOIS,

       Plaintiff-Appellee,

-vs-

DAVID ALLEN GREER,

       Defendant-Appellant.

Appeal from the Circuit Court
of the 14th Judicial Circuit,
Rock Island County, Illinois
No.  94-CF-649

Honorable
James Teros
Presiding Judge

FILED

**BRIEF AND ARGUMENT**

**FOR**

**DEFENDANT-APPELLANT**

MAR - 4 1997

THIRD DISTRICT
APPELLATE COURT CLERK

JOHN WOOD
Panel Attorney Defender
Office of the State
Appellate Defender
Third Judicial District

6415 N. Tammarack
Peoria, Illinois  61615
(309) 693-2846

COUNSEL FOR APPELLANT

EXHIBIT A

## POINTS AND AUTHORITIES

I. The trial court committed reversible error by refusing to accept the recanted testimony of State witness Gary Davis, whose testimony at trial was pivotal to the jury finding defendant guilty of first degree murder.

**People v. Nash,** 36 Ill. 2d 275, 222 N.E.2d 473 (1966)...........................................20, 23

**People v. Marquis,** 344 Ill. 261, 176 N.E. 314 (1931)............................................20, 23

**People v. Dotson,** 163 Ill. App. 3d 419,
516 N.E.2d 718 (1st. Dist. 1997)................. ....................................................................20, 23

II. The trial court committed reversible error by denying defendant's motion for a mistrial after it was disclosed that at least three jurors had observed defendant while handcuffed and shackled immediately before deliberating on a verdict.

**People v. Boose,** 33 Ill. App. 3d 250, 337 N.E.2d 338 (3rd Dist. 1975) (affirmed, 66 Ill. 2d 261, 362 N.E.2d 303 (1977)...............................................................................24, 25

**People v. Bowel,** 129 Ill. App. 3d 940, 473 N.E.2d 962 (3d Dist. 1985),
rev'd on other grounds, 111 Ill. 2d 58, 488 N.E.2d 995 (1986).......................................26

**People v. Harris,** 123 Ill. 2d 113, 526 N.E.2d 335 (1988)...........................................26

**People v. Harlan,** 75 Ill. App. 3d 168, 393 N.E.2d 1203 (5th Dist. 1979)...................26

III. Defendant was denied his right to a fair trial where the trial court's misconduct toward defense counsel affected the verdict.

**People v. Santucci,** 24 Ill. 2d 93, 180 N.E.2d 491 (1962)............................................27

**People v. McKinney,** 260 Ill. App. 3d 539, 631 N.E.2d 1281 (1st Dist. 1994)...........27

**People v. Peeples,** 155 Ill. 2d 422, 616 N.E.2d 294 (1993).......................................28

**People v. Anderson,** 250 Ill. App. 3d 439, 620 N.E.2d 1281 (1st Dist. 1993)...........28

**People v. Harris,** 123 Ill. 2d 113, 526 N.E.2d 335 (1988)...........................................28

**People v. Heidorn,** 114 Ill. App. 3d 933, 449 N.E.2d 568 (2nd Dist. 1983)...............28

**People v. Eckert,** 194 Ill. App. 3d 667, 551 N.E.2d 1264 (5th Dist. 1989).................31

**People v. Mays,** 188 Ill. App. 3d 974, 544 N.E.2d 1264 (5th Dist. 1989)...................31

IV.  The trial court abused its discretion by admitting into evidence a posed photograph of the purported crime scene where it was established that it did not accurately depict the actual crime scene as allegedly viewed by the State's purported eyewitness Steve Fuhlman.

**People v. Jones,** 114 Ill. App. 3d  576, 449 N.E.2d 547 (1983)............................32, 34

**People v. Rolon,** 71 Ill. App. 3d 746, 390 N.E.2d 107 (1st Dist. 1979)................32, 34

**People v. Williams,** 71 Ill. App. 3d 547, 390 N.E.2d 32 (1st. Dist. 1979)..................34

V.  The trial court abused its discretion by preventing defense counsel from effectively cross-examining alleged State eyewitness Steve Fuhlman by A) refusing to allow defense counsel to cross-examine Fuhlman as to bias, and by B) refusing to allow defense counsel to impeach Fuhlman with a prior inconsistent statement.

**People v. Collins,** 106 Ill. 2d 237, 478 N.E.2d 267 (1985)...........................................35

**People v. Dennis,** 47 Ill. 2d 120, 265 N.E.2d 85 (1970).................................................35

**People v. Aughinbaugh,** 36 Ill. 2d 320, 223 N.E.2d 117 (1967)................................35

**People v. Gonzalez,** 104 Ill. 2d 332, 472 N.E.2d 417 (1984).....................................36

**People v. Emerson,** 97 Ill. 2d 487, 455 N.E.2d 41 (1983)...........................................37

**People v. Triplett,** 108 Ill. 2d 463, 485 N.E.2d 9 (1985)...............................................37

**People v. Unes,** 143 Ill. App. 3d 716, 493 N.E.2d 681 (3rd Dist. 1986)......................39

**People v. Andrews,** 101 Ill. App. 3d 808, 428 N.E.2d 1048 (1st Dist. 1981).............39

VI.  The State's closing arguments constituted reversible error.

**People v. Tipton,** 222 Ill. App. 3d 657, 584 N.E.2d 310 (1st Dist. 1991)...................40

**People v. Tate,** 156 Ill. App. 3d 950, 509 N.E.2d 801 (3rd Dist. 1987).......................41

**People v. Nitz,** 143 Ill. 2d 82, 572 N.E.2d 895 (1991)...................................................41

**People v. Estes,** 127 Ill. App. 3d 642, 469 N.E.2d 275 (3rd Dist. 1984)....................42

**People v. Roach,** 213 Ill. App. 3d 119, 571 N.E.2d 515 (3rd Dist. 1991)...................43

**NATURE OF THE CASE**

The defendant, David Allen Greer, was charged in the Circuit Court of Rock Island County with the offense of first degree murder.   On November 15, 1994, defendant's jury trial commenced and, at the conclusion of that trial, he was found guilty.   On March 1, 1995, a sentencing hearing was held, and defendant was subsequently sentenced to a term of 50 years imprisonment, and to a term of three years of mandatory supervised release (C-182; R-935).

Notice of appeal was thereafter timely filed on March 20, 1995.

1

### ISSUES PRESENTED FOR REVIEW

I.   WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY REFUSING
TO ACCEPT THE RECANTED TESTIMONY OF STATE WITNESS GARY DAVIS, WHOSE
TESTIMONY AT TRIAL WAS PIVOTAL TO THE JURY FINDING DEFENDANT GUILTY
OF FIRST DEGREE MURDER.

II.   WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY DENYING
DEFENDANT'S MOTION FOR A MISTRIAL AFTER IT WAS DISCLOSED THAT AT
LEAST THREE JURORS HAD OBSERVED DEFENDANT WHILE HANDCUFFED AND
SHACKLED IMMEDIATELY BEFORE DELIBERATING ON A VERDICT.

III. WHETHER DEFENDANT WAS DENIED HIS RIGHT TO A FAIR TRIAL WHERE
THE TRIAL COURT'S MISCONDUCT TOWARD DEFENSE COUNSEL AFFECTED THE
VERDICT.

IV.   WHETHER THE TRIAL COURT ABUSED ITS DISCRETION BY ADMITTING
INTO EVIDENCE A POSED PHOTOGRAPH OF THE PURPORTED CRIME SCENE WHERE
IT WAS ESTABLISHED THAT IT DID NOT ACCURATELY DEPICT THE ACTUAL
CRIME SCENE AS ALLEGEDLY VIEWED BY THE STATE'S PURPORTED EYEWITNESS
STEVE FUHLMAN.

V.   WHETHER THE TRIAL COURT ABUSED ITS DISCRETION BY PREVENTING
DEFENSE COUNSEL FROM EFFECTIVELY CROSS-EXAMINING ALLEGED STATE
EYEWITNESS STEVE FUHLMAN BY A) REFUSING TO ALLOW DEFENSE COUNSEL TO
CROSS-EXAMINE FUHLMAN AS TO BIAS, AND BY B) REFUSING TO ALLOW
DEFENSE COUNSEL TO IMPEACH FUHLMAN WITH A PRIOR INCONSISTENT
STATEMENT.

VI.   WHETHER THE STATE'S CLOSING ARGUMENTS CONSTITUTED REVERSIBLE
ERROR.

## JURISDICTION

The defendant's appeal, from a final judgment of conviction, is brought under the Constitution of the State of Illinois, Article VI, Section 6, and Illinois Supreme Court Rule 606(b).  Notice of appeal was timely filed under Rule 606(b) on March 20, 1995.

## STATEMENT OF FACTS

On August 24, 1994, David Greer was charged via indictment with the offense of first degree murder in violation of 720 ILCS 5/9-1(a)(2), in that allegedly on July 13, 1993, without lawful justification, he fired a handgun at Brandon Ellison, shooting him in the back, knowing such acts created a strong probability of death or great bodily harm to Ellison, thereby causing his death (C-2). Attorney John Malvik entered his appearance on behalf of defendant on August 31, 1994 (C-8).

The jury trial proceedings commenced on November 15, 1994. Outside the presence of the jury, before opening statements, the State made an offer of proof to introduce photograph 1-P into evidence. The photograph, taken in the fall of 1994, was offered by the State to depict the crime scene and to show the distance from the scene and the view held by one of the State witnesses, Steve Fuhlman (R-127-29). The State stipulated that the actual crime occurred on July 13, 1993, at 6:45 p.m. The photo shows a rear view of Fuhlman by his car looking toward the alleged crime scene. Fuhlman testified that the photo shows him by his car where he was at the time of the shooting, and that the view of the photographer was behind and to the side of him (R-138). He further testified that he trimmed his bushes that were between him and the alleged scene of the crime two to three times a year, and that he had to lean over to see the incident (R-146-47). Defense counsel objected to the admission of the photo, maintaining that it was a posed photo, and constituted hearsay. The trial court admitted the

4

photo into evidence.  Defense counsel then moved unsuccessfully to
have the photo admitted for the limited purpose of only depicting
the alleged crime scene, and not the view held by Fuhlman at the
time of the incident (R-155).

With  the  beginning  of  the  jury  trial,  both  parties  gave
opening statements.  The prosecutor noted twice in his statement
that  State  witness  Gary  Davis  would  establish  the  motive  that
defendant supposedly had to kill the victim, Brandon Ellison, ie.,
that Ellison had threatened defendant's brother Ronnie a couple of
days earlier, and defendant had informed Davis that he intended to
do something about it (R-186-88).

The first witness for the State was police lieutenant William
Sowards (R-194).  He testified that the defendant told him on July
14,  1993,  the  day  after  the  incident,  that  he  was  not  at  the
Arsenal Courts area around where the incident occurred at any time
the previous day.   Defendant said he was at his apartment at 1421
7th Street most of the day painting except for a ten minute period
around 5:30 p.m. when he accompanied his girlfriend and her mother
to a store (R-209-210).

Police  investigator  Thomas  Mulder  testified  that  the  Rock
Island police department received a 911 call from the residence at
1417 5th Street about a shooting at 6:45 p.m. on July 13, 1993 (R-
212-14).   Mulder said that a 22 caliber revolver was found in the
right hand of the decedent, Brandon Ellison, and that there was a
spent round or empty casing under the hammer of the gun (R-227).
Mulder also stated that there was vegetation, including shrubbery

and a tree, on the south side of Steve Fuhlman's house (R-237-38).

Dr. Shaku Teas, a board certified forensic pathologist, was found by the trial court to be a qualified expert in forensic pathology (R-264). Dr. Teas performed the autopsy on Brandon Ellison, and opined that the cause of his death was a gunshot wound to the back (R-265).

Arnestine Senter testified that as of July 13, 1993, she resided at 1419 5th Street in Rock Island. On that day, she observed a man run from the Arsenal Courts area toward an alley. She heard 4-5 shots being fired as this man ran, and then observed him laying down between 5th and 6th Streets. She then called 911 (R-273-75). She did not see who shot the man (R-276).

Steve Fuhlman testified that as of July 13, 1993, he resided with his family at 1419 5th Street, Rock Island (R-289). Fuhlman testified that he knew the defendant before the incident, and had spoken to him once or twice (R-290). He said, in response to a leading question, that on July 13, 1993, at about 6:45 p.m. he was working on his car at the corner of 5th and 15th Streets close to a stop sign (R-293). Fuhlman testified that he heard noise coming from the Arsenal Courts area. He looked up, and observed the defendant run through the Arsenal Courts area, run up to the corner of a building, stop and fire three rounds from a gun to the east (R-294-95). Fuhlman only saw the defendant, and did not see him chasing another individual and did not see who or at what he was firing (R-296). Fuhlman testified that after viewing this shooting, he continued to work on his car. Fuhlman did not know

6

whether anyone had been shot (R-297). He testified that People's Exhibit 1-P showed the view he had looking toward the Arsenal Courts where the shooting occurred (R-295).

On cross-examination, Fuhlman testified that the defendant was one or two steps past the corner of the building when he fired shots (R-298). Fuhlman denied telling police investigator Nennenger that he had seen one black male being chased by another black male at the time of the shooting (R-303). He also denied telling Nennenger that at the time of the shooting, he was 50 feet from 5th Street on the north side of 15th Street. Fuhlman conceded that had he been 50 feet away, he would have been back toward an alley further away than depicted in People's Exhibit 1-P (R-310-11).

Fuhlman did recall telling defense counsel in an interview that after the shooting he had crawled toward the back of the car and went into his back yard (R-313). Fuhlman testified that the corner of the building can not be seen from the angle depicted in the photograph (R-315). A tree is in the way of the corner of the building. Fuhlman testified that the angle that is shown in People's Exhibit 1-P is not the same angle that he had in viewing the scene (R-322). Fuhlman testified that the shooting he observed occurred between 4:30 and 5:30 p.m. (R-327).

Fuhlman testified that the State provided some assistance to him when he moved from his residence (R-327). The use of a truck and a motel room were provided to facilitate his move (R-328). Fuhlman felt unsafe there. Fuhlman testified that he was behind on

7

his real estate taxes (R-329).    The trial court and the prosecutor intercdeded before a follow-up question could be answered, with the trial court commenting, in the presence of the jury, that "this is ridiculous.  Cut it out" (R-329).   The trial court's ruling was that the line of questioning involved collateral matters (R-329). Defense counsel argued that the questioning was designed to show that Fuhlman had a long-standing desire to move away from the area, and that testifying in this matter was "his ticket out" (R-330).

An offer of proof by defense counsel in examining Fuhlman established that there were gang activities, drug dealings, and shootings going on a lot in this area before the time in question, that many buildings down in the Arsenal Courts area were riddled with bullets, and that it was not a nice place to live (R-336-37). The Court reaffirmed its ruling (R-338).  The Court labeled it "one of the most egregious attacks of collateral impeachment that I have seen in a long time" (R-342).

In chambers, defense counsel sought to withdraw from the case, noting the hostility of the trial court toward him (R-349).  The trial court had just stated that he did not think he had labeled defense counsel's questioning "ridiculous" in front of the jury, and further said that what had occurred was a "clear willful violation of the cannons of ethics" (R-349).   The trial court refused to allow defense counsel to withdraw (R-350).  The trial court further volunteered to defense counsel that it had allowed him to "argue with" and "badger" witnesses (R-354).

Defense counsel stated that opening the door to a line of

8

questioning is different than collateral impeachment, and indicated that he was merely attempting to show that Fuhlman had a monetary interest in testifying (R-357). The trial court indicated that it would allow the introduction of a prior consistent statement by Fuhlman (R-359). Pursuant to inquiry from the trial court, defense counsel indicated he had been informed from witnesses that Fuhlman family members had acknowledged before the shooting that they had financial trouble and wanted to get out of the Arsenal Courts area (R-361). Defense counsel made several other objections to the trial court's rulings, including an objection to the State being allowed to read Fuhlman's entire statement to the jury (R-385).

Upon resumed cross-examination of Fuhlman, he testified that he did not let his children play in the neighborhood, that there was a lot of drug trafficking going on, and that there were a lot of shootings in the area (R-416). Fuhlman admitted that in a prior statement to police he had said that the shooter stopped at the corner of the building (R-420). Fuhlman also testified that he did not know the name of the defendant until the police told him (R-422-23). Fuhlman testified that he had reviewed his statement and that it was in the statement that he "barely seen the person being chased" (R-423).

Fuhlman testified that the State also provided him with compensation for meals (R-430). Over defense objection, Fuhlman testified that he was taken into protective custody by the police on October 14, 1994 because his house had been shot with bullets (R-432-33). Fuhlman admitted he had given the information

9

contained in his statement to the police, including his statement that at the time the subject fired the shots, "he was at the corner of the building in between 2 buildings"(R-437). Fuhlman testified, over objection, that the cost to his family for testifying in this matter was about $14,000 (R-441).

On re-cross, Fuhlman testified that he heard gunfire two to three times a week in the area and that there was a lot of random gunfire into people's houses even before this shooting (R-443). On re-direct, Fuhlman testified that his house had been hit with random fire on a previous occasion before the shooting (R-446).

Police officer Doug Sullivan testified that he investigated and found evidence that a shooting occurred at the Fuhlman residence on October 11, 1994 (R-447-48). On cross-examination, he testified that he did not arrest any suspects (R-449).

The next witness for the State was Gary Davis (R-450). He testified that he was a friend of the deceased victim, Brandon Ellison (R-451). Davis testified pursuant to a leading question that on July 13, 1993, at 6:45 p.m., he observed a shooting. Five minutes before, he talked to Ellison and told him that he had a hard head, but that Ellison did not listen to him. Davis explained that he had discussed with Ellison the previous day the fact that the defendant was upset with Ellison for threatening his brother, Ronnie Greer, and that Davis had heard defendant say that he was going to "get" Ellison as a result (R-451-52). As Ellison passed Davis, he was armed with a gun and headed in the direction of defendant. Davis heard defendant say to Ellison, "you little

10

bitch. I told you I was going to get you" (R-453-54). Ellison then left, whereupon defendant followed him to the curb, and shot Ellison (R-454). Davis testified that he had several felony convictions (R-458-459).

On cross-examination, Davis testified that defendant was wearing a black shirt at the time of the shooting, and was on the street curb as he shot Ellison (R-465, 471). On re-direct, Davis said he had received no promises of a deal from prosecutors for testifying, even though he had pending felony charges in Arkansas (R-464). The incident occurred a "little after 6:00"(R-465).

On re-direct, Davis clarified that when he had said in a prior statement that defendant had made it across a curb before shooting Ellison, the street curb was at 4 and one-half Street (R-487).

Police investigator Patty Jo Dooley testified that she met with Steve Fuhlman to have Fuhlman look at some photographs(R-490). She could not recall when this occurred. Dooley showed Fuhlman some photographs, and he picked out a picture of defendant (R-491).

Police investigator Thomas Mulder testified he met with Gary Davis on July 14th, 1993, and showed him some photos, whereupon Davis picked out defendant as the one he saw shoot Ellison (R-493).

The State then rested (R-497). Defense counsel made a motion for a directed verdict or in the alternative for a mistrial. Defense counsel argued both that the evidence was insufficient, and that defendant could not get a fair trial after the trial court's comment that defense counsel was being ridiculous (R-498). The trial court agreed that its use of the term ridiculous had been

11

unfortunate, and indicated it would correct things by instructing the jury.  The trial court denied the motion (R-499).

When the proceedings resumed, the trial court gave the jury an instruction concerning its previous comment, made during defense counsel's cross-examination of Fuhlman, that "this is ridiculous" was not meant to ridicule defense counsel or "to impugn his integrity or his ability to defend his case"(R-504).

The first witness called by the defense was police investigator Mark Nenninger (R-505).  On July 13, 1993, he was present along with officer Allen to participate in an interview of Fuhlman at Fuhlman's residence (R-507).  Nenninger testified that Fuhlman told him that at the time of the incident, he observed one black male chasing another from the Arsenal Courts (R-509).

Nenninger also testified that the distance of 50 feet was mentioned by Fuhlman, but he did not recall the context because he was doing other things during the interview (R-510).  Pursuant to questioning from the trial court, Nenninger agreed that he did not recall whether Fuhlman said he was 50 feet from 5th Street (R-513). The trial court then ruled that the report prepared by Nenninger was hearsay and not admissible.

Defense counsel made an offer of proof (R-516).  Nenninger testified that he could not recall the conversation with Fuhlman. The report was compiled within two hours of the interview based on the notes Nenninger took while present (R-517).   The notes accurately reflected part of the conversation (R-519).   Defense counsel then offered Defendant's Exhibit No. 3 into evidence as a

12

past recollection recorded.  The trial court then asked Nenninger the leading question of whether the part in the statement about the 50 feet did not reflect accurately his past recollection, to which Nenninger assented (R-519).  Nenninger testified that he was not sure about the context in the statement about the reference to the 50 feet (R-520).  The trial court refused the offer of proof and did not admit the exhibit into evidence (R-521).

The trial court instructed the jury that since Nenninger "said that that part of the report was inaccurate and that he could not recall whether or not it was 50 feet or 5 feet or anything," that it was not shown to be impeachment as an inconsistent statement when Fuhlman denied saying that he was 50 feet from 5th Street at the time of the shooting (R-523).  The trial court further instructed the jury that Nenninger's testimony that Fuhlman had said that one black man was chasing another constituted impeachment of Fuhlman since he denied having said that (R-522-23).

Melvin Quick testified that he helped his brother run a store out of their residence at 1501 5th Street, and that the store was across the street from Fuhlman's residence (R-523-25).  Quick testified that immediately after the shooting on July 13, 1993, he observed Fuhlman still on the ground working on his car tire, leaning forward and trying to look around his son's legs, which were obstructing his view  (R-527, 533).  Quick further testified that Fuhlman's car was parked by the tree on 15th Avenue, and not in the location depicted in the photographs taken by the State (R-528).  Quick had previously been convicted of a felony (R-534).

13

Mario Yancy testified that on July 13, 1993, he observed a man who he knew as Brandon run from the Arsenal Courts, turn around and act like he was going to fire, and then was shot in the back. He did not see who fired the shots (R-539-40).

John Lard testified that between 6 p.m. and 7 p.m. on July 13, 1993, he was coming out of Quick's store and saw a man run across the street with a gun in his hand. He observed this man turn and fire a shot as he was in the alley on 5th Street between 15th and 14th Streets (R-550-52). Lard later saw the same person laying in an alley with a gun in his hands (R-552). On cross-examination, Lard testified that he had a felony conviction (R-559).

Betty Rhoden, girlfriend of the defendant, testified that she spent nearly the entire day of July 13, 1993 with the defendant (R-559-61). They were at their house on 1421 7th Street painting all day with several people. She and the defendant lived there with her grandmother, Lillie Rhoden. They went together to get paint in the morning, and went to the Quick store briefly between 5:00 and 5:30 p.m. (R-563). They were gone for about ten minutes. Ms. Rhoden later left for a short time without defendant between 6:30 and 6:40 p.m., and returned about 6:50 p.m. to find defendant still at the residence (R-565). On cross-examination, Ms. Rhoden testified that she had an aggravated battery conviction (R-568).

Lewis Pemverton testified that he was with defendant most of the day on July 13, 1993, and that defendant was still at his residence when he left. About ten minutes after he left, Pemverton

14

heard shots ring out in the Arsenal Courts area and later saw a man laying in the alley.  He returned to the defendant's residence and defendant was still there (R-575-79).

Lillie Rhoden next testified that she lived with her granddaughter and her boyfriend, defendant, at 1421 7th Street (R-590-91).  On July 13, 1993, defendant was home all day with many others working on the house.  She went with Betty and defendant to the Quick store around 5 p.m., and was dropped off.  She returned between 6:30-7:00 p.m. and defendant was there (R-595).

Stevey Williams testified that on July 13, 1993 he spent the day painting with defendant (R-609).  Defendant left at about 5 p.m. in Williams' car with Betty and Lillie Rhoden (R-612). Williams went home about 6 p.m. (R-613).  On cross-examination, Williams testified that he was previously convicted of two counts of involuntary manslaughter (R-616).  He was told at 5:45 p.m. by Betty Rhoden and Pemverton that there had just been a shooting (R-623).  On re-direct, Williams testified that when he left, defendant was still there (R-624).  Venus Williams testified that she too was over at defendant's house on July 13, 1993, and that when she left between 6:30 and 6:45 p.m., defendant was still there painting (R-633).  Henry Rhoden also testified that he was at defendant's residence all day and into the evening on July 13, 1993 helping with the painting, and that defendant left only once briefly at about 5 p.m. to take Lillie on an errand (R-637-38).  On cross-examination, he testified that he was at the house until 9:30-10:00 p.m. and defendant was still there (R-639-40).  He

15

testified that he had several previous felony convictions (R-642).

The cross-examination of Yancy was resumed (R-677). Yancy testified he saw Ellison fire two shots in the direction of the Arsenal Courts (R-677). The defense then rested (R-685).

In rebuttal, the State called a number of witnesses. Patty Jo Dooley, a police investigator, testified that she spoke to John Lard on July 16, 1993, and that he told her at that time that he had not seen the person who had fired a weapon as he ran into the alley (R-687-88). Police officer Mulder testified that he had a conversation with Stevey Williams on July 21, 1993, and that Williams had informed him at that time that defendant had been coming and going from his house for 15 minutes at a time (R-691). Police investigator Steve Harder testified that he had interviewed Yancy on July 15, 1993, and that Yancy stated that the man he saw with a gun on the 13th had not fired his gun (R-696). LaVerne Vester testified that as of July 13, 1993, she lived at 1451 4th Street, and that the back door of her apartment leads out into what is known as the park area near the Arsenal Courts (R-708). About 20 minutes before she heard shots fired, she saw defendant in the park with Betty Rhoden (R-711). On cross-examination, she testified that she was in the park until 5:00 p.m., and everything she described had happened during that time before she went inside to watch the news (R-716). She did not recognize the noises she heard as gunshots at the time (R-717). The State rested (R-720).

During his initial closing argument, the prosecutor stated "I don't think there's anybody from the evidence that I heard in this

16

courtroom that believes that David Greer was at 1421 7th Street at the time Brandon Ellison was killed" (R-736). The defense's objection that he was stating his personal opinion was overruled (R-736). Several objections were also made that the State was interpreting the law (R-734-35, 738, 778).

The prosecutor also made reference to Davis' testimony about what defendant had said to Ellison, noting that this was "the only evidence in the case uncontradicted as to who was looking for who and why"(R-736). The prosecutor also stated that there were "two unequivocal identifications David Greer is the shooter"(R-738).

During his final closing argument, the prosecutor stated, over objection, that he believed that Ellison walked around for two days without reloading his gun (R-783).

After closing arguments, and the jury had been excused to deliberate, defense counsel reported to the trial court that several jurors had seen defendant shackled (R-788-89). The bailiff subsequently reported to the trial court that he had taken three jurors out to smoke cigarettes (R-791). The trial court then questioned some of the jurors. Juror Westmoreland admitted that he had seen defendant when he was out for a smoke, but claimed that it did not affect his deliberations (R-796-97). Juror Lannoo also saw the defendant being brought by him as he smoked a cigarette, and noted that defendant was handcuffed and shackled, but that it did not influence his decision (R-798-99). Juror Rench also informed the court that she had seen the defendant while she smoked a cigarette and that he had been cuffed and shackled but that did not

17

influence her opinion (R-800). The trial court then denied a motion for mistrial made by defendant, finding nothing had influenced the verdict (R-801). The jury then rendered their verdict, finding defendant guilty of first degree murder (R-801).

Defendant filed both a post-trial motion, and a motion for a new trial. The basis for the latter was a letter defendant received from Gary Davis indicating that his testimony at the trial implicating defendant was not accurate. Davis subsequently testified at a hearing held on the motion that he sent the letter to defendant in January of 1995 (R-817). He testified that he did not see defendant shoot Ellison as he had previously testified (R-819). On cross-examination, Davis admitted that he gave a statement to authorities in Arkansas in February of 1995 indicating that his testimony had been accurate (R-821). On re-direct, Davis explained that he had had drug problems and that he felt bad about testifying against defendant about something he did not see (R-823). Davis testified that he had been harassed into giving his statement to the Arkansas authorities (R-878). Davis also alleged that he was paid by officer Mulder for a previous statement implicating defendant (R-879). Mulder was subsequently recalled as a witness and denied paying him (R-891). The trial court denied defense counsel's motion for a new trial based on the recantation of Davis (R-894-97). The trial court also denied defendant's post-trial motion (R-910). After the sentencing hearing, the trial court sentenced defendant to a term of 50 years, and to a term of three years of mandatory supervised release (R-935).

18

I.    THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY REFUSING TO ACCEPT THE RECANTED TESTIMONY OF STATE WITNESS GARY DAVIS, WHOSE TESTIMONY AT TRIAL WAS PIVOTAL TO THE JURY FINDING DEFENDANT GUILTY OF FIRST DEGREE MURDER.

The trial court committed reversible error by refusing to accept the recanted testimony of Gary Davis, whose testimony at trial was pivotal to the jury finding defendant guilty of first degree murder.

Gary Davis was one of only two alleged eyewitnesses who testified at trial that defendant shot the decedent, Brandon Ellison.  Davis, a close friend of Ellison, was the only witness who claimed to have seen defendant shoot Ellison.  He was also the only witness, as conceded by the State, that supplied a motive for defendant to shoot Ellison (R-736).  He was the only witness who claimed at trial to have heard defendant threaten to "get" Ellison (R-453-54).

Several months after the jury had found defendant guilty of first degree murder, Gary Davis recanted his testimony, first by correspondence, and then by testifying in front of the trial court (R-817-23).  He testified that he had lied at trial because he was a good friend of Ellison and had heard out on the street that defendant killed him.  He told the trial court that he had a guilty conscience for having testified falsely, had had drug problems, and thus wanted to set the record straight that he did not see defendant shoot Ellison.  However, the trial court rejected Davis' recanted testimony (R-894-97).

19

Recantation by witnesses is generally regarded as unreliable. **People v. Nash,** 36 Ill. 2d 275, 222 N.E.2d 473 (1966). However, in the appropriate circumstance the recanted testimony of a witness can be regarded as a sufficient ground for a new trial. See **People v. Marquis,** 344 Ill. 261, 176 N.E. 314, 315 (1931). A determination by the trial judge not to accept the recanted testimony will not be upheld if it is deemed by the appellate court to have been manifestly erroneous. **People v. Dotson,** 163 Ill. App. 3d 419, 516 N.E.2d 718, 722 (1st Dist. 1987).

The trial court in this case spent the bulk of its time during the post-conviction proceeding and in its actual ruling attempting to minimize the impact of Davis' trial testimony on the proving of defendant's guilt at trial. It was noted that there had been another eyewitness who had identified defendant, and it was further emphasized that there had been another witness who had supposedly refuted defendant's alibi that he was not in the area where the shooting incident took place when it took place (R-894-97).

The trial court's assessment of the remainder of the State's evidence against defendant was manifestly erroneous. The testimony of the remaining eyewitness, Steve Fuhlman, was supplemental at best to Davis' testimony. He identified defendant as someone who he saw fire two to three shots while in the Arsenal Courts area on July 13, 1993 at about 4:30-5:00 p.m. (R-327). Fuhlman did not see who or at what defendant was firing (R-296). He was directly impeached on the question of whether or not before the shooting he had seen defendant chasing another black male (R-303, 509). His

20

recollection of the timing of the shooting he observed, on cross-examination, was about two hours before Ellison was shot (R-327). Obviously, Fuhlman's testimony standing alone would not have been sufficient to convict defendant.

The reliance by the trial court on the supposed refutation of defendant's alibi by witness Vester was also misplaced. Vester testified that she observed defendant in the park area by the Arsenal Courts about 20 minutes before she heard what she thought were firecrackers go off, but what she later determined to be gunshots since there was a commotion when it occurred. She did not see defendant at the time of the shooting. However, the trial court theorized that the presence of defendant in the park area 20 minutes before Ellison was shot destroyed defendant's alibi that he had not been in the Arsenal Courts area for hours before the shooting.

The trial court's interpretation of the evidence was clearly erroneous. Defendant's alibi, as established at trial, was that he was painting in his apartment all day and that he did not venture into the area of the shooting at all except during an approximate 10 minute period around 5:00 p.m. to go on an errand. Vester testified that all the events she testified to concerning defendant and his whereabouts occurred no later than 5:00 p.m. because she went inside afterward to watch the television news (R-716). Thus, commotion or no commotion, the sound that Vester heard at that time was either firecrackers or another unrelated shooting of bullets. There was testimony that the Arsenal Courts area where the shooting

21

took place was the site of frequent and random shootings.  Nor does her viewing of defendant destroy defendant's alibi since he made his one trip to the area at a time sufficiently close to correlate with Vester's testimony.

Without Davis' eyewitness testimony directly identifying defendant as the shooter of Ellison, the State's evidence is woefully lacking.  There is no motive, no threatening statement made by defendant to Ellison, and no one placing both defendant and Ellison at the same place at the same time on July 13, 1993.  The State is left with the testimony of one witness who claims to have seen defendant shoot a weapon in a particular direction two hours before Ellison was killed, Steve Fuhlman.  Fuhlman's testimony is insufficient, as well as tainted (see Issue V).

The State relied on Davis' testimony to establish motive and to counter the evidence that whoever did shoot the armed Ellison was acting in self-defense.  In his closing argument, the prosecutor made reference to Davis' testimony about what defendant had said to Ellison, noting that this was "the only evidence in the case uncontradicted as to who was looking for who and why" (R-736).  He also stated that there were "two unequivocal identifications David Greer is the shooter" (R-738).

Thus, *assuming arguendo* that the State's remaining evidence was somehow sufficient to show that defendant shot Ellison, there is absolutely nothing in the record, other than Davis' trial testimony, to indicate that defendant was the aggressor and thus deserving of conviction for the offense of first degree murder.

Unlike other cases in which proffered recantation testimony has been rejected, there was nothing suspect about the substance of Davis' testimony at the post-conviction proceeding. See **People v. Nash,** *supra;* **People v. Marquis,** *supra;* **People v. Dotson,** *supra.* He simply says he made up his trial testimony. Nor is his trial testimony corroborative of other evidence adduced by the State at trial. For instance, Davis' trial testimony has defendant wearing a black shirt at the time of the shooting, whereas Fuhlman has defendant wearing a white or light colored shirt. Davis' testimony has the shooting occurring at the curb of 4 and 1/2 Street, whereas Fuhlman has defendant shooting his weapon while in front of one building by an alley. No other evidence has defendant interacting with Ellison at all at the time of the shooting, so there is nothing for Davis' trial testimony to corroborate in that area.

Defendant could not have been convicted of any offense were it not for the repudiated testimony of Davis. This is one of those extraordinary situations envisioned by reviewing courts. The trial court's refusal to credit the recanted testimony of Davis, given the extant circumstances demonstrated in the record, was manifestly erroneous. Thus, defendant's conviction should be reversed.

II. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY DENYING DEFENDANT'S MOTION FOR A MISTRIAL AFTER IT WAS DISCLOSED THAT AT LEAST THREE JURORS HAD OBSERVED DEFENDANT WHILE HANDCUFFED AND SHACKLED IMMEDIATELY BEFORE DELIBERATING ON A VERDICT.

The trial court committed reversible error by denying defendant's motion for mistrial after it was disclosed that at least three jurors had observed defendant while handcuffed and shackled immediately before deliberating on a verdict.

Sometime after the closing arguments at trial and the jury had been excused to begin its deliberations, defense counsel reported to the trial court that several jurors had seen defendant shackled and handcuffed (R-788-89). The bailiff subsequently reported to the trial court that he had taken three jurors out to smoke cigarettes (R-791). This occurred before the jury began to deliberate.

The trial court then questioned several of the jurors. Juror Westmoreland admitted that he saw defendant when he was out to smoke a cigarette, but claimed that it did not affect his deliberations (R-796-97). Juror Lannoo also saw defendant being brought by him as he smoked a cigarette. Lanoo noted that defendant was handcuffed and shackled, but maintained that it did not influence his decision (R-798-99). Juror Rench also informed the trial court that she saw defendant while she smoked a cigarette and that he had been handcuffed and shackled but that this did not influence her determination either (R-800). The trial court then denied a motion for a mistrial by defendant, finding that the incident had not influenced the verdict (R-801). The jury then rendered their verdict, finding defendant guilty of first degree murder (R-801).

This Court has been sensitive to the impropriety of having a defendant appear shackled before a jury, absent exigent circumstances. In **People v. Boose,** 33 Ill. App. 3d 250, 337 N.E.2d 338 (3rd Dist. 1975)(affirmed, 66 Ill. 2d 261, 362 N.E.2d 303 (1977), this Court, while noting that the prejudicial effect on the

jury's feelings about the defendant, and the detraction from the dignity and decorum of the judicial process, are two of the reasons why a defendant should not be shackled during his criminal trial, stated:

> The most prevalent view are those cases recognizing that when a defendant is tried in shackles before a jury it is inherently prejudicial or prejudicial per se. [citations omitted] Because of the inherent prejudice to the accused, the burden rests on the State to show the necessity of any extreme physical security measures. [citations omitted] The defendant should not be shackled except to prevent escape of the accused, to protect everyone in the courtroom, and to maintain order during the trial. [citation omitted] 337 N.E.2d   at 340.

The Illinois Supreme Court, in affirming this Court's decision to reverse the defendant's conviction in **Boose** owing to the shackling of the defendant, noted that "most of the courts that have considered the question have held that an accused should never be placed in restraints in the presence of the jury "unless there is a showing of a manifest need for such restraints." [citations omitted], *Id., supra*, 362 N.E.2d at 305.

It is unassailable that there was no justifiable reason for members of the jury in this case to have viewed defendant in handcuffs and shackles. A bailiff's willingness to accommodate the wishes of jurors to smoke cigarettes before beginning their deliberations does not constitute just cause to excuse the inherent prejudice to defendant incurred when he was observed by them in handcuffs and shackles.

This Court has also made a critical distinction as to the prejudice attendant to a defendant when he is so observed before the trier of fact has reached a decision on the merits, such as

25

what occurred in this case, versus when the observation takes place after the jury has already reached its verdict.  See **People v. Bowel,** 129 Ill. App. 3d 940, 473 N.E.2d 962, 966 (3rd Dist.1985), rev'd on other grounds, 111 Ill. 2d 58, 488 N.E.2d 995 (1986).  It is difficult to imagine a more influential and prejudicial time for an initial observation of a defendant in handcuffs and shackles by jurors than immediately before they begin their deliberations. This is what transpired in the instant case.

It is axiomatic that any communication with a juror during trial about a matter pending before the jury is deemed presumptively prejudicial to a defendant's right to a fair trial. Although this presumption of prejudice is not conclusive, the burden is on the State to demonstrate that such contact with the jurors was harmless to the defendant.  **People v. Harris,** 123 Ill. 2d 113, 526 N.E.2d 335, 342 (1988).  The representations by the jurors to the trial court in this case, after having reached a then undisclosed verdict, that their viewing of the handcuffed and shackled defendant did not affect their deliberations, does not meet this burden.  The jurors could well have been subconsciously influenced during the deliberative process by what they had just observed.  Perhaps if the trial court had been in a position to instruct the jury with respect to what they had seen before they started their deliberations, reversible error may have been avoided.  See **People v. Harlan,** 75 Ill. App. 3d 168, 393 N.E.2d 1203, 1205 (5th Dist. 1979).  Such was not the case here.

Consequently, for the foregoing reasons, The trial court

26

committed reversible error by denying defendant's motion for a mistrial predicated on at least three jurors having observed defendant in handcuffs and shackles immediately before commencing their deliberations.

III. DEFENDANT WAS DENIED HIS RIGHT TO A FAIR TRIAL WHERE THE TRIAL COURT'S MISCONDUCT TOWARD DEFENSE COUNSEL AFFECTED THE VERDICT.

Defendant was denied his right to a fair trial where the trial court's misconduct toward defense counsel affected the verdict. During the course of the jury trial, the trial court exhibited bias against defense counsel. Although much of this conduct occurred outside the presence of the jury, some of it did take place before the trier of fact. The jury's subsequent deliberative process was thus unalterably tainted.

A defendant, guilty or innocent, is entitled to a fair and impartial trial by a jury. **People v. Santucci,** 24 Ill. 2d 93, 180 N.E.2d 491, 493 (1962). The trier of fact must be left to determine the credibility of witnesses and to weigh the evidence without the trial court conveying its opinion on such matters to the jury because "by word or deed...jurors are ever watchful of the attitude of the judge, and any disclosure of disbelief or hostility on his part is very apt to influence them in arriving at their verdict." *Id.* A trial judge must take care to insure his intimations, demeanor, and comments do not prejudice those against whom they are made. **People v. McKinney,** 260 Ill. App. 3d 539, 631 N.E.2d 1281, 1291 (1st Dist. 1994).

The trial court should exercise restraint over his or her

27

conduct and utterances during trial. **People v. Peeples,** 155 Ill. 2d 422, 616 N.E.2d 294, 315 (1993). If it does become necessary for the trial court to comment during trial on witnesses or upon their testimony, counsel, or others, or upon rules of evidence generally, he should do so in a restrained manner and should "avoid repartee, limit comments and rulings to what is reasonably required for the underlying progress of the trial, and refrain from unnecessary disparagement of persons or issues, eg., the rules of evidence." *Id.*

The trial court is not free to make comments or insinuations by word or by conduct which indicate an opinion on the credibility of a witness or the argument of counsel. **People v. Anderson,** 250 Ill. App.3d 439, 620 N.E.2d 1281, 1297 (1st Dist. 1993). A hostile attitude toward defense counsel, an inference that defense counsel's presentation is unimportant, or a suggestion that defense counsel is attempting to present a case in an improper manner may be prejudicial and erroneous. **People v. Harris,** 123 Ill. 2d 113, 526 N.E.2d 335, 345 (1988). Judicial comments amount to reversible error where a defendant can establish that such comments were "a material factor in the conviction or were such that an effect on the jury's verdict was the probable result." **People v. Heidorn,** 114 Ill. App. 3d 933, 449 N.E.2d 568, 573 (2nd Dist. 1983).

The trial court's conduct toward defense counsel at trial in this case was egregious. One of the two alleged eyewitnesses to the shooting of Brandon Ellison was Steve Fuhlman. In fact, with the subsequent recantation by Gary Davis of his eyewitness

testimony after the verdict, Fuhlman's testimony is the only remaining ostensibly plausible eyewitness account of the shooting.

On cross-examination, Fuhlman testified that the State provided some assistance to him when he moved from his residence (R-327). A truck was supplied to him for the move, and a motel room was provided to facilitate his move (R-328). Fuhlman felt unsafe at his home. Fuhlman testified that he was behind on his real estate taxes (R-329). The trial court and the prosecutor interceded before a follow-up question could be answered, with the trial court commenting, in the presence of the jury, that "this is ridiculous. Cut it out" (R-329). The trial court's ruling was that the line of questioning involved collateral matters (R-329). Defense counsel argued that the questioning was designed to show that Fuhlman had a long-standing desire to move away from the area, and that testifying in this matter was "his ticket out" (R-330). A subsequent offer of proof established that Fuhlman was two years behind on his real estate taxes. The Court reaffirmed its ruling that the line of questioning involved collateral issues (R-333).

Defense counsel also requested the trial court to refrain from using the term "ridiculous" in its ruling, whereupon the trial court stated "Nothing is more ridiculous than what this Court has heard you go into" (R-333). The Court reaffirmed its ruling (R-338). The Court labeled it "one of the most egregious attacks of collateral impeachment that I have seen in a long time" ((R-342).

In chambers, defense counsel sought to withdraw from the case, noting the hostitlity of the trial court toward him (R-349). The

E-FILED
Tuesday, 26 September, 2006  01:50:57 PM
Clerk, U.S. District Court, ILCD

trial judge had just stated that he did not think he had labelled defense counsel's questioning "ridiculous" in front of the jury, and further said that what had occurred was a "clear willful violation of the cannons of ethics" (R-349).  The trial court refused to allow defense counsel to withdraw (R-350).  The trial court further volunteered to defense counsel that it had allowed him to "argue with" and "badger" witnesses (R-354).

Defense counsel renewed his attempt to remedy the prejudice to defendant stemming from the trial court's misconduct toward him by making a motion for a mistrial when the State rested (R-497). Defense counsel argued defendant could not get a fair trial after the trial court's comment that defense counsel was being ridiculous (R-498).  The trial court agreed for the first time that the use of the term ridiculous had been misfortunate, and indicated it would correct things by instructing the jury.  The trial court denied the motion for mistrial (R-499).

When the proceedings resumed, the trial court gave the jury an instruction that its previous comment, made in front of the jury during defense counsel's cross-examination of Fuhlman, that "this is ridiculous" was not meant by the trial court to ridicule defense counsel or "to impugn his integrity or his ability to defend his case"(R-504).

This attempted remedial instruction, while constituting an implicit concession by the trial court that it had committed prejudicial error, was not sufficient to remove the taint of prejudice.  By the time the trial court acknowledged its error, the

crucial phase of the trial had passed.    The defense's remaining cross-examination of eyewitness Fuhlman, the entire testimony of the lone other eyewitness, Gary Davis, and the testimony of three other State witnesses, all transpired after defense counsel had been ridiculed and before the remedial instruction.    Defendant's right to effectively cross-examine the heart of the State's case, including its only two eyewitnesses, was dramatically undermined by the trial court's misconduct.

There is no other conclusion possible but that the trial court's ridicule of defense counsel, particularly at such a crucial phase of the trial, materially affected the jury's ultimate verdict in this case.    A review of the trial court's entire course of conduct toward the defense by this Court will draw comparable analogies to the reversible error found to have been committed by the trial courts respectively in **People v. Eckert,** 194 Ill. App. 3d 667, 551 N.E. 2d 820 (5th Dist. 1990) and **People v. Mays,** 188 Ill. App. 3d 974, 544 N.E.2d 1264 (5th Dist. 1989).

Consequently, for the foregoing reasons, defendant's conviction must be reversed.

IV.    THE TRIAL COURT ABUSED ITS DISCRETION BY ADMITTING INTO EVIDENCE A POSED PHOTOGRAPH OF THE PURPORTED CRIME SCENE WHERE IT WAS ESTABLISHED THAT IT DID NOT ACCURATELY DEPICT THE ACTUAL CRIME SCENE AS ALLEGEDLY VIEWED BY THE STATE'S PURPORTED EYEWITNESS STEVE FUHLMAN.

The trial court abused its discretion in admitting into evidence a posed photograph (ie. People's Exhibit 1-P) of the purported crime scene where it was established that it did not accurately depict the actual crime scene as allegedly viewed by the

31

State's alleged eyewitness, Steve Fuhlman.

It is normally within the discretion of the trial court whether or not to admit a photograph into evidence, based on a weighing of the photograph's probative value versus its prejudicial effect, as well as a determination whether it portrays relevant facts pertaining to an issue and can be verified as a correct representation of those facts. **People v. Jones,** 114 Ill. App. 3d 576, 449 N.E.2d 547, 558 (1st Dist. 1983). The trial court's decision will be reversed upon a showing of an abuse of that discretion and resulting prejudice to the defendant. *Id.*

A photograph should be excluded when it would confuse or mislead the jury. See **People v. Rolon,** 71 Ill. App. 3d 746, 390 N.E.2d 107, 111. (1st Dist. 1979). In **Roulon,** the appellate court further explained:

> Moreover, when a photograph allegedly portrays the scene of a transaction, but conditions in the photograph differ from conditions which existed at the time of the transaction, the photograph normally is inadmissible unless the changes in conditions can be explained in such a way that the jury will not be confused or misled by the photograph, but instead will understand the photograph as though it were a correct representation. *Id.*

One of the two alleged eyewitnesses to testify against defendant at trial was Steve Fuhlman. Fuhlman identified defendant as someone he observed firing shots in an easterly direction in the Arsenal Courts area on the day that Brandon Ellison was shot and killed. He did not observe defendant shoot Ellison. However, his testimony was arguably partially corroborative of the supposed eyewitness testimony of Gary Davis, since recanted, that he observed defendant shoot Ellison on that day.

32

Fuhlman testified that he observed defendant shoot his gun while working on his car in front of his house. Apparently to facilitate his testimony, the State successfully offered photograph 1-P into evidence on the ground that it accurately depicted the crime scene as viewed by Fuhlman. The State conceded that the posed photo was taken a few weeks before trial. It was also established that there was shrubbery depicted in the photo, but there was no showing that it was the same height when the photo was taken as when the incident took place. Fuhlman also conceded that the photo did not reveal the visual angle he allegedly had of the crime scene because the photographer was behind and to the side of him (R-315, 322). Fuhlman testified that he observed defendant shoot his gun while in the front corner of a particular building by the alley. However, this area in front of the building is not depicted in the photo. Yet, Fuhlman also testified that the photo was indicative of the crime scene and the view he had of it (R-295). The trial court also admitted the photo into evidence for the purpose of showing the criminal scene and Fuhlman's view of it (R-155).

From the foregoing, it is clear that the trial court abused its discretion by admitting the photo. It did not accurately depict this supposed eyewitness' view of the crime scene. It misled the jury into thinking that Fuhlman did have an unencumbered view of the area of the building where he testified that the shots were fired. Whereas, in actuality, the photo was not representative of the view Fuhlman did have at the time of the

33

incident.

There are several examples of cases in which the appellate courts have indicated that photos with deficiencies of the type delineated above should not have been admitted into evidence. Photos taken well later than the time of the incident, with different conditions extant at the respective times, and a difference in visual perspective from different locations between that depicted in the photo and that actually observed by the eyewitness, have been grounds cited for the exclusion of photos deemed not to portray a correct representation of the scene at the time of the alleged crime. See **People v. Jones,** *supra*, 449 N.E.2d at 558-59; **People v. Rolon,** *supra*, 390 N.E.2d at 111; **People v. Williams,** 71 Ill. App. 3d 547, 390 N.E.2d 32, 36 (1st Dist. 1979).

Photo 1-P admitted into evidence in this case severely prejudiced defendant. Even though it did not accurately represent the view Fuhlman had of the events in question, it had the misleading impact on the jury of corroborating his alleged ability to see the location where he claims to have seen defendant fire a gun on the day of the death of Ellison. The trial court abused its discretion in admitting the photo into evidence. For the foregoing reasons, defendant's conviction must be reversed.

V.  THE TRIAL COURT ABUSED ITS DISCRETION BY PREVENTING DEFENSE COUNSEL FROM EFFECTIVELY CROSS-EXAMINING ALLEGED STATE EYEWITNESS STEVE FUHLMAN BY A) REFUSING TO ALLOW DEFENSE COUNSEL TO CROSS-EXAMINE FUHLMAN AS TO BIAS, AND BY B) REFUSING TO ALLOW DEFENSE COUNSEL TO IMPEACH FUHLMAN WITH A PRIOR INCONSISTENT STATEMENT.

As previously discussed, Steve Fuhlman was a key eyewitness

for the State.  His placement of defendant, in the Arsenal Courts
area on the day Ellison was shot with a gun in his hand, firing
shots  presumably  at  something  or  somebody  was  partially
corroborative of the eyewitness testimony of Gary Davis, since
recanted.  Defense counsel's attempts to fully explore the possible
bias and/or corruption of Fuhlman to testify, in the form of his
possible extraction of significant financial incentives from the
State to testify and identify defendant as a shooter, were unduly
restricted, and in fact forestalled by the trial court's emphatic
ruling that it constituted egregious collateral impeachment.  The
trial  court  committed  reversible  error  by  preventing  defense
counsel from fully cross-examining Fuhlman concerning any bias he
might  have  had  in  the  course  of  testifying  against  defendant.
Similarly, the trial court committed reversible error by refusing
to  allow  defense  counsel  to  impeach  Fuhlman  with  a  prior
inconsistent statement.

Generally, any permissible kind of impeaching matter may be
developed on cross-examination, since cross-examination has for one
of its purposes the testing of the credibility of the witness.  See
**People v. Collins,** 106 Ill. 2d 237, 478 N.E.2d 267 (1985).  A
matter is deemed collateral if it is not relevant for some purpose
other than to contradict the in-court testimony of the witness.
See **People v. Dennis,** 47 Ill. 2d 120, 265 N.E.2d 385 (1970).  A
defendant has a right to question a witness concerning any matter
that goes to explain, qualify, modify, discredit, or destroy what
he said on direct examination.  See **People v. Aughinbaugh,** 36 Ill.

35

2d 320, 223 N.E.2d 117 (1967). The widest latitude should generally be afforded defense counsel in cross-examination for the purpose of establishing interest, bias, or corruption. **People v. Gonzalez,** 104 Ill. 2d 332, 472 N.E.2d 417 (1984). Where the defense theory is that defendant is being framed and the witness who has identified defendant has a motive to testify falsely against the accused, "the evidence necessary to show that motive is hardly collateral." *Id.* 472 N.E.2d at 420.

Defense counsel had gathered good faith investigative information that Fuhlman had a motive to get his family out of the violent, drug, and gang-infested neighborhood around where the shooting in this case took place (R-361). He was also thought to be in some financial straits, as the owing of back taxes on his house would attest. Defendant was seeking to explore a possible motive by Fuhlman, existing before his alleged observation of an incident determined to be a homicide by the State, to take advantage of the State's understandable zeal to find the perpetrator of a crime that happened to occur in the vicinity of his home while he was outside and considered to have been a possible eyewitness. In other words, defense counsel was attempting to test the theory that Fuhlman was seeking to take advantage of the fact that he was considered to be in the right place at the right time to identify a murderer sought feverishly by the State by fabricating his testimony in exchange for financial considerations.

The trial court erroneously precluded defense counsel from

36

fully exploring his theory and testing the credibility of Fuhlman through aggressive cross-examination.  It was hardly "collateral." The trial court then compounded its error by allowing into evidence extensive information designed to "cure" this purportedly improper "collateral impeachment."

For instance, a prior statement of Fuhlman's to the police was admitted into evidence as a prior consistent statement.  A prior consistent statement is properly allowed into evidence in such a situation only if it shows that the witness told the same story before his motive to fabricate came into existence.  <u>See</u> **People v. Emerson,** 97 Ill. 2d 487, 455 N.E.2d 41, 47 (1983).  In the instant case, Fuhlman's suspected motive pre-existed the killing of Ellison.  Defendant's theory was that Fuhlman's living conditions and financial situation were so bad before the death of Ellison, that when he discerned that he was considered a potentially coveted eyewitness to a homicide, he picked defendant, whom he knew lived in the area, out of police photos shown to him in an attempt to use his importance to the State as a financial ticket out of the neighborhood. Indeed, although defense counsel was proceeding in good faith, counsel for a defendant may inquire as to bias, interest, or motive in such a situation "whether based on fact or imaginary." **People v. Triplett,** 108 Ill. 2d 463, 485 N.E.2d 9, 15 (1985).

The compounded prejudicial effect of preventing defense counsel from fully cross-examining Fuhlman, who, with the recantation of the testimony of Gary Davis, turned out to be the

sole remaining supposed eyewitness who could identify defendant, with the unduly sympathetic build-up of Fuhlman authorized by the trial court as a perceived remedial measure, served to clothe Fuhlman with juror credibility he may not otherwise have possessed.

The trial court's refusal to allow defense counsel to impeach Fuhlman with a prior inconsistent statement also contributed to, and independently constituted, reversible error by the trial court. On cross-examination, Fuhlman denied telling police officer Nenninger shortly after the shooting that he had been 50 feet away from 5th Street at the time of the shooting (R-311). Nennenger subsequently testified that he had no independent recollection of his interview with Fuhlman, but that he did prepare an essentially accurate police report contemporaneously with the discussion (R-516-19).

Defendant sought to introduce the aforesaid police report into evidence as Defendant's Exhibit No. 3 as a past recollection recorded exception to the hearsay rule. Upon an extensive leading examination of Nenninger by the trial court (which further exemplifies the bias of the trial court against defense counsel and defendant, more fully delineated in Issue III), Nenninger testified that he could not recall the context of the particular comment of Fuhlman about being 50 feet away from 5th Street (R-519-20). The trial court subsequently refused to admit Defendant's Exhibit No. 3 into evidence, and further instructed the jury that Fuhlman had not been impeached on the matter (R-522-23).

The rule permitting the introduction of past recollection

38

recorded as an exception to the hearsay rule has four requirements that must be met:

> (1) the witness must have had first-hand knowledge of the event; (2) the written statement must be an original memorandum made at or near the time of the event and while the witness had a clear and accurate memory of it, (3) the witness must lack a present recollection of the event; and (4) the witness must vouch for the accuracy of the written memorandum. **People v. Unes,** 143 Ill. App. 3d 716, 493 N.E.2d 681, 685 (3rd Dist. 1986); **People v. Andrews,** 101 Ill. App. 3d 808, 428 N.E.2d 1048, 1050 (1st Dist. 1981).

A consideration of Nennenger's testimony, along with Defendant's Exhibit No. 3, establishes that the trial court's refusal to admit the police report into evidence as a past recollection recorded was manifestly erroneous.

The trial court's ruling was based on Nennenger's testimony, elicited by the trial court, that he was not sure of the context of Fuhlman's statement that he had been 50 feet away from 5th Street at the time of the shooting. The passage in question was as follows: "WRITER SPOKE TO A STEVE FUHLMAN. AT THE TIME OF THE SHOOTING, MR. FUHLMAN WAS ON THE NORTH SIDE OF 15 AVE. ABOUT 50 FEET FROM 5 ST." (defendant's exhibit 3).

Nennenger's protestations that he was not sure of the context of the aforesaid statement should have been adjudged to be of no consequence to the trial court's evidentiary ruling. No additional "context" is needed than that provided by the statement itself. The accuracy of the statement does not hinge on some unprovided "context." Thus, the trial court's exclusion of this exhibit constituted yet another instance of reversible error. For, had Fuhlman been properly impeached with this prior inconsistent

statement, his inability to see what he contended he did see would have been apparent to the trier of fact.

For all of the foregoing reasons, defendant's conviction must be reversed.

VI.  THE STATE'S CLOSING ARGUMENTS CONSTITUTED REVERSIBLE ERROR.

The State's closing arguments were replete with erroneous statements, which, in their entirety, constitute reversible error. Most of the errors were objected to contemporaneously by defense counsel.  A few, such as the State's repeated references to defendant's silence, were not objected to when they were uttered but were preserved in defendant's post-trial motion (C-137).  Yet, those not objected to were so egregious as to constitute reversible plain error.

The three main areas of prejudicial error contained in the prosecutor's closing argument pertained to his comments about defendant's silence at trial, his repeated misinterpretations of the law, and his professed personal belief in certain facets of the State's case.

A defendant has a fifth amendment constitutional right not to testify on his own behalf, and it is improper for a prosecutor to refer directly or indirectly to defendant's failure to testify. **People v. Tipton,** 222 Ill. App. 3d 657, 584 N.E.2d 310, 313 (1st Dist. 1991).  To determine whether the prosecutor improperly commented on the defendant's failure to testify, the  Court is to consider whether his comments were intended or calculated to direct the attention of the jury to defendant's failure to exercise his

40

legal right to testify.    Id; See **People v. Tate,** 156 Ill. App. 3d

950, 509 N.E.2d 801 (3rd Dist. 1987).

The prosecutor stated the following:

> What do you think of this point, Ladies and Gentlemen, that two days or one day after this shooting Mr. Greer gave a statement to the Lieutenant Sowards of the Rock Island Police Department, and in that statement he claimed he wasn't there. It's what he didn't say to Lieutenant Sowards that's important.  He had full opportunity to say at that time it was kill or be killed.  It was self defense.  Guy put a, the guy put a gun to my brother's head two days earlier.  I thought I could kill him.  But, he didn't.  And, doesn't that show a very strong belief on his part, a subjective belief that what he had done down there was he was the aggressor? (R-780).

The prosecutor repeated his prejudicial comments shortly

thereafter:

> And, think about it, when somebody tells the Lieutenant Sowards I wasn't there, I wasn't there when he has the opportunity to say look it was kill or be killed, and he doesn't take it.  What's that tell you about his state of mind (R-786).

Neither one of these two extended statements was objected to

contemporaneously by defense counsel, but the argument was

contained in defendant's written post-trial motion (C-137).   If

this Court were to determine that the issue is otherwise waived,

the plain error doctrine should be invoked.   The plain error

doctrine may be invoked to review error which has not been properly

preserved for review where the evidence is closely balanced or

where the error is of such magnitude that the defendant was denied

a fair trial.   See **People v. Nitz,** 143 Ill. 2d 82, 572 N.E.2d 895,

906 (1991).

Both conditions are met in this case.   When one considers the

recanted testimony of Gary Davis, and the suspect and independently

41

insufficient testimony of Steve Fuhlman, the evidence was at a minimum closely balanced, and the plain error doctrine should be invoked and defendant's conviction reversed.

Furthermore, the extent of the error was of great magnitude. There is no doubt from the plain meaning of the words utilized by the prosecutor that he intended to draw the jury's attention to, and fixate it upon, the fact that defendant did not testify. This error, standing alone, is sufficient to mandate the reversal of defendant's conviction.

The prosecutor made additional errors in his closing arguments. He made at least four misguided attempts to interpret the law before the jury, primarily on the topic of self-defense (R-734, 735, 738, 778). This Court has previously held that the misstatement of the law of self-defense to a jury during closing argument can constitute reversible error. See **People v. Estes,** 127 Ill. App. 3d 642, 469 N.E.2d 275 (3rd Dist. 1984). Particularly when the recanted testimony of Davis is considered, there is no credible evidence in the record that would provide guidance to the trier of fact as to whether the shooting of Ellison, if done by defendant, was performed in self-defense. The prosecutor's misstatement of the law, particularly as it pertains to what an aggressor is, compounded the prejudice beyond repair and merits reversal on its own accord.

Yet another area of prejudicial error was the prosecutor's injection of his own beliefs concerning certain aspects of the State's evidence. The prosecutor stated his belief that he didn't

42

think anybody could believe that defendant was at his apartment at the time Ellison was killed (R-736). The prosecutor also stated his belief that Ellison had not fired his weapon in two days (R-738).

The prosecutor, as representative of the State, stands in a special relation to the jury, and must therefore choose his words carefully so that he does not place the authority of his office behind the credibility of his witnesses, or the veracity of a particular witness. <u>See</u> <u>People v. Roach,</u> 213 Ill. App. 3d 119, 571 N.E.2d 515 (3rd Dist. 1991). The prosecutor clearly overstepped his bounds with the aforesaid comments, and prejudicial error resulted.

It is clear from the foregoing that the ream of prejudicial error contained in the prosecutor's closing arguments constitutes reversible error. Defendant's conviction, accordingly, must be reversed.

43

**CONCLUSION**

David Allen Greer's conviction for the offense of first degree murder should be reversed by this Court for various independent reasons. The trial court committed reversible error by refusing to accept the recanted testimony of State witness Gary Davis, whose testimony at trial was pivotal to the jury finding the defendant guilty of first degree murder.

The trial court also committed reversible error by denying defendant's motion for a mistrial after it was disclosed that at least three jurors had observed defendant while handcuffed and shackled immediately before deliberating on a verdict. Defendant was also denied his right to a fair trial where the trial court's misconduct toward defense counsel affected the verdict.

The trial court abused its discretion by admitting into evidence a posed photograph of the purported crime scene where it was established that it did not accurately depict the actual crime scene as allegedly viewed by the State's purported eyewitness Steve Fuhlman. The trial court further abused its discretion by preventing defense counsel from effectively cross-examining alleged State eyewitness Steve Fuhlman by A) refusing to allow defense counsel to cross-examine Fuhlman as to bias, and by B) refusing to allow defense counsel to impeach Fuhlman with a prior inconsistent statement. Furthermore, the State's closing arguments constituted reversible error.

Accordingly, for any and all of the foregoing reasons, Mr. Greer's conviction for first degree murder should be reversed.

44

Respectfully Submitted,

*John Wood*

John Wood
Panel Attorney
Office of the State Appellate Defender
6415 N. Tammarack
Peoria, Illinois  61615
(309) 693-2846

COUNSEL FOR APPELLANT

# **APPENDIX**

9/ C F   6 4 9

ONE COUNT INDICTMENT

| STATE OF ILLINOIS | ) | IN THE CIRCUIT COURT OF THE |
|---|---|---|
| | ) SS. | FOURTEENTH JUDICIAL CIRCUIT |
| ROCK ISLAND COUNTY | ) | AUGUST GRAND JURY 1994 |

THE GRAND JURORS, chosen, selected and sworn, in and for the County of Rock Island in the State of Illinois, in the name and by the authority of the People of the State of Illinois, upon their oaths, present:

That,

### DAVID ALLEN GREER

late of said County on the 13th day of July, in the year of our Lord One Thousand Nine Hundred and Ninety Three at and within the said County of Rock Island in the State of Illinois, aforesaid: committed the offense of **FIRST DEGREE MURDER** in that the said defendant without lawful justification, fired a handgun at Brandon Ellison, shooting him in the back, knowing such acts created a strong probability of death or great bodily harm to Brandon Ellison thereby causing the death of Brandon Ellison,

in violation of 720 ILCS 5/9-1(a)(2) a Unclassified Class.

FILED in the CIRCUIT COURT
of ROCK ISLAND COUNTY
GENERAL DIVISION

AUG 24 1994

Clerk of the Circuit Court

_____
FOREMAN OF GRAND JURY

_____
STATE'S ATTY FOR ROCK ISLAND CO.

IN THE CIRCUIT COURT FOR THE FOURTEENTH JUDICIAL CIRCUIT
ROCK ISLAND COUNTY
GENERAL DIVISION

FILED in the CIRCUIT COURT
of ROCK ISLAND COUNTY

PEOPLE OF THE STATE OF ILLINOIS )
                      Plaintiff, )
                                 )
              vs.                )
                                 )
DAVID ALAN GREER,                )
                                 )
                      Defendant. )

DEC 1 5 1994

No. 94 CF 649

Clerk of the Circuit Court

## MOTION FOR JUDGMENT OF NOT GUILTY OR IN ALTERNATIVE FOR A

## NEW TRIAL

Now comes the Defendant, DAVID ALLEN GREER, and moves this Court to vacate the verdict of guilty in this cause and enter a of acquittal, or in the alternative, grant the defendant a new trial and states as follows:

1.  The State has failed to prove the case against the defendant beyond a reasonable doubt.

2.  The Court erred in failing to grant defendant's motion for mistrial when, after the jury had been sent out to deliberate the case, Defendant was paraded before three jurors while he was in shackles and accompanied by three armed sheriff's deputies and a police dog.

3.  The Court erred in denying Defendant's motion for mistrial after the Court commented in the presence of the jury that the defense counsel's tactics were "ridiculous".

4.  The prosecutor committed reversible error in his closing argument by making prejudicial and inflammatory remarks including telling the jurors on two occasions that if the jury did not convict the defendant that it would encourage other people to engage in the same type of

conduct.

5.   The prosecutor committed reversible error by arguing his erroneous interpretation of the law in his closing argument.

6.   The prosecutor committed reversible error by stating his personal belief in the truth of the evidence in his closing argument.

7.   The Court erred in questioning witness Mark Nenninger with leading and suggestive questions aimed at defeating the defense's attempt to lay a foundation to have a police report containing a prior statement of a witness admitted as past recollection recorded.

8.   The Court erred in not admitting a police report containing a prior inconsistent statement of Steve Fuhlman into evidence as the past recollection recorded of Mark Nenninger.

9.   The Court erred in not requiring Dr. Teas to respond to the questions of the defense when she gave answers which obviously evaded the questions.

10.   The Court erred in allowing Dr. Teas to render opinions which were beyond her expertise as a physician.

11.   The prosecutor made prejudicial remarks in his closing argument concerning the criminal records of defense witnesses which went beyond arguing the criminal records for impeachment purposes.

12.   The prosecutor made prejudicial remarks in his closing statement by commenting on the defendant's right

to remain silent by arguing that the defendant "had every opportunity to tell the police".

13.    The Court erred in refusing to allow the testimony of Mario Yancey concerning alleged coercion or inducements by the State's Attorney.

14.    The Court erred in refusing to allow the testimony of Assistant State's Attorney Mark Senko regarding Gregory Davis.

15.    The State made prejudicial comments about "mug shots" in his remarks before the jury.

16.    The Court erred in admitting a drawing as an exhibit over the hearsay objection of the defendant.

17.    The Court erred in commenting on impeachment evidence presented to the jury.

18.    The Court erred in personally criticizing and berating defense counsel in making his rulings on objections, thereby creating a hostile environment in the courtroom toward the defendant and his attorney, both in the presence and outside the presence of the jury.

19.    The Court erred in admitting the out of court statement of the defendant into evidence.

20.    The Court erred in restricting the cross-examination of witness Fuhlman as to his economic status and socio-economic motives to falsely testify.

21.    The Court erred in allowing a posed photograph into evidence.

22.    The Court erred in continuously allowing the

prosecutor to ask leading questions on key issues in the case.

WHEREFORE, Defendant prays this Court vacate the guilty verdict and enter a verdict of acquittal, or in the alternative, grant the Defendant a new trial in this cause.

DAVID ALLEN GREER, Defendant

By: _____
John Malvik, his Attorney

JOHN MALVIK
Williams, Buckrop, Malvik
   & Assoc., P.C.
1703 - 2nd Avenue
Rock Island, IL 61201
(309)788-3799

**PROOF OF SERVICE**

The undersigned certifies that the foregoing instrument was served upon all parties to the above cause to each of the attorneys of record herein at their respective addresses disclosed on the pleadings on December 15 19 94

By:   ☒ U.S. Mail        ☐ FAX
      ☒ Hand-Delivered    ☐ Overnight Courier
      ☐ Federal Express   ☐ Other:

Signature _____

C 00110

IN THE CIRCUIT COURT FOR THE FOURTEENTH JUDICIAL CIRCUIT
ROCK ISLAND COUNTY
GENERAL DIVISION

PEOPLE OF THE STATE OF ILLINOIS )
               Plaintiff,    ) FILED in the CIRCUIT COURT
                          ) of ROCK ISLAND COUNTY
                          ) GENERAL DIVISION
            vs.          ) No.  94 CF 649

DAVID ALAN GREER,       ) JAN 2 4 1995

             Defendant.    *Marilyn Gillinger*
                             Clerk of the Circuit Court

## MOTION TO PRODUCE STATE'S WITNESS FOR HEARING ON MOTION

## FOR JUDGMENT OF NOT GUILTY OR IN ALTERNATIVE FOR A

## NEW TRIAL

Now comes the Defendant, DAVID ALLEN GREER, and moves this Court to enter an Order directing the State to produce its witness Gary Davis to testify at the hearing on Defendant's post-trial motion and states as follows:

1.  The witness Gary Davis has recanted his testimony in a letter written to Defendant.  See Ex. # 1 attached hereto.

2.  Gary Davis purports to be incarcerated in the state of Arkansas and in need of $1500 to post for bond so that he can appear in court on behalf of Defendant. Defendant has no funds with which to post any bond for Gary Davis.

3.  The State was able to produce Gary Davis for trial while he was in custody in Arkansas.

WHEREFORE, Defendant prays this Court enter an order directing the State to produce its witness Gary Davis in

C00143

court to give testimony concerning his alleged
recantation.

                              DAVID ALLEN GREER, Defendant


                    By: _____
                         John Malvik, his Attorney

JOHN MALVIK
Williams, Buckrop, Malvik
    & Assoc., P.C.
1703 - 2nd Avenue
Rock Island, IL 61201
(309)788-3799

**PROOF OF SERVICE**

The undersigned certifies that the foregoing instrument was
served upon all parties to the above cause to each of the attorneys
of record herein at their respective addresses disclosed on the
pleadings on _____ 19 __

By:  ☐ U.S. Mail
     ☒ Hand Delivered        ☐ FAX
     ☐ Federal Express        ☐ Overnight Courier
                              ☐ Other:

Signature _____

C00144

DEFENDANT'S
EXHIBIT

1-3-95

Dear. Crack

I am wrighting you in concern of enformatis on
your case. I have been thinking of what I did
it was very wrong. I need to let you so Something
very important. Crack what I so will free you of.
This conviction. Why am I doing this is because
I didn't tell the truth at the trial and it was
a lot that went on in the Slater attorneys office
that no one knew about. So let me tell you about il

Crack First of all I didn't see you kill Brander
I was not there. I only put that story togather
cause of what people told me. and the only
Reason I told the police was because I new
They would pay for the info so I said I was
there and saw every thing so that I could get
money for my Drug Habbit. And they did let me
off with 42 month if I testify agaist you
And the only Reason I came to the trial
Is because I thought they would pay the
$1500 I need to get out of jail here. So crack
I have hurt our nation that I so love and
you came you help me out here and I will
and want to help what I started So what
I need you to do is Contact your lawyer
and wright me back and tell me what I

00035

I can do to help I will tell A Judge
The truth of why and How. I came up with
This lie against you. So call your Lawyer And
Have him do contact me here And. I will do this
For you. And no one Is to no of this but you
And me, or, I want do it. I want to come back
Home. And I cant with noing what I did was wrong
And A lie. I lay you And oun nation to reach Dope
Has cause me to lie and Hurt people to long no more
And you shouldn't go to prison over my lie's, Brother
I want you to wright me back And Let me no what
To do. Crack one more Thing Iam not changing you
For This Infor but I need $1500, And your word
That, noting will happen to me, when I come In your
Behalf And after. And no one will no of this but me
you and your, Lawyer, Have him to contact me here
And you wright me. I will be At the count Date when
you need me, I promise God forgive me for my lie
The money Is to only be between you And me, you
send It To the Address on this Letter, IN A money order
And, I will post bail. And, Let your Lawyer no How
To reach me. If you do Dont Respond IN, 3 Days
of this Letter, I no. you dont want my help. And
I mean no one Is to no of this No one, I Can
Prove All of what Iam saying,

    I Sware The Above Letter Is
The Truth Gary D. Davis 1-31-95

C00146

IN THE CIRCUIT COURT OF THE FOURTEENTH JUDICIAL CIRCUIT
ROCK ISLAND COUNTY, ILLINOIS
**GENERAL DIVISION**

THE PEOPLE OF THE STATE OF ILLINOIS,    )
                                         )
                      Plaintiff,         )
                                         )    NO.  **94 CF 649**
           vs.                           )    **First Class Murder**
                                         )    **an Unclassified Felony**
DAVID A. GREER,                          )
                                         )
                      Defendant.         )

**SENTENCING ORDER**

On this 1st day of March, 1995, the defendant having been found guilty of the offense of First Degree Murder in violation of 720 ILCS 5/9-1(a)(2), in this, to-wit:

In that on or about July 13, 1993 the said defendant without lawful justification, fired a handgun at Brandon Ellison, shooting him in the back, knowing such acts created a strong probability of death or great bodily harm to Brandon Ellison thereby causing the death of Brandon Ellison.

This cause now comes on for hearing for the purpose of sentencing, being present the People of the State of Illinois by William Kalinak, Assistant State's Attorney of Rock Island County, and the defendant, David A. Greer, in his own proper person, as well as by his counsel, John Malvik.  The Court having afforded the defendant the preparation-filing of a presentence report and his right to a hearing in aggravation and mitigation, the Court having considered such evidence received upon the factual basis stated upon the defendant's plea, or trial, a finding as to defendant's history of delinquency and criminality, and the Court having heard such arguments as offered concerning sentence and having afforded the defendant the opportunity to make a statement in his own behalf, the Court finds that a sentence to the Illinois Department of Corrections is lawful, and that having regard to the nature and circumstances of the offense and to the history, character and condition of the offender, a sentence of imprisonment with the Illinois Department of Corrections will be consistent with the ends of justice and will serve the interests of society.

**IT IS THEREFORE ORDERED** by this Court that the defendant be and is hereby sentenced to a term of fifty (50) years in the Illinois Department of Corrections, with credit for days served in custody from August 3, 1994 to date of delivery into the custody of the Illinois Department of Corrections. This is to be followed by a period of three (3) years mandatory supervised release.

The defendant is remanded to the custody of the Sheriff of Rock Island County for transportation to the Illinois Department of Corrections.

_James T. Teros_
JUDGE JAMES T. TEROS

ENTERED:  3/3/95

STATE OF ILLINOIS
COUNTY OF ROCK ISLAND

MAR 1 5 1995

People of the State of Illinois

VS

David Allen Greer

Case# 94 CF 649

## APPOINTMENT OF COUNSEL ON APPEAL

It is appearing to the Court that the above named Defendant desires to appeal
from the order entered by the Court on __March 1, 1995__ and the Defendant is
indigent and requests an Appointment of Counsel,

IT IS THEREFORE ORDERED THAT:   ROBERT AGOSTINELLI
Deputy Defender
Office of the State Appellate Def.
Third Judicial District
1100 Columbus Street
Ottawa, Il 61450-2107
815-434-5531

Is hereby appointed to represent the above named Defendant for purpose of appeal.
It is further ordered that the Clerk of this Court shall prepare and file a
NOTICE OF APPEAL on behalf of the above named Defendant, and shall send a
copy of the Notice of Appeal to the Defendant's Counsel.
It is further ordered the Official Shorthand Reporter of the Court shall:
   (a) Forthwith transcribe an original and a copy of all the notes taken of the
       proceedings in the above entitled cause;
   (b) Without charge to the Defendant and within forty-nine days from the date
       the Notice of Appeal is filed, filed the original of the report of Proceedings
       of the Report of Proceedings to the Defendant.
IT IS FURTHER ORDERED that the Clerk of the Court shall:
   (a) Send a copy of this order to the Defendant and to the Defendant's Counsel;
   (b) Prepare and certify the Record on Appeal pursuant to Supreme Court
       Rules 324 and 608;
   (c) File the Record on Appeal in the reviewing court within sixty-three days
       from the date the Notice of Appeal is filed, or file a Certificate in Lieu
       of Record pursuant to Supreme Court Rule 325 and send the Record on
       Appeal to the Defendant's Counsel.

DATE ENTERED _March 15_        JUDGE _Edward Keefe_

C00156

IN THE CIRCUIT COURT OF Rock Island COUNTY, ILLINOIS

PEOPLE OF THE STATE OF ILLINOIS )
                                 )
                    Plaintiff,   )
                                 )
          vs.                    )         Case No. 94 CF 649
Darid A. Greer                   )
                    Defendant.   )
                                 )

FLED in the CIRCUIT COURT
of ROCK ISLAND COUNTY
GENERAL DIVISION

_____

NOTICE OF APPEAL                     MAR 2 0 1995

_____

*(Clerk signature)*
Clerk of Circuit Court

An appeal is taken from the Order or Judgment described below:

(1)  Court to which appeal is taken:

     Circuit Court #14 Judicial System

(2)  Name of appellant and address to which notices shall be sent:

     Name David A. Greer          No. N-72100
     P.O. Box 515
     Joliet, Illinois  60432

(3)  If appellant is indigent and has no attorney on appeal,

     does he want one appointed by the court?  Yes

(4)  Date of Judgment or Order: Feb. 24, 1995

(5)  Offense of which convicted: 1st D. Murgder

     _____

(6)  Sentence: 50 years on Feb 24, 1995

(7)  Type of proceeding:  Bench Trial_____

     Jury Trial____✓_____Plea Agreement_____

                              David A. Greer
                              Appellant

C00159

# COMMON LAW

94 CF 649             David Allen Greer             3-95-0195

C1     Face sheet
C2     Indictment filed August 24, 1994
C3     Order filed August 24, 1994
C4     Arrest warrant filed August 24, 1994
C5     Mittimus filed August 31, 1994
C6     Arrest warrant retd. and filed August 31, 1994
C8     Entry of appearance filed/demand for speedy trial filed August 31, 1994
C9     Motion to suppress statements of Defendant filed August 31, 1994
C10    Motion for bill of particulars filed August 31, 1994
C11    Motion for discovery before trial filed August 31, 1994
C15    Motion for list of witnesses and to produce confession filed August 31, 1994
C16    Copy of motion for issuance of fax subpoena filed September 2, 1994
C51    Notice filed September 2, 1994
C52    State's motion for protective and regulatory orders pursuant to discovery
       filed September 8, 1994
C56    Notice filed September 8, 1994
C57    Pre trial order filed September 12, 1994
C58    Warning to Defendant and order filed September 12, 1994
C59    Mittimus filed September 12, 1994
C60    State's motion for protective and regulatory orders pursuant to discovery
       filed September 13, 1994
C63    Mittimus filed September 13, 1994
C64    Notice of hearing on motions filed September 19, 1994
C65    Notice of hearing on motions filed September 19, 1994
C66    State's motion for evidence deposition filed September 20, 1994
C67    Affidavit in support of deposition filed September 20, 1994
C69    Motion for recognizance bond for a material witness filed September 22,
       1994
C70    Order filed September 22, 1994
C71    Motion for recognizance bond for a material witness filed September 22,
       1994
C72    Order filed September 22, 1994
C73    Recognizance of Defendant for appearance filed September 22, 1994

C74    Mittimus filed September 22, 1994
C75    Order filed September 22, 1994
C76    Order filed September 22, 1994
C77    Order filed September 22, 1994
C78    Motion for recognizance bond for a material witness filed September 23, 1994
C79    Order filed September 23, 1994
C80    Recognizance of witness for appearance filed September 23, 1994
C81    Bench warrant filed September 27, 1994
C82    Order filed October 14, 1994
C83    Proof of service filed October 18, 1994
C84    Correspondence filed by Attorney Kalinak to Attorney Malvik October 20, 1994
C86    Supplemental disclosure to accused filed October 24, 1995
C87    Answer to the State's motion for pre-trial discovery filed October 24, 1994
C89    Supplemental disclosure to accused filed October 25, 1994
C90    Supplemental disclosure to accused filed October 27, 1994
C91    Supplemental disclosure to accused filed November 3, 1994
C92    Supplemental disclosure to the State filed November 10, 1994
C93    Supplemental disclosure to the State filed November 14, 1994
C94    Mittimus filed November 14, 1994
C95    Mittimus filed November 15, 1994
C96    Mittimus filed November 18, 1994
C97    Jury instructions filed November 18, 1994
C132   Court exhibit #1 filed November 18, 1994
C133   Order filed November 18, 1994
C134   Order filed December 12, 1994
C135   Supplemental disclosure to accused filed December 14, 1994
C137   Motion for judgment of not guilty or in alternative for a new trial filed December 15, 1994
C141   Correspondence filed by Defendant December 30, 1994
C143   Motion to produce State's witness for hearing on motion for judgment of not guilty or in alternative for a new trial filed w/ Defendant's exhibit #1 January 24, 1995
C148   Petition for order for habeas corpus testificandum filed February 1, 1995
C150   Order of habeas corpus ad testificandum filed February 1, 1995
C151   Order filed February 1, 1995
C152   Pre sentence investigation report filed February 3, 1995
C171   Order of habeas corpus ad testificandum filed February 14, 1995
C172   Order of habeas corpus ad testificandum filed February 14, 1995
C173   Order filed February 16, 1995
C174   Mittimus filed February 16, 1995
C175   Notice filed February 17, 1995
C176   Notice filed February 17, 1995
C177   Notice filed February 17, 1995

C178  Amended notice filed February 22, 1995
C179  Amended  notice filed February 22, 1995
C180  Correspondence filed by Defendant February 24, 1995
C181  Mittimus filed March 1, 1995
C182  Sentencing order filed March 3, 1995
C183  Notice of appeal filed March 15, 1995
C184  Notice of filing notice of appeal filed March 15, 1995
C185  Motion to substitute Public Defender filed March 15, 1995
C186  Appointment of Counsel on appeal filed  March 15, 1995
C187  Affidavit of service of copies of notice of appeal filed March 15, 1995
C188  Notice of filing filed March 20, 1995
C189  Notice of appeal filed March 20, 1995
C191  Docketing order due dates filed March 22, 1995
C193  Bench warrant filed May 5, 1995
C196  Order filed May 8, 1995
C197  Inventory filed May 9, 1995
C198  Amended docketing order due dates filed May 10, 1995
C200  Amended docketing order due dates filed August 7, 1995
C202  Affidavit in support of motion for trial transcripts and common law records
      filed August 28, 1995
C204  Motion to proceed in forma pauperis and request for free transcripts filed
      August 28, 1995
C211  Amended docketing order due dates filed October 26, 1995
C213  Docket sheets

# REPORT OF PROCEEDINGS

94 CF 649                David Allen Greer                3-05-0195

**Report of proceedings filed by Clara Thompson for September 13, 1994**
**R1 - R75**

**Report of proceedings filed by Clara Thompson for September 22, 1994**
**R76 - R112**

**Report of proceedings filed by Karen White for October 13, 1994**
**R113 - R121**

**Report of proceedings filed by Patricia DuVall for November 14, 1994**
**R122 - R124**

**Report of proceedings filed by Patricia DuVall for November 15, 1994**
**R125 - R364**

**Report of proceedings filed by Patricia DuVall for November 16, 1994**
**R365 - R501**

**Report of proceedings filed by Mary Thaxton for November 16, 1994**
**R502 - R571        Trial**

**Report of proceedings filed by Patricia DuVall for November 17, 1994**
**R572 - R722**

**Report of proceedings filed by Patricia DuVall for November 18, 1994**
**R723 - R805**

**Report of proceedings filed by Clara Thompson for February 3, 1995**
**R806 - R812**

**Report of proceedings filed by Patricia DuVall for February 16, 1995**
**R813 - R831**

Report of proceedings filed by Clara Thompson for March 1, 1995
R832 - R936            Sentencing

E-FILED
Tuesday, 26 September, 2006  01:52:06 PM
Clerk, U.S. District Court, ILCD

FILE COPY

RECEIVED

APR - 9 1997

THIRD DISTRICT
APPELLATE COURT

FILED

1997

THIRD DISTRICT
APPELLATE COURT CLERK

NO. 3-95-0195

IN THE

APPELLATE COURT OF THE STATE OF ILLINOIS

THIRD JUDICIAL DISTRICT

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of the 14th Judicial Circuit |
| Plaintiff-Appellee, | ) | Rock Island County, Illinois |
| | ) | |
| v. | ) | No. 94-CF-649 |
| | ) | |
| DAVID ALLEN GREER, | ) | Honorable |
| | ) | James Teros |
| Defendant-Appellant. | ) | Judge Presiding |

BRIEF AND ARGUMENT FOR PLAINTIFF-APPELLEE

Marshall E. Douglas
State's Attorney
Rock Island County
Rock Island, Illinois  61201
(309) 786-4451

John X. Breslin
Deputy Director
Norbert J. Goetten, Director        Domenica A. Osterberger
State's Attorneys                   Staff Attorney
   Appellate Prosecutor             State's Attorneys
                                        Appellate Prosecutor
                                    628 Columbus Street, Suite 300
                                    Ottawa, Illinois 61350
                                    (815) 434-7010

COUNSEL FOR PLAINTIFF-APPELLEE

ORAL ARGUMENT REQUESTED

EXHIBIT B

NO. 3-95-0195

IN THE

APPELLATE COURT OF THE STATE OF ILLINOIS

THIRD JUDICIAL DISTRICT

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of the 14th Judicial Circuit |
| Plaintiff-Appellee, | ) | Rock Island County, Illinois |
| | ) | |
| v. | ) | No. 94-CF-649 |
| | ) | |
| DAVID ALLEN GREER, | ) | Honorable |
| | ) | James Teros |
| Defendant-Appellant. | ) | Judge Presiding |

POINTS AND AUTHORITIES

I

THE TRIAL JUDGE PROPERLY DENIED THE DEFENDANT'S MOTION
FOR A NEW TRIAL WHICH WAS BASED UPON THE RECANTATION TESTIMONY
OF GARY DAVIS. . . . . . . . . . . . . . . . . . . . .    3

People v. Nash, 36 Ill.2d 275, 222 N.E.2d 473
    (1966) . . . . . . . . . . . . . . . . . . . .    7

People v. Parsons, 284 Ill.App.3d 1049, 673 N.E.2d
    347, 220 Ill. Dec. 435 (1st Dist. 1996)  . . .    4

People v. Lawson, 232 Ill.App.3d 284, 596 N.E.2d
    1235, 173 Ill. Dec. 356 (4th Dist. 1982) . . .    4

People v. Worthen, 105 Ill.App.3d 386, 434 N.E.2d
    423, 61 Ill. Dec. 270 (1st Dist. 1992) . . . .    4

People v. Evans, 54 Ill.App.3d 883, 370 N.E.2d 284,
    12 Ill. Dec. 661 (3d Dist. 1977) . . . . . . .    7

People v. Dotson, 163 Ill.App.3d 419, 516 N.E.2d
    718, 114 Ill. Dec. 563 (1st Dist. 1987)
    (distinguished)  . . . . . . . . . . . . . . .    3

i

## II

**REVERSIBLE ERROR DID NOT OCCUR WHEN SEVERAL JURORS SAW THE DEFENDANT SHACKLED AS HE WAS ESCORTED OUTSIDE OF THE COURTROOM.** . . . . . . . . . . . . . . . . . . . 9

People v. Barney, ___ Ill.2d ___, ___ N.E.2d ___,
    ___ Ill. Dec. ___ (No. 81389, filed March 20,
    1997) . . . . . . . . . . . . . . . 12

People v. O'Toole, 226 Ill.App.3d 974, 590 N.E.2d
    950, 169 Ill. Dec. 31 (4th Dist. 1992) . . . . 12

People v. Greene, 102 Ill.App.3d 933, 430 N.E.2d
    23, 58 Ill. Dec. 81 (1st Dist. 1981) . . . . . 10

People v. Bennett, 90 Ill.App.3d 64, 412 N.E.2d
    1001, 45 Ill. Dec. 419 (5th Dist. 1980) . . . 13

People v. Jones, 88 Ill.App.3d 629, 410 N.E.2d
    1122, 44 Ill. Dec. 30 (1st Dist. 1980) . . . . 10

People v. Foster, 80 Ill.App.3d 990, 400 N.E.2d
    462, 36 Ill. Dec. 42 (5th Dist. 1980) . . . . 10

People v. Walsh, 80 Ill.App.3d 754, 400 N.E.2d 587,
    36 Ill. Dec. 167 (1st Dist. 1980) . . 11-12, 14

People v. Hyche, 63 Ill.App.3d 575, 380 N.E.2d 373,
    20 Ill. Dec. 395 (5th Dist. 1978), aff'd, 77
    Ill.2d 229, 396 N.E.2d 6, 32 Ill Dec. 893
    (1979) . . . . . . . . . . . . . . . 10

People v. Brabson, 54 Ill.App.3d 134, 369 N.E.2d
    346, 11 Ill. Dec. 892 (3d Dist. 1977) . . 10-11

People v. Dismuke, 3 Ill.App.3d 553, 278 N.E.2d 152
    (2d Dist. 1972) . . . . . . . . . . . . . 11

People v. Harris, 123 Ill.2d 113, 526 N.E.2d 335,
    122 Ill. Dec. 76 (1988) (distinguished) . . . 14

People v. Boose, 33 Ill.App.3d 250, 337 N.E.2d 338
    (3d Dist. 1975), aff'd, 66 Ill.2d 261, 362
    N.E.2d 303, 5 Ill Dec. 832 (1977)
    (distinguished) . . . . . . . . . . . . . . 11

## III

THE TRIAL JUDGE'S COMMENT TOWARD DEFENSE COUNSEL DID NOT
RESULT IN REVERSIBLE ERROR. . . . . . . . . . . . . .   15


People v. Peeples, 155 Ill.2d 422, 616 N.E.2d 294,
      186 Ill. Dec. 341 (1993) . . . . . . . . . .   17

People v. Anderson, 262 Ill.App.3d 349, 633 N.E.2d
      699, 198 Ill. Dec. 858 (1st Dist. 1992) . . .   17

People v. McKinney, 260 Ill.App.3d 539, 631 N.E.2d
      1281, 197 Ill. Dec. 822 (1st Dist. 1994) . . .   17

People v. Campbell, 232 Ill.App.3d 597, 597 N.E.2d
      820, 173 Ill. Dec. 846 (1st Dist. 1992) . . .   18

People v. Eckert, 194 Ill.App.3d 667, 551 N.E.2d
      820, 141 Ill. Dec. 633 (5th Dist. 1990)
      (distinguished) . . . . . . . . . . . . . . .   18

People v. Mays, 188 Ill.App.3d 974, 544 N.E.2d
      1264, 136 Ill. Dec. 489 (5th Dist. 1989)
      (distinguished) . . . . . . . . . . . . . . .   18

## IV

THE TRIAL JUDGE PROPERLY ADMITTED A PHOTOGRAPH OF THE
CRIME SCENE WHICH WAS TAKEN JUST PRIOR TO TRIAL.  . . .   20


People v. Oliver, 265 Ill.App.3d 543, 637 N.E.2d
      1173, 202 Ill. Dec. 437 (1st Dist. 1994) . . .   21

People v. Bryant, 202 Ill.App.3d 1057, 560 N.E.2d
      955, 148 Ill. Dec. 358 (1st Dist. 1990)  . 20, 23

People v. Moore, 199 Ill.App.3d 747, 557 N.E.2d
      537, 145 Ill. Dec. 767 (1st Dist. 1990)  . . .   20

People v. Garcia, 95 Ill.App.3d 792, 420 N.E.2d
      482, 51 Ill. Dec. 68 (1st Dist. 1981) . . . .   20

People v. Jones, 114 Ill.App.3d 576, 449 N.E.2d
      547, 70 Ill. Dec. 418 (1st Dist. 1983)
      (distinguished) . . . . . . . . . . . . .   25-26

People v. Williams, 71 Ill.App.3d 547, 390 N.E.2d
    32, 28 Ill. Dec. 50 (1st Dist. 1979)
    (distinguished) . . . . . . . . . . . . . . 26

People v. Rolon, 71 Ill.App.3d 746, 390 N.E.2d 107,
    28 Ill. Dec. 125 (1st Dist. 1979)
    (distinguished) . . . . . . . . . . . . . . 25

<div align="center">V</div>

THE TRIAL JUDGE PROPERLY RESTRICTED THE DEFENDANT'S
CROSS-EXAMINATION OF STEVEN FUHLMAN AND PROPERLY REFUSED TO
ALLOW THE DEFENDANT TO IMPEACH FUHLMAN WITH AN ALLEGED PRIOR
INCONSISTENT STATEMENT. . . . . . . . . . . . . . . . . 27

People v. Britt, 265 Ill.App.3d 129, 638 N.E.2d
    282, 202 Ill. Dec. 636 (4th Dist. 1994) . 27-28

People v. Fierer, 260 Ill.App.3d 136, 631 N.E.2d
    1214, 197 Ill. Dec. 755 (3d Dist. 1994) . . . 28

People v. Silas, 185 Ill.App.3d 920, 541 N.E.2d
    1239, 133 Ill. Dec. 801 (1st Dist. 1989) . . . 28

People v. Dowdy, 140 Ill.App.3d 631, 488 N.E.2d
    1326, 94 Ill. Dec. 933 (2d Dist. 1986) . . . . 28

People v. Andrews, 101 Ill.App.3d 808, 428 N.E.2d
    1048, 57 Ill. Dec. 368 (1st Dist. 1981) . . . 33

People v. Freeman, 100 Ill.App.3d 478, 426 N.E.2d
    1220, 55 Ill. Dec. 846 (2d Dist. 1981) . . . . 32

People v. Triplett, 108 Ill.2d 463, 485 N.E.2d 9,
    92 Ill. Dec. 454 (1985) (distinguished) . 31-32

<div align="center">VI</div>

THE PROSECUTOR'S CLOSING ARGUMENT WAS PROPER. . . . 36

Supreme Court Rule 341(e)(7) . . . . . . . . . . . 37

People v. Enoch, 122 Ill.2d 176, 522 N.E.2d 1124,
    119 Ill. Dec. 265 (1988) . . . . . . . . . 36, 38

<div align="center">iv</div>

People v. Pope, 284 Ill.App.3d 695, 672 N.E.2d
      1321, 220 Ill. Dec. 309 (4th Dist. 1996) .   38-39

People v. Johnson, 254 Ill.App.3d 74, 626 N.E.2d
      347, 193 Ill. Dec. 314 (2d Dist. 1993) . . . .   36

People v. Tate, 156 Ill.App.3d 950, 509 N.E.2d 801,
      109 Ill. Dec. 140 (3d Dist. 1987)  . . . . . .   37

People v. David, 141 Ill.App.3d 243, 489 N.E.2d
      1124, 95 Ill. Dec. 396 (2d Dist. 1986) . . . .   37

People v. Roach, 213 Ill.App.3d 119, 571 N.E.2d
      515,  156  Ill.  Dec.  731  (3d  Dist.  1991)
      (distinguished)  . . . . . . . . . . . . . .   39

People v. Estes, 127 Ill.App.3d 642, 469 N.E.2d
      275,  82  Ill.  Dec.  741  (3d  Dist.  1984)
      (distinguished)  . . . . . . . . . . . . . .   37

## NATURE OF THE CASE

The defendant was charged in a bill of indictment with the offense of first degree murder. He was convicted by a jury and sentenced to a term of 50 years in the Illinois Department of Corrections.

No issue is raised concerning the sufficiency of the indictment.

## ISSUES PRESENTED FOR REVIEW

### I

DID THE TRIAL JUDGE PROPERLY DENY THE DEFENDANT'S MOTION FOR A NEW TRIAL WHICH WAS BASED UPON THE RECANTATION TESTIMONY OF GARY DAVIS?

### II

DID REVERSIBLE ERROR OCCUR WHEN SEVERAL JURORS SAW THE DEFENDANT SHACKLED AS HE WAS ESCORTED OUTSIDE OF THE COURTROOM?

### III

DID THE TRIAL JUDGE'S COMMENT TOWARD DEFENSE COUNSEL RESULT IN REVERSIBLE ERROR?

### IV

DID THE TRIAL JUDGE PROPERLY ADMIT A PHOTOGRAPH OF THE CRIME SCENE WHICH WAS TAKEN JUST PRIOR TO TRIAL?

1

V

DID THE TRIAL JUDGE PROPERLY RESTRICT THE DEFENDANT'S CROSS-EXAMINATION OF STEVEN FUHLMAN AND PROPERLY REFUSE TO ALLOW THE DEFENDANT TO IMPEACH FUHLMAN WITH AN ALLEGED PRIOR INCONSISTENT STATEMENT?

VI

WAS THE PROSECUTOR'S CLOSING ARGUMENT PROPER?

## STATEMENT OF FACTS

Those additional facts necessary for an understanding of the issues raised on this appeal will be included, together with appropriate record references, in the argument portion of this brief.

2

<u>ARGUMENT</u>

I

THE TRIAL JUDGE PROPERLY DENIED THE DEFENDANT'S MOTION FOR A NEW TRIAL WHICH WAS BASED UPON THE RECANTATION TESTIMONY OF GARY DAVIS.

The defendant argues that the trial judge erred in rejecting witness Gary Davis' recantation of his trial testimony and denying the defendant's motion for a new trial. The People disagree and submit that the trial judge did not abuse his discretion in denying the motion.

The defendant mischaracterizes the nature of the post-trial hearing conducted in this matter and thus incorrectly sets forth the standard of review which applies to this issue. In his brief, the defendant refers to the hearing at which the recantation was presented as a post-conviction proceeding. Citing <u>People v. Dotson</u>, 163 Ill.App.3d 419, 516 N.E.2d 718, 114 Ill. Dec. 563 (1st Dist. 1987), the defendant submits that the trial judge's assessment of the recantation testimony will not be overturned on review absent a showing of manifest error.  The <u>Dotson</u> court did address a recantation issue but did so in the context of reviewing a post-conviction claim which was filed pursuant to 725 ILCS 5/122-1 <u>et</u> <u>seq.</u>; the standard of manifest error is that which applies to statutory post-conviction claims.  516 N.E.2d at 720, 722.

3

However, in the case at bar the defendant did not raise this issue in a post-conviction petition filed pursuant to statute but rather raised this issue in a supplement to his motion for a new trial. (C. 143; R. 814-30, R. 833)  A motion for a new trial based upon the recantation of trial testimony is actually a motion for a new trial based upon newly discovered evidence.  As such, it is within the sound discretion of the trial judge whether or not to grant the motion for a new trial and the denial of the motion will not be disturbed upon review absent a showing of an abuse of discretion.  People v. Parsons, 284 Ill.App.3d 1049, 673 N.E.2d 347, 355-56, 220 Ill. Dec. 435 (1st Dist. 1996); People v. Lawson, 232 Ill.App.3d 284, 596 N.E.2d 1235, 1245-46, 173 Ill. Dec. 356 (4th Dist. 1992).

Recantation testimony is generally regarded as unreliable.  Lawson, 596 N.E.2d at 1245; Parsons, 673 N.E.2d at 355; People v. Worthen, 105 Ill.App.3d 386, 434 N.E.2d 423, 425-26, 61 Ill. Dec. 270 (1st Dist. 1982).  It is only in extraordinary and unusual cases that such testimony will be regarded as a sufficient ground to warrant a new trial. Parsons, 673 N.E.2d at 355.  Indeed, the determination of the credibility of the witness recanting his prior testimony lies within the discretion of the trial judge.  Lawson, 596 N.E.2d at 1245.  A new trial should be refused when the trial judge is not satisfied that the recantation testimony is true. Worthen, 434 N.E.2d at 425-26.

4

In the instant matter, the trial judge was not satisfied that the recantation testimony of Gary Davis was true. The record clearly supports this finding. Gary Davis first recanted his trial testimony in a letter which was written to the defendant which was subsequently attached to the motion for a new trial. (C. 143-46) In the letter, Davis indicated that he came forward to the police in order to obtain money for his drug habit and to negotiate a deal for some pending charges. He wrote that he lied at trial because he thought "they" would pay him $1500 which he needed to post bond in Arkansas. (C. 145) He also wrote that he was not "charging" the defendant for his recantation but he asked the defendant to send him a money order for $1500 to post bond. (C. 146) He indicated that only he, the defendant, and the defendant's attorney needed to know about the money. (C. 146)

At the hearing on the post-trial motion, Davis testified that he had been "given a break" with respect to being prosecuted as a habitual offender in exchange for his testimony against the defendant. (R. 819-20) He denied that he saw the defendant shoot the victim and stated that at trial he repeated what he had been told by others. (R. 819) On cross-examination, Davis admitted that two weeks prior to the hearing he informed the authorities in Arkansas that he had written the letter to obtain bond money and that he had testified truthfully at the defendant's trial. (R. 821-22) Counsel was appointed to represent Davis as the trial judge

5

was concerned that Davis' testimony may subject him to perjury charges.   The hearing was recessed for a week. (R. 825-30)

When the hearing resumed, the parties first discussed the appropriateness of Davis possibly asserting his Fifth Amendment privilege. (R. 835-39)  While waiting for Davis and his counsel to appear, the parties then discussed the law with respect to the motion for a new trial, though the trial judge cautioned that any rulings with respect to Davis' testimony would be premature. (R. 840, 839-77)  The judge indicated that he was not yet convinced that the recantation was truthful. (R. 865, 867)

When Davis resumed the witness stand, he testified that he was paid approximately $100 by Investigator Mulder of the Rock Island Police Department for the statement to the police which implicated the defendant. (R. 879, 883)  Davis insisted that he signed a receipt for the money. (R. 885)

Investigator Mulder then testified that he never paid Davis for his statement. (R. 891)  Davis' original statement to the police is included in the record. (WK. 1-6 3AC-EX-001) Further, earlier in the hearing the judge indicated that he had ruled at trial regarding the claim that Davis was offered a deal in exchange for his testimony. (R. 874)  At trial, the judge found that no such deal existed. (R. 670)

At the conclusion of the evidence, the judge denied the motion for a new trial as based upon this issue. (R. 897)  The judge discussed the recantation and the motivation for it at

6

length. (R. 895-96)   The judge stated that he was "not convinced the recantation testimony offered at this hearing, last week and today is true...." (R. 896)   The judge noted that Davis' trial testimony was consistent with his original statement and the testimony of Steven Fuhlman who saw the defendant fire the gun. (R. 896-97)   Earlier in his comments, the judge had noted that the alibi defense presented by the defendant was not airtight and was refuted. (R. 896)

The defendant's criticism of the judge's ruling mistakenly focuses upon the defendant's assessment of the significance of Davis' testimony to the People's case. Certainly it was proper for the trial judge to assess the credibility of the recantation by looking to the original statements given by Davis, Davis' trial testimony, and the consistent nature of such testimony with the remainder of the evidence. See, People v. Evans, 54 Ill.App.3d 883, 370 N.E.2d 284, 286, 12 Ill. Dec. 661 (3d Dist. 1977).   Indeed, it was the trial judge's responsibility to determine whether Davis' trial testimony was truthful and the recantation false. People v. Nash, 36 Ill.2d 275, 222 N.E.2d 473, 478-79 (1966).

The analysis offered by the defendant presents his view of the sufficiency of the evidence in the absence of Davis' testimony.   The defendant does not address the trial judge's finding that Davis' recantation was false.   The defendant's argument is irrelevant in light of this finding.   As demonstrated above, the trial judge had ample grounds to

7

reject the recantation.  It is evident that after the trial
Davis changed his story on several occasions and attempted to
use his proposed testimony to raise bond money.  Further,
Davis lied with respect to receiving a negotiated deal from
the People in exchange for his testimony and with respect to
receiving a payment from Investigator Mulder.

In sum, the People submit that the trial judge properly
rejected Gary Davis' recantation of his trial testimony and
properly denied the defendant's motion for a new trial.  The
defendant's conviction should be affirmed.

8

II

REVERSIBLE ERROR DID NOT OCCUR WHEN SEVERAL JURORS SAW
THE DEFENDANT SHACKLED AS HE WAS ESCORTED OUTSIDE OF THE
COURTROOM.

The defendant argues that the trial judge erred in
denying his motion for a mistrial which was based upon the
fact that several jurors saw the defendant shackled as he was
escorted from the courtroom through the courthouse.    The
People submit that such viewing resulted in harmless error and
that the trial judge properly denied the motion for a
mistrial.

Following closing arguments but prior to rendering a
verdict, three jurors were allowed to take a smoking break
outside of the courtroom near the back door of the courthouse.
(R. 788-89, 798)  The defendant was shackled and removed from
the courtroom and escorted through the courthouse by several
deputy sheriffs.    The defendant's attorney observed that as
the defendant was escorted off the elevator he walked in front
of the jurors in question. (R. 789)

When the matter was brought to the attention of the trial
judge, he decided to question each juror involved to determine
if viewing the defendant in this fashion had any effect on him
or her.    By the time that the judge decided to take this
course of action, the jury had reached a verdict but it was
not yet returned in court. (R. 795)  Each of the three jurors
stated that viewing the defendant shackled did not affect the

9

deliberation process. (R. 795-801)  It should be noted that the defendant's attorney and the prosecutor were both present during the questioning of each of the jurors and were allowed to ask questions of them.  The trial judge found that the verdict had not been influenced and denied the defendant's motion for a mistrial. (R. 801) The verdict was then returned in open court.

The People submit that the inadvertent viewing of the defendant by these jurors resulted in harmless error.  Indeed, the appellate court has stated that, while it is preferable that the jury not see the defendant in handcuffs and in the custody of the sheriff, the fact that jurors may briefly see a defendant in such a situation is not so inherently prejudicial so as to require a mistrial. People v. Hyche, 63 Ill.App.3d 575, 380 N.E.2d 373, 379, 20 Ill. Dec. 395 (5th Dist. 1978), aff'd, 77 Ill.2d 229, 396 N.E.2d 6, 32 Ill Dec. 893 (1979); People v. Jones, 88 Ill.App.3d 629, 410 N.E.2d 1122, 1125, 44 Ill. Dec. 30 (1st Dist. 1980). See also, People v. Foster, 80 Ill.App.3d 990, 400 N.E.2d 462, 467, 36 Ill. Dec. 42 (5th Dist. 1980); People v. Greene, 102 Ill.App.3d 933, 430 N.E.2d 23, 26, 58 Ill. Dec. 81 (1st Dist. 1981). In People v. Brabson, 54 Ill.App.3d 134, 369 N.E.2d 346, 348, 11 Ill. Dec. 892 (3d Dist. 1977), as they left the courtroom the jurors saw the defendant shackled and in the custody of a police officer.  This court viewed such exposure as "innocuous" and "inadvertent" and held that it was

10

insufficient to support a mistrial.  <u>Brabson</u>, 369 N.E.2d at 348.

Further, it should be noted that during the defendant's cross-examination of Steven Fuhlman the jury was informed that the defendant was in jail for this offense. (R. 444)[1]  The People submit that this testimony also negated the possible prejudicial effect that seeing the defendant shackled may have had on the jurors.  <u>See</u>, <u>People v. Dismuke</u>, 3 Ill.App.3d 553, 278 N.E.2d 152, 156 (2d Dist. 1972) (the fact that the jury may have seen the defendant held in a barred detention cell did not deprive him of a fair trial; the court noted that the jury had been informed that the defendant was incarcerated).

The defendant's reliance on <u>People v. Boose</u>, 33 Ill.App.3d 250, 337 N.E.2d 338 (3d Dist. 1975), <u>aff'd</u>, 66 Ill.2d 261, 362 N.E.2d 303, 5 Ill. Dec. 832 (1977), is misplaced.  <u>Boose</u> involved the possible prejudice which occurred when the defendant was shackled during trial.  In the instant matter, it is clear that the brief incident occurred outside of the courtroom.

In <u>People v. Walsh</u>, 80 Ill.App.3d 754, 400 N.E.2d 587, 597-98, 36 Ill. Dec. 167 (1st Dist. 1980), the court distinguished <u>Boose</u> and its progeny from the category of cases

---

[1]  The People note that an objection was sustained to this line of questioning when the defendant's attorney began to ask Fuhlman about the fact that the defendant turned himself in to the authorities. (R. 444)  However, the testimony that the defendant was in jail was not objected to. (R. 444)  Indeed, the next question posed by counsel referred to the defendant's incarceration. (R. 444)

11

involving the type of out-of-the-courtroom viewing which occurred in this matter.  The <u>Walsh</u> court observed that the majority of cases in this category have resulted in a finding that no prejudice occurred; the court stated that it is incumbent upon the defendant to make an affirmative showing of prejudice.  400 N.E.2d at 597-98.  The court also recognized that security precautions for the transport of the defendant are required. <u>Id</u>.

Here, the defendant has failed to establish what, if any, prejudice occurred.  The jurors knew he was in jail.  The jurors who observed him gave no indication that they were influenced by the shackles.  Indeed, in <u>People v. O'Toole</u>, 226 Ill.App.3d 974, 590 N.E.2d 950, 169 Ill. Dec. 31 (4th Dist. 1992), the court observed:

> ... Because television and the media regularly depict criminal defendants in handcuffs, a juror's viewing a defendant in handcuffs can no longer be regarded as having a shocking effect on a prospective juror's sensibilities.  [590 N.E.2d at 958.]

The Illinois Supreme Court has recognized that jurors are aware of the fundamental aspects of our criminal justice system.  <u>See</u>, <u>People v. Barney</u>, ___ Ill.2d ___, ___ N.E.2d ___, ___ Ill. Dec. ___ (No. 81389, filed March 20, 1997) (copy attached as appendix) (People may argue that a defendant's status as the accused may motivate him to testify falsely as

12

the argument does not tell the jury anything that they do not already know).

The defendant implies that the lack of a specific instruction to the jury which addressed their view of him should weigh against a finding of harmless error. Contrary to the defendant's argument, it certainly would have been possible to immediately instruct the jurors on this point; the defendant's attorney simply did not ask for such an instruction. This aspect of the argument should be deemed waived. See, People v. Bennett, 90 Ill.App.3d 64, 412 N.E.2d 1001, 1007, 45 Ill. Dec. 419 (5th Dist. 1980) (the judge is not obligated to instruct on an issue when the defendant fails to request an instruction).

However, such an instruction would have been unwise. As only three jurors saw the defendant, a specific instruction to the jury may have resulted in prejudicing the other jurors. Instructing the three jurors individually may also have resulted in prejudice. It would have been evident to the other members of the jury that the three possessed knowledge of which the others were not aware. It also may have highlighted the incident in the minds of the three jurors. The People note that the jury did receive the general instructions informing them of the presumption of innocence, informing them that they should consider only the evidence presented at trial, and instructing them that sympathy or prejudice should not influence the verdict. (R. 99, 106)

13

Finally, the defendant's reliance on <u>People v. Harris</u>, 123 Ill.2d 113, 526 N.E.2d 335, 122 Ill. Dec. 76 (1988), is misplaced. <u>Harris</u> involved an issue of improper communication with a juror; the juror in question had spoken with her sister and brother-in-law about the case. 526 N.E.2d at 342. There is no issue of improper communication here. As <u>Harris</u> is inapplicable in this matter, the defendant's suggestion that the burden is upon the People to establish that the error is harmless is incorrect. As noted in <u>Walsh</u>, the defendant must demonstrate the prejudice which occurred. 400 N.E.2d at 597-98.

In sum, the People submit that the viewing of the defendant by three jurors resulted in harmless error. The trial judge properly denied the motion for a mistrial and the defendant's conviction should be affirmed.

14

III

THE TRIAL JUDGE'S COMMENT TOWARD DEFENSE COUNSEL DID NOT RESULT IN REVERSIBLE ERROR.

The defendant argues that the trial judge improperly commented on the conduct of defense counsel which resulted in prejudice toward him by the jury. The People submit that any error which occurred was harmless.

During defense counsel's cross-examination of Steven Fuhlman with respect to the payment of Fuhlman's property taxes, an objection was raised by the prosecutor as to the collateral nature of the questioning. (R. 329)  The judge responded to the objection by stating "This is collateral. The Court, this is more than just, this is ridiculous. Cut it out." (R. 329)  Counsel asked for a clarification of the ruling and the jury was removed from the courtroom. (R. 329) This comment was the only comment of which the defendant complains which was made in the presence of the jury.

In his brief, the defendant focuses upon the effect which this comment may have had on the jury. He does not argue that the trial judge's rulings were prejudiced in any way against him. Therefore, the defendant's references to other allegedly improper comments by the trial judge toward defense counsel which occurred outside of the jury's presence are irrelevant.

During the hearing outside of the jury's presence, the trial judge did not recall using the term "ridiculous". (R. 349)  However, a transcript was ordered for the trial judge to

15

determine whether sanctions were warranted against counsel for
disobeying the orders of the court. (R. 349)  The transcript
later revealed that the judge had indeed used the term, and
the defendant moved for a mistrial. (R. 498)  The judge denied
the motion for a mistrial and stated that he would instruct
the jury to disregard the comment. (R. 499)  The judge then
stated to the jury:

> Okay, before we proceed any further,
> ladies and gentlemen of the jury, the
> Court wishes to give you an instruction
> at this time.   Yesterday, when we were
> doing some examination of some witnesses
> when there was some objection to issues
> that, whether they were collateral in
> nature or not, on the cross examination
> by Attorney Malvik, the Court in its
> phraseology used the words "this is
> ridiculous."
>
> I want to instruct the jury that I
> did not mean on any terms that I was
> ridiculing Mr. Malvik or applying that to
> Mr. Malvik to impugn his integrity or his
> ability to defend this case.   That was
> just a misuse of words.   What I was
> referring to was the issue of collateral
> matters.
>
> So I'm asking you if you concluded
> from that that the Court in any way was
> impugning Mr. Malvik's integrity, I'm
> asking you not to do so.   Just so the
> jury understands that. [R. 504]

The defendant argues that this remedial instruction was
insufficient to remove the taint of prejudice in the minds of
the jurors.  The People disagree.  Judicial comments amount to
reversible error only if the defendant can show that such
comments were a material factor in the conviction or that an

16

effect on the jury's verdict was the probable result. <u>People v. McKinney</u>, 260 Ill.App.3d 539, 631 N.E.2d 1281, 1291, 197 Ill. Dec. 822 (1st Dist. 1994).

Improper remarks by the judge do not always result in prejudice to the defendant; the Illinois Supreme Court has found that admonishing the jury with respect to comments has rendered any error harmless.   <u>See</u>, <u>People v. Peeples</u>, 155 Ill.2d 422, 616 N.E.2d 294, 315, 186 Ill. Dec. 341 (1993). Indeed, an evaluation of the comment must be made in light of all of the evidence and the context in which the comment was made. <u>People v. Anderson</u>, 262 Ill.App.3d 349, 633 N.E.2d 699, 706-07, 198 Ill. Dec. 858 (1st Dist. 1992). The instructions given by the trial judge are factors to consider by the reviewing court in an assessment of this issue. <u>Anderson</u>, 633 N.E.2d at 707.

In the instant matter, the defendant has failed to establish that the comment was a material factor in the conviction or that it probably affected the jury's verdict. In support of his claim, the defendant merely argues that the remedial instruction was not given to the jury in a timely fashion.   It is true that the instruction was given a day after the comment was made. However, the defendant fails to cite any cases in which it is held that the remedial instruction must be given contemporaneously with the alleged error.   The People submit that giving the instruction at the

17

end of the People's case did not detract from its intended result.

People v. Eckert, 194 Ill.App.3d 667, 551 N.E.2d 820, 141 Ill. Dec. 633 (5th Dist. 1990), and People v. Mays, 188 Ill.App.3d 974, 544 N.E.2d 1264, 136 Ill. Dec. 489 (5th Dist. 1989), are distinguishable from the case at bar. In Eckert, the court reversed the conviction based upon the cumulative effect of the trial judge's actions; the court noted that when considered in isolation some of the incidents may not have equalled reversible error. 551 N.E.2d at 824. As noted above, in this matter the defendant points to only one comment which occurred in the jury's presence. In Mays, reversible error was found due to the repeated expressions of hostility by the trial judge toward defense counsel; the judge heaved a sigh, made facial gestures in response to counsel's questions, and slammed a pencil on the bench. 544 N.E.2d at 1270, 1272. The defendant does not point to any conduct by this trial judge which can be considered similar to that of the judge in Mays. The People submit that the action of the trial judge in this matter is more akin to that in People v. Campbell, 232 Ill.App.3d 597, 597 N.E.2d 820, 824, 173 Ill. Dec. 846 (1st Dist. 1992), in which the trial judge's comment of "so what" was considered an isolated remark which did not deprive the defendant of a fair trial.

In sum, the People submit that the remark of the trial judge certainly did not result in reversible error. The

18

E-FILED
Tuesday, 26 September, 2006  01:52:48 PM
Clerk, U.S. District Court, ILCD

instruction given by the judge cured any potential prejudice.
Any error was harmless and the defendant's conviction should
be affirmed.

IV

THE TRIAL JUDGE PROPERLY ADMITTED A PHOTOGRAPH OF THE
CRIME SCENE WHICH WAS TAKEN JUST PRIOR TO TRIAL.

The defendant argues that the trial judge improperly
allowed the People to introduce into evidence a photograph of
the crime scene which was taken a few weeks prior to trial.
The People submit that proper foundation for the admission of
the photograph was established and that the trial judge did
not abuse his discretion in allowing it into evidence.

It is within the trial judge's discretion to allow a
photograph to be admitted into evidence. People v. Garcia, 95
Ill.App.3d 792, 420 N.E.2d 482, 488, 51 Ill. Dec. 68 (1st
Dist. 1981). For a photograph to be admissible, it must be a
clear and accurate representation of that which it is supposed
to portray. People v. Moore, 199 Ill.App.3d 747, 557 N.E.2d
537, 554, 145 Ill. Dec. 767 (1st Dist. 1990). The content of
the photograph must be relevant and verified as a true
representation. Moore, 557 N.E.2d at 554. The salient
inquiry is not when the photograph was taken, but whether it
is accurate. People v. Bryant, 202 Ill.App.3d 1057, 560
N.E.2d 955, 960, 148 Ill. Dec. 358 (1st Dist. 1990). Further,
a posed photograph is admissible if it portrays the physical
scene of the crime and is not used to advance a theory linking
the defendant to the crime. Bryant, 560 N.E.2d at 960-61.
Indeed, a flash-enhanced photograph has been found to be
properly admitted as it was verified as accurately portraying

20

the scene of the crime.  See, <u>People v. Oliver</u>, 265 Ill.App.3d
543, 637 N.E.2d 1173, 1182, 202 Ill. Dec. 437 (1st Dist.
1994).

The photograph in question is #1P and is contained in the
record on appeal. (3AC-EX-001)  The admissibility of the
photograph was the subject of an offer of proof which was made
at the start of the trial. (R. 132)  Steven Fuhlman testified
that he was working on his car which was parked in front of
his house located at 1419 5th Street, Rock Island, when he
observed the defendant shooting on the day of the murder. (R.
133-35)  The car was parked almost to the corner of 15th
Avenue and 5th Street. (R. 135)  Fuhlman was seated at the
driver's side front wheel of the car. (R. 135-36)

Several weeks prior to the trial in this matter, Fuhlman
accompanied the Rock Island Police to the intersection and
parked his car in the same location in which it was on the day
in question. (R. 136)  Fuhlman sat in front of the car and the
photograph at issue was taken. (R. 136)  Fuhlman testified
that the photograph substantially and accurately portrayed the
view which he had of the Arsenal Courts at the time of the
shooting. (R. 137)  He stated that it fairly and accurately
represented the angle and viewpoint which he had into the
Arsenal Courts and fairly and accurately represented the
distance between himself and the park that day. (R. 137)

Fuhlman acknowledged that he did not know precisely where
the photographer was located as he stood behind him. (R. 138)

21

Fuhlman testified that with respect to the depiction of the Arsenal Courts in the photograph there was nothing in the photo which he could not see that day. (R. 143)   Fuhlman stated that the seasonal changes did not change the accuracy of the photograph. (R. 145)   The condition of the bushes on his property did not change his viewpoint either. (R. 148) The judge ruled that the photograph would be admissible at trial. (R. 155)

At trial, the proper foundation was presented for the admission of the photograph into evidence.   Fuhlman again testified that he was seated at the corner working on his car when the shooting occurred. (R. 293)  He identified People's Exhibit #1P as a picture of the location in which he was that day. (R. 294)   He stated again that the photo substantially portrayed the view of the Arsenal Courts which he had that day. (R. 295)

On cross-examination of Fuhlman, it was established that the photograph was taken a few weeks prior to trial. (R. 299) Fuhlman testified that the corner of the building at which he saw the defendant stand and shoot the gun was depicted in the photograph but the roadway was not. (R. 315)   The park area with benches in which he observed people is depicted in the photograph. (R. 315)  Fuhlman acknowledged that the angle at which the photograph was taken was not the exact angle at which he observed the defendant. (R. 322)

22

The relevancy and accuracy of the photograph was
established through Fuhlman's testimony, and it was properly
admitted into evidence. While it is true that the photograph
was taken some time after the murder, Fuhlman testified that
it depicted the area which he saw on that day. The photograph
was relevant because it showed the jury the physical area in
the Arsenal Courts where the shooting occurred. Further, the
photograph showed where Fuhlman was located when he saw the
defendant. Moreover, the defendant had the opportunity to
cross-examine Fuhlman regarding the photograph. See, Bryant,
560 N.E.2d at 960-61.

The defendant's criticisms of the foundation which was
established are unwarranted. Significantly, his argument
refers to both the testimony set forth at the offer of proof
and the trial testimony without distinguishing between the
two. For instance, the testimony regarding the shrubbery was
not given at trial, despite the defendant's opportunity to
cross-examine Fuhlman on the subject. The People submit that
the defendant cannot rely on such information to suggest that
the photograph was misleading when he failed to set forth the
information to the jury. Further, regardless of the
criticism, Fuhlman testified at the offer of proof that the
condition of the bushes would not change the view. (R. 148)
It is evident from the photograph itself that this is true.
The Arsenal Courts area is across the street and to the left

of Fuhlman and the bushes are several feet in front of him and do not encumber the view across the street.

Fuhlman did testify at trial that his visual angle was slightly different than that depicted in the photograph, but the defendant fails to adequately explain why this factor renders the picture misleading. The defendant argues that through the photograph the jury was led to believe that Fuhlman had an unencumbered view of the building where the shots were fired. However, the defendant fails to note what encumbrances to Fuhlman's view existed, despite the fact that he had every opportunity to develop support for this point during his cross-examination of Fuhlman. Further, the jury knew that the photograph was not taken from Fuhlman's precise vantage point. For instance, Fuhlman explained to the jury that the telephone pole in the picture did not block his view. (R. 316)

Also, Fuhlman stated that the corner of the building from which the shots were fired was shown in the photograph but it did not depict the roadway. (R. 315) While the defendant argues that Fuhlman testified that the defendant fired the gun from the corner of the building closest to the alley, the north corner, Fuhlman actually testified that he saw the defendant run through the park area depicted in the photograph and run past the corner of the building. (R. 295, 298, 315) The defendant ran two steps past the corner of the building straight to the east. (R. 298) He then ran back west through

24

the Arsenal Courts. (R. 296)  There is no indication that
Fuhlman testified that the shots were fired near the north
corner of the building as the defendant suggests.  Even so,
the jury was aware that the entire face of the building was
not shown in the photograph.

The People submit that armed with the information brought
out during trial the jury was able to adequately assess what
weight to give the photograph.  The defendant's argument
should be rejected.

People v. Rolon, 71 Ill.App.3d 746, 390 N.E.2d 107, 28
Ill. Dec. 125 (1st Dist. 1979), is factually distinguishable.
In Rolon, the court found that the photographs offered by the
defendant were properly excluded from evidence because they
would have misled or confused the jury. 390 N.E.2d at 111.
The witnesses testified that the photographs did not
accurately portray the scene on the night of the crime.
Further, one photograph was shaded and thus misleading.
Rolon, 390 N.E.2d at 111.  Notably, the Rolon court observed
that a change in conditions would not necessarily render a
photograph inadmissible if the changes could be explained in
such a way that the jury would not be misled.  Id.  Here,
Fuhlman testified to the accuracy of the photograph and
explained any discrepancies in an adequate fashion so that the
jury could properly assess the picture.

People v. Jones, 114 Ill.App.3d 576, 449 N.E.2d 547, 548,
70 Ill. Dec. 418 (1st Dist. 1983), is also distinguishable.

25

In <u>Jones</u>, the photographs in question were offered as a representation of the viewpoint of a witness. However, the witness testified that the photograph did not represent the scene as it appeared that day and there were other factors which rendered the photograph misleading. <u>Jones</u>, 449 N.E.2d at 548. Again, here Fuhlman vouched for the accuracy of the photograph and explained any distinctions.

<u>People v. Williams</u>, 71 Ill.App.3d 547, 390 N.E.2d 32, 28 Ill. Dec. 50 (1st Dist. 1979), is also distinguishable. In <u>Williams</u>, the defendant failed to establish that the photographs were a correct representation of the scene and the trial judge properly refused to admit them into evidence. 560 N.E.2d at 36. This is not true in the instant matter.

In sum, the People submit that the trial judge did not abuse his discretion in admitting People's Exhibit #1P into evidence as a proper foundation was established showing its relevancy and accuracy. The defendant's claim of prejudice is groundless and his conviction should be affirmed.

V

THE TRIAL JUDGE PROPERLY RESTRICTED THE DEFENDANT'S CROSS-EXAMINATION OF STEVEN FUHLMAN AND PROPERLY REFUSED TO ALLOW THE DEFENDANT TO IMPEACH FUHLMAN WITH AN ALLEGED PRIOR INCONSISTENT STATEMENT.

The defendant argues that the trial judge improperly restricted his attempts to cross-examine Steven Fuhlman as to bias stemming from Fuhlman's desire to move from his neighborhood. The defendant was allowed some inquiry into the subject. The People submit that the trial judge properly restricted the inquiry as certain allegations of bias were remote and uncertain. The defendant also argues that the trial judge erroneously refused to allow him to introduce into evidence an alleged prior inconsistent statement to impeach Fuhlman which was offered pursuant to the past recollection recorded exception to the hearsay rule. The People submit that the defendant failed to lay the proper foundation for the admission of the statement and that it was properly excluded from the evidence.

The People first discuss the inquiry regarding bias. The defendant has the constitutional right to confront witnesses against him, and thus he has the right to cross-examine a witness for the purpose of showing a witness' interest, bias or motive to testify falsely. <u>People v. Britt</u>, 265 Ill.App.3d 129, 638 N.E.2d 282, 294, 202 Ill. Dec. 636 (4th Dist. 1994). However, the defendant is not entitled to cross-examine "in

27

whatever way, and to whatever extent, the defense might wish."
<u>Britt</u>, 638 N.E.2d at 294.

The scope of cross-examination lies within the discretion
of the trial judge who has latitude to impose reasonable
limits on the inquiry based upon concerns of harassment,
prejudice, confusion of the issues, or interrogation that is
repetitive or irrelevant. <u>People v. Fierer</u>, 260 Ill.App.3d
136, 631 N.E.2d 1214, 1223, 197 Ill. Dec. 755 (3d Dist. 1994).
Proposed cross-examination regarding bias must be direct and
positive and not remote or uncertain. <u>People v. Dowdy</u>, 140
Ill.App.3d 631, 488 N.E.2d 1326, 1329, 94 Ill. Dec. 933 (2d
Dist. 1986); <u>People v. Silas</u>, 185 Ill.App.3d 920, 541 N.E.2d
1239, 1246, 133 Ill. Dec. 801 (1st Dist. 1989).

To prevail on a claim of error on this issue, a defendant
must show that the trial judge abused his discretion resulting
in manifest prejudice to the defendant. <u>Britt</u>, 638 N.E.2d at
294. The focus of this issue is whether the jury was made
aware of sufficient facts to assess the credibility of the
witness. <u>Id</u>. Therefore, in analyzing the claim a reviewing
court must look to the testimony which was allowed rather than
that which was prohibited. <u>Id</u>.

In the instant matter, the defendant theorizes that
Fuhlman had a motive to testify falsely because he lived in a
gang-infested neighborhood, was behind on his property taxes,
and wanted to move his family to a safer area; the defendant
argues that Fuhlman was somehow attempting to seek assistance

28

from the police and prosecution in moving by testifying in a favorable fashion at the defendant's trial.

The defendant fails to articulate the specific information about which he was not allowed to inquire at trial. The record reveals that he was able to establish through cross-examination that Fuhlman moved from his home approximately a month after the murder. (R. 327) Fuhlman testified that he was given some financial assistance from the People to assist him in moving. (R. 327) Specifically, the People provided a moving truck for Fuhlman. (R. 328) The People also paid for a motel room for Fuhlman. (R. 328) Fuhlman testified that he did not intend to move back to his home as he felt it was unsafe. (R. 328) However, Fuhlman denied that he was looking for a reason to move from the Arsenal Courts area. (R. 328)

Fuhlman acknowledged that he was behind on his taxes. (R. 329) Defense counsel then asked Fuhlman if he was two years behind on his taxes. (R. 329) It was then that the prosecutor objected to the cross-examination as collateral and the jury was excused from the courtroom. (R. 329) The judge ruled that the inquiry regarding the delinquent taxes was collateral and did not establish bias. (R. 338) When Fuhlman resumed the witness stand he acknowledged that there were things about his neighborhood that he did not like. (R. 415) He stated that he was afraid of gang activity in the Arsenal Courts. (R. 415) He stated that he did not allow his children to play outside.

29

(R. 416)  He stated that he did not like the drug sales which occurred in the area. (R. 416)  He acknowledged that there was a lot of violence and shooting in the area and that it was not a nice place to live. (R. 416)    He admitted he had no intention of moving back to the area. (R. 416)

The only subject about which the defendant was precluded from inquiring was the length of time which Fuhlman was delinquent on his property taxes.  The delinquency itself was established before the jury.

To rebut the inference that Fuhlman testified falsely to obtain financial assistance, the People were allowed to introduce into evidence a protective custody order which was issued by the judge ordering the Rock Island Police Department and the State's Attorney's Office to relocate Steven Fuhlman and his family should they accept such assistance. (R. 434) The order was issued after Fuhlman had cooperated with the police and after Fuhlman's home had been shot at by unknown individuals. (R. 432-33)  Fuhlman testified that he did not approach the authorities to request the order. (R. 435)  This court should note that the order was issued at the behest of the trial judge. (R. 369)    Fuhlman testified that the financial assistance which he received did not include the purchase of a new home or the payment of his property taxes. (R. 431)  In fact, Fuhlman testified that he had made personal arrangements to purchase a new home in another location. (R.

431)  Fuhlman also testified that his wife had lost her job
due to the relocation. (R. 441)

The People were also allowed to present testimony
regarding Fuhlman's original statement to the police which was
offered as a prior consistent statement to rebut the inference
of fabrication. (R. 435-38)  The statement was given right
after the murder and prior to the receipt or offer of
financial assistance.

In light of the circumstances under which the protective
order was entered, any suggested motive for Fuhlman to
cooperate with the prosecution to facilitate a move from the
neighborhood is highly remote and uncertain and potentially
misleading to the jury.  Indeed, to follow the logic of the
defendant's argument, one would have to conclude that Fuhlman
cooperated with the police and hoped that his cooperation
would spark some type of retaliation from the defendant's
associates which would lead the police to relocate him.  This
leap of logic is nonsensical and based upon pure speculation.

However, despite the tangential nature of the cross-
examination, the defendant was allowed to develop the theory
before the jury.  The People submit that the trial judge
properly limited the defendant's cross-examination of Fuhlman
with respect to the tax issue.  The length of the tax
delinquency was indeed collateral.

The defendant's reliance on People v. Triplett, 108
Ill.2d 463, 485 N.E.2d 9, 92 Ill. Dec. 454 (1985), is

31

misplaced and the quote which he has chosen from the case is misleading.    In <u>Triplett</u>, the court discussed the proposed cross-examination regarding promises of leniency with respect to criminal matters in which the witness was involved.    483 N.E.2d at 15.    The court did observe that inquiry regarding possible promises of leniency was permissible even if the promise or expectation of leniency to the witness was factual or imaginary in the mind of the witness.    <u>See also</u>, <u>People v. Freeman</u>, 100 Ill.App.3d 478, 426 N.E.2d 1220, 1222, 55 Ill. Dec. 846 (2d Dist. 1981).    The court did not hold that any cross-examination into bias is proper even if it is based upon a theory of the defense which is purely speculative.

The defendant also wrongly criticizes that the prior consistent statement was improperly admitted.    The proposed "bias" which the defendant alleges existed prior to Fuhlman's statement to the police was his alleged desire to move from the neighborhood.    However, Fuhlman testified that he was not looking for a reason to move prior to this incident and the subsequent shooting of his home. (R. 328)    Moreover, the bias which the defendant sought to infer was the financial aid which was not offered until well after the statement was made. As noted above, it requires a leap of logic to move from a dislike of one's neighborhood to implicating a defendant in the hope of the remote possibility that moving arrangements will be made.

32

The defendant next argues that the trial judge improperly refused to allow him to impeach Fuhlman's testimony that he was located near the intersection of 15th Avenue and 5th Street when this incident occurred.    Fuhlman testified that he did not tell Officer Nenninger of the Rock Island Police Department that he was located 50 feet from 5th Street when he saw the defendant.    (R. 311)    The defendant attempted to introduce Nenninger's police report as impeachment evidence pursuant to the past recollection recorded exception to the hearsay rule to establish that Fuhlman had made such a statement, and the judge refused to allow him to do so.

Police reports may be introduced as impeachment evidence pursuant to the past-recollection-recorded exception to the hearsay rule.    People v. Andrews, 101 Ill.App.3d 808, 428 N.E.2d 1048, 1050, 57 Ill. Dec. 368 (1st Dist. 1981).    There are four requirements which must be met before evidence may be introduced pursuant to this exception.    First, the witness must have firsthand knowledge of the event.    Second, the written statement must be an original document made near the time of the event and while the witness has a clear and accurate memory of the event.    Third, the witness must lack a present recollection of the event.    Fourth, the witness must vouch for the accuracy of the written statement.    Andrews, 428 N.E.2d at 1050.

Here, the defendant failed to meet the third and fourth requirements of admissibility.    Officer Nenninger testified

33

that he had a present recollection of the discussion with Fuhlman.  Nenninger recalled that Fuhlman spoke of his location during the shooting. (R. 509)  Nenninger also recalled that Fuhlman mentioned the distance of 50 feet. (R. 510)  Nenninger did not recall if Fuhlman stated that the 50 feet was his distance from 5th Street. (R. 510)

Nenninger also could not vouch for the accuracy of the statement which was allegedly attributable to Fuhlman in the report.  The defendant attempted to introduce the statement in the report as one which was directly attributable to Fuhlman.  However, Nenninger stated that the report did not reflect the direct statements of Fuhlman. (R. 512)  Nenninger wrote his notes from which the report was prepared while listening to portions of Fuhlman's conversation with another officer; Nenninger did not listen to the entirety of the conversation. (R. 510)  Further, Nenninger stated that he could not state that the notation in his report was recorded in the proper context in which it was said. (R. 512)  As the defendant failed to establish that Nenninger's record of the conversation with Fuhlman accurately recorded Fuhlman's statements, his attempt to introduce the statement as impeachment of Fuhlman was properly refused.

Further, the People submit that the statement in the police report would not have constituted proper impeachment even if it could have been admitted as a hearsay exception. The statement in question in the report is not directly

34

attributed to Fuhlman. (WK. 6; 3AC-EX-001)   Therefore, the
defendant could not have offered it as an inconsistent
statement.

In sum, the People submit that the trial judge properly
limited the defendant's cross-examination of Fuhlman and
properly refused to allow the defendant to introduce the
alleged prior inconsistent statement into evidence.   The
defendant's conviction should be affirmed.

VI

THE PROSECUTOR'S CLOSING ARGUMENT WAS PROPER.

The defendant submits that the prosecutor's closing remarks constituted reversible error. The People disagree.

The defendant first challenges the prosecutor's comments with respect to the defendant's statements to the police shortly after the murder. The defendant argues that the prosecutor attempted to comment on the defendant's failure to testify. The defendant failed to object to these comments and, despite the inclusion of this issue in his post-trial motion, the issue is waived. People v. Enoch, 122 Ill.2d 176, 522 N.E.2d 1124, 1139, 119 Ill. Dec. 265 (1988).

Should this court address the substance of this claim, the People submit that no error occurred. The defendant requested and received instructions pertaining to second degree murder based upon the unreasonable belief in self-defense. (R. 728, C. 123) The defendant's attorney argued to the jury that a second degree murder verdict was a viable option. (R. 763-70)

The comments of which the defendant complains occurred in the prosecutor's rebuttal argument. The People first submit that the prosecutor's remarks regarding the defendant's state of mind and his aggressor status were invited comment in response to the second degree murder argument. People v. Johnson, 254 Ill.App.3d 74, 626 N.E.2d 347, 354, 193 Ill. Dec. 314 (2d Dist. 1993).

36

Further, the People submit that the remarks were not improper and that the prosecutor did not comment on the defendant's failure to testify. The defendant's statement to the police in which he denied being present was presented to the jury. (R. 209)  It is not error for the prosecutor to comment that the defendant's statement to the police does not support his theory at trial. Further, in neither comment did the prosecutor refer to the defendant's failure to take the witness stand; it is clear that the prosecutor had no intention to do so. People v. Tate, 156 Ill.App.3d 950, 509 N.E.2d 801, 109 Ill. Dec. 140 (3d Dist. 1987) (court must look to prosecutor's intent when addressing this issue).  The defendant's argument fails.

The second issue which the defendant raises pertains to the prosecutor's allegedly improper argument with respect to the law on self-defense. The defendant fails to articulate in what manner the prosecutor misconstrued the law during his argument.  Pursuant to Supreme Court Rule 341(e)(7), this issue should be deemed waived for the defendant's failure to adequately set forth a rationale in support of his argument. People v. David, 141 Ill.App.3d 243, 489 N.E.2d 1124, 1137, 95 Ill. Dec. 396 (2d Dist. 1986).  Though the defendant cites to People v. Estes, 127 Ill.App.3d 642, 469 N.E.2d 275, 82 Ill. Dec. 741 (3d Dist. 1984), he makes no attempt to compare the two matters.  The People note that in Estes the specific manner in which the arguments were incorrect was discussed by

37

this court, whereas here the defendant presumes that this court will create an argument for him. Further, the People submit that the defendant's suggestion that any argument as to self-defense was improper is ludicrous as the defendant himself raised the issue at trial.

Finally, the defendant's argument that the prosecutor expressed his personal belief to the jury should fail. In neither comment of which the defendant complains did the prosecutor specifically refer to his personal belief. In the first comment, the prosecutor suggested that from the evidence which he heard presented no one could conclude that the defendant was not at the murder scene. (R. 736) Following an objection from defense counsel, the prosecutor specifically stressed that his argument was "based on the evidence." (R. 736)

The second comment to which the defendant refers drew no objection, and thus any issue based upon it is waived. Enoch, 522 N.E.2d at 1139. It is obvious why there was no objection; the prosecutor stated, "And, you have some evidence that that weapon may have been fired, weapon in the hand of the victim may have been fired tow [sic] days earlier." There is no conceivable argument to suggest that the prosecutor was stating his personal belief in this statement.

The People also direct this court to People v. Pope, 284 Ill.App.3d 695, 672 N.E.2d 1321, 1329, 220 Ill. Dec. 309 (4th Dist. 1996), in which the court rejected an argument that a

38

prosecutor expressed his personal belief which was based upon an inference of such conduct. The court stated:

> ... [W]e hold that for a prosecutor's closing argument to be improper, he must explicitly state that he is asserting his personal views, stating for example, "this is my personal view." [Pope, 672 N.E.2d at 1329.]

The People submit that the approach of the Pope court should be adopted by this court, as it sets forth a sensible guideline for addressing an issue which is often frivolously raised by defendants. Finally, People v. Roach, 213 Ill.App.3d 119, 571 N.E.2d 515, 156 Ill. Dec. 731 (3d Dist. 1991), is not applicable to the instant matter. In Roach, this court reversed the defendant's conviction based upon the cumulative effect of numerous expressions of personal belief by the prosecutor. Such a situation is not the case in the matter at bar.

In sum, the People submit that the prosecutor's closing arguments were proper. The defendant's efforts to point to reversible error should fail. The defendant's conviction should be affirmed.

39

## CONCLUSION

For the foregoing reasons, the People urge that this court affirm the defendant's conviction and sentence.

In addition, the People move for fees of $50, plus $25 if oral argument is held. 55 ILCS 5/4-2002(a) (West 1994); <u>People v. Nicholls</u>, 71 Ill.2d 166, 374 N.E.2d 194, 15 Ill. Dec. 759 (1978); <u>People v. Keagbine</u>, 77 Ill.App.3d 1039, 396 N.E.2d 1341, 33 Ill. Dec. 617 (5th Dist. 1979).

Respectfully submitted,

Marshall E. Douglas
State's Attorney
Rock Island County
Rock Island, Illinois   61201
(309) 786-4451

John X. Breslin
Deputy Director
Domenica Osterberger
Staff Attorney
State's Attorneys
  Appellate Prosecutor
628 Columbus Street, Suite 300
Ottawa, Illinois 61350
(815) 434-7010

COUNSEL FOR PLAINTIFF-APPELLEE

JXBDAOlf040897
HARDDISK

40

APPENDIX

SUBJECTS COVERED)  81389
TOR'S  COMMENTS  ON  DEFENDANT'S
· IN  OUTCOME  OF  TRIAL—UNLAWFUL
ON  OF A  CONTROLLED  SUBSTANCE—
estified at his jury trial, arguing that his possession
nowing one. The prosecutor's statement, in closing
nat defendant had an interest or bias in being found
as not reversible error.

**FILED BY ILLINOIS SUPREME COURT**     Mar. Term. 1997
——— Ill. 2d ———.                                       Filed 03/20/97
                        *Notice*
Pending expiration of the Rehearing Period and publication in the
Official Advance Sheets, this opinion is subject to changes and
corrections.
A digest of this and all other opinions filed on this date will appear
in the next available Official Advance Sheet.
**FOR SLIP OPINION SERVICE CONTACT:**
Holder Publishing Corp., P.O. Box 3366, Bloomington IL 61701
Phone: (309) 828-7533   Fax: (309) 827-8677

Docket No. 81389–Agenda 5–January 1997.
THE PEOPLE OF THE STATE OF ILLINOIS. Appellee. v.
GEORGE BARNEY. Appellant.

MAR 21 1997
SAAP
THIRD DISTRICT

JUSTICE HARRISON delivered the opinion of the court:
The issue in this case is whether a criminal defendant who
has testified on his own behalf is entitled to a new trial because
the prosecutor told the jury during closing argument that the
defendant had an interest or bias in being found not guilty.
Adhering to its recent decision in *People v. Armstrong*. 275 Ill.
App. 3d 503 (1995). the Fourth District of the Appellate Court
held that such remarks did not constitute reversible error.
reasoning that the State is entitled to comment on the bias or
prejudice of the defendant. just as it may with any other witness.
No. 4–94–0850 (unpublished order under Supreme Court Rule
23).

The appellate court's position has been followed by the
First Division of the First District of the Appellate Court. which
held that argument by the prosecutor "that asks the jury to
consider a defendant's interest in the outcome of the case in
evaluating his credibility is proper." *People v. Falconer*. 282 Ill.
App. 3d 785, 790 (1996). By contrast. the Third District of the
Appellate Court (*People v. Walton*. 246 Ill. App. 3d 552. 555
(1993); *People v. Crowder*, 239 Ill. App. 3d 1027. 1030-31
(1993); *People v. Ellis*, 233 Ill. App. 3d 508. 511 (1992); *People
v. Watts*, 225 Ill. App. 3d 604. 606-07 (1992)) and the Second
Division of the First District of the Appellate Court (*People v.
Cross*, 272 Ill. App. 3d 354. 364 (1995)) have taken the position
that such comments constitute reversible error because they
imply that a defendant is presumed to lie simply because of his
status as a defendant and diminish his fundamental right to the
presumption of innocence. We granted defendant's petition for
leave to appeal (155 Ill. 2d R. 315) to resolve this conflict
among the districts. and for the reasons that follow. we affirm.

The facts pertinent to the case are straightforward.
Defendant was searched by police following his arrest for
driving without a license. During the course of the search. police
found what turned out to be cocaine in one of defendant's coat

pockets. Based on that discovery, defendant was charged with unlawful possession of a controlled substance (720 ILCS 570/402(c) (West 1992)) and unlawful possession of a controlled substance with intent to deliver (720 ILCS 570/401(d) (West 1992)).

Defendant was given a jury trial on the charge of unlawful possession. At trial, defendant did not deny that there was cocaine in his coat pockets. His defense was that he should not be found guilty because the law requires that the possession be knowing (720 ILCS 570/402 (West 1992)) and that element was not present here. According to defendant, the coat was not his—it belonged to his mother—and he had no idea that there were illegal drugs in the pockets at the time of his arrest.

Defendant presented various witnesses to substantiate that the coat was, in fact, his mother's and not his. The most significant testimony came from defendant himself, who told the jury that he owned no coat of his own, that he usually wears one of his brother's coats, that this coat was just lying around the house, that although the coat belonged to his mother she was no longer staying at the house, that he had worn the coat occasionally, that other people had worn the coat as well, and that he had not known that small plastic bags containing the cocaine were located in the pockets.

At the close of the evidence, an instructions conference was held during which the court indicated its intention to use Illinois Pattern Jury Instructions, Criminal, No. 1.02 (3d ed. 1992), a standard instruction given to the jury in nearly every criminal case. The court used the version of the instruction applicable where, as here, a defendant has testified. The instruction provided:

"Only you are the judges of the believability of the witnesses and of the weight to be given to the testimony of each of them. In considering the testimony of any witness, you may take into account his ability and opportunity to observe, his memory, his manner while testifying, any interest, bias or prejudice he may have, and the reasonableness of his testimony considered in the light of all the evidence in the case.

You should judge the testimony of the defendant in

-2-

the same manner as you judge the testimony of any other witness."

In contemplation of this instruction, the prosecutor addressed the issue of defendant's bias during closing arguments. He stated:

"Obviously the defendant has an interest or bias here, and that interest or bias here is that, you know, he wants to be found not guilty."

This remark drew an unsuccessful objection and motion for mistrial, and it is the basis for this appeal.

Defendant was ultimately found guilty and sentenced to 2½ years' probation. Pursuant to an agreement with the prosecutor, he subsequently pleaded guilty to the companion charge of unlawful possession with intent to deliver and received the identical sentence, 2½ years' probation, to be served concurrently.

Defendant has never attempted to withdraw his guilty plea for the offense of unlawful possession with intent to deliver, but he did file a post-trial motion with respect to his conviction on the unlawful possession charge. That motion contended, *inter alia*, that the prosecution should not have been permitted to make the argument that defendant was biased because he had an interest in being acquitted.

Defendant's post-trial motion was denied. The appellate court subsequently affirmed in an unpublished order under Supreme Court Rule 23, invoking its recent decision in *People v. Armstrong*, 275 Ill. App. 3d 503 (1995), to hold that the prosecutor's remarks were not improper. This appeal followed.

In assailing the judgment of the appellate court, defendant contends that the prosecutor's remarks were improper and that he should be granted a new trial because the challenged remarks contravened his presumption of innocence. This argument was previously considered and rejected by the Fourth District in *People v. Armstrong*, 275 Ill. App. 3d 503 (1995), and by the First Division of the First District of the Appellate Court in *People v. Falconer*, 282 Ill. App. 3d 785, 790 (1996). Although a contrary position has been taken by judges in the Third District of the Appellate Court (see *People v. Walton*, 246 Ill.

-3-

App. 3d 552. 555 (1993); *People v. Crowder*, 239 Ill. App. 3d
1027. 1030-31 (1993); *People v. Ellis*, 233 Ill. App. 3d 508. 511
(1992); *People v. Watts*, 225 Ill. App. 3d 604. 606-07 (1992))
and the Second Division of the First District of the Appellate
Court (see *People v. Cross*, 272 Ill. App. 3d 354. 364 (1995)),
we cannot agree with the reasoning in this second line of cases.

Where. as here. a prosecutor suggests to the members of the
jury that a defendant's testimony is biased because he has an
interest in the outcome of the case. the prosecutor is not telling
them anything they do not know and are not already thinking.
The notion that the possibility of conviction may color a
defendant's testimony is so basic. so rooted in common
experience and human nature. that it would be taken into
account by the jurors whether the prosecutor mentioned it or
not. When the prosecution makes the point during closing
argument. it is merely stating the obvious. The complexion of
the case is unchanged.

Defendant contends that a prosecutor's reference to an
accused's interest in acquittal is nevertheless improper because
of an overriding consideration. the presumption of innocence.
We note. however. that assailing a defendant's testimony by
pointing out his interest in being acquitted no more erodes the
presumption of innocence than any other attempt by the State to
prove its case and refute the evidence presented by the defense.
The presumption of innocence remains. Arguing bias is merely
one means for the State to try to rebut that presumption.

When the defendant contends that the State should not be
allowed to argue that he is biased because he has an interest in
avoiding conviction. what he is really suggesting is that his
testimony should be cloaked with a presumption of veracity. No
such presumption exists. As Illinois Pattern Jury Instructions.
Criminal. No. 1.02 (3d ed. 1992). recognizes. the testimony of
a criminal defendant is entitled no greater deference than the
testimony of any other witness. This court made that clear
nearly 40 years ago when it expressly held:

> "When a defendant elects to testify in his own behalf.
> his credibility is to be tested by the usual rules
> applicable to other witnesses. In determining the
> credibility of a witness. including a defendant. the jury

-4-

may take into consideration, among other things, the probability or improbability of the truth of his statements in the light of human experience. [Citations.] The jury are not entitled to disregard the accused's testimony merely because he is the defendant in the case, but it may consider his interest in the result of the trial in weighing his testimony." *People v. Malmenato*, 14 Ill. 2d 52, 59 (1958).

These principles remain the law in Illinois, and they are dispositive of this appeal. Because the jury was entitled to consider the defendant's interest in the result of the trial in weighing his testimony, the prosecutor's statement that defendant had an interest or bias in being found not guilty was not reversible error.

For the foregoing reasons, the judgment of the appellate court is affirmed.

*Affirmed.*

E-FILED
Tuesday, 26 September, 2006 01:53:11 PM
Clerk, U.S. District Court, ILCD



RECEIVED

MAY 1 1997

THIRD DISTRICT
APPELLATE COURT

No. 3-95-0195

FILE COPY

# IN THE APPELLATE COURT OF ILLINOIS

## THIRD JUDICIAL DISTRICT

---

PEOPLE OF THE STATE OF ILLINOIS,

        Plaintiff-Appellee,

-vs-

DAVID ALLEN GREER,

        Defendant-Appellant.

Appeal from the Circuit Court
of the 14th Judicial Circuit,
Rock Island County, Illinois
No. 94-CF-649

FILED

APR. 29 1997

THIRD DISTRICT
APPELLATE COURT CLERK

Honorable
James Teros
Presiding Judge

---

## REPLY BRIEF AND ARGUMENT

## FOR

## DEFENDANT-APPELLANT

JOHN WOOD
Panel Attorney Defender
Office of the State
Appellate Defender
Third Judicial District

6415 N. Tammarack
Peoria, Illinois 61615
(309) 693-2846

COUNSEL FOR APPELLANT

EXHIBIT C

## POINTS AND AUTHORITIES

I. The trial court committed reversible error by refusing to accept the recanted testimony of State witness Gary Davis, whose testimony at trial was pivotal to the jury finding defendant guilty of first degree murder.

**People v. Miller,** 79 Ill. 2d 454, 404 N.E.2d 199 (1980)................................................. 1

**People v. Parsons,** __ Ill. App. 3d __, 673 N.E.2d 347 (1st Dist.1996)..........................................................................................................................1

II. The trial court committed reversible error by denying defendant's motion for a mistrial after it was disclosed that at least three jurors had observed defendant while handcuffed and shackled immediately before deliberating on a verdict.

**People v. Boose,** 33 Ill. App. 3d 250, 337 N.E.2d 338 (3rd Dist. 1975) (affirmed, 66 Ill. 2d 261, 362 N.E.2d 303 (1977).........................................................................3

III. Defendant was denied his right to a fair trial where the trial court's misconduct toward defense counsel affected the verdict.

**People v. Campbell,** 232 Ill. App. 3d 597, 597 N.E.2d 820 (1st Dist. 1992)............................................................................................................................4

IV. The trial court abused its discretion by admitting into evidence a posed photograph of the purported crime scene where it was established that it did not accurately depict the actual crime scene as allegedly viewed by the State's purported eyewitness Steve Fuhlman.

**People v. Jones,** 114 Ill. App. 3d 576, 449 N.E.2d 547 (1983).....................................5

**People v. Williams,** 71 Ill. App. 3d 547, 390 N.E.2d 32 (1st. Dist. 1979).....................5

V. The trial court abused its discretion by preventing defense counsel from effectively cross-examining alleged State eyewitness Steve Fuhlman by A) refusing to allow defense counsel to cross-examine Fuhlman as to bias, and by B) refusing to allow defense counsel to impeach Fuhlman with a prior inconsistent statement.

**People v. Unes,** 143 Ill. App. 3d 716, 493 N.E.2d 681 (3rd Dist. 1986)........................7

VI. The State's closing arguments constituted reversible error.

**People v. Roach,** 213 Ill. App. 3d 119, 571 N.E.2d 515 (3rd Dist. 1991).....................8

I.     THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY REFUSING TO ACCEPT THE RECANTED TESTIMONY OF STATE WITNESS GARY DAVIS, WHOSE TESTIMONY AT TRIAL WAS PIVOTAL TO THE JURY FINDING DEFENDANT GUILTY OF FIRST DEGREE MURDER.

The State does not dispute defendant's argument that the evidence, absent Davis' trial testimony, was not sufficient to convict defendant.  Rather, the State merely dismisses it as irrelevant.  However, a review of the specific criteria set forth in a case the State cites, **People v. Parsons,** ___ Ill. App. 3d ___ , 673 N.E.2d 347 (1st Dist. 1996), demonstrates to the contrary.

In **Parsons,** the court  quotes approvingly from **People v. Miller,** 79 Ill. 2d 454, 404 N.E.2d 199 (1980), in which our supreme court identified the factors to be considered on a review of an order denying a motion for a new trial:

> A motion for a new trial on the ground of newly discovered evidence is addressed to the sound discretion of the trial judge and denial thereof will not be disturbed upon review in the absence of a showing of an abuse of discretion. [Citation.]  To warrant a new trial, the new evidence must be of such a conclusive character that it will probably change the result on retrial, that it must be material to the issue but not merely cumulative, and that it must have been discovered since the trial and be of such character that it could not have been discovered prior to trial by the exercise of due diligence. [Citation.]applications for new trial on the ground of newly discovered evidence are not looked upon with favor by the courts, and in order to prevent, so far as possible, fraud and imposition which defeated parties may be tempted to practice, as a last resort, to escape the consequence of an adverse verdict, such application should always be subjected to the closest scrutiny by the court, and the burden is upon the applicant to rebut the presumption that the verdict is correct and to show that there had been no lack of diligence. [Citations.]  673 N.E.2d at 355.

In **Parsons**, the Court proceeded to hold that the trial court had properly denied defendant's motion for a new trial, "because the evidence, if believed, is not of such a conclusive character that it would probably change the result on retrial."  Id.

Contrastingly, as implicitly acknowledged by the State in failing to challenge the proposition, the State would not have been able to convict defendant in this case without Davis' trial testimony.

Defendant respectfully submits that an examination of the trial court's reasoning in its entirety will show that the trial court did not accept the recantation of Davis' testimony because of a mistaken assessment that the result of the trial would not have been altered; the ruling was not based upon a determination that Davis' trial testimony was true, and that his recantation was false. The State concedes that Davis changed his story several times (State's brief, p. 8). Nor does the State suggest that Davis' recantation could have been discovered before trial. The point is Davis has no credibility, so his pivotal testimony cannot be used to prop up a conviction that could not otherwise stand. The trial court's contrary conclusion constitutes an abuse of discretion, and thus defendant's conviction must be reversed.


II.    THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY DENYING DEFENDANT'S MOTION FOR A MISTRIAL AFTER IT WAS DISCLOSED THAT AT LEAST THREE JURORS HAD OBSERVED DEFENDANT WHILE HANDCUFFED AND SHACKLED IMMEDIATELY BEFORE DELIBERATING ON A VERDICT.


It is undisputed that at least three jurors saw defendant handcuffed and shackled for the first and only time immediately before beginning to deliberate on a verdict, and that they were not questioned about the effect of what they had seen until after the jury had reached a verdict. At the most critical time in which these jurors could be influenced, they were presented with a visual image of defendant connoting that he was already guilty of the offense. Whether or not the jury had been previously apprised that the defendant was being jailed does not detract from the prejudicial effect of this viewing at this time.

The State's suggestion that the impact of this conceded error was minimized by the fact that it occurred outside the courtroom is misplaced. Had it occurred in the courtroom, the likelihood that the error would have been addressed and possibly cured would have of course been much greater. The incident in this case was thus more egregious than the reversible error found by this court in **People v. Boose,** 33 Ill. App. 3d 250, 337 N.E.2d 338 (3rd Dist. 1975), aff'd, 66 Ill. 2d 261, 362 N.E.2d 303 (1977). The error was discovered and dealt with much too late for there to be any instruction possible to attempt to cure the prejudice. It was thus reversible error.

III.    DEFENDANT WAS DENIED HIS RIGHT TO A FAIR TRIAL WHERE THE TRIAL COURT'S MISCONDUCT TOWARD DEFENSE COUNSEL AFFECTED THE VERDICT.

The State does not contest the proposition that the trial judge committed error in its misconduct toward defense counsel. Rather, the State relies on the argument that the error was harmless.

Other than the egregiousness of the trial court's misconduct, the most prejudicial aspect of it was that no attempt was made to cure the error until it was too late. As set forth in defendant's initial brief, virtually all of the important testimony in the case took place between the time that defense counsel was called ridiculous by the trial judge, and the trial judge's attempt to soften the effect of his error. That was reversible error.

The State rejoins that defendant has not cited any cases in which it was held that the remedial instruction must be given contemporaneously with the error. The other side of the coin is that the State has not cited any cases in which it was held that such a tardy remedial instruction was sufficient to cure the error. The inordinate length of time that the trial court took in this case to acknowledge its error and then attempt to

That clearly constitutes the advancement of a theory linking defendant to the crime. Defendant's additional alternative request to limit the purpose for which the photo was to be admitted to merely depict the crime scene, and not the view held by Fuhlman, was denied by the trial court (R-155).

Fuhlman also conceded that the photo did not capture the angle of the view he had of the area depicted in the photo. The State's protestations to the contrary, the view afforded by the photo did not comport with where Fuhlman testified that defendant fired a shot. Since this was not the view that Fuhlman had, the photo did not illustrate that Fuhlman had a view of where defendant allegedly was at the time of the shooting. The photo could not have depicted the crime scene as alleged by the State since it did not encompass the area in which either the victim or the defendant were alleged to have been during the incident in question. Thus, the State's claim notwithstanding, this case is not materially distinguishable from **People v. Jones,** 114 Ill. App. 3d 576, 449 N.E.2d 547 (1st Dist. 1983), or **People v. Williams,** 71 Ill. App. 3d 547, 390 N.E.2d 32 (1st Dist. 1979).


V.    THE TRIAL COURT ABUSED ITS DISCRETION BY PREVENTING DEFENSE COUNSEL FROM EFFECTIVELY CROSS-EXAMINING ALLEGED STATE EYEWITNESS STEVE FUHLMAN BY A) REFUSING TO ALLOW DEFENSE COUNSEL TO CROSS-EXAMINE FUHLMAN AS TO BIAS, AND BY B) REFUSING TO ALLOW DEFENSE COUNSEL TO IMPEACH FUHLMAN WITH A PRIOR INCONSISTENT STATEMENT.


The State claims that defendant's cross-examination was properly restricted, and then proceeds to argue that there were virtually no meaningful restrictions placed on defendant. The State's explanation of the trial court's allowance of the rebuttal evidence is equally unavailing.

The State maintains that the trial court's admission into evidence of a prior consistent statement given by Fuhlman to police shortly after the homicide was proper rebuttal evidence. Indeed, the State posits that the suspected bias of defendant was "nonsensical" (State's brief, p. 31). The State's rendition of this bias theory is more deserving of the aforesaid moniker.

The State makes the myopic claim that for Fuhlman to have had any desire to use this incident to his advantage, he would had to have had the whole thing planned out before he curried favor with the police by identifying a familiar face in the neighborhood as the assailant. Defendant's actual theory, which he had a right to pursue, was that Fuhlman had a desperate desire to improve his economic circumstances for a variety of reasons, and that his identification of defendant was prompted by a sense that doing a contingent favor for the police, one that he could withhold until the trial should he not be properly rewarded for it, would help him to do it. As a rebuttal to defendant's showing that this strong economic motive existed, the State incredibly cites the testimony of Fuhlman himself for the proposition that he was not looking for a reason to move before the incident.

Defendant attempted in good faith to explore a potential area of bias by a major State witness. By allowing the State to boot-strap the testimony of Fuhlman via the introduction of the rebuttal evidence, the trial court committed reversible error.

As for the trial court's failure to allow the impeachment of Fuhlman, this was also clearly prejudicial error. The State claims that police officer Nennenger recalled the event, and could not vouch for the accuracy of the written statement. Thus, the State asserts, the statement was properly excluded as not having met the requirements of a past recollection recorded. The evidence was to the contrary.

Although Nennenger recalled the event in general, that Fuhlman was interviewed, he could not recall the pertinent portion of the interview pertaining to Fuhlman's statements as to how far away he was from the area of the shooting. When

shown the report that contained this information as to what Fuhlman had said,

Nennenger claimed that he did not know the context of the statement. A review by this

Court of the pertinent portion of the statement which Nennenger conveniently could

not glean the content of, will show that the statement is not the type calling for subtle

context. It is more akin to "the light was green," from which no context is needed to

infer that the light was not red. Defendant met his burden to showing that the

statement was admissible as a past recollection recorded. See **People v. Unes,**

143 Ill. App. 3d 716, 493 N.E.2d 681 (3rd Dist. 1986).

The State's additional argument that the statement in question was not directly

attributed to Fuhlman should not persuade. Fuhlman and the two police officers

interviewing him were the only people present. Defendant submits that the scenario

offered by the State that Nennenger could have written down a statement from his

fellow police officer pertaining to the distance the purported witness was from the

shooting is not plausible. The statement itself identifies that the source of the

information was Fuhlman (defendant's exhibit No. 3). The trial court's refusal to allow

Fuhlman to be impeached with this statement was reversible error.


VI.    THE STATE'S CLOSING ARGUMENTS CONSTITUTED REVERSIBLE

ERROR.


The State argues that the prosecutor's blatant comments concerning the

defendant's failure to testify were invited by defendant's closing argument. Defendant

offers no specific support for this proposition, arguing merely that defense counsel

invited such comment by arguing to the jury that a second degree murder verdict was

a viable option. Since the jury was to be instructed on second degree murder,

defense counsel's argument advancing that theory was clearly appropriate. Absent a

showing that his remarks exceeded this permissible scope, there has been no

4:06-cv-04048-MMM     # 7-7     Page 9 of 9

demonstration that defendant's closing argument gave the prosecutor carte blanche to assail defendant's constitutional right not to testify.

The State's further argument that the prosecutor's remarks did not constitute comment on defendant's failure to testify should not be countenanced by this Court. The prosecutor's words speak for themselves, and the State cannot explain them away. The cumulative effect of the excess of the prosecutor's closing arguments, as detailed in defendant's brief, mandate reversal of defendant's conviction since defendant's right to a fair trial was adversely affected. See **People v. Roach,** 213 Ill. App. 3d 119, 571 N.E.2d 515 (3rd Dist. 1991).

## CONCLUSION

For the foregoing reasons, as well as those delineated in defendant's initial brief, defendant requests that this Court afford defendant the relief set forth in the **CONCLUSION** of defendant's initial brief.

Respectfully Submitted,

John Wood, Panel Attorney
Office of the State Appellate Defender
6415 N. Tammarack
Peoria, Illinois  61615
(309) 693-2846

COUNSEL FOR APPELLANT

Page 2 of 6
**E-FILED**
Tuesday, 26 September, 2006  01:53:42 PM
Clerk, U.S. District Court, ILCD



689 N.E.2d 134                                                           Page 1

293 Ill.App.3d 861, 689 N.E.2d 134, 228 Ill.Dec. 262
**(Cite as: 293 Ill.App.3d 861, 689 N.E.2d 134)**

H

Appellate Court of Illinois, Third District.
The PEOPLE of the State of Illinois,
Plaintiff-Appellee,
v.
**David** Allen **GREER**, Defendant-Appellant.
**No. 3-95-0195.**

Oct. 23, 1997.
Rehearing Denied Jan. 29, 1998.

Defendant was convicted in the Circuit Court, Rock Island County, James Teros, J., of first-degree murder, and he appealed. The Appellate Court, Holdridge, J., held that the defendant's attempt to cross-examine a prosecution witness on depth of his financial distress and the extent of his desire to move from the neighborhood in which the murder occurred did not involve collateral matters and, thus, the defendant should have been allowed to conduct the cross-examination to show bias or motive to implicate the defendant falsely in the murder.

Reversed and remanded.

McCuskey, J., filed a dissenting opinion.

West Headnotes

**[1] Witnesses 410 ⟳372(1)**

410 Witnesses
    410IV Credibility and Impeachment
        410IV(C) Interest and Bias of Witness
            410k372 Cross-Examination to Show Interest or Bias
                410k372(1) k. In General. Most Cited Cases
Defendant has the right to cross-examine witness for purpose of showing witness' interest, bias or motive to testify falsely.

**[2] Witnesses 410 ⟳372(1)**

410 Witnesses
    410IV Credibility and Impeachment
        410IV(C) Interest and Bias of Witness
            410k372 Cross-Examination to Show Interest or Bias
                410k372(1) k. In General. Most Cited Cases
Cross-examination of witness for purpose of showing witness' interest, bias or motive to testify falsely may concern any matter that goes to explain, modify, discredit or destroy witness' testimony on direct examination.

**[3] Witnesses 410 ⟳372(1)**

410 Witnesses
    410IV Credibility and Impeachment
        410IV(C) Interest and Bias of Witness
            410k372 Cross-Examination to Show Interest or Bias
                410k372(1) k. In General. Most Cited Cases
Trial court should give defendant the widest latitude on cross-examination to allow him to establish witness' bias or motive.

**[4] Witnesses 410 ⟳372(1)**

410 Witnesses
    410IV Credibility and Impeachment
        410IV(C) Interest and Bias of Witness
            410k372 Cross-Examination to Show Interest or Bias
                410k372(1) k. In General. Most Cited Cases
When defense theory is that defendant has been framed and that witness who led police to defendant has motive to testify falsely, evidence to show that motive is not collateral.

**[5] Witnesses 410 ⟳372(2)**

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**EXHIBIT D**

689 N.E.2d 134                                                              Page 2

293 Ill.App.3d 861, 689 N.E.2d 134, 228 Ill.Dec. 262
**(Cite as: 293 Ill.App.3d 861, 689 N.E.2d 134)**

410 Witnesses
   410IV Credibility and Impeachment
     410IV(C) Interest and Bias of Witness
       410k372 Cross-Examination to Show
Interest or Bias
         410k372(2) k. Inquiry as to Particular
Acts or Facts Tending to Show Interest or Bias.
Most Cited Cases
Defendant's attempt to cross-examine prosecution
witness on depth of his financial distress and extent
of his desire to move from neighborhood in which
murder occurred did not involve collateral matters
and, thus, defendant should have been allowed to
conduct cross-examination to show bias or motive
to testify falsely; defendant sought to argue that
financial and other help witness received from State
was sufficient to induce him to implicate defendant
falsely in victim's death.

**[6] Criminal Law 110 ⚖═637**

110 Criminal Law
   110XX Trial
     110XX(B) Course and Conduct of Trial in
General
       110k637 k. Custody and Restraint of
Accused. Most Cited Cases
Jurors should not be allowed to see defendant
wearing shackles.

**135 *862 ***263 Kenneth D. Brown, Office of
the State Appellate Defender, Ottawa, John Wood,
Peoria, for **David** Allen **Greer.**
John X. Breslin, Deputy Director, State's Attys.
Appellate Prosecutor, Ottawa, Marshall E. Douglas,
State's Atty., Rock Island, Domenica Osterberger,
State's Attys. Appellate Prosecutor, Ottawa, for the
People.
Justice HOLDRIDGE delivered the opinion of the
Court:
The defendant, **David** Allen **Greer**, was convicted
of first degree murder (720 ILCS 5/9-1(a)(2) (West
1994)) and sentenced to 50 years in prison. On
appeal, the defendant contends that several
reversible errors occurred during his trial, including
the restriction of his cross-examination of a witness.
We hold that curtailing the defendant's
cross-examination of one of the State's key

witnesses constituted reversible error. Thus, we
reverse and remand.

In the interest of brevity, we will outline only those
facts necessary to our discussion of the issue. On
July 13, 1993, the victim was shot and killed near a
public housing project in Rock Island, Illinois. At
trial, one witness, Steve Fuhlman, testified that he
saw the defendant shooting a gun toward the
location where the victim's body was later found.
Fuhlman did not see the victim, however.

***863** On cross-examination of Fuhlman, the
defendant brought out that the State had helped
Fuhlman move from the neighborhood where the
shooting occurred by furnishing Fuhlman with a
moving van and paying for his stay in a hotel during
the move. The defendant also attempted to bring
out several other facts to show that Fuhlman was
biased toward the State. Those facts included: (1)
that Fuhlman had wanted to move from his home
near the public housing project for some time; (2)
that he was unable to do so for financial reasons;
and (3) that he had not paid real estate taxes for two
years. Upon the State's objection, the trial court
refused to allow the defendant to pursue this line of
questioning. In doing so, the trial judge stated,
before the jury, that "this is ridiculous. Cut it out."
When the defendant pointed out to the judge that
he had used the word "ridiculous" in front of the
jury, the judge told the jury that he did not mean by
that remark that the defendant, his attorney or his
theory of defense was ridiculous.

After the conclusion of the trial and before jury
deliberations began, three jurors were allowed to go
outside the courthouse to smoke cigarettes. While
they were smoking, the jurors saw the defendant, in
shackles, being led from the courthouse to a nearby
vehicle for transportation back to the county jail.

The defendant was convicted and sentenced as
previously noted.

On appeal, the defendant contends that his
cross-examination of Fuhlman was unfairly
restricted and that this restriction prevented him
from fully developing his theory of defense.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

293 Ill.App.3d 861, 689 N.E.2d 134, 228 Ill.Dec. 262
**(Cite as: 293 Ill.App.3d 861, 689 N.E.2d 134)**

[1][2][3][4] The defendant has the right to cross-examine a witness for the purpose of showing the witness' interest, bias or motive to testify falsely. *People v. Britt,* 265 Ill.App.3d 129, 202 Ill.Dec. 636, 638 N.E.2d 282 (1994). Such cross-examination may concern any matter that goes to explain, modify, discredit or destroy the witness' testimony on direct examination. See *People v. Aughinbaugh,* 36 Ill.2d 320, 223 N.E.2d 117 (1967) . The trial court should give the defendant the widest latitude to allow him to establish a witness' bias or motive. *People v. Gonzalez,* 104 Ill.2d 332, 84 Ill.Dec. 457, 472 N.E.2d 417 (1984). According to the Illinois Supreme Court, when the defense theory is that the defendant has been framed and the witness who led the police to the defendant has a motive to testify falsely, the evidence to show that motive is "hardly collateral." *Gonzalez,* 104 Ill.2d at 338, 84 Ill.Dec. at 460, 472 N.E.2d at 420. Moreover, the United States Supreme Court has said that the jury is **136 ***264 entitled to have the details of the theory of defense before it so it can make an informed judgment about the weight to give the testimony it has heard. *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974)

[5] *864 In the case at bar, the defendant attempted to cross-examine Fuhlman on the depth of his financial distress and the extent of his desire to move from the neighborhood in which the crime occurred. Given these factors, the defendant then hoped to argue that the help Fuhlman received from the State was sufficient to induce him to implicate the defendant in the victim's death. The trial court, however, stopped the defendant from adequately developing this theory of impeachment. According to the trial court, these issues were collateral. We disagree. As in the *Gonzalez* case, the evidence that Fuhlman was behind in his real estate taxes and that he had wanted to leave the neighborhood for many years but had been financially unable to do so was "hardly collateral" to the question of whether Fuhlman would testify falsely in order to obtain help in moving.

Moreover, instead of giving the defendant the " widest latitude," the trial court interrupted his attorney's cross-examination and labelled it "

ridiculous" in front of the jury. To compound matters, the judge later told the jury that his remarks did not mean that the defendant, his attorney or his case was ridiculous. Was there any other way to interpret that statement? We think not.

Based on our review of the record on appeal, we hold that restricting the defendant's cross-examination was reversible error.

[6] Finally, we note that the Illinois Supreme Court has frowned upon allowing jurors to see a defendant wearing shackles. See *People v. Boose,* 66 Ill.2d 261, 5 Ill.Dec. 832, 362 N.E.2d 303 (1977). While it appears that the incident in this case was inadvertent, we stress to the trial court that a recurrence of that event must be assiduously avoided.

Our decision to remand the case for a new trial obviates the need to consider the other errors the defendant claims occurred at the first trial.

For the foregoing reasons, the judgment of the circuit court of Rock Island County is reversed and the matter remanded for further proceedings consistent with this opinion.

Reversed and remanded.

MICHELA, J., concurs.
McCUSKEY, J., dissents.
Justice McCUSKEY, dissenting:
I disagree with both the majority's reasoning and conclusion. Therefore, after a careful review of the record, I respectfully dissent.

The resolution of this case requires more facts than those provided by the majority. On July 13, 1993, the victim was shot and killed near the Arsenal Courts housing project in Rock Island, Illinois.*865
  There were *two* eyewitnesses to the shooting. At trial, Gary Davis identified the defendant as the murderer. He testified that he saw the defendant shoot the victim.

A second witness, Steve Fuhlman, was interviewed by Officer Mark Nenninger on the day of the murder pursuant to a "neighborhood canvas" in

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

search of witnesses to the murder. Fuhlman told the officers that he was outside on the street working on his car when he saw one black man chasing another black man. On July 15, 1993, Fuhlman picked the defendant out of a photographic line-up.

At trial, Fuhlman identified the defendant as the shooter. On cross-examination, defense counsel engaged in the following exchange:
"Q: [D]id the State provide assistance to you or to (sic) the State's Attorney's Office provide assistance to you in moving away from the Arsenal Courts area?
A: Some.
Q: So they provided some money for you for moving?
A: No. They supplied a truck.
Q: So you didn't have to rent a truck to move. Is that correct?
****137 ***265** A: Well I'm not totally moved. I still have belongings in the house.
Q: Have they provided other financial assistance to you?
A: Motel room for some place to stay.
Q: Is it your intention to permanently move from the Arsenal Courts area?
A: Yes.
Q: And, you do not want to reside there. Is that correct?
A: I feel unsafe there.
Q: And, isn't it also true that you did not want to reside there at the time that this shooting occurred?
A: I wanted to reside there ever since I bought the house.
Q: Well, weren't you looking for a reason to get out of the Arsenal Courts area?
A: No I wasn't. I wouldn't have been putting money in the house.
Q: Well weren't you behind on your obligations regarding that house financially?
A: Taxes.
Q: You hadn't paid the taxes for about two years on it?"

With this question, the trial court stopped the cross-examination. The trial court found the question concerning property taxes to be collateral. Outside the presence of the jury, the judge allowed defense counsel to make an offer of proof and continue questioning Fuhlman regarding the issue of unpaid taxes. During this examination, Fuhlman admitted being behind on his taxes. However, he also said that the State had not paid the taxes for him.

***866** Defense counsel argued that he was attempting to show the witness's bias through this line of questioning. According to the defendant, Fuhlman's testimony was his "ticket out" of a bad neighborhood and an attempt to obtain financial assistance by the State. The trial court was not convinced by the defendant's analysis.

The court noted that one week before the trial, the State had made a motion to withhold its witness list. The court ruled that it had to be turned over to the defense. Subsequently, Fuhlman's home was riddled with bullets while he, his wife, and two young daughters were present. The court, *on its own initiative,* ordered Fuhlman be taken into protective custody and further ordered that the State share the costs with Fuhlman. Accordingly, the court noted that any financial assistance Fuhlman was receiving from the State was pursuant to the court order. Furthermore, the court noted that the State did not pay Fuhlman's real estate taxes or pay for his new home. Based on these facts, the trial court found the question regarding property taxes to be collateral.

The majority is indeed correct that a defendant has the right to cross-examine a witness for the purpose of showing the witness' interest, bias or motive to testify falsely. *People v. Britt,* 265 Ill.App.3d 129, 145, 202 Ill.Dec. 636, 648, 638 N.E.2d 282, 294 (1994). As *Britt* further notes, however, "a defendant does not possess the unbridled authority to question a witness." *Britt,* 265 Ill.App.3d at 145, 202 Ill.Dec. at 648, 638 N.E.2d at 294. Indeed, a defendant should have the "*opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." (Emphasis in original.) *Britt,* 265 Ill.App.3d at 145, 202 Ill.Dec. at 648, 638 N.E.2d at 294.

Accordingly, "the trial court enjoys wide latitude in

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

689 N.E.2d 134                                              Page 5

293 Ill.App.3d 861, 689 N.E.2d 134, 228 Ill.Dec. 262
(Cite as: 293 Ill.App.3d 861, 689 N.E.2d 134)

limiting the cross-examination of a witness to prevent repetitive or minimally relevant questioning, harassment, prejudice, or confusion of the issues." *Britt,* 265 Ill.App.3d at 146, 202 Ill.Dec. at 648, 638 N.E.2d at 294. Thus, when a defendant claims that his cross-examination of a witness was unduly restricted, "we look to the testimony *allowed* rather than that *prohibited.*" (Emphasis in the original.) *Britt,* 265 Ill.App.3d at 146, 202 Ill.Dec. at 648, 638 N.E.2d at 294.

In the instant case, the trial court allowed the defendant to examine Fuhlman regarding the question of bias. As the above-recited testimony shows, the defense was allowed to fully explore the amount of financial aid that Fuhlman received from the State. The only question the trial court excluded in cross-examination was the question concerning property taxes. Even here, however, the **138 ***266 trial court allowed the defense to make an offer of proof outside the presence of the jury. During that examination, it became eminently clear that *867 the State in no way assisted Fuhlman in the payment of his property taxes. Thus, continued questioning by the defense counsel on this matter was clearly collateral. Consequently, looking to what cross-examination was allowed by the trial court versus the single question disallowed by the court, it is clear that the judge allowed the jury to hear sufficient testimony to determine Fuhlman's credibility. See *Britt,* 265 Ill.App.3d at 146, 202 Ill.Dec. at 648, 638 N.E.2d at 294. Based on my review, I conclude that the trial court did not abuse its discretion when it found the question to be collateral.

Moreover, the defense "ticket out" theory was patently without merit. Contrary to the majority's statement that Fuhlman "wanted to leave the neighborhood for many years," Fuhlman testified that he did *not* desire to move from his home *prior* to the murder. Rather, it was only *after* the murder that he felt "unsafe." The trial court made it very clear that Fuhlman's insecurity about his safety stemmed from his home being shot-up a week before trial.

In order for Fuhlman to have used his testimony as a "ticket out," he would have had to know in advance that (1) his home would be shot-up; (2) the trial court on its own motion would place him into protective custody; and (3) the State would be ordered to share his costs. Given the near impossibility of this theory, I find the trial court was correct in not allowing the defense to pursue further examination on this issue.

For the reasons stated, I would affirm the judgment of the trial court.

Ill.App. 3 Dist.,1997.
People v. Greer
293 Ill.App.3d 861, 689 N.E.2d 134, 228 Ill.Dec. 262

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

E-FILED

Tuesday, 26 September, 2006  01:54:37 PM
Clerk, U.S. District Court, ILCD

*Reed*

*2-26-98*

NO.

IN THE

SUPREME COURT OF ILLINOIS

---

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS | ) | Appeal from the Appellate Court |
| | ) | Third District |
| Plaintiff-Petitioner, | ) | No. 3-95-0195 |
| | ) | |
| | ) | Original Appeal from the |
| | ) | Circuit Court of the |
| v. | ) | 14th Judicial Circuit |
| | ) | Rock Island County, Illinois |
| | ) | No. 94-CF-649 |
| | ) | |
| DAVID ALLEN GREER, | ) | Honorable |
| | ) | James Teros |
| Defendant-Respondent | ) | Judge Presiding |

---

## PETITION FOR LEAVE TO APPEAL

Marshall E. Douglas
State's Attorney
Rock Island County Courthouse
Rock Island, Illinois  61201
(309) 786-4451

OF COUNSEL

Norbert J. Goetten, Director
State's Attorneys
  Appellate Prosecutor

James Ryan
Attorney General
State of Illinois
100 West Randolph, 12th Floor
Chicago, Illinois  60601

John X. Breslin
Deputy Director
Judith Z. Kelly
Staff Attorney
State's Attorneys
  Appellate Prosecutor
628 Columbus Street, Suite 300
Ottawa, Illinois  61350
(815) 434-7010

COUNSEL FOR PLAINTIFF-PETITIONER

EXHIBIT E

NO.

IN THE

SUPREME COURT OF ILLINOIS

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS | ) | Appeal from the Appellate Court |
| | ) | Third District |
| Plaintiff-Petitioner, | ) | No. 3-95-0195 |
| | ) | |
| | ) | Original Appeal from the |
| | ) | Circuit Court of the |
| v. | ) | 14th Judicial Circuit |
| | ) | Rock Island County, Illinois |
| | ) | No. 94-CF-649 |
| | ) | |
| DAVID ALLEN GREER, | ) | Honorable |
| | ) | James Teros |
| Defendant-Respondent. | ) | Judge Presiding |

PETITION FOR LEAVE TO APPEAL

TO:  THE HONORABLE CHIEF JUSTICE AND ASSOCIATE
     JUSTICES OF THE SUPREME COURT OF ILLINOIS

PRAYER FOR LEAVE TO APPEAL

The Petitioner, the People of the State of Illinois, by
James Ryan, Attorney General of the State of Illinois, and
Marshall E. Douglas, State's Attorney of Rock Island County,
Illinois, respectfully petitions this honorable court for
leave to appeal as a matter of sound judicial discretion,
pursuant to Supreme Court Rules 315 and 612(b), from the
judgment of the Appellate Court, Third Judicial District,
reversing the defendant's conviction for first degree murder
and remanding the cause for a new trial.

1

## STATEMENT REGARDING JUDGMENT, PRIOR

## DECISIONS, AND PETITION FOR REHEARING

The defendant, David Allen Greer, was charged with first degree murder in Rock Island County. Following a jury trial, he was convicted of that offense and sentenced to a term of imprisonment of 50 years. He appealed. On October 23, 1997, the Appellate Court, Third Judicial District, in a published opinion, reversed the defendant's conviction based on trial error and remanded the cause for a new trial (copy attached as Appendix A).

The petition for rehearing was denied by the appellate court by order of January 29, 1998 (Appendix B). Notice of intent to seek leave to appeal was filed February 5, 1998, and this petition for leave to appeal is being filed within 35 days of the order denying rehearing as required by Supreme Court Rule 315(b).

2

POINT RELIED UPON IN SUPPORT OF

PETITION FOR LEAVE TO APPEAL

THE MAJORITY OPINION OF THE APPELLATE COURT DEPARTS FROM THIS COURT'S LONG-STANDING PRINCIPLE THAT A TRIAL JUDGE HAS WIDE DISCRETION IN LIMITING CROSS-EXAMINATION OF A WITNESS ON COLLATERAL MATTERS.

## REASONS FOR GRANTING

## LEAVE TO APPEAL

The People submit that this court should grant leave to appeal because the majority decision of the appellate court departs from this court's long-standing principle that a trial judge has wide discretion in limiting cross-examination of a witness on collateral matters.  This court has held that a defendant's right under the confrontation clause is not absolute.  Rather, the confrontation clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way and to whatever extent the defense might wish.  People v. Jones, 156 Ill.2d 225, 620 N.E.2d 325, 332, 189 Ill. Dec. 357 (1993).  Thus, this court has held that a trial judge retains wide latitude to impose reasonable limitation on cross-examination and a reviewing court will not interfere unless there has been a clear abuse of discretion resulting in manifest prejudice to the defendant. People v. Frieberg, 147 Ill.2d 326, 589 N.E.2d 508, 522-23, 168 Ill. Dec. 108 (1992).

The trial judge in the instant case, following lengthy arguments out of the presence of the jury and an offer of proof with regard to the further questions defendant sought to ask, made a well-reasoned ruling that further cross-examination of the prosecution's witness as to the number of years he was delinquent in his property taxes was collateral and did not establish bias.  The majority opinion failed to

4

apply the above standard of determining whether the restriction on cross-examination was a clear abuse of discretion resulting in manifest prejudice. Indeed, the majority opinion fails to acknowledge the cross-examination on the issue of bias that had already been permitted and that the restriction imposed following the offer of proof did not result in manifest prejudice to defendant. This court should grant leave to appeal and reaffirm that a reviewing court must recognize the discretion a trial judge has in imposing reasonable limits in cross-examination and not reverse a trial judge's ruling in the absence of a clear abuse of discretion resulting in manifest prejudice to defendant.

5

## STATEMENT OF FACTS

On August 24, 1994, David Allen Greer was charged by indictment with the offense of first degree murder in violation of 720 ILCS 5/9-1(a)(2) in that on July 13, 1993, without lawful justification, he fired a handgun at Brandon Ellison shooting him in the back, knowing such acts created a strong probability of death or great bodily harm to Ellison, thereby causing his death. (C. 2)

On September 13, 1994, the People filed a motion for protective and regulatory orders regarding discovery, pursuant to Supreme Court Rule 415(d), seeking, inter alia, to decline to disclose the name of a witness who might suffer substantial risk of physical harm or intimidation if identified. (C. 60) Following a hearing (R. 1 et seq.), the motion was denied (R. 74). On September 22, 1994, the People were ordered to disclose the name of the witness by September 27, 1994. (C. 77) On October 13, 1994, the trial judge called a hearing on the case and made a record that he had just become aware that on the previous night the home of the above-disclosed witness, Steve Fuhlman, had been shot at, with one of the shots entering the home. (R. 114-16) On October 14, 1994, the judge, on his own motion, ordered the Rock Island Police Department to take protective custody of Fuhlman and his family, secure adequate housing, and if necessary assist in relocating them. The cost would be shared between the city and county of Rock Island. (C. 77) The trial judge had

6

further ordered that Fuhlman was still to be made available to defense counsel for an interview prior to trial. (R. 120)

At the jury trial commencing November 15, 1994, two eyewitnesses to the shooting testified. Gary Davis testified that he was a friend of the victim and that on July 13, 1993, he saw the defendant shoot the victim. (R. 454-58)   Steve Fuhlman testified that while he was outside working on his car he heard noises coming from the Arsenal Courts area. (R. 292-93)   He looked up and saw defendant run through the Arsenal Courts area, stop, and fire three shots from a gun toward the east. (R. 293-96)   He did not see who or what defendant was firing at. (R. 296)   On cross-examination, Fuhlman testified that he had lived in his home for three years prior to the incident but that he was no longer living there. (R. 327)   He acknowledged that the People had provided him with some assistance in moving away from the Arsenal Courts area; they had provided a truck and paid for a motel. (R. 327-28)   It was his current intention to permanently move from the Arsenal Courts area because he feels unsafe there. (R. 328)   He denied that he "had not wanted to reside there at the time that this shooting [the shooting of Ellison] occurred."   He testified that he wanted to reside there ever since he bought the house or he "... wouldn't have been putting money into the house." (R. 328-29)   He acknowledged that he was behind on his property taxes for that house. (R. 329)   Defense counsel next asked if he had not paid taxes for two years, to which the

7

People objected. Following lengthy arguments and offers of proof outside the presence of the jury, the trial judge sustained the People's objection to that question, ruling that the matter was collateral. (R. 341, 356)

Following presentation of additional evidence by both parties, the jury returned a verdict of guilty of first degree murder. (R. 801) After a sentencing hearing, the defendant was sentenced to a term of imprisonment of 50 years. (R. 935)

The defendant raised numerous issues on appeal. The majority opinion issued October 23, 1997, found that the trial judge's restriction on defendant's cross-examination of Fuhlman constituted reversible error and did not reach the other issues raised by defendant.

Judge McCuskey dissented from the majority opinion, arguing that the majority opinion ignored the facts of the case and incorrectly suggested that the cross-examination was limited as a whole, when in fact the limitation went to a single question of a tangential nature. The dissent noted that the trial judge had allowed the jury to hear sufficient evidence to determine Fuhlman's credibility and that the limitation on cross-examination was reasonable.

The People filed a petition for rehearing November 13, 1997, and on November 27, 1997, the appellate court ordered the defendant to respond to the People's petition for rehearing. (See, Appellate Court order of November 24, 1994, attached as Appendix C) Justice Michela, one of the two

8

concurring judges in the majority opinion, retired from the appellate court December 31, 1997.  On January 29, 1998, the appellate court denied the People's petition for rehearing. The People filed a timely notice of intent to seek leave to appeal to this court.

## ARGUMENT IN SUPPORT OF

## PETITION FOR LEAVE TO APPEAL

THE MAJORITY OPINION OF THE APPELLATE COURT DEPARTS FROM THIS COURT'S LONG-STANDING PRINCIPLE THAT A TRIAL JUDGE HAS WIDE DISCRETION IN LIMITING CROSS-EXAMINATION OF A WITNESS ON COLLATERAL MATTERS.

In reversing the defendant's conviction, the majority misinterpreted the record with respect to the cross-examination of Steven Fuhlman and misapplied the law with respect to the right of a trial judge to limit a defendant's cross-examination of a prosecution witness as to bias. In so doing, the appellate court departed from this court's long-standing principle that a trial judge has wide discretion in limiting the cross-examination of a witness on collateral matters. Specifically, the appellate court failed to consider this court's rulings that a trial judge retains wide latitude to impose reasonable limitations on cross-examination and that a reviewing court should not interfere with that ruling unless there has been a clear abuse of discretion resulting in manifest prejudice to defendant. People v. Jones, 156 Ill.2d 225, 620 N.E.2d 325, 332, 189 Ill. Dec. 357 (1993); People v. Frieberg, 147 Ill.2d 326, 589 N.E.2d 508, 522-23, 168 Ill. Dec. 108 (1992).

The majority began its discussion of this issue by noting that the defendant established through cross-examination that

10

Fuhlman received assistance from the People in moving from the neighborhood where this murder occurred. The People paid for both the moving van and a hotel room for Fuhlman.

The majority then contended that the defendant was precluded from cross-examining Fuhlman with respect to whether he had wanted to move from his neighborhood for some time, whether he was unable to move for financial reasons, and whether he had paid his real estate taxes for the past two years. The majority wrote, "the trial court refused to allow the defendant to pursue this line of questioning." (Slip op. at 2)

The majority's assessment of the facts is inaccurate. The defendant established through cross-examination that Fuhlman moved from his home approximately one month prior to the trial. (R. 327) Fuhlman was then asked about the financial assistance which he received. (R. 327-28) Significantly, contrary to the majority's factual conclusion, Fuhlman was questioned about his desire to move from his home near the housing projects "for some time". Fuhlman was specifically asked whether he was looking for a reason to move from his neighborhood; Fuhlman denied that he was. (R. 328)

During redirect examination, the jury was also informed that the offer of financial assistance was made only after unknown individuals fired shots toward Fuhlman's home. (R. 432-33) The trial judge ordered that Fuhlman and his family be placed in protective custody and the Rock Island County

11

State's Attorney and the Rock Island Police Department were ordered to relocate Fuhlman should he accept such assistance. (R. 432-33)    Though Fuhlman did accept this offer, he testified that he did not approach the authorities to request it. (R. 435)

During cross-examination, Fuhlman also acknowledged that there were things about his neighborhood that he did not like and that he was afraid of gang activity. (R. 415)    Fuhlman informed the jury that he did not let his children play outside and that he did not like the drug activity and violence in the neighborhood. (R. 415-16)    Fuhlman also admitted that since he had been relocated he had no intention of moving back to the area. (R. 416)

The People submit that a fair review of the record reveals that the defendant indeed was allowed to question Fuhlman regarding his desire to move "for some time".    The majority's conclusion that this questioning was not allowed is puzzling.    More significantly, the majority inexplicably concluded that this prohibited cross-examination, which the People contend actually took place, would have established that Fuhlman did have a longstanding desire to move from the neighborhood when it is clear that Fuhlman denied that fact. (Slip op. at 4)

Next, the majority's conclusion that the defendant was not allowed to cross-examine Fuhlman with respect to his inability to move "for financial reasons" is also in

12

contradiction to the record. On appeal, the defendant failed to articulate the precise information about which he was unable to question Fuhlman. The majority's inaccurate factual conclusion as to this particular point only emphasizes the People's argument.

The defendant never attempted to cross-examine Fuhlman on his general financial situation and its effect on his ability to move. It is true that the defendant attempted to question Fuhlman with respect to his back taxes, but the majority treated that line of inquiry as a separate point and the People discuss that issue below. Also, during the offer of proof the defendant did not attempt to question Fuhlman about any topic other than the tax issue. (R. 331-35)   Further, defense counsel admitted that he had no evidence to support an argument that the People were going to pay the tax bill. (R. 332)   Tellingly, when the judge asked defense counsel how much more testimony he intended to elicit counsel had no further information to add and stated that he had already gone into the issue of Fuhlman's financial situation. (R. 334-35)   Also, counsel specifically informed the judge that he wanted to inquire as to only the tax issue and Fuhlman's fear of leaving the neighborhood. (R. 336)

Moreover, as noted above, Fuhlman's receipt of financial assistance in moving was revealed to the jury.   Further, Fuhlman also testified that the financial assistance which he received did not include the purchase of a new home or the

13

payment of his taxes; he stated that he made personal arrangements to purchase a new home in another location. (R. 431)    Fuhlman also testified that his wife lost her job because of the shooting, an indication that the relocation hurt him financially. (R. 441)

Finally, the majority correctly notes that the defendant was precluded from establishing that Fuhlman had been behind in the payment of his real estate taxes for two years. However, the majority neglects to mention that Fuhlman acknowledged before the jury that he was delinquent in his taxes. (R. 329)  The only point which the jury was not allowed to hear was the length of the tax delinquency. Unfortunately, because of this factual omission a reader of the majority opinion is likely to conclude that the defendant was not allowed any inquiry into the subject of taxes.

The majority's inaccurate presentation of the facts calls into question its conclusion that the defendant was stopped from "adequately developing" his theory of impeachment. (Slip op. at 4)  While the majority writes that "the evidence that Fuhlman was behind in his real estate taxes and that he wanted to leave the neighborhood for many years but had been financially unable to do so" would have been relevant to the question of bias, the People argue that whatever support for these points which existed was presented to the jury.  Indeed, the defense focused on Fuhlman's bias in closing argument. (R. 761-63)

14

The only fact not presented to the jury was the length of the tax delinquency. The true issue on appeal was whether or not the trial judge correctly concluded that the inquiry regarding the length of the delinquency was collateral and insufficient to establish bias.

While the majority cites <u>People v. Britt</u>, 265 Ill.App.3d 129, 638 N.E.2d 282, 202 Ill. Dec. 636 (4th Dist. 1994), for the proposition that a defendant has the right to cross-examine a witness for the purpose of showing bias and motive to testify falsely, the majority fails to point to the remainder of the <u>Britt</u> court's discussion of the law on this point. The <u>Britt</u> court went on to state that a defendant is not entitled to cross-examine "in whatever way, and to whatever extent, the defense might wish." 638 N.E.2d at 294. Proposed cross-examination regarding bias must be direct and positive and not remote or uncertain. <u>People v. Dowdy</u>, 140 Ill.App.3d 631, 488 N.E.2d 1326, 1329, 94 Ill. Dec. 933 (2d Dist. 1986).

The majority failed to recognize and discuss the People's argument that not only was the length of the tax delinquency a collateral matter but the entire line of cross-examination was remote and uncertain. First, the People note that during the offer of proof there was no evidence that Fuhlman was offered financial assistance with respect to the payment of his taxes. Further, Fuhlman later testified to this fact before the jury. (R. 431) Thus, the length of the tax

15

delinquency was indeed collateral. Moreover, to follow the logic of the defendant's theory of bias, one would have to conclude that Fuhlman cooperated with the police after this incident with the hope that his cooperation would spark some type of retaliation from the defendant's associates which would lead the police and prosecution to volunteer to relocate him despite his failure to request the relocation.

Assuming, arguendo, that the majority is correct and this line of cross-examination was relevant, it is clear that under the facts of this case reversal was not required. To prevail on a claim of error on this issue a defendant must show that the trial judge abused his discretion by limiting the cross-examination and that manifest prejudice to the defendant resulted. Frieberg, 589 N.E.2d at 522-23; Britt, 638 N.E.2d at 294. The focus of this issue is whether the jury was made aware of sufficient facts to assess the credibility of the witness; the reviewing court must look to the testimony which was allowed rather than that which was prohibited. Britt, 638 N.E.2d at 294.

The majority failed to address these standards in the instant matter. Had the majority applied these standards to the facts in the record, the People submit that the majority would have concluded that reversal was not warranted. Considering the facts presented to the jury and in light of the highly speculative nature of the defendant's theory of bias, the inability of the defendant to additionally point out

16

that Fuhlman's real estate taxes had been delinquent for two years was inconsequential.

The majority's comparison of this matter to this court's case of <u>People v. Gonzalez</u>, 104 Ill.2d 332, 472 N.E.2d 417, 84 Ill. Dec. 457 (1984), is inapt. In <u>Gonzalez</u>, the trial judge barred the defense from establishing that the prosecution's main witness was a gang member in order to support the defense theory that his gang affiliation led him to testify falsely. 472 N.E.2d at 420. First, the theory of bias based on evidence of gang membership is not as tangential as the theory in the instant matter. More significantly, it is clear that in <u>Gonzalez</u> the defendant was precluded from developing his theory at all, whereas this is simply not true in the case at bar.

As Judge McCuskey pointed out in his dissenting opinion, when the proper standard of review is used by the reviewing court, it is clear that the trial judge did not abuse his discretion when he found the question to be collateral. (Slip op., McCuskey, J., dissenting, at 5) As the dissenting opinion went on to note:

> Moreover, the defense "ticket out" theory was patently without merit. Contrary to the majority's statement that Fuhlman "wanted to leave the neighborhood for many years," Fuhlman testified that he did <u>not</u> desire to move from his home <u>prior</u> to the murder. Rather, it was only <u>after</u> the murder that he felt "unsafe." The trial court made it very clear that Fuhlman's insecurity about his safety

**17**

> stemmed from his home being shot-up a
> week before trial.
>
> In order for Fuhlman to have used
> his testimony as a "ticket out," he would
> have had to know in advance that (1) his
> home would be shot-up; (2) the trial
> court on its own motion would place him
> into protective custody; and (3) the
> State would be ordered to share his
> costs. Given the near impossibility of
> this theory, I find the trial court was
> correct in not allowing the defense to
> pursue further examination on this issue.
> [Slip op., McCuskey, J., dissenting, at
> 5-6.]

This court should grant leave to appeal because the majority
opinion of the Third District misinterpreted the record and
misapplied the law in reviewing the trial judge's reasonable
limitation of cross-examination by the defendant. This court
should grant leave to appeal and re-affirm that a reviewing
court must recognize the discretion a trial judge has in
imposing reasonable limitations on cross-examination and not
reverse a trial judge's ruling in the absence of a clear abuse
of discretion resulting in manifest prejudice to defendant.

CONCLUSION

For the reasons stated herein, the People request this honorable court grant them leave to appeal from the judgment of the Appellate Court, Third Judicial District, which reversed the defendant's conviction for first degree murder and remanded the cause for a new trial.

Respectfully submitted,

THE PEOPLE OF THE STATE OF ILLINOIS

James Ryan
Attorney General
State of Illinois
100 West Randolph, 12th Floor
Chicago, Illinois  60601

John X. Breslin
Deputy Director
Judith Z. Kelly
Staff Attorney
State's Attorneys

Marshall E. Douglas                Appellate Prosecutor
State's Attorney                   628 Columbus Street, Suite 300
Rock Island County Courthouse      Ottawa, Illinois   61350
Rock Island, Illinois   61201      (815) 434-7010
(309) 786-4451

OF COUNSEL                         COUNSEL FOR PLAINTIFF-PETITIONER

JXBJZKlf030598
HARDDISK

19

**E-FILED**
Tuesday, 26 September, 2006  01:55:01 PM
Clerk, U.S. District Court, ILCD

<u>**APPENDIX**</u>
**A**

NOTICE

The text of this opinion may be changed or corrected prior to the time for filing of a Petition for Rehearing or the disposition of the same.

*Filed 10-23-97*

No. 3--95--0195

RECEIV...

OCT 2 4 ...

SAAP
THIRD DISTRICT

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 1997

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court for the 14th Judicial Circuit Rock Island County, Illinois |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 94--CF--649 |
| DAVID ALLEN GREER, | ) ) | Honorable |
| Defendant-Appellant. | ) ) | James Teros Judge, Presiding |

**Publ. In Full**

JUSTICE HOLDRIDGE delivered the opinion of the Court:

The defendant, David Allen Greer, was convicted of first degree murder (720 ILCS 5/9--1(a)(2) (West 1994)) and sentenced to 50 years in prison.  On appeal, the defendant contends that several reversible errors occurred during his trial, including the restriction of his cross-examination of a witness.  We hold that curtailing the defendant's cross-examination of one of the State's key witnesses constituted reversible error.  Thus, we reverse and remand.

In the interest of brevity, we will outline only those facts necessary to our discussion of the issue.  On July 13, 1993, the victim was shot and killed near a public housing project in Rock Island, Illinois.  At trial, one witness, Steve Fuhlman, testified that he saw the defendant shooting a gun toward the location

where the victim's body was later found.  Fuhlman did not see the victim, however.

On cross-examination of Fuhlman, the defendant brought out that the State had helped Fuhlman move from the neighborhood where the shooting occurred by furnishing Fuhlman with a moving van and paying for his stay in a hotel during the move.  The defendant also attempted to bring out several other facts to show that Fuhlman was biased toward the State.  Those facts included: (1) that Fuhlman had wanted to move from his home near the public housing project for some time; (2) that he was unable to do so for financial reasons; and (3) that he had not paid real estate taxes for two years.  Upon the State's objection, the trial court refused to allow the defendant to pursue this line of question- ing.  In doing so, the trial judge stated, before the jury, that "this is ridiculous.  Cut it out."  When the defendant pointed out to the judge that he had used the word "ridiculous" in front of the jury, the judge told the jury that he did not mean by that remark that the defendant, his attorney or his theory of defense was ridiculous.

After the conclusion of the trial and before jury delibera- tions began, three jurors were allowed to go outside the court- house to smoke cigarettes.  While they were smoking, the jurors saw the defendant, in shackles, being led from the courthouse to a nearby vehicle for transportation back to the county jail.

The defendant was convicted and sentenced as previously noted.

2

On appeal, the defendant contends that his cross-examination of Fuhlman was unfairly restricted and that this restriction prevented him from fully developing his theory of defense.

The defendant has the right to cross-examine a witness for the purpose of showing the witness' interest, bias or motive to testify falsely. People v. Britt, 265 Ill. App. 3d 129, 638 N.E.2d 282 (1994). Such cross-examination may concern any matter that goes to explain, modify, discredit or destroy the witness' testimony on direct examination. See People v. Aughinbaugh, 36 Ill. 2d 320, 223 N.E.2d 117 (1967). The trial court should give the defendant the widest latitude to allow him to establish a witness' bias or motive. People v. Gonzalez, 104 Ill. 2d 332, 472 N.E.2d 417 (1984). According to the Illinois Supreme Court, when the defense theory is that the defendant has been framed and the witness who led the police to the defendant has a motive to testify falsely, the evidence to show that motive is "hardly collateral." Gonzalez, 104 Ill. 2d at 338, 472 N.E.2d at 420. Moreover, the United States Supreme Court has said that the jury is entitled to have the details of the theory of defense before it so it can make an informed judgment about the weight to give the testimony it has heard. Davis v. Alaska, 415 U.S. 308, 39 L. Ed. 2d 347, 94 S. Ct. 1105 (1974).

In the case at bar, the defendant attempted to cross-examine Fuhlman on the depth of his financial distress and the extent of his desire to move from the neighborhood in which the crime occurred. Given these factors, the defendant then hoped to argue

3

that the help Fuhlman received from the State was sufficient to induce him to implicate the defendant in the victim's death.  The trial court, however, stopped the defendant from adequately developing this theory of impeachment.  According to the trial court, these issues were collateral.  We disagree.  As in the Gonzalez case, the evidence that Fuhlman was behind in his real estate taxes and that he had wanted to leave the neighborhood for many years but had been financially unable to do so was "hardly collateral" to the question of whether Fuhlman would testify falsely in order to obtain help in moving.

Moreover, instead of giving the defendant the "widest latitude," the trial court interrupted his attorney's cross-examination and labelled it "ridiculous" in front of the jury. To compound matters, the judge later told the jury that his remarks did not mean that the defendant, his attorney or his case was ridiculous.  Was there any other way to interpret that statement?  We think not.

Based on our review of the record on appeal, we hold that restricting the defendant's cross-examination was reversible error.

Finally, we note that the Illinois Supreme Court has frowned upon allowing jurors to see a defendant wearing shackles.  See People v. Boose, 66 Ill. 2d 261, 362 N.E.2d 303 (1977).  While it appears that the incident in this case was inadvertent, we stress to the trial court that a recurrence of that event must be assiduously avoided.

4

Our decision to remand the case for a new trial obviates the need to consider the other errors the defendant claims occurred at the first trial.

For the foregoing reasons, the judgment of the circuit court of Rock Island County is reversed and the matter remanded for further proceedings consistent with this opinion.

Reversed and remanded.

MICHELA, J. concurs;  McCUSKEY, J., dissents.

5

Publ. In Full

Th   ext of this opinion may be chang
or corrected prior to the time for filing o
Petition for Rehearing or the dispositi
of the same.

Case No. 3-95-0195 -- <u>People v. David Allen Hibbler</u>

JUSTICE McCUSKEY, Dissenting:

I disagree with both the majority's reasoning and conclusion.
Therefore, after a careful review of the record, I respectfully
dissent.

The resolution of this case requires more facts than those
provided by the majority.  On July 13, 1993, the victim was shot
and killed near the Arsenal Courts housing project in Rock Island,
Illinois.  There were <u>two</u> eyewitnesses to the shooting.  At trial,
Gary Davis identified the defendant as the murderer.  He testified
that he saw the defendant shoot the victim.

A second witness, Steve Fuhlman, was interviewed by Officer
Mark Nenninger on the day of the murder pursuant to a "neighborhood
canvas" in search of witnesses to the murder.  Fuhlman told the
officers that he was outside on the street working on his car when
he saw one black man chasing another black man.  On July 15, 1993,
Fuhlman picked the defendant out of a photographic line-up.

At trial, Fuhlman identified the defendant as the shooter.  On
cross-examination, defense counsel engaged in the following
exchange:

"Q:    [D]id the State provide assistance to you or to
       (sic)  the  State's  Attorney's  Office  provide
       assistance to you in moving away from the Arsenal
       Courts area?

A:     Some.

Q:     So they provided some money for you for moving?

A:     No.  They supplied a truck.

Q:  So you didn't have to rent a truck to move.    Is
    that correct?

A:  Well I'm not totally moved.    I still have
    belongings in the house.

Q:  Have they provided other financial assistance to
    you?

A:  Motel room for some place to stay.

Q:  Is it your intention to permanently move from the
    Arsenal Courts area?

A:  Yes.

Q:  And, you do not want to reside there.    Is that
    correct?

A:  I feel unsafe there.

Q:  And, isn't it also true that you did not want to
    reside there at the time that this shooting
    occurred?

A:  I wanted to reside there ever since I bought the
    house.

Q:  Well, weren't you looking for a reason to get out
    of the Arsenal Courts area?

A:  No I wasn't.    I wouldn't have been putting money in
    the house.

Q:  Well weren't you behind on your obligations
    regarding that house financially?

A:  Taxes.

2

> Q:    You hadn't paid the taxes for about two years on
>       it?"

With this question, the trial court stopped the cross-examination.
The trial court found the question concerning property taxes to be
collateral.   Outside the presence of the jury, the judge allowed
defense counsel to make an offer of proof and continue questioning
Fuhlman regarding the issue of unpaid taxes.   During this
examination, Fuhlman admitted being behind on his taxes.   However,
he also said that the State had not paid the taxes for him.

Defense counsel argued that he was attempting to show the
witness's bias through this line of questioning.   According to the
defendant, Fuhlman's testimony was his "ticket out" of a bad
neighborhood and an attempt to obtain financial assistance by the
State.    The trial court was not convinced by the defendant's
analysis.

The court noted that one week before the trial, the State had
made a motion to withhold its witness list.   The court ruled that
it had to be turned over to the defense.   Subsequently, Fuhlman's
home was riddled with bullets while he, his wife, and two young
daughters were present.   The court, <u>on its own initiative</u>, ordered
Fuhlman be taken into protective custody and further ordered that
the State share the costs with Fuhlman.   Accordingly, the court
noted that any financial assistance Fuhlman was receiving from the
State was pursuant to the court order.   Furthermore, the court
noted that the State did not pay Fuhlman's real estate taxes or pay

3

for his new home. Based on these facts, the trial court found the question regarding property taxes to be collateral.

The majority is indeed correct that a defendant has the right to cross-examine a witness for the purpose of showing the witness' interest, bias or motive to testify falsely. People v. Britt, 265 Ill. App. 3d 129, 145, 638 N.E.2d 282, 294 (1994). As Britt further notes, however, "a defendant does not possess the unbridled authority to question a witness." Britt, 265 Ill. App. 3d at 145, 638 N.E.2d at 294. Indeed, a defendant should have the "opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." (Emphasis in original.) Britt, 265 Ill. App. 3d at 145, 638 N.E.2d at 294.

Accordingly, "the trial court enjoys wide latitude in limiting the cross-examination of a witness to prevent repetitive or minimally relevant questioning, harassment, prejudice, or confusion of the issues." Britt, 265 Ill. App. 3d at 146, 638 N.E.2d at 294. Thus, when a defendant claims that his cross-examination of a witness was unduly restricted, "we look to the testimony allowed rather than that prohibited." (Emphasis in the original.) Britt, 265 Ill. App. 3d at 146, 638 N.E.2d at 294.

In the instant case, the trial court allowed the defendant to examine Fuhlman regarding the question of bias. As the above-recited testimony shows, the defense was allowed to fully explore the amount of financial aid that Fuhlman received from the State. The only question the trial court excluded in cross-

4

examination was the question concerning property taxes. Even here, however, the trial court allowed the defense to make an offer of proof outside the presence of the jury. During that examination, it became eminently clear that the State in no way assisted Fuhlman in the payment of his property taxes. Thus, continued questioning by the defense counsel on this matter was clearly collateral. Consequently, looking to what cross-examination was allowed by the trial court versus the single question disallowed by the court, it is clear that the judge allowed the jury to hear sufficient testimony to determine Fuhlman's credibility. See Britt, 265 Ill. App. 3d at 146, 638 N.E.2d at 294. Based on my review, I conclude that the trial court did not abuse its discretion when it found the question to be collateral.

Moreover, the defense "ticket out" theory was patently without merit. Contrary to the majority's statement that Fuhlman "wanted to leave the neighborhood for many years," Fuhlman testified that he did not desire to move from his home prior to the murder. Rather, it was only after the murder that he felt "unsafe." The trial court made it very clear that Fuhlman's insecurity about his safety stemmed from his home being shot-up a week before trial.

In order for Fuhlman to have used his testimony as a "ticket out," he would have had to know in advance that (1) his home would be shot-up; (2) the trial court on its own motion would place him into protective custody; and (3) the State would be ordered to share his costs. Given the near impossibility of this theory, I

5

find the trial court was correct in not allowing the defense to pursue further examination on this issue.

For the reasons stated, I would affirm the judgment of the trial court.

APPENDIX
B

# STATE OF ILLINOIS

## THIRD DISTRICT APPELLATE COURT



RECEIVED

FEB - 2 1998

SAAP
THIRD DISTRICT

**GIST FLESHMAN**
Clerk of the Court
815 434-5050

1004 Columbus Street
Ottawa, Illinois 61350
TDD 815 434-5068

Be it remembered, That, to wit: On the 29th day of January, 1998, certain proceedings were had and orders made and entered of record by said Court, among which is the following, viz:

3-95-0195

People of the State of Illinois,
    Appellee,
v.
David Allen Greer,
    Appellant.

APPEAL FROM:
Rock Island County
Hon. James T. Teros
94 CF 649

Now on this day this cause coming on for hearing upon the petition for rehearing filed by the Appellee, herein, and the Court having duly considered said petition, as well as the matters and things alleged in support thereof, and being now fully advised in the premises;

It is ordered by the Court that said petition for rehearing be and the same is hereby overruled and denied.

_Gist Fleshman_
Clerk of the Court

**<u>APPENDIX</u>**

C

# STATE OF ILLINOIS

## THIRD DISTRICT APPELLATE COURT



**GIST FLESHMAN**
Clerk of the Court
815 434-5050

11/24/97

1004 Columbus Street
Ottawa, Illinois 61350
TDD 815 434-5068

Mr. John Wood
Attorney at Law
6415 N. Tammarack
Peoria, IL  61615

        RE:   General No.  3-95-0195
              Circuit Court No.  94CF649
              County of  Rock Island
              People V. Greer, David Allen


The Court has this day entered in the above entitled cause the

following order:

              On the Court's own motion, the Appellant is
              ordered to respond to Appellee's Petition for
              Rehearing on or before December 15, 1997.
              Appellee is ordered to file a response, if any, on
              or before December 29, 1997.


                              GIST FLESHMAN, Clerk
                              Appellate Court
                              Third District

cc: Mr. Kenneth D. Brown
    John X. Breslin, Deputy Director
    Mr. Marshall E. Douglas
    Ms. Domenica Osterberger

**ILLINOIS SUPREME COURT**
**JULEANN HORNYAK, CLERK**
SUPREME COURT BUILDING
SPRINGFIELD, ILLINOIS 62701
(217) 782-2035

85056

June 3, 1998

Hon. Jim Ryan
Attorney General, Criminal Appeals Div.
100 West Randolph St., 12th Floor
Chicago, IL 60601

No.  85056 - People State of Illinois, petitioner, v. David
              Allen Greer, respondent.  Leave to appeal,
              Appellate Court, Third District.

    The Supreme Court today DENIED the petition for leave to

appeal in the above entitled cause.

The mandate of this Court will issue to the Appellate Court

on June 25, 1998.

E-FILED
Tuesday, 26 September, 2006 01:56:30 PM
Clerk, U.S. District Court, ILCD

No. 3-99-0706

FEB 14 2001

THIRD DISTRICT

# IN THE APPELLATE COURT OF ILLINOIS

## THIRD JUDICIAL DISTRICT

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of the 14th Judicial Circuit, |
| Plaintiff-Appellee, | ) | Rock Island County, Illinois. |
| | ) | |
| -vs- | ) | No. 94-CF-649 |
| | ) | |
| DAVID ALLEN GREER, | ) | Honorable |
| | ) | James Teros, |
| Defendant-Appellant. | ) | Presiding Judge. |

## BRIEF AND ARGUMENT

## FOR

## DEFENDANT-APPELLANT

ROBERT AGOSTINELLI
Deputy Defender

KENNETH D. BROWN
Assistant Defender
Office of the State Appellate Defender
Third Judicial District
1100 Columbus Street
Ottawa, Illinois 61350
(815) 434-5531

COUNSEL FOR APPELLANT

Oral Argument Requested

EXHIBIT G

## POINTS AND AUTHORITIES

**I. The trial court erred when, over defense objections, it permitted the jury to take into the jury room, during deliberations, the transcripts of prior consistent statements that the State's two eyewitnesses had given to the police.**

People v. Emerson, 97 Ill.2d 487, 455 N.E.2d 41 (1983) ............ 18

People v. Clark, 52 Ill. 2d 374, 288 N.E.2d 363 (1972) ............. 18

People v. Lambert, 288 Ill. App. 3d 450, 681 N.E.2d 675
(2d Dist. 1997) ......................................... 18

People v. West, 263 Ill. App. 3d 1041, 636 N.E.2d 948
(1st Dist. 1994) ......................................... 18

People v. Tidwell, 88 Ill. App. 3d 808, 410 N.E.2d 1163
(1st Dist. 1980) ......................................... 18

People v. Sanders, 59 Ill. App. 3d 650, 375 N.E.2d 921
(5th Dist. 1978) ......................................... 18

People v. Carr, 53 Ill. App. 3d 492, 368 N.E.2d 128
(2d Dist. 1977) ......................................... 18

**A. The prior consistent statement of Steve Fuhlman should not have gone back to the jury where there was no evidence that Fuhlman had recently fabricated his testimony or that the prior statement was made before he had a motive to lie.**

People v. Emerson, 97 Ill.2d 487, 455 N.E.2d 41 (1983) ........ 20, 21

People v. Clark, 52 Ill.2d 374, 288 N.E.2d 363 (1972) ........... 20, 21

People v. Lambert, 288 Ill. App. 3d 450, 681 N.E.2d 675
(2nd Dist. 1997) ......................................... 21

People v. West, 263 Ill. App. 3d 1041, 636 N.E.2d 948
(1st Dist. 1994). ......................................... 21

People v. Smith, 139 Ill. App. 3d 21, 486 N.E.2d 1347
(1st Dist. 1985) ......................................... 21

**B. The prior consistent statement of Gary Davis should not have gone back to the jury because 1) the danger existed that the jury considered the statement as substantive evidence, and 2) the statement contained prejudicial information that the defendant was a gang member.**

ii

People v. Gonzalez, 142 Ill. 2d 481, 568 N.E.2d 864 (1991) . . . . . . . . . 24

People v. Smith, 141 Ill. 2d 40, 565 N.E.2d 900 (1990) . . . . . . . . . . 24, 25

People v. Hairston, 46 Ill. 2d 348, 263 N.E.2d 840 (1970) . . . . . . . . . . 25

People v. Lambert, 288 Ill. App. 3d 450, 681 N.E.2d 675
(2d Dist. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

People v. Goldsberry, 259 Ill. App. 3d 11, 630 N.E.2d 1113
(1st Dist. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

People v. Maldonado, 240 Ill. App.3d 470, 608 N.E.2d 499
(1st Dist. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 25

People v. Wurster, 83 Ill. App. 3d 399, 403 N.E.2d 1306
(3d Dist. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

People v. Carr, 53 Ill. App. 3d 492, 368 N.E.2d 128
(2d Dist. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

People v. Parrott, 40 Ill. App. 3d 328, 352 N.E.2d 299
(1st Dist. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

**C. The trial court's decision to send the prior consistent statements of Fuhlman and Davis to the jury constituted reversible error.**

People v. Miller, 302 Ill. App. 3d 487, 706 N.E.2d 947
(1st Dist. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25-27

People v. Lambert, 288 Ill. App. 3d 450, 681 N.E.2d 675
(2d Dist. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 26

People v. Smith, 139 Ill. App. 3d 21, 486 N.E.2d 1347
(1st Dist. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 27

People v. Carr, 53 Ill. App. 3d 492, 368 N.E.2d 128 (2d Dist. 1977) . . . 26

**II. The trial court also erred in allowing the State's request that Gary Davis be called to the stand as a court's witness because the State failed to establish a proper foundation for the procedure and there was no need to call Davis as a court's witness under current law.**

730 ILCS 5/115-10.1 (West 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

iii

Supreme Court Rule 238 ................................... 30, 31

Supreme Court Rule 433 ..................................... 30

People v. R.D., 155 Ill. 2d 122, 613 N.E.2d 706 (1993) ............ 28

People v. Dennis, 47 Ill. 2d 120, 265 N.E.2d 385 (1970) ........... 28

People v. Collins, 25 Ill. 2d 605, 186 N.E.2d 30 (1962) ............ 30

People v. Moriarity, 33 Ill. 2d 606, 213 N.E.2d 516 (1966) ......... 28

People v. Robinson, 14 Ill. 2d 325, 153 N.E.2d 65 (1958) .......... 28

Dear v. Chicago Transit Authority, 72 Ill. App.3d 729, 391 N.E.2d 119
(1st Dist. 1979) ........................................... 31

## **NATURE OF THE CASE**

The defendant, David Allen Greer, was charged by indictment with the offense of first degree murder.  Following a jury trial, he was convicted of the offense and sentenced to a term of imprisonment of 50 years.

On appeal, the defendant's conviction was reversed and the cause remanded for a new trial.  On remand, the defendant was tried by a jury.  He was convicted of first degree murder and sentenced to a prison term of 50 years.

No question is raised concerning the indictment.

2

## ISSUES PRESENTED FOR REVIEW

I. WHETHER THE TRIAL COURT ERRED WHEN, OVER DEFENSE OBJECTIONS, IT PERMITTED THE JURY TO TAKE INTO THE JURY ROOM, DURING DELIBERATIONS, THE TRANSCRIPTS OF PRIOR CONSISTENT STATEMENTS THAT THE STATE'S TWO EYEWITNESSES HAD GIVEN TO THE POLICE.

A. WHETHER THE PRIOR CONSISTENT STATEMENT OF STEVE FUHLMAN SHOULD HAVE GONE BACK TO THE JURY WHERE THERE WAS NO EVIDENCE THAT FUHLMAN HAD RECENTLY FABRICATED HIS TESTIMONY OR THAT THE PRIOR STATEMENT WAS MADE BEFORE HE HAD A MOTIVE TO LIE.

B. WHETHER THE PRIOR CONSISTENT STATEMENT OF GARY DAVIS SHOULD HAVE GONE BACK TO THE JURY BECAUSE 1) THE DANGER EXISTED THAT THE JURY CONSIDERED THE STATEMENT AS SUBSTANTIVE EVIDENCE, AND 2) THE STATEMENT CONTAINED PREJUDICIAL INFORMATION THAT THE DEFENDANT WAS A GANG MEMBER.

C. WHETHER THE TRIAL COURT'S DECISION TO SEND THE PRIOR CONSISTENT STATEMENTS OF FUHLMAN AND DAVIS TO THE JURY CONSTITUTED REVERSIBLE ERROR.

3

**II. WHETHER THE TRIAL COURT ALSO ERRED IN ALLOWING THE STATE'S REQUEST THAT GARY DAVIS BE CALLED TO THE STAND AS A COURT'S WITNESS BECAUSE THE STATE FAILED TO ESTABLISH A PROPER FOUNDATION FOR THE PROCEDURE AND THERE WAS NO NEED TO CALL DAVIS AS A COURT'S WITNESS UNDER CURRENT LAW.**

4

## **JURISDICTION**

The defendant's appeal is from a final judgment of conviction under the Constitution of the State of Illinois, Article VI, Section 6, and Illinois Supreme Court Rule 606(b). Following a jury trial, the defendant was found guilty of first degree murder. He was sentenced on March 1, 1995, and filed a timely notice of appeal (C182-183).

On appeal, the defendant's conviction was reversed and the cause remanded for a new trial (C219-230).

On remand, the defendant was tried by a jury and convicted again of first degree murder. On August 6, 1999, the defendant was sentenced to a term of imprisonment of 50 years (C387; R1477-1491). On August 11, 1999, the defendant filed a motion to reconsider sentence; the motion was heard and denied on September 10, 1999 (C388-389; R1494-1496). The defendant filed a timely notice of appeal on September 14, 1999 (C391).

5

## STANDARDS OF REVIEW

I. The standard of review with respect to this issue is whether the court below abused its discretion in deciding what exhibits should be given to the jury.  People v. Lambert, 288 Ill. App. 3d 450, 681 N.E.2d 675, 677 (2d Dist. 1997).

II. The standard of review with respect to this issue is whether the trial court abused its discretion in allowing the State's request that a witness be called as a court's witness. People v. Robinson, 14 Ill. 2d 325, 153 N.E.2d 65, 70 (1958).

6

**STATEMENT OF FACTS**

On August 24, 1994, the defendant, David Allen Greer, was charged by indictment with the offense of first degree murder (C2). Specifically, the indictment alleged that, on July 13, 1993, the defendant, without lawful justification, fired a handgun at Brandon Ellison, shooting him in the back, knowing that such acts created a strong probability of death or great bodily harm to Ellison, thereby causing Ellison's death.

Following a jury trial that commenced on November 15, 1994 (R125, et seq.), the defendant was convicted of first degree murder (R801; C131). During post-trial proceedings, Gary Davis, who had testified at trial for the State, recanted his trial testimony. At trial, Davis testified that he saw the defendant shoot Brandon Ellison with a gun on the date in question in the area of the Arsenal Courts in Rock Island (R453-454, 456-458). In his post-trial motion, the defendant requested a new trial based upon a letter the defendant received from Gary Davis which indicated that Davis' testimony at trial was not the truth because Davis was not present in the Arsenal Courts on the date in question and did not see the shooting (C143-146).

At the hearing on the defendant's post-trial motion on February 16, 1995, Gary Davis testified that he sent the letter to the defendant in January of 1995 (R816-819). Davis further testified that he did not see the defendant shoot Brandon Ellison as he had previously testified (R819). At the conclusion of the hearing, the trial court denied the defendant's request for a new trial based on the recantation of Gary Davis (R894-897).

On appeal, this Court reversed the defendant's conviction and remanded the cause for a new trial based upon the trial court's improper restriction of cross-examination of a State's witness (C219-230). People v. Greer, 293 Ill. App. 3d 861, 689 N.E.2d 134 (3d Dist. 1997).

7

The defendant was retried for the offense of first degree murder at a jury trial commencing on July 6, 1999 (R1005, et seq).

For the State, Rock Island police officer Thomas Mulder testified that, about 7:20 p.m. on July 13, 1993, he arrived at the scene of the shooting of Brandon Ellison (R1055-1057). Officer Mulder found Ellison's body halfway down an alley between Fifth and Sixth Streets (R1061). Mulder examined a .22 caliber revolver that he found on Ellison's left side (R1067-1068). He found four live rounds in the gun, one empty cylinder, and one discharged empty shell casing directly under the hammer (R1068-1069).

Ernestine Senter testified that, between 4 p.m. and 4:30 p.m. on July 13, 1993, she and her husband were on the front porch of their house at 1417 Fifth Street (R1090-1094). At this time, Ernestine heard three rapid shots followed by two more shots (R1092). The shots came from the area of a little park across from her house in the Arsenal Courts (R1093). As Ernestine got down for cover, she saw a young man run from the park to Fifth Street and then to the alley north of her house (R1094-1097). The young man went into the alley, came back out, and went into the alley again (R1098-1099). Ernestine testified that the young man who ran into the alley did not fire any shots (R1102-1103).

Allen Senter, the husband of Ernestine Senter, testified via a videotaped evidence deposition pursuant to the trial court's finding that he was unavailable to testify at trial (R1022-1041, 1111; Ex 1). Senter testified that he heard three shots fired on July 13, 1993, when he was on the front porch of his house with his wife (EX1 at 4-5). When the shots were fired, Allen saw a man running from the Arsenal Courts, across the street, and into the alley (EX1 at 4-5). The man then came back out of the alley and pointed a gun (EX1 at 7-8). Allen testified that the man did not fire the gun (EX1 at 8).

Clarence Ellison, the father of Brandon Ellison, identified a photograph of his son and testified that Brandon died on July 13, 1993 (R1144-1146).

8

The next witness to testify was Gary Davis. Prior to Davis' testimony, the prosecutor requested that Davis be called as a court's witness (R1122-1126). In support of this request, the prosecutor argued that, based on Davis' recantation after the defendant's first trial, the State could not vouch for his credibility (R1124-1128). Following defense counsel's objection, the trial court asked the prosecutor to make an offer of proof (R1128-1134).

In the offer of proof, Gary Davis testified that he knew Brandon Ellison and the defendant (R1149-1151). Davis testified that he was present in the Arsenal Courts when the defendant confronted Ellison, pulled out a pistol, and shot Ellison after Ellison took off running (R1151-1161).

Following this testimony, defense counsel argued that the State failed to meet its burden of showing it could not vouch for Davis' credibility because Davis' testimony in the offer of proof was consistent with the State's theory (R1165). The court then asked the State why it was asking that Davis be made a court's witness (R1165). After indicating that its request was based on Davis' prior recantation, the State resumed its offer of proof (R1165).

Upon resumption of the offer of proof, Davis testified that, on February 16, 1995, he testified under oath that he did not see the shooting (R1166). He admitted that he wrote a letter to the defendant -- dated January 3, 1995 -- in which he stated that he did not see the shooting (R1167). Upon questioning by the court, Davis testified that the first version he gave was true -- that the defendant killed Brandon Ellison (R1168). Davis then added, "I swore my life today. No more am I scared of you, homeboy, you killed my homeboy" (R1168). Davis explained that he recanted his original version to protect his family (R1168-1170).

Following the offer of proof, defense counsel objected to Davis being called as a court's witness because, although he had given different statements, Davis was now cooperating with the State and, if anything, was hostile to the defendant (R1171-1172).

9

Defense counsel noted that Davis' recantation was impeachment material and that, while many witnesses are impeached, they are not made court's witnesses (R1172). Upon questioning by the court, counsel indicated that, as with any prior inconsistent statement, he intended to impeach Davis with the prior statement (R1172-1173).

After hearing the offer of proof and the arguments of counsel, the trial court found that neither party could vouch for the credibility of Davis (R1173-1176). The court determined that it would call Davis as a court's witness and allow both parties to cross-examine him (R1176). When the jury returned to the courtroom, the court informed the jurors as follows:

> THE COURT: You may be seated. Ladies and gentlemen, the next witness called is a Gary Davis. The court has declared Mr. Davis a court witness. What a court witness is is a person who is called to testify he is not either called by the State because they cannot vouch for his credibility, nor is he a defense witness, but what he has is statements that are material to the issues in fact in this case, and issues involved in the murder prosecution here. Both sides, the State, and the defense, will be allowed to cross-examine him as to the events that occurred on July 13, 1993 (R1178).

Upon examination by the State, Gary Davis testified that Brandon Ellison, whose nickname was "Little Lord," was a good friend of his (R1179). Davis also knew the defendant, whose nickname was "Crock" (R1180-1181). Davis testified that he was present in the Arsenal Courts when Ellison was killed (R1179). On that day, Davis arrived at the Arsenal Courts about 4 p.m. (R1180). Among others, the defendant, the defendant's girlfriend (Betty Rhoden), and Brandon Ellison were there (R1180-1181).

Davis testified that, while he was at the Arsenal Courts that day, he told Brandon Ellison that Brandon had a hard head and that he did not listen (R1181). Davis said this because Brandon had hit Ronnie Greer, the defendant's brother, on the side of the head and discharged a firearm (R1182). After Davis said this, the defendant and Brandon walked towards each other (R1182-1185). Davis heard the defendant say, "Little bitch, I told you

I was going to get you" (R1185). Davis then saw a pistol in the defendant's hand after the defendant raised his shirt up (R1186). Next, Brandon Ellison turned and ran (R1186). Davis testified that the defendant shot the pistol one time and it misfired (R1186). The defendant shot again, and Brandon started stumbling (R1186). At this point, Davis ran to a nearby porch (R1186). When he got there, he saw Brandon running on Fifth Street and heard two more shots (R1186-1188). He then saw Brandon running towards an alley (R1189). Davis testified that he did not see Brandon make any attempt to pull out a weapon, although Brandon was known to carry a gun (R1186-1887, 1190-1191). According to Davis, he called the Rock Island Police Department the day after the shooting and went to the police station, where he identified the defendant from a photographic lineup (R1191-1192).

Upon examination by the defense, Davis testified that he had six prior felony convictions (R1192-1193). He also testified that, in February of 1995, he testified under oath in this case that he did not see the defendant shoot anybody, that he was not present when the shooting occurred, and that he had put a story together based on what he had heard from others (R1194-1195). Davis testified that he also wrote a letter to the defendant in which he told the defendant he knew nothing about the shooting (R1195).

Davis went on to testify that the defendant was already in the Arsenal Courts when Davis arrived at 4 p.m. (R1196). Brandon Ellison arrived shortly after 6 p.m. (R1196). During this time, the defendant did not leave the park (R1196). Davis testified that he saw the defendant aim the gun at Brandon and, after the first shot misfired, Davis saw Brandon get hit with the second shot (R1201-1204). He testified that the defendant was wearing black shorts, a dark shirt, and white tennis shoes that day; he did not remember if the defendant was wearing a hat (R1206).

The State then examined Gary Davis again. Davis testified that, after the shooting, he saw the defendant again in the park about 9 or 10 p.m. (R1207). He further testified that,

·11

in November of 1994, he testified for the prosecution at an earlier hearing in this case (R1207). He testified that, at the prior hearing, he gave the same account he had given in this trial (R1208). Davis further testified that People's Exhibit No. 11 was a transcript of a tape-recorded interview he gave Officer Mulder on July 14, 1993, the day after the shooting, at the time he identified the defendant from an array of photographs (R1191-1192, 1214). Davis testified that his transcribed statement was consistent with the testimony he had given in the present trial (R1214-1215). The court admitted People's Exhibit No. 11, but the defense reserved the right to object to its publication to the jury (R1215).

The prosecutor then asked Davis why he recanted his testimony (R1215). Davis testified that he changed his testimony because the area he came from was highly gang affiliated and he knew that, by making a statement against the defendant, Davis' family could be in jeopardy and he wanted to protect his family (R1216). Upon final examination by the defense, Davis testified that he was now taking his oath seriously because his family was backing him (R1217-1218).

The State then resumed its case by calling Dr. Shaku Teas to the stand. Dr. Teas testified that she performed the autopsy on Brandon Ellison on July 14, 1993 (R1231-1235). Dr. Teas determined that the cause of death was a gunshot wound to the back (R1235-1237). On cross-examination, she testified that a person could run a great distance and then collapse with such a wound (R1239-1240).

Steve Fuhlman testified that, on July 13, 1993, he and his family were living at 1419 - Fifth Street in Rock Island (R1240-1242). Prior to July 13, Fuhlman had seen the defendant every couple of days, for six months to a year, standing and talking to people on Fifth Street (R1244-1245). Fuhlman had also spoken with the defendant face-to-face once or twice on the side of Fuhlman's house about working on a car (R1243). In the summer of 1993, Fuhlman made a living working on cars that people brought to his house (R1243-1244). He

12

testified that, about 10 or 11 a.m. on July 13, he saw the defendant walk past his house and head toward the Arsenal Courts (R1268).

Fuhlman testified that, at about 5:45 p.m. on July 13, he was working on his family's car, which was parked on Fifteenth Avenue at the corner (R1245-1246). As Fuhlman was putting a hubcap on the front driver's side, he heard a commotion coming out of the Arsenal Courts (R1246). Fuhlman saw a man with a gun chasing another man (R1246-1247). When the man with the gun came to the corner of a building, he fired two shots and then a third shot (R1246-1247, 1249). Fuhlman identified the defendant as the shooter (R1247, 1253). He testified that, a day after the shooting, he was asked by a female detective who came to his home to look at six photographs (R1252-1253). Fuhlman testified that he selected the defendant's photograph as being the shooter (R1252).

On cross-examination, Steve Fuhlman testified that the shooter was wearing dark knee-high shorts, a light-colored shirt, and a turquoise bandana around his head which was tied in the back "gypsy style" (R1253-1254). The bandana stood out on a bright day (R1254). Fuhlman recalled giving the police a statement on July 14 in which he told an officer the shooter was 5'8" or 5'10" tall, had a stocky build and was 28 to 32 years old (R1254-1256, 1259). Fuhlman also testified that the first police officer he talked to asked him if he would be able to identify the shooter (R1260). Fuhlman told the officer he was not sure (R1260). According to Fuhlman, he told the officer he was not sure because he did not want to get involved, even though he knew who the shooter was (R1260).

On redirect examination, Fuhlman testified that police officers came to his house about an hour after the shooting (R1269). It was at this time that Fuhlman told the officers he was not sure he could identify the shooter (R1269-1270). He gave these officers a description of what he had seen and, based upon that, the officers sent a female detective to his house the next day (R1270). Fuhlman gave the female detective a tape-recorded

13

statement which was transcribed in People's Exhibit No. 8 (R1270-1271). The court admitted People's Exhibit No. 8, but defense counsel reserved the right to object to its publication to the jury (R1271).

Outside the presence of the jury, the prosecutor asked Steve Fuhlman to explain why he was reluctant to come forward with information about who had done the shooting (R1273). Fuhlman responded that he was reluctant because he knew the defendant to be gang leader (R1272-1273). Defense counsel objected to any testimony that Fuhlman knew the defendant to be a gang leader (R1273). The trial court sustained the objection, ruling that character was not at issue and it was "going to deny anything about the gang activity at this point" (R1273).

Patricia Jo Dooley, a Rock Island police detective, testified that she went to Steve Fuhlman's house on July 14, 1993, and showed him six photographs (R1279-1280). Fuhlman selected the photograph of the person he said was the shooter (R1280-1281). Officer Dooley testified that she also took a taped statement from Fuhlman on that date (R1281).

As the final witness in its case-in-chief, the State recalled Officer Thomas Mulder. Mulder testified that, on the day after the shooting, he showed Gary Davis pictures of six persons and asked him to identify the person who shot Brandon Ellison (R1304). Davis selected the photo of the defendant (R1304-1305).

For the defense, Melvin Quick testified that he ran a convenience store at his residence at 1501 Fifth Street, and that his residence was across the street from Steve Fuhlman's residence (R1308-1309). Quick testified that, immediately after the shooting on July 13, 1993, he looked out his window and saw Fuhlman sitting on the ground fixing his car tire (R1311). He testified that Fuhlman stayed at his car and never got up (R1315). Quick also testified that Fuhlman's car was parked by the tree on Fuhlman's property, about

14

one-half car length farther back than the location of the car as depicted in the photograph taken by the police (R1312-1313). Quick had previously been convicted of theft (R1321).

Betty Rhoden, who was the defendant's girlfriend on the date of the incident, testified that she spent nearly the entire day of July 13, 1993, with the defendant (R1334-1337). They were in the process of moving into the residence of her grandmother, Lillie Rhoden, at 1421 Seventh Street (R1335). She and the defendant spent the day painting and cleaning with many others (R1336, 1339-1342). Betty left the house between 6:00 and 6:30 p.m., but the defendant stayed at the house (R1336-1337). About an hour before that, Betty left the house with the defendant and her grandmother (R1337). They returned in ten or fifteen minutes (R1337). Betty testified that she had an aggravated battery conviction (R1350).

Henry Rhoden testified that he spent the entire day of July 13, 1993, at the house of his mother, Lillie Rhoden, at 1421 Seventh Street in Rock Island (R1323-1324, 1327, 1329-1330). Henry was painting the basement with the defendant, Betty Rhoden, and Steve Slater (R1325). He testified that the defendant was at the house all day, except for about ten minutes when the defendant left between 5 and 5:30 p.m. with Betty and Lillie (R1324-1325). The defendant came back and helped finish painting, and he remained at the house until 9:30 or 10 p.m. (R1325-1326, 1330-1331). Henry testified that he had several felony convictions (R1333-1334).

Lewis Pemberton testified that he was hired by the defendant to put down some carpeting and do some painting at the residence in Rock Island on July 13, 1993 (R1350-1352). Pemberton testified that the defendant was there all day and, when Pemberton left in the late afternoon, the defendant was still at the house (R1355-1356). About ten minutes later, as he walked on Fifteenth Avenue about a block away from Quick's store, he heard two shots (R1356-1358, 1359-1362). Pemberton saw Steve Fuhlman working on the brakes of his car, which was parked by a tree across from Quick's store (R1358-59).

15

In his own behalf, the defendant testified that he was 5'5" tall, weighed 165 pounds, and was 25 years old in July of 1993 (R1369-1370). He was convicted of burglary in 1986 (R1370). On July 13, 1993, he was at Lillie Rhoden's house painting and getting ready to move in (R1370). He left the house that morning for about 20 minutes to get utensils and paint (R1373). He left the house again between 5 and 5:30 p.m. with Betty and Lillie Rhoden (R1371, 1373). They went to Mr. Quick's store, where the defendant congregated with some people (R1373-1374). They stayed about 15 or 20 minutes and got back to Lillie's house between 5 and 5:30 p.m. (R1373-1374).

The defendant testified that he did not leave the house after 5:30 p.m. (R1374-1375). He testified that he did not go to the Arsenal Courts on the date in question (R1374-1375). The defendant denied chasing anyone through the Arsenal Courts, and he testified that he did not shoot anybody (R1375).

In rebuttal for the State, Officer Patricia Jo Dooley testified she spoke with the defendant at the police station on July 14, 1993 (R1384). At this time, the defendant told Dooley he left the house only once on July 13; he did not mention leaving the house in the morning for paint (R1384).

Rock Island police officer Bill Sowards testified that he spoke to Betty Rhoden at the police station on July 14, when she came to the police station with the defendant (R1388-1389). According to Sowards, Betty never mentioned that Henry Rhoden was at the house at 1421 Seventh Street on July 13 (R1390-1391). Betty told Sowards that she made one trip from the house that day; she left by herself at 6:15 p.m. and when she returned the defendant was still there (R1391). She told Sowards the defendant was at the house all day (R1391). On July 15, Betty gave a taped statement in which she said she left the house with the defendant at 5 or 5:15 p.m. on the day in question (R1392).

16

Peggy Teague testified that she saw the defendant walking through the Arsenal Courts about 11 a.m. on July 13, 1993 (R1405-1407).

Laverne Bester testified that she was living in the Arsenal Courts apartments during the summer of 1993 (R1409). She testified she had known the defendant all of his life (R1411). On July 13, she heard shots being fired when she was sitting in the park just outside her apartment, where she had been sitting since 3 p.m. (R1410-1411). Bester testified that she saw the defendant in the park in the Arsenal Courts before the shots were fired (R1411). The defendant left about 20 to 25 minutes before the shots were fired (R1411-1412). Bester testified that she saw the defendant again about 15 to 20 minutes after the shooting (R1412). When the shots were fired, Betty Rhoden was standing 20 to 30 feet away from Bester (R1412).

On cross-examination, Bester testified that she saw the defendant on and off all day (R1413-1414). She testified that she went into her house to watch the news about 5 or 5:15 p.m., and she came back outside after she watched the news (R1414). Bester remembered testifying at a previous hearing in 1994 and being asked what she did after 5 p.m. (R1414-1415). She recalled answering that she went in the house to watch the news (R1415). She was then asked at the hearing if the shooting occurred before the news came on, and she answered yes (R1415-1416). Bester testified it was not true that she had only seen the defendant before the news came on (R1416).

Following closing arguments (R1431-1466), the parties discussed which exhibits should go back to the jury (R1466-1470). Over a defense objection, the court allowed the transcript of Steve Fuhlman's tape-recorded statement to the police [People's Exhibit No. 8] to go back to the jury (R1468). Also over a defense objection, the court allowed the transcript of Gary Davis' tape-recorded statement to the police [People's Exhibit No. 11] to go back to the jury (R1468).

17

After deliberations, the jury found the defendant guilty of first degree murder (R1471; C351).

On August 6, 1999, the trial court sentenced the defendant to a prison term of 50 years (R1491; C387). The defendant's motion to reconsider the sentence was heard and denied on September 10, 1999 (C388-389; R1494-1496).

The defendant filed a timely notice of appeal on September 14, 1999, and the Office of the State Appellate Defender was appointed to represent him (C391-392).

18

## I. THE TRIAL COURT ERRED WHEN, OVER DEFENSE OBJECTIONS, IT PERMITTED THE JURY TO TAKE INTO THE JURY ROOM, DURING DELIBERATIONS, THE TRANSCRIPTS OF PRIOR CONSISTENT STATEMENTS THAT THE STATE'S TWO EYEWITNESSES HAD GIVEN TO THE POLICE.

It is well settled that the testimony of a witness cannot be bolstered or supported by evidence that the witness has made prior consistent statements out of court.  People v. Emerson, 97 Ill.2d 487, 455 N.E.2d 41 (1983); People v. Clark, 52 Ill. 2d 374, 288 N.E.2d 363 (1972).  Such "corroboration by repetition" is likely to cause the jury to attach more credibility to the witness' story because it is the most often repeated.  People v. West, 263 Ill. App. 3d 1041, 636 N.E.2d 948, 953 (1st Dist. 1994); People v. Sanders, 59 Ill. App. 3d 650, 375 N.E.2d 921, 925 (5th Dist. 1978).   However, to rebut a charge or an inference that the witness is motivated to testify falsely or that his testimony is of recent fabrication, a prior consistent statement may be introduced if it was made prior to the time that the motive to fabricate came into existence.  People v. Emerson, 455 N.E.2d at 47; People v. Clark, 288 N.E.2d at 371; People v. Tidwell, 88 Ill. App. 3d 808, 410 N.E.2d 1163, 1165 (1st Dist. 1980).

Generally, the trial court has considerable discretion in deciding what exhibits should be given to the jury.  People v. Carr, 53 Ill. App. 3d 492, 368 N.E.2d 128, 131 (2d Dist. 1977).  The court's decision will not be reversed on appeal unless there was an abuse of such discretion prejudicial to the defendant.  People v. Lambert, 288 Ill. App. 3d 450, 681 N.E.2d 675, 677 (2d Dist. 1997); People v. Carr, 368 N.E.2d at 131.

In the case at bar, the trial court committed reversible error when it permitted the jurors to take with them, during deliberations, the transcripts of prior consistent statements given to the police by the State's two eyewitnesses, Steve Fuhlman and Gary Davis.

19

## A. THE PRIOR CONSISTENT STATEMENT OF STEVE FUHLMAN SHOULD NOT HAVE GONE BACK TO THE JURY WHERE THERE WAS NO EVIDENCE THAT FUHLMAN HAD RECENTLY FABRICATED HIS TESTIMONY OR THAT THE PRIOR STATEMENT WAS MADE BEFORE HE HAD A MOTIVE TO LIE.

At the defendant's jury trial, Steve Fuhlman was an important witness for the State. Fuhlman testified that, on the date in question, he was working on his car across the street from the Arsenal Courts when he saw a man with a gun chasing another man (R1245-1247). According to Fuhlman, when the man with the gun came to the corner of a building, he fired two shots and then a third (R1246-1247, 1249). Fuhlman identified the defendant as the shooter (R1247, 1253).

Because of Fuhlman's identification of the defendant, of course, the defense was interested in discrediting him. During cross-examination, Fuhlman testified that the first police officer he talked to asked him if he would be able to identify the shooter (R1260). Fuhlman told the officer he was not sure (R1260). According to Fuhlman, he told the officer he was not sure because he did not want to get involved, even though he knew who the shooter was (R1260). Also on cross-examination, the defense was able to establish that Fuhlman told the police the shooter had a stocky build, was 5'8" or 5'10" tall, and was 28 to 32 years old (R1254-1256, 1259). Defense evidence showed that the defendant was 5'5" tall, weighed 165 pounds, and was 25 years old on the date in question (R1369-1370).

On redirect examination, Fuhlman testified that police officers came to his house about an hour after the shooting (R1269). He testified that it was at this time he told the officers he was not sure he could identify the shooter (R1269-1270). Fuhlman gave these officers a description of what he had seen and, based upon that, the officers sent a female

20

detective to his house the next day (R1270). Fuhlman testified that he gave the female detective a tape-recorded statement which was transcribed in People's Exhibit No. 8 (R1270-1271). Pursuant to the State's motion, the court admitted People's Exhibit No. 8, but defense counsel reserved the right to object to its publication to the jury (R1271).

After closing arguments, the parties discussed which exhibits should go back to the jury (R1466-1470). Over a defense objection, the court allowed the transcript of Steve Fuhlman's tape-recorded statement to the police [People's Exhibit No. 8] to go back to the jury (R1468).

The trial court's ruling was erroneous. As already mentioned, the testimony of a witness cannot be bolstered by evidence that he made prior consistent statements. People v. Emerson, 97 Ill.2d 487, 455 N.E.2d 41 (1983); People v. Clark, 52 Ill.2d 374, 288 N.E.2d 363 (1972).

The transcript of Steve Fuhlman's tape-recorded statement to the female detective [Patricia Jo Dooley] was clearly consistent with his trial testimony. In the statement, Fuhlman reiterated many of the details of his trial testimony. At trial, Fuhlman testified that he selected the defendant's photograph as the shooter from an array of six photographs Dooley showed him (R1252-1253); he testified he had seen the defendant in the neighborhood every couple of days for six months to a year (R1244-1245); he described what the defendant was wearing, including a turquoise bandana "gypsy style" (R1253-1254); and he testified that, while working on his car, he saw the defendant fire two shots and then a third from the corner of a building in the Arsenal Courts (R1246-1247, 1249). In the prior statement to Officer Dooley, the defendant identified the person he selected when Dooley showed him the photographic lineup; he indicated that the person in the photograph was the shooter; he described what the shooter was wearing, including a green bandana "gypsy style"; he indicated that he had seen the shooter in the neighborhood on a daily basis; and he

21

indicated that he saw the subject in the photograph fire two shots and then a third from the corner of a building in the Arsenal Courts (People's Exhibit No. 8, pages 1-5; copy attached at Appendix B).

Moreover, the defense presented no evidence that Steve Fuhlman recently fabricated his testimony or that the prior consistent statement was made before he had a motive to lie. Thus, the transcript of Fuhlman's prior consistent statement was inadmissible and should not have gone back to the jury. People v. Emerson, 455 N.E.2d at 47; People v. Clark, 288 N.E.2d at 371); People v. West, 263 Ill. App. 3d 1041, 636 N.E.2d 948, 953 (1st Dist. 1994).

By permitting the transcript to go back to the jury, the trial court allowed the State to improperly bolster Fuhlman's credibility. Since the jurors were able to review the transcript during deliberations, the danger existed that the jury attached disproportionate significance to the prior consistent statement. People v. Smith, 139 Ill. App. 3d 21, 486 N.E.2d 1347, 1355 (1st Dist. 1985). This danger existed, as the case law has noted, because people tend to believe that which is repeated most often, regardless of its intrinsic merit, and repetition lends credibility to testimony that it might not otherwise deserve. People v. Smith, 486 N.E.2d at 1355; People v. Lambert, 288 Ill. App. 3d 450, 681 N.E.2d 675, 680 (2nd Dist. 1997) (corroboration by repetition "preys on the human failing of placing belief in that which is most often repeated").

In this case, therefore, the trial court erred in overruling the defendant's objection and permitting the transcript of Fuhlman's prior consistent statement to go back to the jury.

**B.   THE PRIOR CONSISTENT STATEMENT OF GARY DAVIS SHOULD NOT HAVE GONE BACK TO THE JURY BECAUSE 1) THE DANGER EXISTED THAT THE JURY CONSIDERED THE STATEMENT AS SUBSTANTIVE EVIDENCE, AND 2) THE STATEMENT CONTAINED PREJUDICIAL**

22

## INFORMATION THAT THE DEFENDANT WAS A GANG MEMBER.

At trial, Gary Davis testified that he was present in the Arsenal Courts when the defendant confronted Brandon Ellison, pulled out a gun, and shot Ellison after Ellison turned and ran (R1181-1191, 1201-1204). Davis admitted that he had previously testified under oath, in February of 1985, that he was not present when the shooting occurred and did not see the defendant shoot anybody (R1192-1195). In response to this admission, the State elicited testimony from Davis that, in November of 1994, he testified at a prior hearing in this case and gave the same account he had given in this trial (R1207-1208).

Davis further testified that People's Exhibit No. 11 was a transcript of a tape-recorded interview he gave Officer Mulder on July 14, 1993, the day after the shooting of Brandon Ellison (R1191-1192, 1214). Davis testified that his transcribed statement was consistent with the testimony he had given in the present trial (R1214-1215). The court admitted People's Exhibit No. 11, but the defense reserved the right to object to its publication to the jury (R1215). Following closing arguments, and over a defense objection, the trial court allowed the exhibit to go back to the jury (R1468) (a copy of People's Exhibit No. 11 is attached at Appendix C).

The trial court's ruling was erroneous. The court should not have allowed the jury to take the transcript of Davis' prior consistent statement into the jury room during deliberations. It is true that the statement was admissible because the defense introduced evidence that Davis had recently fabricated his testimony. However, the statement should not have gone back to the jury because 1) the danger existed that the jury considered it as substantive evidence, and 2) the statement contained prejudicial information about the defendant that was inadmissible.

23

First, there was a significant danger that the jury considered Davis' prior consistent statement as substantive evidence. Where its admission is allowed, a prior consistent statement is permitted solely for rehabilitative purposes and not as substantive evidence. People v. Lambert, 288 Ill. App. 3d 450, 681 N.E.2d 675, 680 (2d Dist. 1997). The rationale for this rule is that credibility should not depend on the number of times a witness has repeated the same story, as opposed to the inherent trustworthiness of the story. Lambert, 681 N.E.2d at 680. Where a prior consistent statement is admitted into evidence, an instruction should be given to the jury which informs the jury of its limited rehabilitative purpose. Lambert, 681 N.E.2d at 680; People v. Wurster, 83 Ill. App. 3d 399, 403 N.E.2d 1306, 1314 (3d Dist. 1980).

In this case, the trial court did not instruct the jury about the limited purpose of Davis' prior consistent statement. Since the court did not give a limiting instruction, it is likely that the jurors considered the prior statement as substantive evidence. Consideration of the prior consistent statement as substantive evidence was improper and prejudicial. As the court in Lambert observed, allowing a prior consistent statement as substantive evidence preys on the human failing that mere repetition implies veracity. Lambert, 681 N.E.2d at 682. See also People v. Carr, 53 Ill. App. 3d 492, 368 N.E.2d 128, 132-133 (2d Dist. 1977) (trial court committed reversible error in sending prior inconsistent statements of two State witnesses to jury without adequate instructions that they were not to be considered as substantive evidence).

Second, the trial court erred in allowing the transcript of Davis' prior consistent statement to go back to the jury because the statement contained prejudicial information that the defendant was a gang member. In his transcribed statement to Officer Mulder, Davis answered questions about the defendant, whose nickname was "Crock" (R1180-1181), as follows:

24

Q. I'm currently showing you a mug photo now, is that the subject you identified as Crock?

A. Yes sir.

Q. Okay, I'd like the tape to reflect that the mug photo is of David Greer, it's Rock Island Police Dept. mug #28842, the photo was taken on the 13th day of '93, the month is not clearly displayed on the mug photo. You advised that Lord Rick and Crock are both gang members?

A. Yes, we're all in the same organization.

Q. What organization is that?

A. Vice Lords.

Q. Was Little Lord a Vice Lord also?

A. Yes. (People's Exhibit No. 11 at page 4).

The evidence that the defendant and Brandon Ellison, whose nickname was "Little Lord" (R1179), were gang members was inadmissible and should not have been given to the jury because there was no evidence whatsoever that the crime in this case was gang related or gang motivated.

Illinois courts have long recognized that evidence of an accused's affiliation with a street gang is highly inflammatory because of the bitter and widespread prejudice against street gangs. People v. Smith, 141 Ill. 2d 40, 565 N.E.2d 900, 907 (1990); People v. Maldonado, 240 Ill. App.3d 470, 608 N.E.2d 499, 503 (1st Dist. 1992); People v. Parrott, 40 Ill. App. 3d 328, 352 N.E.2d 299, 302 (1st Dist. 1976). Evidence of gang affiliation may nevertheless be admitted, but only if it is otherwise relevant and if its probative value is not outweighed by its prejudicial effect. People v. Gonzalez, 142 Ill. 2d 481, 568 N.E.2d 864, 866-87 (1991); People v. Maldonado, 608 N.E.2d at 502-503.

In this regard, it is established that evidence indicating the accused was a member of a gang or was involved in gang-related activity is admissible to show common purpose or

25

design, or to provide a motive for an otherwise inexplicable act. <u>People v. Smith</u>, 565 N.E.2d 900, 907; <u>People v. Goldsberry</u>, 259 Ill. App. 3d 11, 630 N.E.2d 1113, 1117 (1st Dist. 1994). Such evidence, however, should only be admitted where there is sufficient proof that such membership or activity is related to the crime charged. <u>People v. Smith</u>, 565 N.E.2d at 907; <u>People v. Hairston</u>, 46 Ill. 2d 348, 263 N.E.2d 840, 854 (1970); <u>People v. Goldsberry</u>, 259 Ill. App. 3d 11, 630 N.E.2d 1113, 1117 (1st Dist. 1994). The purpose of this requirement is to insure that the accused is not convicted merely because of his membership and activities in an organization that is unpopular. <u>People v. Hairston</u>, 263 N.E.2d at 854; <u>People v. Maldonado</u>, 608 N.E.2d at 503.

The evidence that the defendant and Ellison were members of the Vice Lords street gang should have not been given to the jury because there was no evidence that their purported gang membership had anything to do with the shooting. Indeed, the trial court had ruled during trial that it would not permit any evidence about gang activity (R1273). Consequently, the evidence about the defendant's gang membership in Davis' prior statement should not have gone to the jury.

## C. THE TRIAL COURT'S DECISION TO SEND THE PRIOR CONSISTENT STATEMENTS OF FUHLMAN AND DAVIS TO THE JURY CONSTITUTED REVERSIBLE ERROR.

Having concluded that the trial court erred in sending the prior consistent statements of Steve Fuhlman and Gary Davis to the jury, this Court should go on to conclude that the erroneous publication of the statements constituted reversible error.

The admission of a prior consistent statement used to bolster the sagging credibility of a witness is reversible error when the witness' in-court testimony is crucial. <u>People v. Miller</u>, 302 Ill. App. 487, 706 N.E.2d 947, 953 (1st Dist. 1998); <u>People v. Lambert</u>, 288

26

Ill. App. 3d 450, 681 N.E.2d 675, 682 (2d Dist. 1997); People v. Smith, 139 Ill. App. 3d 21, 486 N.E.2d 1347, 1355 (1st Dist. 1985). Even if sufficient competent evidence was introduced to establish a defendant's guilt beyond a reasonable doubt, there is still reversible error when the improper admission clouds the evidence to such a degree that it is impossible to tell whether the jury relied on it. People v. Miller, 706 N.E.2d at 953; Lambert, 681 N.E.2d at 682; Smith, 486 N.E.2d at 1355. A critical factor in determining whether a prior consistent statement deprived the defendant of a fair trial is whether the statement itself had a bearing upon his guilt or innocence. Miller, 706 N.E.2d at 953; Smith, 486 N.E.2d at 1355. Finally, an error in admitting evidence is reversible if it cannot be said beyond a reasonable doubt that the improperly admitted evidence did not affect the outcome of the trial. Miller, 706 N.E.2d at 953.

In the present case, the testimony of Steve Fuhlman and Gary Davis was crucial to the State's case. They were the only eyewitnesses to claim that the defendant was the shooter. Moreover, their credibility was questionable. Davis was a convicted felon who had previously testified under oath that he did not see the shooting (R1192-1195). Fuhlman originally told the police he was not sure who did the shooting (R1260, 1269-1270), and evidence showed it was doubtful Fuhlman could see the shooter from his vantage point (R1311-1315). Clearly, the introduction of the prior consistent statements of both Davis and Fuhlman was important in making their testimony that the defendant was the shooter more believable. See, e.g., Lambert, 681 N.E.2d at 682; Smith, 486 N.E.2d at 1355.

In addition, the prior statements of both Fuhlman and Davis were highly prejudicial since they bore directly on the issue of the defendant's guilt. And the prejudice was exacerbated because the statements were reduced to writing and the jurors had them in the jury room to consult at their leisure. See People v. Carr, 53 Ill. App. 3d 492, 368 N.E.2d 128, 132 (2d Dist. 1977). Furthermore, the jury's reliance on the prior statements was made

27

more likely by the fact that the prosecutor referred to each statement in his closing argument (R1453-1455, 1457-1458). See Miller, 706 N.E.2d at 953; Smith, 486 N.E.2d at 1355.

Specifically, with respect to the transcript of Davis' prior consistent statement, the prejudice was aggravated because of the possibility that the jury misused the statement as substantive evidence since it was not accompanied by a limiting instruction. See Miller, 706 N.E.2d at 953.

The prejudice was further exacerbated with respect to Davis' prior statement because of the reference to the defendant's being a member of the Vice Lords street gang. The defendant presented an alibi defense through his own testimony and the corroborating testimony of three other witnesses (R1324-1375). The inherently inflammatory nature of the defendant's affiliation with a street gang may well have influenced the jury's determination of the defendant's guilt or innocence. After all, it is a commonly held perception that people involved in street gangs are frequently connected with weapons and violence. In view of the inflammatory nature of street-gang evidence, a legitimate danger existed that the evidence prejudiced the jurors to reject the defendant's alibi and persuaded them to find the defendant guilty because he was involved in a street gang.

In light of the foregoing, it cannot be said beyond a reasonable doubt that the trial court's erroneous decision to allow the jury to take the transcripts of the prior consistent statements into the jury room did not affect the outcome of the defendant's trial. Accordingly, the defendant respectfully requests that this Honorable Court reverse his conviction and remand this cause for a new trial.

28

## II. THE TRIAL COURT ALSO ERRED IN ALLOWING THE STATE'S REQUEST THAT GARY DAVIS BE CALLED TO THE STAND AS A COURT'S WITNESS BECAUSE THE STATE FAILED TO ESTABLISH A PROPER FOUNDATION FOR THE PROCEDURE AND THERE WAS NO NEED TO CALL DAVIS AS A COURT'S WITNESS UNDER CURRENT LAW.

In the case at bar, the State requested that Gary Davis be called as a court's witness. Following an offer of proof, and over a defense objection, the trial court found that neither party could vouch for Davis' credibility, and the court determined that it would call Davis as a court's witness (C1173-1176). The trial court erred in calling Davis as the court's witness because the State failed to establish a proper foundation for such a procedure and there was no need to call Davis as the court's witness under the current state of the law.

Under proper circumstances, the court may call a witness as the court's own witness in a criminal case. People v. Robinson, 14 Ill. 2d 325, 153 N.E.2d 65, 70 (1958); People v. R.D., 155 Ill. 2d 122, 613 N.E.2d 706, 715 (1993). The practice should be sparingly used and restricted to cases where it is shown that there might otherwise be a miscarriage of justice. People v. Moriarity, 33 Ill. 2d 606, 213 N.E.2d 516, 521 (1966). Further, a proper foundation must be laid for the calling of a court's witness, which necessarily consists of the reasons why the party desiring the witness cannot vouch for his veracity, and a showing that the testimony of the witness will relate to direct issues and is necessary to prevent a miscarriage of justice. People v. Moriarity, 213 N.E.2d at 521; People v. Dennis, 47 Ill. 2d 120, 265 N.E.2d 385, 392 (1970). The decision whether to call a witness as a court's witness is a matter within the trial court's discretion and will not be disturbed on review absent an abuse of that discretion. People v. Robinson, 153 N.E.2d at 70.

Prior to the testimony of Gary Davis in this case, the State requested that Davis be called as a court's witness (R1122-1126). The State argued that, based on Davis' recantation

29

after the defendant's first trial, it could not vouch for his credibility (R1124-1128). Following a defense objection, the State made an offer of proof (R1128-1134).

In the offer of proof, Gary Davis testified that he was present in the Arsenal Courts when the defendant confronted Brandon Ellison, pulled out a gun, and shot Ellison after Ellison took off running (R1151-1161). Following this testimony, defense counsel argued that the State failed to meet its burden of showing it could not vouch for Davis' credibility because Davis' testimony in the offer of proof was consistent with the State's theory (R1165). The court then asked the State why it was asking that Davis be made a court's witness (R1165). After indicating its request was based on Davis' prior recantation, the State resumed its offer of proof (R1165).

Upon resumption of the offer of proof, Davis testified that, on February 16, 1995, he testified under oath that he did not see the shooting of Brandon Ellison (R1166). He admitted that he wrote a letter to the defendant -- dated January 3, 1995 -- in which he stated that he did not see the shooting (R1167). Upon questioning by the court, Davis testified that the first version he gave was true -- that the defendant killed Brandon Ellison (R1168). Davis then added, "I swore my life today. No more am I scared of you, homeboy, you killed my homeboy" (R1168).

Following the offer of proof, defense counsel objected to Davis being called as a court's witness because, although he had given different statements, Davis was now cooperating with the State and, if anything, was hostile to the defendant (R1171-1172). Over the defense objection, the trial court found that neither party could vouch for the credibility of Davis (R1173-1176). The court ruled that it would call Davis as a court's witness and allow both parties to cross-examine him (R1176). The court then informed the jury it was calling Gary Davis as the court's witness (R1178), and the examination of Davis followed (R1179, et seq.).

30

The trial court erred in allowing the State's request to call Gary Davis as a court's witness. In the offer of proof, Davis clearly revealed that he was not an unwilling or hostile witness for the State. Without hesitation, Davis testified that he saw the defendant shoot Brandon Ellison. He also testified that, despite his prior recantation, his version that he saw the defendant commit the crime was the truth. Thus, as the defense pointed out, Davis indicated that his testimony would be consistent with the State's theory.

In light of Davis' testimony in the offer of proof, the State had no reason to doubt his veracity or cooperation. Indeed, if anything, Davis expressed hostility toward the defendant (R1168). Under the circumstances here, therefore, the State failed to establish a sufficient foundation for the calling of Davis as the court's witness. Consequently, the trial court abused its discretion in allowing the State's request. See, e.g., People v. Collins, 25 Ill. 2d 605, 186 N.E.2d 30, 33 (1962) (some hostility toward the complaining party must develop before the trial court abuses its discretion in refusing to call a witness as a court's witness).

The trial court also abused its discretion because there was no need to call Gary Davis as the court's witness under the current state of the law. The need for calling a witness as that of the court has been all but eliminated by the amendment of Supreme Court Rule 238, effective April 1, 1982. Rule 238 provides:

**Impeachment of witnesses; Hostile Witnesses**

(a) The credibility of a witness may be attacked by any party, including the party calling him.

(b) If the court determines that a witness is hostile or unwilling, he may be examined by the party calling him as if under cross-examination.

S.Ct. Rule 238. Rule 238 has been made applicable to criminal cases by Supreme Court Rule 433. S.Ct. Rule 433.

31

In light of Rule 238, there was no need for calling Gary Davis as a witness of the court. If Davis had surprised the State by testifying before the jury that he did not witness the shooting, the State could then have impeached Davis with his prior inconsistent statement made under oath at the defendant's first trial and with his prior inconsistent statement to the police. Moreover, these prior statements would have been admissible as substantive evidence under 730 ILCS 5/115-10.1 (West 1998). In short, in view of current Rule 238 and Section 115-10.1 of the Code of Criminal Procedure, there simply was no need for the trial court to make Davis the court's own witness.

Finally, the trial court's treatment of Davis as the court's witness was prejudicial to the defendant. Just prior to Davis' testimony in this case, the trial court informed the jury as follows:

> Ladies and gentlemen, the next witness called is a Gary Davis. The court has declared Mr. Davis a court witness. What a court witness is is a person who is called to testify he is not either called by the State because they cannot vouch for his credibility, nor is he a defense witness, but what he has is statements that are material to the issues in fact in this case, and issues involved in the murder prosecution here (R1178).

The special emphasis the court gave Davis' testimony by informing the jury that the testimony came from a "court witness" obviously commanded deferential attention of the jury. Dear v. Chicago Transit Authority, 72 Ill. App.3d 729, 391 N.E.2d 119, 122 (1st Dist. 1979). The procedure followed here must have made an important impression on the jury. Dear, 391 N.E.2d at 122. The designation of Davis as the court's witness may well have enhanced Davis' credibility in the eyes of the jury, to the defendant's prejudice. As noted in Issue I, Davis was a key witness who claimed to have observed the defendant shoot Brandon Ellison. The evidence showed, however, that Davis was a convicted felon who had previously testified under oath that he did not see the shooting. By informing the jury that Davis was testifying as the court's witness, the danger existed that the jury attached more

32

credence to Davis' claim that he saw the defendant shoot Ellison because Davis was testifying as a witness for the court. When this error is viewed in conjunction with the court's error in allowing the jury to take the transcript of Davis' prior consistent statement to the police into the jury room (Issue I), the prejudice to the defendant is manifest.

Accordingly, because the trial court erred in calling Gary Davis as the court's witness, the defendant asks this Court to reverse his conviction and remand the cause for a new trial.

33

## **CONCLUSION**

The defendant respectfully requests that this Honorable Court reverse his conviction and remand this cause for a new trial for one or both of the following reasons:

a) because the trial court erred when it permitted the jury to take into the jury room the transcripts of the prior consistent statements of the State's two eyewitnesses, Gary Davis and Steve Fuhlman (Issue I);

b) because the trial court erred in allowing the State's request that Gary Davis be called as the court's witness (Issue II).

Respectfully submitted,

ROBERT AGOSTINELLI
Deputy Defender

KENNETH D. BROWN
Assistant Defender

Office of the State Appellate Defender
Third Judicial District
1100 Columbus Street
Ottawa, Illinois 61350
(815) 434-5531

COUNSEL FOR APPELLANT

KDB:cw

**APPENDIX A**

## COMMON LAW

### 94 CF 649    People vs. Greer    3-99-0706

| | |
|---|---|
| C1 | Face Sheet |
| C2 | Indictment filed August 24, 1994 |
| C3 | Order filed August 24, 1994 |
| C4 | Arrest Warrant filed August 24, 1999 |
| C5 | Mittimus filed August 31, 1994 |
| C6 | Arrest Warrant returned and filed August 31, 1994 |
| C8 | Entry of Appearance/Demand for Speedy Trial filed August 31, 1994 |
| C9 | Motion to Supress Statements of Defendant filed August 31, 1994 |
| C10 | Motion for Bill of Particulars filed August 31, 1994 |
| C11 | Motion for Discovery before Trial filed August 31, 1994 |
| C15 | Motion for List of Witnesses and to Produce Confession filed August 31, 1994 |
| C16 | Copy of Motion for Issuance of Fax Subpoena filed September 2, 1994 |
| C51 | Notice filed September 2, 1994 |
| C52 | State's Motion for Protective and Regulatory Orders Pursuant to Discovery filed September 8, 1994 |
| C56 | Notice filed September 8, 1994 |
| C57 | Pre-Trial Order filed September 12, 1994 |
| C58 | Warning to Defendant and Order filed September 12, 1994 |
| C59 | Mittimus filed September 12, 1994 |
| C60 | State's Motion for Protective and Regulatory Orders Pursuant to Discovery filed September 13, 1994 |
| C63 | Mittimus filed September 13, 1994 |
| C64 | Notice of Hearing on Motions filed September 19, 1994 (x2) |
| C66 | State's Motion for Evidence Deposition filed September 20, 1994 |
| C67 | Affidavit in Support of Deposition filed September 20, 1994 |
| C69 | Motion for Recognizance Bond for a Material Witness filed September 22, 1994 (x3) |
| C70 | Order filed September 22, 1994 (x5) |
| C74 | Mittimus filed September 22, 1994 |
| C78 | Motion for Recognizance Bond for a Material Witness filed September 23, 1994 |
| C79 | Order filed September 23, 1994 |
| C80 | Recognizance of Witness for Appearance filed September 23, 1994 |
| C81 | Bench Warrant filed September 27, 1994 |
| C82 | Order filed October 14, 1994 |
| C83 | Proof of Service filed October 18, 1994 |
| C84 | Correspondence filed by Attorney Kalinak to Attorney Malvik October 20, 1994 |
| C86 | Supplemental Disclosure to Accused filed October 24, 1995 |

C87    Answer to State's Motion for Pre-Trial Discovery filed October 24, 1994
C89    Supplemental Disclosure to Accused filed October 25, 1994
C90    Supplemental Disclosure to Accused filed October 27, 1994
C91    Supplemental Disclosure to Accused filed November 3, 1994
C92    Supplemental Disclosure to Accused filed November 10, 1994
C93    Supplemental Disclosure to Accused filed November 14, 1994
C94    Mittimus filed November 14, 1994
C95    Mittimus filed November 15, 1994
C96    Mittimus filed November 18, 1994
C97    Jury Instructions filed November 18, 1994
C132   Court Exhibit 1 filed November 18, 1994
C133   Order filed November 18, 1994
C134   Order filed December 12, 1994
C135   Supplemental Disclosure to Accused filed December 14, 1994
C137   Motion for Judgment of Not Guilty or in Alternative for a New Trial filed December 15, 1994
C141   Correspondence filed Defendant on December 30, 1994
C143   Motion to Produce State's Witness for Hearin on Motion for Judgment of Not Guilty or in Alternative for new trial filed w/Defendant's Exhibit 1 filed January 24, 1995
C148   Petition for Order of Habeas Corpus Ad Testificandum filed February 1, 1995
C150   Order of Habeas Corpus Ad Testificandum filed February 1, 1995
C151   Order filed February 1, 1995
C152   Pre-Sentence Investigation Report filed February 3, 1995
C171   Order of Habeas Corpus Ad Testificandum filed February 14, 1995 (x2)
C173   Order filed February 16, 1995
C174   Mittimus filed February 16, 1995
C175   Notice filed February 17, 1995 (x3)
C178   Amended Notice filed February 22, 1995 (x2)
C180   Correspondence filed by Defendant on February 24, 1995
C181   Mittimus filed March 1, 1995
C182   Sentencing Order filed March 3, 1995
C183   Notice of Appeal filed March 15, 1995
C184   Notice of Filing Notice of Appeal filed March 15, 1995
C185   Motion to Substitute Public Defender filed March 15, 1995
C186   Appointment of Counsel on Appeal filed March 15, 1995
C187   Affidavit of Service of Copies of Notice of Appeal filed March 15, 1995
C188   Notice of Filing filed March 20, 1995
C189   Notice of Appeal filed March 20, 1995
C191   Docketing Order Due Dates filed March 22, 1995
C193   Bench Warrant filed May 5, 1995

C196   Order filed May 8, 1995
C197   Inventory filed May 9, 1995
C198   Amended Docketing Order Due Dates filed May 10, 1995
C200   Amended Docketing Order Due Dates filed August 7, 1995
C202   Affidavit in Support of Motion for Trial Transcripts and Common Law Records filed August 28, 1995
C204   Motion to Proceed in Forma Pauperis and Request for Free Transcripts filed August 28, 1995
C211   Amended Docketing Order Due Dates filed October 26, 1995
C213   Correspondence from Defendant filed June 16, 1998
C214   Records Receipt filed July 2, 1998
C215   Notice of Issuance of Mandate filed July 6, 1998
C216   Mandate filed July 6, 1998
C232   Notice of Appointment of Public Defender filed July 13, 1998
C233   Mittimus filed July 13, 1998
C234   Mittimus filed July 17, 1998
C235   Order filed July 17, 1998
C236   Notice of Court Appointed Attorney Richard Zimmer filed July 17, 1998
C237   Disclosure to Accused filed July 20, 1998
C240   Notice filed July 20, 1998
C241   Affidavit filed July 22, 1998
C242   Motion for Rendition of Prisoner as a Witness in a Criminal Proceeding filed July 22, 1998
C244   Certification under Seal and Order Granting Motion for Rendition of Prisoner in Criminal Proceeding filed July 22, 1998
C245   Notice filed July 22, 1998
C246   State's Motion for Recognizance of Witness for Appearance filed July 27, 1998
C247   Recognizance of Witness for Appearance filed July 27, 1998
C248   Order filed July 27, 1998
C249   Supplemental Disclosure to Accused filed August 3, 1998
C251   Supplemental Disclosure to Accused filed August 13, 1998
C253   Motion for Disclosure to Prosecution filed August 13, 1998
C254   Motion for Evidence Depositions filed August 26, 1998
C257   Notice filed August 26, 1998
C259   Mittimus filed September 11, 1998
C260   Notice filed September 22, 1998
C261   Notice filed November 10, 1998
C262   Mittimus filed December 18, 1998
C263   Order filed December 18, 1998
C264   Order filed December 29, 1998
C265   Affidavit filed January 4, 1999

C266   Motion for Rendition of Prisoner as a Witness in a Criminal Proceeding filed January 4, 1999

C268   Certification Under Seal and Order Granting Motion for Rendition of Prisoner in Criminal Proceeding  filed January 4, 1999

C269   Notice filed January 4, 1999

C270   Notice filed January 6, 1999

C271   Order filed January 14, 1999

C272   Mittimus filed January 14, 1999

C273   Affidavit filed January 19, 1999

C274   Amended Trial Notice filed January 19, 1999

C275   Notice filed March 10, 1999

C276   Disclosure to Prosecution filed April 13, 1999

C278   Affidavit filed April 19, 1999

C279   Motion for Redition of Prisoner as a Witness in a Criminal Proceeding filed April 19, 1999

C281   Certification Under Seal and Order Granting Motion for Rendition of Prisoner in a Criminal Proceeding filed April 19, 1999

C282   Notice filed April 19, 1999

C283   Order filed April 26, 1999

C284   Supplemental Disclosure to Accused filed April 27, 1999

C286   Supplemental Disclosure to Accused filed April 29,1999

C288   State's Motion in Limine filed April 29, 1999

C292   Petition for Order of Habeas Corpus Ad Testifcandum filed April 30, 1999

C294   Order of Habeas Corpus Ad Testificandum filed April 30, 1999

C295   Motion to Continue filed May 3, 1999

C297   Correspondence from Paradigm Investigative Solutions filed May 3, 1999

C300   Motion in Limine filed May 3, 1999

C301   Motion to Bar filed May 3, 1999

C304   Amended Trial Notice filed May 4, 1999

C305   Order filed May 4, 1999

C306   Mittimus filed May 4, 1999

C307   Supplemental Disclosure to Accused filed May 5, 1999

C309   Affidavit filed May 5, 1999

C310   Motion for Rendition of Prisoner as a Witness in a Criminal Proceeding filed May 5, 1999

C312   Notice filed May 5, 1999

C313   Certification Under Seal and Order Granting Motion for Rendition of Prisoner in Criminal Proceeding filed May 5, 1999

C315   Supplemental Disclosure to Accused filed May 19, 1999

C317   Supplemental Disclosure to Accused filed May 20, 1999

C319   Notice filed June 24, 1999

C320   Supplemental Disclosure to Accused filed June 24, 1999
C322   Supplemental Disclosure to Accused filed June 29, 1999
C324   Motion in Limine filed June 29, 1999
C325   Supplemental Disclosure to Accused filed July 1, 1999
C327   State's Motion in Liminie filed July 2, 1999
C328   Mittimus filed July 6, 1999
C329   Mittimus filed July 7, 1999
C330   Mittimus filed July 8, 1999
C331   Mittimus filed July 9, 1999 (x2)
C333   Pre-Sentence Investigation Order filed July 9, 1999
C334   Jury Instructions filed July 9, 1999
C375   Exhibit Log filed July 9, 1999
C377   Order filed July 16, 1999
C378   Post Trial Motion filed July 26, 1999
C380   Pre-Sentence Investigation Report filed August 2, 1999
C386   Mittimus filed August 6, 1999
C387   Judgment - Sentence to Illinois Department of Corrections filed August 9, 1999
C388   Motion to Reconsider Sentence filed August 11, 1999
C390   Notice of Hearing filed August 24, 1999
C391   Notice of Appeal filed September 14, 1999
C392   Appointment of Counsel on Appeal filed September 14, 1999
C393   Affidavit of Service of Copies of Notice of Appeal filed September 14, 1999
C394   Docketing Due Dates filed September 21, 1999
C396   Request for Extension of Time filed by Clara Delle Thompson on November 12, 1999
C397   Amended Docketing Due Dates filed November 29, 1999
C399   Request for Extension of Time filed by Clara Delle Thompson on December 30, 1999
C400   Amended Docketing Due Dates filed January 6, 2000
C402   Request for Extension of Time filed by Clara Delle Thompson on February 7, 2000
C403   Amended Docketing Due Dates filed February 16, 2000
C405   Request for Extension of Time filed by Clara Delle Thompson on March 14, 2000
C406   Amended Docketing Due Dates filed April 4, 2000
C408   Docket

# REPORT OF PROCEEDINGS

## 94 CF 649    People vs. Greer    3-99-0706

| | |
|---|---|
| **R1 - R75** | Report of Proceedings filed by Clara Delle Thompson for September 13, 1994 |
| **R76 - R112** | Report of Proceedings filed by Clara Delle Thompson for September 22, 1994 |
| **R113 - R121** | Report of Proceedings filed by Karen White for October 13, 1994 |
| **R122 - R124** | Report of Proceedings filed by Patricia DuVall for November 14, 1994 |
| **R125 - R364** | Report of Proceedings filed by Patricia DuVall for November 15, 1994 |
| **R365 - R501** | Report of Proceedings filed by Patricia DuVall for November 16, 1994 |
| **R502 - R571** | Report of Proceedings filed by Mary Thaxton for November 16, 1994 |
| **R572 - R722** | Report of Proceedings filed by Patricia DuVall for November 17, 1994 |
| **R723 - R805** | Report of Proceedings filed by Patricia DuVall for November 18, 1994 |
| **R806 - R812** | Report of Proceedings filed by Clara Delle Thompson for February 3, 1995 |
| **R813 - R831** | Report of Proceedings filed by Patricia DuVall for February 16, 1995 |
| **R832 - R936** | Report of Proceedings filed by Clara Delle Thompson for March 1, 1995 |
| **R937 - R942** | Report of Proceedings filed by Patricia DuVall for July 13, 1998 |
| **R943 - R952** | Report of Proceedings filed by Diane Reason for July 17, 1998 |
| **R953 - R960** | Report of Proceedings filed by Peggy McDonnell for July 27, 1998 |
| **R961 - R984** | Report of Proceedings filed by Peggy McDonnell for December 18, 1998 |
| **R985 - R1004** | Report of Proceedings filed by Patricia DuVall for May 4, 1999 |
| **R1005 - R1119** | Report of Proceedings filed by Clara Delle Thompson for July 6, 1999 |
| **R1120 - R1288** | Report of Proceedings filed by Michele Egert for July 7, 1999 |
| **R1289 - R1421** | Report of Proceedings filed by Clara Delle Thompson for July 8, 1999 |
| **R1422 - R1473** | Report of Proceedings filed by Clara Delle Thompson for July 9, 1999 |
| **R1474 - R1476** | Report of Proceedings filed by Clara Delle Thompson for July 13, 1999 |
| **R1477 - R1493** | Report of Proceedings filed by Peggy McDonnell for August 6, 1999 |
| **R1494 - R1497** | Report of Proceedings filed by Diane Reason for September 10, 1999 |

**Volume III**

R1                <u>Report of Proceedings</u>  --  September 13, 1994
                                Arraignment

                        THOMAS MULDER
R15               Examination by Mr. Kalinak
R20               Examination by Mr. Malvik
R31               Examination by Mr. Kalinak

                        MARK SENKO
R33               Examination by Mr. Kalinak

                        DAVID SULLIVAN
R39               Examination by Mr. Kalinak
R42               Examination by Mr. Malvik
R49               Examination by Mr. Kalinak
R50               Examination by Mr. Malvik

                        CAROL PAPER
R 51             Examination by Mr. Kalinak
R60               Examination by Mr. Malvik

                        STEVE HARDER
R65               Examination by Mr. Kalinak
R66               Examination by Mr. Malvik

R67               State Rests

R76               <u>Report of Proceedings</u>  --  September 22, 1994
                                  Status Hearing

R113             <u>Report of Proceedings</u>  --  October 13, 1994
                                  Hearing to Place Witnesses into Protective Custody

R122             <u>Report of Proceedings</u>  --  November 14, 1994
                                    Jury Trial (Judge's Opening Remarks and Voir Dire Conducted and
                                  Reported but not Transcribed)

R125             <u>Report of Proceedings</u>  --  November 15, 1994
                                    Jury Trial Continued

STEVEN A. FUHLMAN
R132   Direct Examination by Ms. Bailey
R137   Cross Examination by Mr. Malvik
R142   Redirect Examination by Mr. Kalinak
R146   Recross Examination by Mr. Malvik
R146   Redirect Examination by Mr. Kalinak

R183   Mr. Kalinak's Opening Statement

R189   Mr. Malvik's Opening Statement

STATE WITNESSES:

WILLIAM SOWARDS
R194   Direct Examination by Mr. Kalinak

THOMAS MULDER
R212   Direct Examination by Mr. Kalinak
R234   Cross Examination by Mr. Malvik
R248   Redirect Examination by Mr. Kalinak

**Volume IV**

R251   Report of Proceedings -- November 15, 1994
     Jury Trial Continued

SHAKU TEAS
R261   Direct Examination by Ms. Bailey
R269   Cross Examination by Mr. Malvik

ARENESTINE SENTER
R273   Direct Examination by Mr. Kalinak
R281   Cross Examination by Mr. Malvik

STEVEN A. FUHLMAN
R287   Direct Examination by Mr. Kalinak
R298   Cross Examination by Mr. Malvik

R365   Report of Proceedings -- November 16, 1994
     Jury Trial Continued

STEVEN A. FUHLMAN
R415   Cross Examination by Mr. Malvik
R424   Redirect Examination by Mr. Kalinak
R442   Recross Examination by Mr. Malvik

R445          Redirect Examination by Mr. Kalinak

              GARY DAVIS
R451          Direct Examination by Mr. Kalinak
R459          Cross Examination by Mr. Malvik
R479          Redirect Examination by Mr. Kalinak
R489          Recross Examination by Mr. Malvik
R489          Redirect Examination by Mr. Kalinak

              PATTY JO DOOLEY
R490          Direct Examination by Mr. Kalinak
R491          Cross Examination by Mr. Malvik

              THOMAS J. MULDER
R492          Direct Examination by Mr. Kalinak
R494          Cross Examination by Mr. Malvik
R494          Redirect Examination by Mr. Kalinak

**Volume V**

R497          Report of Proceedings  --  November 16, 1994
                          Jury Trial Continued

              DEFENSE WITNESSES:

              OFFICER MARK NENNINGER
R505          Direct Examination by Mr. Malvik
R511          Cross Examination by Mr. Kalinak
R512          Redirect Examination by Mr. Malvik

              MELVIN QUICK
R523          Direct Examination by Mr. Malvik
R534          Cross Examination by Mr. Kalinak

              MARIO YANCY
R539          Direct Examination by Mr. Malvik
R543          Cross Examination by Mr. Kalinak

              JOHN LARD
R550          Direct Examination by Mr. Malvik
R553          Cross Examination by Mr. Kalinak
R554          Redirect Examination by Mr. Malvik
R559          Recross Examination by Mr. Kalinak

**BETTY RHODEN**
R560    Direct Examination by Mr. Malvik
R565    Cross Examination by Mr. Kalinak

R572    <u>Report of Proceedings</u> --  November 17, 1994'
        Jury Trial Continued

**LEWIS PEMBERTON**
R574    Direct Examination by Mr. Malvik
R580    Cross Examination by Mr. Kalinak

**LILLIE RHODEN**
R590    Direct Examination by Mr. Malvik
R595    Cross Examination by Mr. Kalinak

**STEVEY WILLIAMS**
R608    Direct Examination by Mr. Malvik
R616    Cross Examination by Mr. Kalinak
R624    Redirect Examination by Mr. Malvik
R624    Recross Examination by Mr. Kalinak

**TONI WILLIAMS**
R625    Direct Examination by Mr. Malvik

**VENUS WILLIAMS**
R629    Direct Examination by Mr. Malvik
R633    Cross Examination by Mr. Kalinak

**HENRY RHODEN, JR.**
R635    Direct Examination by Mr. Malvik
R638    Cross Examination by Mr. Kalinak

**HELEN SIBLEY**
R642    Direct Examination by Mr. Malvik
R646    Cross Examination by Mr. Kalinak

**MARK SENKO**
R651    Direct Examination by Mr. Malvik
R656    Cross Examination by Mr. Kalinak
R661    Redirect Examination by Mr. Malvik

**MARIO YANCY**
R677    Cross Examination by Mr. Kalinak
R683    Redirect Examination by Mr. Malvik
R684    Recross Examination by Mr. Kalinak

STATE REBUTTAL WITNESSES:

PATTY JO DOOLEY
R686        Direct Examination by Mr. Kalinak
R688        Cross Examination by Mr. Malvik

THOMAS J. MULDER
R690        Direct Examination by Mr. Kalinak
R691        Cross Examination by Mr. Malvik
R694        Redirect Examination by Mr. Kalinak

STEVE HARDER
R695        Direct Examination by Mr. Kalinak
R696        Cross Examination by Mr. Malvik
R700        Redirect Examination by Mr. Kalinak

PEGGY TEAGUE
R701        Direct Examination by Mr. Kalinak

LAVERNE VESTER
R706        Direct Examination by Mr. Kalinak
R715        Cross Examination by Mr. Malvik
R717        Redirect Examination by Mr. Kalinak
R718        Recross Examination by Mr. Malvik

R723        Report of Proceedings  --  November 18, 1994
                    Jury Trial Continued

R730        Mr. Kalinak's Closing Argument

R739        Mr. Malvik's Closing Argument

**Volume VI**

R751        Report of Proceedings  --  November 18, 1994
                    Jury Trial Continued

R751        Mr. Malvik's Closing Argument Continued

R777        Mr. Kalinak's Rebuttal Argument

R801        Jury's Verdict

R806        Report of Proceedings  --  February 3, 1995
                    Post Trial Motions

R813          Report of Proceedings -- February 16, 1995
                    Sentencing Hearing


              GARY DAVIS
R816          Direct Examination by Mr. Malvik
R820          Cross Examination by Mr. Kalinak
R822          Redirect Examination by Mr. Malvik


R832          Report of Proceedings -- March 1, 1995
                    Sentencing Hearing Continued


              GARY DAVIS
R878          Direct Examination by Mr. Malvik
R883          Cross Examination by Mr. Kalinak
R888          Redirect Examination by Mr. Malvik


              THOMAS MULDER
R889          Direct Examination by Mr. Malvik
R892          Cross Examination by Mr. Hoffman


              PATTY JO DOOLEY
R912          Direct Examination by Mr. Kalinak


              THOMAS J. MULDER
R914          Direct Examination by Mr. Kalinak


              LATIRA LEE
R917          Direct Examination by Mr. Kalinak

R937          Report of Proceedings -- July 13, 1998
                    (Post-Conviction) Pretrial Hearing

R943          Report of Proceedings -- July 17, 1998
                    (Post-Conviction) Pretrial Hearing

R953          Report of Proceedings -- July 27, 1998
                    (Post-Conviction) Motion Hearing

R961          Report of Proceedings -- December 18, 1998
                    (Post-Conviction) Motion Hearing

STATE WITNESSES:

NAVINCHANDRA DADHANIYA, M.D.
R965        Direct Examination by Mr. Kalinak
R968        Cross Examination by Mr. Zimmer
R973        Recross Examination by Mr. Zimmer

R985        Report of Proceedings  --  May 4, 1999
            (Post-Conviction) Motion Hearing

**Volume VII**

R1005       Report of Proceedings  --  July 6, 1999
            (Post-Conviction) Jury Trial

R1047       Mr. Kalinak's Opening Statements

R1053       Mr. Zimmer's Opening Statements

THOMAS MULDER
R1055       Examination by Mr. Kalinak
R1084       Examination by Mr. Zimmer
R1087       Examination by Mr. Kalinak
R1088       Examination by Mr. Zimmer

ERNESTINE SENTER
R1090       Examination by Mr. Kalinak
R1103       Examination by Mr. Zimmer
R1109       Examination by Mr. Kalinak
R1109       Examination by Mr. Zimmer
R1110       Examination by Mr. Kalinak

R1120       Report of Proceedings  --  July 7, 1999
            (Post-Conviction) Jury Trial Continued

STATE WITNESSES:

CLARENCE ELLISON
R1144       Direct Examination by Mr. Kalinak

GARY DAVIS
R1149       Examination by Mr. Kalinak (out of the presence of jury)
R1179       Cross Examination by Mr. Kalinak
R1192       Cross Examination by Mr. Zimmer
R1206       Recross Examination by Mr. Kalinak

R1217      Recross Examination by Mr. Zimmer
R1218      Further Cross Examination by Mr. Kalinak

SHAKU TEAS
R1230      Direct Examination by Mr. Kalinak
R1238      Cross Examination by Mr. Zimmer

STEVEN FUHLMAN
R1240      Direct Examination by Mr. Kalinak
R1253      Cross Examination by Mr Zimmer
R1268      Redirect Examination by Mr. Kalinak
R1275      Recross Examination by Mr. Zimmer
R1276      Further Redirect Examination by Mr. Kalinak

PATTY JO DOOLEY
R1279      Direct Examination by Mr. Kalinak

**Volume VIII**

R1289      Report of Proceedings -- July 8, 1999
          (Post-Conviction) Jury Trial Continued

STATE WITNESSES:

THOMAS MULDER
R1304      Examination by Mr. Kalinak

DEFENSE WITNESSES:

MELVIN QUICK
R1308      Examination by Mr. Zimmer
R1315      Examination by Mr. Kalinak
R1321      Examination by Mr. Zimmer
R1322      Examination by Mr. Kalinak

HENRY RHODEN
R1323      Examination by Mr. Zimmer
R1326      Examination by Mr. Kalinak

BETTY RHODEN
R1334      Examination by Mr. Zimmer
R1338      Examination by Mr. Kalinak

|   | LEWIS PEMBERTON |
|---|---|
| R1350 | Examination by Mr. Zimmer |
| R1359 | Examination by Mr. Kalinak |

|   | DAVID GREER |
|---|---|
| R1369 | Examination by Mr. Zimmer |
| R1376 | Examination by Mr. Kalinak |

## STATE WITNESSES:

|   | PATTY JO DOOLEY |
|---|---|
| R1384 | Examination by Mr. Kalinak |
| R1385 | Examination by Mr. Zimmer |
| R1387 | Examination by Mr. Kalinak |

|   | BILL SOWARDS |
|---|---|
| R1388 | Examination by Mr. Kalinak |
| R1393 | Examination by Mr. Zimmer |
| R1402 | Examination by Mr. Kalinak |
| R1403 | Examination by Mr. Zimmer |

|   | PEGGY TEAGUE |
|---|---|
| R1405 | Examination by Mr. Kalinak |
| R1406 | Examination by Mr. Zimmer |
| R1408 | Examination by Mr. Kalinak |

|   | LAVERNE BESTER |
|---|---|
| R1409 | Examination by Mr. Kalinak |
| R1413 | Examination by Mr. Zimmer |

| R1422 | Report of Proceedings -- July 9, 1999 |
|---|---|
|   | (Post-Conviction) Jury Trial Continued |

| R1431 | Mr. Kalinak's Closing Argument |
|---|---|

| R1433 | Mr. Zimmer's Closing Argument |
|---|---|

| R1451 | Mr. Kalinak's Rebuttal Argument |
|---|---|

| R1471 | Jury's Verdict |
|---|---|

| R1474 | Report of Proceedings -- July 13, 1999 |
|---|---|
|   | (Post-Conviction) Jury Trial Continued |

R1477    <u>Report of Proceedings</u> -- August 6, 1999
                (Post-Conviction) Sentencing Hearing

R1491    Sentencing of Defendant

R1491    Defendant Advised of Right to Appeal

R1494    <u>Report of Proceedings</u> -- September 10, 1999
                (Post-Conviction) Motion to Reconsider

**IN THE CIRCUIT COURT OF ROCK ISLAND COUNTY, ILLINOIS**
**FOURTEENTH JUDICIAL CIRCUIT**
**GENERAL DIVISION**

| | |
|---|---|
| PEOPLE OF THE STATE OF ILLINOIS )<br><br>vs. )<br>)<br>__DAVID A. GREER,__ )<br>)<br>DOB: __10-21-68__ ) | Case Number __94 CF 649__<br><br>First Degree Murder<br><br>Unclassified |

Defendant.

<u>JUDGMENT  -  SENTENCE TO ILLINOIS DEPARTMENT OF CORRECTIONS</u>

WHEREAS the above-named defendant __David A. Greer, DOB:10-21-68__ has been adjudged guilty of the offenses enumerated below.

IT IS THEREFORE ORDERED that the defendant be and hereby is sentenced to confinement in the Illinois Department of Corrections for the term of years and months specified for each offense.

| COUNT | OFFENSE | DATE OF OFFENSE | STATUTORY CITATION | CLASS | SENTENCE |
|---|---|---|---|---|---|
| | First Degree Murder | 7-13-93 | 720 ILCS 5/9-1(a)(2) | Unclassified | 50 years |
| | | | | | MSR 3 years |

The Court finds that the defendant is entitled to receive credit for time actually served in custody of Rock Island County Sheriff's Department from __August 31, 1994__ to __date of delivery to the Illinois Department of Corrections.__

IT IS FURTHER ORDERED that the defendant is ordered to pay the costs of prosecution herein.

IT IS FURTHER ORDERED that the Clerk of the Court deliver a copy of this order to the Sheriff.

IT IS FURTHER ORDERED that the Sheriff take the defendant into custody and deliver him to the Department of Corrections which shall confine said defendant until expiration of his sentence or until he is otherwise released by operation of law.

This order is effective immediately.

ENTERED: __8/9/99__    JUDGE: _____
                              CIRCUIT JUDGE JAMES T. TEROS

C000387

IN THE CIRCUIT COURT OF THE FOURTEENTH JUDICIAL CIRCUIT
ROCK ISLAND COUNTY, ILLINOIS

**People of the State of Illinois**

VS.                                                CASE # 94 CF 640

**David Allen Greer**

FILED in the CIRCUIT COURT
of ROCK ISLAND COUNTY
GENERAL DIVISION

SEP 1 4 1999

Clerk of the Circuit Court

**NOTICE OF APPEAL**

**An appeal is taken from the Order or Judgment described below.**

1.  Court to which appeal is taken: **Third Judicial District, 1100 Columbus Street, Ottawa, Il 61350**

2.  Name of appellant and address to which notice shall be sent.

    NAME **David Allen Greer**

    ADDRESS: **Illinois DOC**

3.  Name and address of Appellant's Attorney on appeal.

    NAME: **Robert Agostinelli, Appellate Defender**

    ADDRESS: **1100 Columbus Street, Suite 308, Ottawa, Il 61350**

    TELEPHONE: **815-434-5531**

**If appellant is indigent and has no Attorney, does he want one appointed?  yes**

4.  Date of order or judgment: **September 10, 1999**

5.  Offense of which convicted **: Count I - First Degree Murder**

6.  **Sentence: Count I - 50 years Illinois DOC, with a 3 year MSR**

7.  If appeal is not from a conviction, nature of order appealed from: **Conviction and Sentence**

**SIGNED:** _Roland J. Bond_


000391
IMAGED

**STATE OF ILLINOIS**
**COUNTY OF ROCK ISLAND**



FILED in the CIRCUIT COURT
of ROCK ISLAND COUNTY
GENERAL DIVISION

SEP 14 1999

Clerk of the Circuit Court

**People of the State of Illinois**

        **VS.**                    <u>No.</u>     <u>94 CF 649</u>

**David Allen Greer**

<u>APPOINTMENT OF COUNSEL ON APPEAL</u>

It is appearing to the Court that the above named Defendant desires to appeal from the order entered by the Court on <u>091099</u> defendant is indigent and requests an Appointment of Counsel,

     **IT IS THEREFORE ORDERED THAT:**   **ROBERT AGOSTINELLI**
                                     **Deputy Defender**
                                     **Office of the State Appellate Def.**
                                     **Third Judicial District**
                                     **1100 Columbus Street**
                                     **Ottawa, Il 61450-2107**
                                     **815-434-5531**

Is hereby appointed to represent the above named Defendant for purpose of appeal. It is further ordered that the Clerk of this Court shall prepare and file a NOTICE OF APPEAL on behalf of the above named Defendant, and shall send a copy of the Notice of Appeal to the Defendant's Counsel.

It is further ordered the Official Shorthand Reporter of the Court shall:
  (a) Forthwith transcribe an original and a copy of all the notes taken of the proceedings in the above entitled cause;
  (b) Without charge to the Defendant and within forty-nine days from the date the Notice of Appeal is filed, filed the original of the report of Proceedings of the Report of Proceedings to the Defendant.

IT IS FURTHER ORDERED that the Clerk of the Court shall:
  (a) Send a copy of this order to the Defendant and to the Defendant's Counsel;
  (b) Prepare and certify the Record on Appeal pursuant to Supreme Court Rules 324 and 608;
  (c) File the Record on Appeal in the reviewing court within sixty-three days from the date the Notice of Appeal is filed, or file a Certificate in Lieu of Record pursuant to Supreme Court Rule 325 and send the Record on Appeal to the Defendant's Counsel.

<u>DATE ENTERED</u> 9/14/99 _____     <u>JUDGE</u> James Y. Yeuro

C000392

IMAGED

**APPENDIX B**

ROCK ISLAND POLICE DEPARTMENT VOLUNTARY STATEMENT
VOLUNTARY STATEMENT

Incident No. 93-37060

I, the undersigned, Steven Alfred Fuhlman,  am
_____ years of age, having been born on__
Address:  1419 5th St., Rock Island, Illinois;

       I have been advised and fully understand the Waiver of Rights
Form that I have just signed.  I declare that the following voluntary
statement is made of my own free will without fear or threat of
physical harm, without promise of reward, without coercion and without
leniency or offer of leniency, by any person or persons whomsoever:

       This Statement is Being Taken At 1419 5th St., Rock Island, IL,
on 07/14/93 at 14:50 hrs. by Inv. P.J. Dooley #1112 and
transcribed from tape by Frances Bauer #1578.  Also present is Donna
Fuhlman, wife of Steven Fuhlman.

Q.  Mr. Fuhlman, would you state your full name please?
A.  Steven Alfred Fuhlman.

Q.  And your present address and phone number?
A.  1419 5th St. Rock Island, 793-4194.

Q.  How much education have you had?
A.  I've got a GED, only through 11th grade.

Q.  Okay, you can read and write and understand English?
A.  Yeh.

Q.  And this statement which you're giving is a voluntary statement?
A.  Yeh.

Q.  Mr. Fuhlman, we're talking about an incident that occurred in the
    area of your home yesterday, on 07/13/93, in which there was a
    shooting.   Do you recall this incident?
A.  Yes I do.

Q.  Okay, earlier, I showed you a photo lineup and you identified a
    subject from this lineup as being the person that you believed to
    be the shooter.
A.  Right.

Q.  Would you look at this group of photographs and tell me if that
    looks like the same group of photographs that I showed you earlier?
A.  Yes it is.

Q.  For the record, let me indicate that the photographs that are in
    this group of #28842, #26514, #33157, #30522, #29726, and #32405.
    Of this group of photographs, which one would you identify as the
    shooter?
A.  This one right there.

WITNESS _____     SIGNATURE _____
            DATE?TIME  7-15-93 / 6a 20
            PAGE: 1      fh

EXHIBIT
PEOPLES # 8

1000001

ROCK ISLAND POLICE DEPARTMENT VOLUNTARY STATEMENT
Statement of Steven A. Fuhlman          July 14, 1993

**Q.** Let the record indicate that Mr. Fuhlman has chosen photograph #28842. How do you know this person as you see him in this photograph?
**A.** I've seen him around the neighborhood.

**Q.** How often would you say you see him in this neighborhood on the average?
**A.** Daily.

**Q.** What does he do here?
**A.** ─

**Q.** And how close to your home does he do that?
**A.** I live on 15th and 5th, and he does it on the corner of 5th and 15th, in front of the store.

**Q.** So he does this right across the street from your residence?
**A.** Right.

**Q.** On a regular basis?
**A.** And across the street in the courts.

**Q.** Yesterday at approximately the time of the shooting, where were you?
**A.** I was on 15th St., working on my vehicle.

**Q.** Okay, let me correct that, that would be 15th Ave.?
**A.** 15th Ave.

**Q.** Okay, you were working on your vehicle and what did you see?
**A.** I heard some commotion, I was working on the driver's side front tire, putting some wire wheels back on that I take off during the winter, and I was sitting on the ground and I looked around in front of the car and seen a man with a gun and the man fired two shots off, waited a second and fired the third shot off.

**Q.** And then what did he do?
**A.** Ran towards the west.

**Q.** Back into Arsenal Courts?
**A.** Right.

**Q.** Where was the gun when he ran back towards Arsenal Courts?
**A.** In his right hand.

**Q.** Still in his hand?
**A.** Yeh.

**Q.** When the subject fired the shots, was he in the street at the time or was he by the building?
**A.** He was at the corner of the building in between two buildings.

WITNESS _____    SIGNATURE _____
DATE?TIME   7-15-93  0920
PAGE: 2    fb

000002

ROCK ISLAND POLICE DEPARTMENT VOLUNTARY STATEMENT
Statement of Steven A. Fuhlman          July 14, 1993

Q. And the subject that you saw with the gun is the same subject that you have chosen out of this group of photographs?
A. Yes, he had a green bandana on, white shirt, and shorts or dark colored shorts.

Q. What color shorts?
A. Dark colored shorts.

Q. Dark colored shorts?  And earlier you described to me how that bandana was on his head?
A. It was like a gypsy, like gypsies wear.

Q. So that it covered the top of his head?
A. Covered the whole head.

Q. You also described this subject as being a M/B, is that correct?
A. Right.

Q. Did you observe any facial hair?
A. No.

Q. And his height and build, how did you describe that?
A. About 5'8" or 5'10", muscular build.

Q. When you observed him with the weapon, can you tell me from what you saw whether it was a revolver or a semiautomatic?
A. It was a revolver, dark in color, looked to be a snubnose or something like that, it didn't have a long barrel.

Q. Okay, after the shooting occurred, what did you do?
A. Went back to working on the car.

Q. And you had earlier told me you heard some things being said or you heard some noises after that, what was it you heard?
A. Well, directly after the shooting, I watched the guy run back towards the west and I don't know where he went, there was a bunch of other guys back there and other cars, there were about 4-5 cars parked there so I don't know where he went and then I heard the police show up and the ambulance, and I went to my back yard and watched as they picked the gun up with blood on it and drug the man out of the bushes that had been shot.

Q. Originally when the shots were fired, were you aware that anyone had actually been hit?
A. No.

Q. You told me earlier that when this shooting occurred, there were other people out in the area that should have seen this?
A. Yeh.

Q. Is it true that there were people in front of the store?

WITNESS _____  SIGNATURE _____
DATE/TIME 7-15-93  0920
PAGE: 3          fb

E000003

ROCK ISLAND POLICE DEPARTMENT VOLUNTARY STATEMENT

Statement of Steven A. Fuhlman          July 14, 1993

A.  Yes.

Q.  Approximately how many people would you estimate were in front of the store?

A.  At least five.

Q.  And would you say they were adults or kids?

A.  Well, they were ranging from, you know, 16 on up to 20-25, somewhere around there.

Q.  And you also said that there were some kids sitting over on the benches in the Arsenal Courts park right across the street?

A.  Yeh.

Q.  How old would you put their ages?

A.  14 to 18.

Q.  And about how many of those subjects?

A.  About five.

Q.  And you further said that there were other people back in the area of the parking lot towards which the suspect ran.

A.  Right.

Q.  How many people would you estimate were over there?

A.  I would say about ten.

Q.  To clarify just a little bit as to where you saw the suspect run, earlier you had said that as he ran chasing the other subject, he had to run between some items across the street over here.  What was it you said?

A.  Between the tree and the trash can.

Q.  And then he stopped right at the corner of that building?

A.  Right.

Q.  And fired the shots.  So he never did enter the street himself?

A.  No.

Q.  Could you see the victim at the time the shots were fired?

A.  Yes I could.

Q.  You could see the victim at the time that the shots were fired?

A.  No, I seen the victim as he was being chased out of the courts.

Q.  Okay.

A.  And I barely seen him.  He looked to be slender, you know, and probably about 5'8"-5'10", you know.  He wasn't a real big guy.

Q.  Okay, but at the time that the shots were actually fired was the victim then out of your sight?

WITNESS _____  SIGNATURE _____

DATE?TIME  7-15-93  0920

PAGE: 4    fb

E000004

ROCK ISLAND POLICE DEPARTMENT VOLUNTARY STATEMENT
Statement of Steven A. Fuhlman          July 14, 1993

A.  Right.

Q.  You also said that you were aware that the suspect that did the
    shooting used to drive a certain kind of vehicle, what type of
    vehicle do you remember seeing him in?
A.  A light green Oldsmobile, it had a white vinyl top, a set of fancy,
    they're not wire rims, they're aluminum rims.

Q.  And have you seen him in that car recently?
A.  Not for awhile.

Q.  What do you commonly see him?
A.  On a bicycle, ten speed or whatever on up from that, like the
    mountain bike.

Q.  Have you seen the shooter in the area any time prior to this
    incident on that particular day?
A.  I don't know, you know, I see people all the time and he might even
    rode by on a bicycle but you know, it's a daily thing and I get
    used to seeing people out here and you know, unless he'd stopped
    and said something to me, you know.

Q.  So not specifically that day do you remember whether he was here?
A.  Right.

Q.  Do you have anything to add to this statement?
A.  Not really.

Q.  Were you under the infuence at the time, were you under the
    influence of drugs at the time of the incident?
A.  I don't do drugs.

Q.  Were you under the influence of alcohol at the time of the
    incident?
A.  No.

Q.  Has this statement been the truth to the best of your knowledge?
A.  Yes.

Q.  Were there any threats or promises made to you to make this
    statement?
A.  No.

Q.  And when this statement is typed and you have found to be accurate,
    would you be willing to approve and sign this statement?
A.  Yeh.

                        Statement Concluded:
                        07/14/93 @ 15:09 hrs.

WITNESS _____      SIGNATURE x _____
              DATE?TIME 7-15-93 0920
                        PAGE: 5      fb

E000005

**APPENDIX C**

ROCK ISLAND POLICE DEPARTMENT VOLUNTARY STATEMENT
VOLUNTARY STATEMENT

Incident No. 93-37060

I, the undersigned, Gary Dewayne Davis, am
20 years of age, having been born on 4-2-73
Address:  801 12th Ave., Rock Island, Illinois;

    I have been advised and fully understand the Waiver of Rights
Form that I have just signed.  I declare that the following voluntary
statement is made of my own free will without fear or threat of
physical harm, without promise of reward, without coercion and without
leniency or offer of leniency, by any person or persons whomsoever:

    This Statement is Being Taken At R.I.P.D., C.I.B. Interview Room,
on 07/14/93 at 15:52 hrs. by Inv. Thomas J. Mulder #1131 and
transcribed from tape by Frances Bauer #1578.

Q.  Would you state your full name?
A.  Gary Dewayne Davis.

Q.  Okay, Mr. Davis, what is your present address and telephone number?
A.  My present address is 801 12th Ave.

Q.  And do you have a phone number there?
A.  Yes, it's 793-1838.

Q.  And how much education have you had?
A.  12th grade.

Q.  And it's true that you can read, write, and understand the English
    language?
A.  Yes sir.

Q.  Is it true that this is a voluntary statement given by you?
A.  Yes sir.

Q.  And since coming in contact with the Rock Island Police Dept.,
    concerning this case, have you been treated in a fair manner?
A.  Yes sir.

Q.  Briefly, we're here to talk about an incident, a shooting incident
    that occurred on July 13th, 1993, at approximately 6:45 p.m. in the
    area of the Arsenal Courts, this resulted in the death of Brandon
    Ellison.  Is it true that you previously knew Mr. Ellison?
A.  He was a good friend.

Q.  And what name do you know him by or refer to him as?
A.  Little Lord.

Q.  Okay, that's his street name that he uses?
A.  Yeh, that's what I call him.

WITNESS _____    SIGNATURE _____
                         DATE?TIME 7/14/93  19:14
                         PAGE: 1      fb

EXHIBIT
PEOPLE'S #
11

000006
WKI

ROCK ISLAND POLICE DEPARTMENT VOLUNTARY STATEMENT
Statement of Gary D. Davis                July 14, 1993

Q.  Okay, we had previously talked prior to this statement being taped
    and could you briefly give me a run down on the events that
    occurred that night as you saw them?

A.  Okay, approximately about 4 o'clock I came to the Arsenal Courts, I
    was standing out there talking to a friend at first and then a
    little bit later after the conversation I seen Little Lord walk
    through and I told him, I said you just got a hard head, you don't
    listen huh, and he said -- -- --, so you know I knew he was down
    there you know gonna sell dope but I knew Crock was out there also
    but I thought beans probably was washed but as soon as Lord turned
    the corner, Crock came across, Crock crossed the street, -- and
    Lord had words, then Lord took off running in between the two
    buildings, that's when Crock ran from one curb to the other curb
    and fired his first shot.  That's when I seen Little Lord stagger
    close to running off into 5th St.  and that's when I know I seen
    enough and I broke but the incident it was just, it was like no
    remorse.  It was like the man just killed him and didn't even
    hesitate about it, and a few hours later after the police was
    coming there, he was right back outside.  It was like nothing
    happened and he had, I just couldn't understand it, it was one of
    his own brothers that he killed.

Q.  This incident occurred.  We had previously gone over the locations
    on this rough map that I'm showing you now, shows a small park area
    on 5th St. approximately 15th Ave. in the Arsenal Courts, correct?
A.  Yeh, it's approximately about, yeh, it's in front of 15th Ave.

Q.  Okay, and you indicate an area that Crock was standing at, this
    would be on 4 1/2 St. basically straight across from the little
    park on.
A.  This side.

Q.  According to the map, you were standing a little bit north of that
    by the corner of the building when you first saw Lord?
A.  Yes sir.

Q.  And then Lord.
A.  Lord walked around the building.

Q.  He turned what would be south.
A.  And that's when I walked up and Crock was coming across the street
    and him and Lord had some words, then Lord took off and Crock
    finally made it across the curb, that's when he fired his first
    shot.  Lord got to the curb stepping off into 5th St. and that's
    when he started stumbling and that's when I said oh shit, I heard,
    I heard enough and that's when I heard two more shots, then.

Q.  Did you see any blood on Little Lord when that happened?
A.  No, I didn't see no blood but I seen Crock fire the pistol.

Q.  Did you see where Crock got the pistol from?

WITNESS _T J Mullen_          SIGNATURE _Gary Davis_
          DATE?TIME _7/14/93    1914_
                 PAGE: 2      fb

E000007

WK 2

ROCK ISLAND POLICE DEPARTMENT VOLUNTARY STATEMENT
Statement of Gary D. Davis        July 14, 1993

A. Took it out from under his shirt.

Q. Okay, do you remember what clothing Crock was wearing?
A. I think it was a black T-shirt, some like black kind of shorts or something like that, and he had on some white shoes that was new, they was white Reeboks.

Q. Do you remember anything about Lord's clothing, what color it was or anything?
A. He had on like a beige shirt as yourself explained and some beige pants and some black shoes which I seen him in the outfit a thousand times but, and, in a way I kind of knew he had the pistol because he goes nowhere without it, if he come down there.

Q. Who's that, Lord?
A. Little Lord.

Q. Little Lord goes nowhere without the pistol.  Do you know what kind of pistol it was that Little Lord had?
A. It was a black, looked like a .22 or .32 revolver, had a brown handle on it.

Q. And could you tell what kind of gun it was that Crock had?
A. Crock was like, it looked like a, about .38, it was either a .38 or something, I know it was loud, but I don't..

Q. You don't know if his was a revolver or semiautomatic?
A. I think it was an automatic, nah, it was a revolver cause it clicked the first time, he tried to click, didn't nothing pop out but the second time that's when Little Lord got shot and the second and third time bullets fired out, it was just so loud, he didn't have no more than about four shells in it, so it had to be a revolver.

Q. Do you know what lead up to this confrontation between Crock and Little Lord?
A. It was a dispute, Lord, I mean Ricky ~~Morrison~~ had got, Ricky ~~Morrison~~ and Brandon have been getting into it with fellow Vice Lords down in the Arsenal Courts for the past few weeks and a lot of dipute they're having in between them, Brandon on the other hand took Crock's little brother's bike, okay, and then the stuff about Lord, Ricky got into it with his brother; in all the confusion, Crock you know I guess, it was basically like this, kill who kill first because you know, they wasn't talking or nothing.  But really Brandon he kind of acted like he wasn't worried about it, we just kicked on the porch and talked, he wasn't never worried about it and I knew he was crazy but I didn't think he was stupid.

Q. Could you hear or understand what Lord and Crock were arguing about before the shooting, did you hear any exchange or?
A. I heard Crock when he said, "little bitch, I told you I was gonna

WITNESS _T. Muld_        SIGNATURE _Gary Davis_
        DATE?TIME _7/14/93  19:14_
                PAGE: 3      fb

E000008

WK3

ROCK ISLAND POLICE DEPARTMENT VOLUNTARY STATEMENT
Statement of Gary D. Davis                July 14, 1993

A.  (Cont'd) get you," that's all I heard him say really.

Q.  And you refer to Lord Rick, is that Ricky Morrise?
A.  Yes.

Q.  And Crock, do you know his real name?
A.  No, I don't know Crock's real name.

Q.  And I showed you some mug photos earlier today?
A.  Yes sir.

Q.  I'm currently showing you a mug photo now, is that the subject you
    identified as Crock?
A.  Yes sir.

Q.  Okay, I'd like the tape to reflect that the mug photo is of David
    Greer, it's Rock Island Police Dept. mug #28842, the photo was
    taken on the 13th day of '93, the month is not clearly displayed on
    the mug photo.  You advised that Lord Rick and Crock are both gang
    members?
A.  Yes, we're all in the same organization.

Q.  What organization is that?
A.  Vice Lords.

Q.  Was Little Lord a Vice Lord also?
A.  Yes.

Q.  And you advised that you knew that he had some dope on him when he
    went down into the area?
A.  Yes.

Q.  Did you see it or just?
A.  No, I just knew that he had some.

Q.  You knew what he was there for?
A.  Yeh, he had some the day before and he said he was going to get rid
    of it, and that's the only place really you can come and get rid of
    it.

Q.  Okay, do you where Crock lives?
A.  Yes, it's down in Arsenal Courts, he stays with Dinky's
    grandmother.

Q.  Dinky, do you know his real name?
A.  No sir, I don't.

Q.  Do you know if Crock has a girlfriend that stays down in the
    Arsenal Courts?
A.  Yes, he goes with Dinky's sister, Wink.

WITNESS _____    SIGNATURE _____
              DATE?TIME 7/14/93  19:14
              PAGE: 4     fb

E000009

WK 4

ROCK ISLAND POLICE DEPARTMENT VOLUNTARY STATEMENT

Statement of Gary D. Davis                July 14, 1993

Q.  Do you know if Betty Rhoden would be her correct name?
A.  I believe that might be it, yes sir.

Q.  But you're not positive on that?
A.  I'm not positive.

Q.  Did you see Little Lord after he stumbled, did you see where he went after that?
A.  No, I just seen, when I seen him stumble, I just broke cause it was just crazy and I didn't want to get shot, a bunch of people just kind of scattered and.

Q.  Which way did you run then or where did you go?
A.  I ran, when I was standing right there, and I seen Little Lord stumble, I broke back around where I came from, then I shot to that side and got up in the house where one of my other brothers was.

Q.  By brothers you mean one of your fellow Vice Lords?
A.  Yes sir.

Q.  Okay, when this occurred, can you estimate how far away from Crock you were when you first saw him fire a shot?
A.  I'll say no more than about maybe 20-25 feet, something like that, not that far, I wasn't that far away.

Q.  You have no doubt in your mind that it was Crock who fired the shot?
A.  No doubt.

Q.  Do you know if Little Lord fired his gun back at Crock?
A.  Little Lord didn't have time to fire.

Q.  Okay, when this occurred, were you under the influence of drugs?
A.  No sir.

Q.  Were you under the influence of any alcoholic beverage at the time of this?
A.  No sir.

Q.  Okay, is there anything else that you'd like to add to this statement?
A.  No, but I hope you slam his ass.

Q.  Has this statement been the truth to the best of your knowledge?
A.  I swear.

Q.  Were there any threats or promises made to you to give this statement?
A.  No sir.

Q.  And once this statement is typed and you have found it to be

WITNESS _J Mulh_        SIGNATURE _Gary Davis_
          DATE?TIME _7/14 93  19:14_
          PAGE:  5      fb

E000010

WK5

**ROCK ISLAND POLICE DEPARTMENT VOLUNTARY STATEMENT**
Statement of Gary D. Davis              July 14, 1993

Q.  (Cont'd) exactly as you have said, would you be willing to sign
this statement?
A.  Yes sir.

                        Statement Concluded:
                        07/14/93 @ 16:04 hrs.

WITNESS _____  SIGNATURE _____
          DATE?TIME 7/14/93  19:14
             PAGE: 6    fb

E00001WKL

E-FILED
Tuesday, 26 September, 2006  01:58:20 PM
Clerk, U.S. District Court, ILCD

NO. 3-99-0706

IN THE

APPELLATE COURT OF THE STATE OF ILLINOIS

THIRD JUDICIAL DISTRICT

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of the 14th Judicial Circuit |
| Plaintiff-Appellee, | ) | Rock Island County, Illinois |
| | ) | |
| v. | ) | No. 94-CF-649 |
| | ) | |
| DAVID ALLEN GREER, | ) | Honorable |
| | ) | James Teros |
| Defendant-Appellant. | ) | Judge Presiding |

**BRIEF AND ARGUMENT FOR PLAINTIFF-APPELLEE**

**FILE COPY**

Marshall E. Douglas
State's Attorney
Rock Island County
Rock Island, Illinois 61201
309/786-4451

FILED
MAR 2 0 2001
THIRD DISTRICT
APPELLATE COURT CLERK

John X. Breslin
Deputy Director
Robert M. Hansen
Staff Attorney
State's Attorneys
    Appellate Prosecutor
628 Columbus Street, Suite 300
Ottawa, Illinois 61350
(815) 434-7010

Norbert J. Goetten, Director
State's Attorneys
    Appellate Prosecutor

**COUNSEL FOR PLAINTIFF-APPELLEE**

**ORAL ARGUMENT REQUESTED**

EXHIBIT H

NO. 3-99-0706

IN THE

APPELLATE COURT OF THE STATE OF ILLINOIS

THIRD JUDICIAL DISTRICT

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of the 14th Judicial Circuit |
| Plaintiff-Appellee, | ) | Rock Island County, Illinois |
| | ) | |
| v. | ) | No. 94-CF-649 |
| | ) | |
| DAVID ALLEN GREER, | ) | Honorable |
| | ) | James Teros |
| Defendant-Appellant. | ) | Judge Presiding |

POINTS AND AUTHORITIES

I

THE JUDGE DID NOT REVERSIBLY ERR IN ALLOWING THE
TRANSCRIPTS OF PRIOR CONSISTENT STATEMENTS OF TWO WITNESSES
TO GO TO THE JURY ROOM. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

725 ILCS 5/115-12 (West 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . 4-6

People v. Williams, 182 Ill.2d 171, 695 N.E.2d 380, 220 Ill.Dec. 890
(1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

People v. Lewis, 165 Ill.2d 305, 651 N.E.2d 72, 209 Ill.Dec. 144 (1995) . . 5

People v. Beals, 162 Ill.2d 497, 643 N.E.2d 789, 205 Ill.Dec. 498 (1994) . 4-5

People v. Towns, 157 Ill.2d 90, 623 N.E.2d 269, 191 Ill.Dec. 24 (1993) . . 2

People v. Easley, 148 Ill.2d 281, 592 N.E.2d 1036, 170 Ill.Dec. 356
(1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

People v. Illgen, 145 Ill.2d 353, 583 N.E.2d 515, 164 Ill.Dec. 599 (1991) . 4

People v. Morgan, 142 Ill.2d 410, 568 N.E.2d 755, 154 Ill.Dec. 534
(1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

People v. Smith, 141 Ill.2d 40, 565 N.E.2d 900, 152 Ill.Dec. 218 (1990) . . 7

i

People v. Franklin, 135 Ill.2d 78, 552 N.E.2d 743, 142 Ill.Dec.
   152 (1990), cert. den., Franklin v. Illinois, 498 U.S. 881, 111
   S.Ct. 228, 112 L.Ed.2d 182 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

People v. Richardson, 123 Ill.2d 322, 528 N.E.2d 612, 123 Ill.Dec. 908
   (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

People v. Enoch, 122 Ill.2d 176, 522 N.E.2d 1124, 119 Ill.Dec. 265
   (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

People v. Crockett, 314 Ill.App.3d 389, 731 N.E.2d 823, 247 Ill.Dec.
   50 (1st Dist. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

People v. Mullen, 313 Ill.App.3d 718, 730 N.E.2d 545, 246 Ill.Dec.
   520 (1st Dist. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-4

People v. Curry, 296 Ill.App.3d 559, 694 N.E.2d 630, 230 Ill.Dec. 661
   (1st Dist. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

People v. Davis, 285 Ill.App.3d 1039, 675 N.E.2d 194, 221 Ill.Dec.
   287 (1st Dist. 1996), app. den., 173 Ill.2d 532, 684 N.E.2d 1338,
   226 Ill.Dec. 135 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

People v. Martin, 271 Ill.App.3d 346, 648 N.E.2d 992, 208 Ill.Dec.
   70 (1st Dist. 1995), app. den., 167 Ill.2d 563, 667 N.E.2d 1060,
   217 Ill.Dec. 667 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

People v. Zarate, 264 Ill.App.3d 667, 637 N.E.2d 1044, 202 Ill.Dec.
   308 (1st Dist. 1994), app. den., 157 Ill.2d 520, 642 N.E.2d 1301,
   205 Ill.Dec. 184 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

People v. Maldonado, 240 Ill.App.3d 470, 608 N.E.2d 499, 181 Ill.Dec.
   426 (1st Dist. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

People v. Carr, 53 Ill.App.3d 492, 368 N.E.2d 128, 10 Ill.Dec. 642
   (2d Dist. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

People v. Emerson, 97 Ill.2d 487, 455 N.E.2d 41, 74 Ill.Dec. 11
   (1983) (distinguished) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-4

People v. Clark, 52 Ill.2d 374, 288 N.E.2d 363 (1972) (distinguished) . . . 4

People v. Lambert, 288 Ill.App.3d 450, 681 N.E.2d 675, 224 Ill.Dec.
   360 (2d Dist. 1997) (distinguished) . . . . . . . . . . . . . . . . . . . . . . . 6

People v. West, 263 Ill.App.3d 1041, 636 N.E.2d 948, 201 Ill.Dec. 516
   (1st Dist. 1994) (distinguished) . . . . . . . . . . . . . . . . . . . . . . . . . . 5

People v. Smith, 139 Ill.App.3d 21, 486 N.E.2d 1347, 93 Ill.Dec. 512
   (1st Dist. 1985) (distinguished) . . . . . . . . . . . . . . . . . . . . . . . . . . 5

## II

## THE JUDGE CORRECTLY ALLOWED GARY DAVIS TO BE CALLED AS A

COURT'S WITNESS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Supreme Court Rule 238 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

People v. R.D., 155 Ill.2d 122, 613 N.E.2d 706, 184 Ill.Dec. 389 (1993) . 14

People v. Pastorino, 91 Ill.2d 178, 435 N.E.2d 1144, 62 Ill.Dec. 172
    (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

People v. Robinson, 14 Ill.2d 325, 153 N.E.2d 65 (1958) . . . . . . . . . . . 14

People v. Greer, 293 Ill.App.3d 861, 689 N.E.2d 134, 228 Ill.Dec. 262
    (3d Dist. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Dear v. Chicago Transit Authority, 72 Ill.App.3d 729, 391 N.E.2d 119,
    28 Ill.Dec. 920 (1st Dist. 1979) (distinguished) . . . . . . . . . . . . . 15-16

## NATURE OF THE CASE

The defendant was charged by indictment with first degree murder. He was convicted following a jury trial and sentenced to 50 years in prison. On appeal, his conviction was reversed and the cause remanded for a new trial. At the second jury trial he was again convicted of first degree murder and sentenced to 50 years in prison. He appeals therefrom.

No question is raised regarding the indictment.

## ISSUES PRESENTED FOR REVIEW

### I

DID THE JUDGE REVERSIBLY ERR IN ALLOWING THE TRANSCRIPTS OF PRIOR CONSISTENT STATEMENTS OF TWO WITNESSES TO GO TO THE JURY ROOM?

### II

DID THE JUDGE CORRECTLY ALLOW GARY DAVIS TO BE CALLED AS A COURT'S WITNESS?

## STATEMENT OF FACTS

Those additional facts necessary for an understanding of the issues raised on this appeal will be included, together with appropriate record references, in the argument portion of this brief.

1

## ARGUMENT

### I

### THE JUDGE DID NOT REVERSIBLY ERR IN ALLOWING THE TRANSCRIPTS OF PRIOR CONSISTENT STATEMENTS OF TWO WITNESSES TO GO TO THE JURY ROOM.

The defendant claims that the judge reversibly erred in allowing transcripts of prior consistent statements of two eyewitnesses to go the jury room. He is wrong. The defendant did not object at trial to the admission into evidence of the two prior consistent statements. He objected just to their being sent to the jury room. The jury was out only about 1 to 1 1/4 hours, so there is little likelihood the jurors even had time to read those statements. (People's Exhibits 8, 11; C. 416; R. 1470, 1482) Further, those statements were properly admitted to rebut an inference that these witnesses' testimony was recently fabricated or the result of a motive to testify falsely.

The claim that Mr. Fuhlman's prior consistent statement was inadmissible should not be heard on appeal. The defendant did not object at trial to the admissibility of the prior consistent statements of Mr. Fuhlman or Mr. Davis. (R. 1215, 1271) He objected only to those statements going to the jury room. (R. 1468) He repeated that limited objection in his post-trial motion. (C. 379) A defendant must properly object both at trial and in his post-trial motion, or else he has waived the objection on appeal. People v. Towns, 157 Ill.2d 90, 623 N.E.2d 269, 273, 191 Ill.Dec. 24 (1993); People v. Enoch, 122 Ill.2d 176, 522 N.E.2d 1124, 1130, 119 Ill.Dec. 265 (1988). Nor should this court consider this waived issue as plain error. Such error is not present when, as here, the evidence is not closely balanced, as will be discussed below, and the defendant has not been denied a fair trial. People v. Morgan, 142 Ill.2d 410, 568 N.E.2d 755, 771, 154 Ill.Dec. 534 (1991).

2

Moreover, Mr. Fuhlman's prior consistent statement was properly admitted into evidence. When it is charged or inferred that a witness' testimony is a recent fabrication or that he had a motive to testify falsely, proof is admissible that he gave a similar account when the motive did not exist or before the time of the fabrication. People v. Emerson, 97 Ill.2d 487, 455 N.E.2d 41, 47, 74 Ill.Dec. 11 (1983); People v. Crockett, 314 Ill.App.3d 389, 731 N.E.2d 823, 837, 247 Ill.Dec. 50 (1st Dist. 2000).

Here the defendant raised the charge or inference that Mr. Fuhlman recently fabricated testimony identifying the defendant as the shooter or had a motive to testify falsely to that. As he states at page 26 of his brief, Mr. Fuhlman originally told police he was not sure who did the shooting. (R. 1260, 1269-70) He further claims at page 26 of his brief that evidence showed it was doubtful that Mr. Fuhlman could see the shooter from where he was working on his car, *i.e.*, the testimony of Mr. Quick. (R. 1311-15) Further, the defendant brought out at trial from Mr. Fuhlman that he did not call the police, report what he had seen to anybody, or go to the police station to tell what he had seen. (R. 1260-61) He further implied that the witness was lying at trial when he asked him whether two to three days after the police talked to him he told a Mr. Park he had been under the car, and the defendant said that he did not do that. (R. 1262) Although the defendant did not complete this attempted impeachment by presenting the testimony of Mr. Park, he was clearly implying by this question that the defendant was not in a position to see the shooting as he claimed and was thus lying now about that. Given this attack on Mr. Fuhlman's testimony, Mr. Fuhlman's prior consistent statement was admissible. It was given the day after the shooting. (People's Exhibit 8; R. 1270-71)

The People carried their burden of establishing that this prior consistent statement predated the alleged recent fabrication at trial or predated the existence of a motive to testify falsely. People v. Mullen, 313 Ill.App.3d 718, 730 N.E.2d 545, 555-

3

56, 246 Ill.Dec. 520 (1st Dist. 2000). The admissibility of evidence is a matter within the sound discretion of the trial judge, whose decision will not be reversed absent a clear abuse of discretion. People v. Illgen, 145 Ill.2d 353, 583 N.E.2d 515, 519, 164 Ill.Dec. 599 (1991); Mullen, 730 N.E.2d 555. The decision as to which evidence should go to the jury room is also within the judge's discretion and will not be reversed absent an abuse thereof. People v. Davis, 285 Ill.App.3d 1039, 675 N.E.2d 194, 199-200, 221 Ill.Dec. 287 (1st Dist. 1996), app. den., 173 Ill.2d 532, 684 N.E.2d 1338, 226 Ill.Dec. 135 (1997). An abuse of discretion exists only when the trial judge's ruling is arbitrary, fanciful, or unreasonable, or when no reasonable person would take the trial judge's view. Illgen, 583 N.E.2d 519.

Additionally, the general rule that a witness may not testify to a prior consistent statement does not apply to statements of identification. People v. Beals, 162 Ill.2d 497, 643 N.E.2d 789, 795, 205 Ill.Dec. 498 (1994). When, as here, a witness testifies that he previously identified the defendant and he has been cross-examined, a third person may then testify that he heard the witness previously identify the defendant. This corroborative testimony is deemed reliable and admissible because the witness and third person are subject to cross-examination at trial. Beals, 643 N.E.2d 795.

Also, by statute a prior statement of identification is admissible when, as here, the declarant testifies at trial and is subject to cross-examination regarding the statement. 725 ILCS 5/115-12 (West 1998).

Emerson, 445 N.E.2d 1, relied on by the defendant, does not call for a reversal here. It held that a prior consistent statement identifying the defendant was not admissible. It preceded section 5/115-12, effective January 1, 1984, holding such a statement admissible. It also found no inference of a recent motive to testify falsely. People v. Clark, 52 Ill.2d 374, 288 N.E.2d 363 (1972), also relied on by the defendant,

4

is inapplicable, as it did not concern a prior consistent statement of the identification of the defendant and there was no charge or inference of a motive to testify falsely or that the testimony was recently fabricated. Another case the defendant relies on, People v. West, 263 Ill.App.3d 1041, 636 N.E.2d 948, 201 Ill.Dec. 516 (1st Dist. 1994), is distinguishable on the same basis. Similarly, People v. Smith, 139 Ill.App.3d 21, 486 N.E.2d 1347, 93 Ill.Dec. 512 (1st Dist. 1985), on which the defendant relies, is not in point as there was no inference there that the witness' statement was recently fabricated or that the witness had a motive to testify falsely.

The objection raised on appeal to Mr. Fuhlman's prior statement being admitted has been waived because it was not raised below. It was properly admitted as a prior consistent statement to rebut a charge or inference of recent fabrication or a motive to lie. It was properly admitted under section 5/115-12 as a prior statement of identification. The judge did not abuse his discretion in admitting it and allowing it to go to the jury. Given the speedy verdict, it is not likely that the jury took the time to read it.

Turning to the admission of Mr. Davis' prior consistent statement, the defendant admits at page 22 of his brief that it was admissible. He complains, however, that it should not have gone to the jury because there was a danger the jury considered it as substantive evidence. Again, it is likely the jury did not take the time to read it. As discussed above, section 5/115-12 allows the admission of prior consistent statements of identification. Such statements are admissible both as corroborative and substantive evidence of a witness' prior identification of a defendant. People v. Lewis, 165 Ill.2d 305, 651 N.E.2d 72, 90, 209 Ill.Dec. 144 (1995); Beals, 643 N.E.2d 795.

He complains, too, that the jury was not instructed that the prior consistent statement could be considered only for its limited rehabilitative purpose. As just

5

discussed, the prior consistent statement of identification is also substantive evidence. Too, the defendant sought no limiting instruction. (R. 1423-29) The party who wishes an instruction must tender it to the court, failing which not giving it will not be considered error on appeal. People v. Franklin, 135 Ill.2d 78, 552 N.E.2d 743, 754, 142 Ill.Dec. 152 (1990), cert. den., Franklin v. Illinois, 498 U.S. 881, 111 S.Ct. 228, 112 L.Ed.2d 182. The vital instructions in a jury case, those as to the elements of the offense, the presumption of innocence, and the burden of proof were present here. People v. Curry, 296 Ill.App.3d 559, 694 N.E.2d 630, 637, 230 Ill.Dec. 661 (1st Dist. 1998).

The defendant's reliance on People v. Lambert, 288 Ill.App.3d 450, 681 N.E.2d 675, 224 Ill.Dec. 360 (2d Dist. 1997), is misplaced. Lambert did not recognize that under section 5/115-12 prior consistent statements of identification are admissible substantively. Also, it relied on the relative closeness of the case, which is unlike the situation here, as will be discussed below. Further, People v. Carr, 53 Ill.App.3d 492, 368 N.E.2d 128, 10 Ill.Dec. 642 (2d Dist. 1977), is unlike the case at bar, as the three statements given to the jury there were prior inconsistent, as well as consistent statements, and the jury was not instructed as to the use of the statements for impeachment. Also, the trial judge had noted that defense attempts to impeach the witnesses with their prior statements had caused confusion. Too, Carr preceded section 5/115-12 allowing prior consistent statements of identification to be substantively admissible.

Additionally, gang membership information in the prior statement of Mr. Davis, if noted by the jury, could hardly have been of any prejudice to the defendant. Gang evidence was already in the record without objection, Mr. Davis having testified that he had earlier changed his inculpatory testimony because the area of the shooting was highly gang affiliated and thus his testimony could place his family in jeopardy.

6

(R. 1215)  Further, the information about the Vice Lords in the statement was that the defendant and the victim were both Vice Lords. (People's Exhibit 11, page 4)  That information tended to favor the defendant, no reason appearing why one gang member would shoot a fellow member of the same gang.  The defendant would have a more convincing argument if the defendant and the victim were members of different or warring gangs.  Any motive the defendant had to shoot the victim came from how the victim previously harmed the defendant's brother, not gang membership. (R. 1182-83)

Gang evidence may indeed be prejudicial and a cause for reversal for a new trial when in a closely-balanced case the purported motive for a murder is that it was a gang-ordered murder and there is insufficient evidence that the defendant was a member of the gang and that the murder was a gang-ordered "assassination." People v. Smith, 141 Ill.2d 40, 565 N.E.2d 900, 905-08, 152 Ill.Dec. 218 (1990).  In the case at bar, there was no claim or attempt to prove that gang membership provided a motive for this murder.

When gang evidence offers a motive for a murder but fails to establish that the murder with which the defendant is charged was gang related, that evidence is erroneously admitted.  However, that erroneous admission is not reversible error when the jury is still presented with testimony of eyewitnesses and physical evidence supporting the People's case.  People v. Easley, 148 Ill.2d 281, 592 N.E.2d 1036, 1057-58, 170 Ill.Dec. 356 (1992).  Easley applies with even more force to the case at bar than to its own facts, as the People in this case never claimed that the murder was gang related and did not present extensive gang evidence concerning the defendant as the People did in Easley.  People v. Maldonado, 240 Ill.App.3d 470, 608 N.E.2d 499, 503-04, 181 Ill.Dec. 426 (1st Dist. 1992), is to the same effect as Easley.

7

It is harmless error to admit inadmissible gang evidence in a murder case when, as here, the events surrounding the murder primarily concern the defendant's rivalry with the victim over another matter and have little to do with gang rivalry. People v. Martin, 271 Ill.App.3d 346, 648 N.E.2d 992, 1000, 208 Ill.Dec. 70 (1st Dist. 1995), app. den., 167 Ill.2d 563, 667 N.E.2d 1060, 217 Ill.Dec. 667 (1996).    The rivalry in Martin was between drug dealers.  The rivalry here was between the defendant and the victim, who had earlier beaten the defendant's brother and discharged a gun there.

Mr. Davis' prior consistent statement was admissible.  The judge did not abuse his discretion in allowing it to go to the jury.  Again, the jury hardly had time to read it, given the quick verdict.  The defendant sought no instruction concerning its being considered for a limited purpose, so he has waived that claim.  Also, the statement was admissible as substantive evidence of identification.    Reference to gang membership caused the defendant no prejudice.

Further, any error in admitting these statements and allowing them to go to the jury was harmless given the overwhelming evidence of the defendant's guilt. When it does not appear justice has been denied or that a finding of guilt resulted from an error, including an error as significant as impermissible other crimes evidence, a conviction will not be reversed.  People v. Richardson, 123 Ill.2d 322, 528 N.E.2d 612, 619, 123 Ill.Dec. 908 (1988).  The jurors likely did not even have time to review these statements.  They began deliberating at 10:45 a.m. and reached a verdict by noon. (C. 416; R.1470)  The  judge specifically noted that the jury was out approximately one hour and then returned a verdict. (R. 1482)

Also, the judge noted that there was more than ample evidence to convict the defendant. (R. 1482)    Indeed, the evidence, including the testimony of two eyewitnesses with no reason to lie, was overwhelming.

8

Officer Mulder's testimony helped set the scene. He testified that Mr. Fuhlman lived next door to the Senters. (R. 1061) The victim's body was in the alley just north of the Senters' house. (R. 1094-97, 1061) The Quick Store was right across 15th Avenue to the south of Mr. Fuhlman's house. (R. 1061) The call regarding the shooting came from the Senter home at 6:45 a.m. (R. 1056-57, 1102)

Gary Davis came forward the day after the shooting. (R. 1080, 1192-93) He identified the defendant then from a photographic lineup. (R. 1191-92) He testified at trial that he was present at the Arsenal Courts, a public housing complex, the day of the murder, as were the defendant, the defendant's girlfriend Betty Rhoden, and the victim. (R. 1180-81) The defendant was there when Mr. Davis arrived at approximately 4 p.m. The victim came shortly after 6 p.m. (R. 1196) The victim had previously struck the defendant's brother, Ronnie Greer, in the side of the head and discharged a gun. (R. 1182) The defendant was angry about this. (R. 1182-83) He thus had a motive to harm the defendant. Mr. Davis heard the defendant say to the victim "Little bitch, I told you I was going to get you." (R. 1185) He saw a pistol in the defendant's hand. Then he saw the victim turn and run. (R.1186) The defendant shot, and the pistol misfired. The defendant shot again, and the victim stumbled. (R. 1186) Mr. Davis saw the victim running on 5th Street toward an alley. (R. 1186) He saw the defendant aim at the victim and saw the victim hit by the second shot. (R. 1201-04) He recalled the defendant was wearing black, knee-length shorts, a dark shirt, and white sneakers, but could not recall if the defendant was wearing a hat. (R. 1190, 1206)

Continuing, Mr. Davis testified that in February, 1995, he testified that he did not see the defendant shoot the victim and had then written the defendant a letter to that effect. (R. 1194-95) However, the witness said that in November, 1994, he gave prior testimony consistent with his present trial testimony. (R. 1207-08) He also

9

identified People's Exhibit 11 as a statement he gave Officer Mulder on July 14, 1993, the day after the murder, which statement was consistent with his trial testimony and accompanied by an identification of the defendant from a photographic array. (R. 1191-92, 1214)  Officer Mulder, too, testified that Mr. Davis selected the photograph of the defendant from a six photo array the day after the shooting. (R. 1304-05)

Mr. Davis explained the interim recantation of his testimony.  He said the area was highly gang-affiliated and by his earlier testimony he had placed him mother, sister, and three nieces in jeopardy.  He had recanted to protect them.  He was telling the truth again at trial because his family was backing him in that. (R. 1217-18) Indeed, he had no motive to falsely incriminate the defendant as he and the defendant were fellow Vice Lord gang members. (People's Exhibit 11, page 4)  He added that he was offered no deals for his testimony. (R. 1216)  He was then serving a prison sentence in Arkansas. (R. 1216-17)

Further, Mr. Davis said that although the victim was known to carry a gun he did not see him attempt to use it this day. (R. 1186-87, 1190-91)  The police believed that the victim's gun had not been fired this day but rather two nights earlier in the incident with Ronnie Greer. (R. 1071-72, 1087)  Mr. and Mrs. Senter, too, said the victim, who ran into the alley near their home, did not fire any shots. (R. 1094-1103; Exhibit 1, pages 4-5, 7-8)

A forensic pathologist, Dr. Teas, determined the cause of the victim's death was a gunshot wound to the back.  She said a person with such a wound could run 1 to 1 ½ blocks before collapsing. (R. 1235-40)

Steve Fuhlman said that he and the defendant had previously talked face-to-face once or twice. (R. 1243)  There was no evidence he was unfavorably disposed toward the defendant.  He knew the defendant to identify him.  At the time of the shooting, he was working on a car parked on 15th Avenue at the corner of its

10

intersection with 5th Street. (R. 1245-46)  He heard a commotion coming out of the Arsenal Courts. (R. 1246)  He saw the defendant chase another man and shoot him. (R. 1246-47, 1249, 1253)   The day after the shooting the witness selected the defendant's photograph from a six photo array shown to him. (R. 1252)  He said the defendant was wearing dark, knee-length shorts, a light shirt, and a turquoise bandana. (R. 1253-54)  Detective Dooley also testified that the witness selected the defendant's photograph from the six photo array the day after the shooting. (R. 1279-81)

Both Mr. Fuhlman and Mr. Davis knew the defendant and identified him as the shooter of the victim.   Identification testimony is strengthened to the extent a witness has a prior acquaintance with the defendant.  People v. Zarate, 264 Ill.App.3d 667, 637 N.E.2d 1044, 1049, 202 Ill.Dec. 308 (1st Dist. 1994), app. den., 157 Ill.2d 520, 642 N.E.2d 1301, 205 Ill.Dec. 184.

The defendant adduced testimony from Melvin Quick, whose store was south across 15th Avenue from the Fuhlman home, that Mr. Fuhlman was working on a car parked about ½ car length farther back from the corner than Mr. Fuhlman had said was the case. (R. 1311-13)  This testimony was of little value.  Mr. Quick was impeached by a prior conviction. (R. 1321)  After he testified that he knew people would be interested in that information, he was impeached by a prior statement that he did not know people would be interested in his knowledge that Mr. Fuhlman's car was improperly located when the police later photographed it. (R. 1317-18)  He also denied calling the defendant's girlfriend, Betty Rhoden, with this information. (R. 1319)  He was impeached by a prior statement that he did that. (R. 1319-20)

Betty Rhoden, the defendant's girlfriend, said she spent essentially the entire day of the shooting with the defendant cleaning and painting a house at 1421 7th Street. (R. 1334-37)  She said the defendant left the house for only 10 to 15 minutes

11

with her and her grandmother at approximately 5 p.m. (R. 1337)  She was impeached with a prior conviction. (R. 1350)  Henry Rhoden, Ms. Rhoden's uncle, testified as she had. (R. 1324-26, 1330-31, 1341, 1349)  He was impeached by prior convictions. (R. 1333-34)  Also, a jury need not accept alibi testimony given by a defendant's girlfriend and her family.  <u>People v. Williams</u>, 182 Ill.2d 171, 695 N.E.2d 380, 391, 220 Ill.Dec. 890 (1998).

Lewis Pemberton left the house at 1421 7th Street late in the afternoon and said the defendant was still there. (R. 1355-56)  About 10 minutes later as he walked on 15th Avenue about a block from Quick's store, he heard gunshots and saw Mr. Fuhlman working on his car. (R. 1356-62)  He gave the defendant no alibi.  The defendant could have easily left the 7th Street house and gotten to Arsenal Courts to commit this crime after Mr. Pemberton left.

The defendant testified essentially as Ms. Rhoden had.  He said he left the 7th Street home once in the morning to get supplies and again with Ms. Rhoden for 15 to 20 minutes between 5 and 5:30 p.m. when he went to Quick's store. (R. 1370-74)  He denied the shooting. (R. 1375)  He was impeached with a prior conviction. (R. 1370)  Moreover, the defendant admitted Mr. Fuhlman had no reason to falsely identify him. (R. 1376-82)  He admitted that he knew Mr. Fuhlman "somewhat." (R. 1376)  He admitted he was wearing dark, knee-length shorts this day. (R. 1379)

Further, the defendant's testimony of the two brief trips from the 7th Street home was contradicted and rebutted by witnesses with no reason to lie.  Peggy Teague saw the defendant walking through Arsenal Courts at 11 a.m. this day. (R. 1405-07)  Mr. Fuhlman, too, said he saw the defendant on 15th Avenue headed toward Arsenal Courts at 10-11 a.m. this day. (R. 1267-68)  More importantly, Laverne Bester testified that she lived in the Arsenal Courts and had known the defendant all his life. (R. 1409, 1411)  She saw the defendant in the Arsenal Courts park area 20 to 25

12

minutes before the shots were fired and again 15 to 20 minutes after the shooting. (R. 1411-12)    She had no reason to lie.    Clearly, the defendant was there to do the shooting rather than at the 7th Street house as he claimed.    Moreover, Ms. Bester helped establish that Betty Rhoden was a liar. Betty Rhoden had testified that she was upstairs in her grandmother's Arsenal Courts apartment when the shots were fired. (R. 1348)  Ms. Bester testified that Ms. Rhoden was instead standing 20 to 30 feet from her when the shots were fired. (R. 1412)

Moreover, there was no evidence that either Mr. Davis or Mr. Fuhlman was untruthful or had a reason to lie.  Mr. Fuhlman's testimony was really untouched by the defendant's attempts to discredit it.  Mr. Davis' testimony, too, was wholly credible, his interim recantation having been fully explained.  Further, as discussed, the defendant's alibi evidence was not credible and was contradicted by wholly credible testimony from Ms. Teague and Ms. Bester.   Too, the prosecutor simply mentioned the prior statements in closing argument, not quoting from them or particularly relying on them. (R. 1453-55, 1457-58)

Given the facts of this case, even if there was any error in letting these two statements go to the jury, there was no prejudice to the defendant.  The verdict was swift and the proof was overwhelming.  Whether because of waiver, the propriety of the statements going to the jury, or harmless error, the defendant's conviction of murder should be affirmed.

13

## II

### THE JUDGE CORRECTLY ALLOWED GARY DAVIS TO BE CALLED AS A COURT'S WITNESS.

The defendant argues that the judge, after hearing an offer of proof and argument, abused his discretion in allowing Gary Davis to be called as a court's witness. The judge did not approach an abuse of discretion in allowing that. He properly did so, as this witness was an eyewitness to the instant murder, his testimony was clearly necessary to prevent a miscarriage of justice, and the People could not vouch for his veracity.

A party may ask the judge to call a witness as a court's witness when his testimony will concern noncollateral issues and is necessary to prevent a miscarriage of justice and the party does not wish to vouch for his veracity. People v. R.D., 155 Ill.2d 122, 613 N.E.2d 706, 715, 184 Ill.Dec. 389 (1993). Whether to call a witness as a court's witness is within the judge's discretion and will not be reversed absent an abuse of that discretion. People v. Pastorino, 91 Ill.2d 178, 435 N.E.2d 1144, 1152, 62 Ill.Dec. 172 (1982); People v. Robinson, 14 Ill.2d 325, 153 N.E.2d 65, 70 (1958).

The People readily established the foundation for calling Mr. Davis as a court's witness. Mr. Davis testified in the defendant's first trial that he saw the defendant shoot the victim. (R. 453-54, 456-58) In a letter attached to the defendant's post-trial motion, this witness recanted that testimony, saying he was present and did not see the shooting. (C. 143-46) He also testified to that at the hearing on the post-trial motion. (R. 819) As the defendant notes at page 6 of his brief, the defendant's first conviction was reversed based upon the trial judge's improper restriction of cross-examination of a witness for the People. People v. Greer, 293 Ill.App.3d 861, 689 N.E.2d 134, 228 Ill.Dec. 262 (3d Dist. 1997).

14

Prior to the second trial, the People requested that this witness be called as a court's witness because they could not vouch for his credibility given his recantation of his testimony at the first trial. (R. 1124-28) The People then presented Mr. Davis in an offer of proof to say again that he saw the defendant shoot the victim. (R. 1151-61) He testified further that he had earlier testified under oath that he did not see the shooting and had written a letter to the defendant stating that. (R. 1166-67) He said his first testimony at trial, that the defendant shot and killed the victim, was true. (R. 1168) He then said "I swore my life today. No more am I scared of you, homeboy, you killed my homeboy." (R. 1168)

This witness was prepared to testify to a noncollateral issue, who shot the murder victim. This eyewitness testimony was patently necessary to prevent a miscarriage of justice. The People obviously could not vouch for his credibility. He first said he saw the defendant shoot the victim, then by letter and testimony said he did not, and then returned to his original testimony that he saw the defendant shoot the victim. Stated differently, he twice recanted his original testimony and then recanted those recantations. The People could not rely on his veracity. They were simply not required to be trustingly naive.

That Supreme Court Rule 238 allows a party calling a witness to attack his credibility and to cross-examine him if he is hostile or unwilling is of no significance. In effect, this rule allows a witness to be treated as a court's witness. Given that, there could have been no significant harm in allowing the witness to be called as a court's witness.

Further, unlike the situation in <u>Dear v. Chicago Transit Authority</u>, 72 Ill.App.3d 729, 391 N.E.2d 119, 28 Ill.Dec. 920 (1st Dist. 1979), on which the defendant relies, the judge here did not give the jury the impression that this witness commanded deferential attention as a court's witness. He told the jury that Mr. Davis

was a court's witness who was called neither by the People, as they could not vouch for his credibility, nor by the defense, but nonetheless had material testimony to give. (R. 1178) Stated differently, he told the jury that the witness' credibility was suspect. Defense counsel said he was satisfied with this admonition to the jury. (R. 1178) As the witness testified favorably for the prosecution, the suspect nature of his testimony was a benefit to the defendant. <u>Dear</u> presented a wholly different situation. There the judge simply told the jury that as a witness was sick and unavailable the transcript of his testimony at an earlier trial would be received as that of a court's witness. He said nothing about not being able to vouch for the witness' credibility. The admonition to the jury in <u>Dear</u> was not remotely like the proper admonition given here.

In sum, the judge did not abuse his discretion in allowing Mr. Davis to be called as a court's witness, given his recantations of earlier testimony and then recanting those recantations. Clearly, the People could not vouch for his veracity. Further, the judge properly admonished the jury about Mr. Davis, saying nothing to imply that his testimony somehow commanded more deferential attention. Too, given the overwhelming evidence of the defendant's guilt as discussed in Issue I, any error in this regard was harmless. The defendant's conviction for murder should be affirmed.

16

## CONCLUSION

For the foregoing reasons, the People urge that this court affirm the defendant's conviction and sentence.

In addition, the People move for fees of $50, plus $25 if oral argument is held. 55 ILCS 5/4-2002(a) (West 1994); People v. Nicholls, 71 Ill.2d 166, 374 N.E.2d 194, 15 Ill.Dec. 759 (1978); People v. Keagbine, 77 Ill.App.3d 1039, 396 N.E.2d 1341, 33 Ill.Dec. 617 (5th Dist. 1979).

Respectfully submitted,


Marshall E. Douglas
State's Attorney
Rock Island County
Rock Island, Illinois  61201
309/786-4451

John X. Breslin
Deputy Director
Robert M. Hansen
Staff Attorney
State's Attorneys
  Appellate Prosecutor
628 Columbus Street, Suite 300
Ottawa, Illinois 61350
(815) 434-7010

COUNSEL FOR PLAINTIFF-APPELLEE


JXBRMHdablf032001
F:\wpdata\rmh\Greer, David 3-99-0706\B&A

E-FILED
Tuesday, 26 September, 2006  01:58:39 PM
Clerk, U.S. District Court, ILCD

No. 3-99-0706

IN THE  APPELLATE COURT OF ILLINOIS

THIRD JUDICIAL DISTRICT

| | | |
|---|---|---|
| **PEOPLE OF THE STATE OF ILLINOIS,** | ) | Appeal from the Circuit Court |
| | ) | of the 14th Judicial Circuit, |
| Plaintiff-Appellee, | ) | Rock Island County, Illinois. |
| | ) | |
| -vs- | ) | No. 94-CF-649 |
| | ) | |
| **DAVID ALLEN GREER,** | ) | Honorable |
| | ) | James Teros, |
| Defendant-Appellant. | ) | Presiding Judge. |

## REPLY BRIEF

## FOR

## DEFENDANT-APPELLANT

ROBERT AGOSTINELLI
Deputy Defender

KENNETH D. BROWN
Assistant Defender
Office of the State Appellate Defender
Third Judicial District
1100 Columbus Street
Ottawa, Illinois  61350
(815)  434-5531

COUNSEL FOR APPELLANT

EXHIBIT I

<u>**AUTHORITIES CITED FOR THE FIRST TIME ON REPLY**</u>

**I.  THE TRIAL COURT ERRED WHEN, OVER DEFENSE OBJECTIONS, IT PERMITTED THE JURY TO TAKE INTO THE JURY ROOM, DURING DELIBERATIONS, THE TRANSCRIPTS OF PRIOR CONSISTENT STATEMENTS THAT THE STATE'S TWO EYEWITNESSES HAD GIVEN TO THE POLICE.**

**A.  THE PRIOR CONSISTENT STATEMENT OF STEVE FUHLMAN SHOULD NOT HAVE GONE BACK TO THE JURY WHERE THERE WAS NO EVIDENCE THAT FUHLMAN HAD RECENTLY FABRICATED HIS TESTIMONY OR THAT THE PRIOR STATEMENT WAS MADE BEFORE HE HAD MOTIVE TO LIE.**

*People v. Beals*, 162 Ill. 2d 497, 643 N.E.2d 789 (1994)

*People v. Mullen*, 313 Ill. App. 3d 718, 730 N.E.2d 545 (1st Dist. 2000)

*People v. Bobiek*, 271 Ill. App. 3d 239, 648 N.E.2d 160 (1st Dist. 1995)

**B.  THE PRIOR CONSISTENT STATEMENT OF GARY DAVIS SHOULD NOT HAVE GONE BACK TO THE JURY BECAUSE 1) THE DANGER EXISTED THAT THE JURY CONSIDERED THE STATEMENT AS SUBSTANTIVE EVIDENCE, AND 2) THE STATEMENT CONTAINED PREJUDICIAL INFORMATION THAT THE DEFENDANT WAS A GANG MEMBER.**

No new authority is cited on reply.

2

**C. THE TRIAL COURT'S DECISION TO SEND THE PRIOR CONSISTENT STATEMENTS OF FUHLMAN AND DAVIS TO THE JURY CONSTITUTED REVERSIBLE ERROR.**

No new authority is cited on reply.

**II.    THE TRIAL COURT ALSO ERRED IN ALLOWING THE STATE'S REQUEST THAT GARY DAVIS BE CALLED TO THE STAND AS A COURT'S WITNESS BECAUSE THE STATE FAILED TO ESTABLISH A PROPER FOUNDATION FOR THE PROCEDURE AND THERE WAS NO NEED TO CALL DAVIS AS A COURT'S WITNESS UNDER CURRENT LAW.**

The defendant relies on the argument and authorities cited in his original brief.

3

**I. THE TRIAL COURT ERRED WHEN, OVER DEFENSE OBJECTIONS, IT PERMITTED THE JURY TO TAKE INTO THE JURY ROOM, DURING DELIBERATIONS, THE TRANSCRIPTS OF PRIOR CONSISTENT STATEMENTS THAT THE STATE'S TWO EYEWITNESSES HAD GIVEN TO THE POLICE.**

The State first claims that the defendant has waived this issue because he did not object to the admissibility of the prior consistent statements of Steve Fuhlman and Gary Davis (State's brief at 2). On the contrary, the issue presented here was fully preserved by the defendant for review on appeal. The defendant objected to the trial court's allowing the transcripts of the prior statements of both Fuhlman and Davis to go back to the jury (R1468). Moreover, the defendant raised this issue in his post-trial motion (C379). The issue, therefore, has not been waived.

On the merits, in an attempt to blunt the prejudicial impact of the prior consistent statements, the State repeatedly surmises that the jury likely did not even read the statements because the jurors only deliberated for an hour and fifteen minutes (State's brief at 2, 5, 8). This is pure conjecture on the State's part. Contrary to the State's speculation, it should rather be assumed that the jury performed its duty in the jury room and reviewed the evidence contained in the transcribed statements. The jurors certainly would have had time to do so since the statements were short -- Fuhlman's statement was only five pages long and Davis' statement was only a couple of lines over five pages (People's Exhibit Nos. 8 and 11). Moreover, the prejudicial impact of the prior statements may well explain why the jurors returned a relatively swift verdict.

**A. THE PRIOR CONSISTENT STATEMENT OF STEVE FUHLMAN SHOULD NOT HAVE GONE BACK TO THE JURY WHERE THERE WAS NO EVIDENCE THAT FUHLMAN HAD**

4

## RECENTLY FABRICATED HIS TESTIMONY OR THAT THE PRIOR STATEMENT WAS MADE BEFORE HE HAD MOTIVE TO LIE.

The State contends that Steve Fuhlman's prior consistent statement was properly admitted because the defense challenged Fuhlman's credibility (State's brief at 3). The State is wrong. Prior consistent statements may not be admitted merely because a witness has been discredited or impeached. *People v. Mullen*, 313 Ill. App. 718, 730 N.E.2d 545, 555 (1st Dist. 2000); *People v. Bobiek*, 271 Ill. App. 239, 648 N.E.2d 160, 164 (1st Dist. 1995). In addition, because the defendant neither asserted nor implied a motive as to why Fuhlman would testify falsely, or showed that his testimony was somehow a recent fabrication, the exception to the rule on inadmissibility which would allow a prior consistent statement into evidence was inapplicable here. *People v. Bobiek*, 648 N.E.2d at 164. Fuhlman's prior consistent statement, therefore, should not have been published to the jury.

The State also argues that Fuhlman's prior consistent statement was admissible because prior statements of identification are admissible as substantive evidence to corroborate an in-court identification (State's brief at 4). While the State correctly cites the general rule, it does not apply here because Fuhlman's prior statement included details that went far beyond his identification of the defendant. In his statement, Fuhlman discussed in great detail the events he observed at the time of the shooting, including his own vantage point, the type of weapon used by the shooter, the number of shots he saw fired, the number of people in the vicinity, and the locations and movement of the shooter and the victim (People's Exhibit No. 8). In short, the transcribed statement was not limited to Fuhlman's prior identification of the defendant. Consequently, the prior consistent statement was inadmissible and should not have been published to the jury. *C.f., People v. Beals*, 162 Ill.

5

2d 497, 643 N.E.2d 789, 794-95 (1994) (prior consistent statements admissible where witnesses testified <u>only</u> that victim said she was shot by the "fat guy").

**B.  THE PRIOR CONSISTENT STATEMENT OF GARY DAVIS SHOULD NOT HAVE GONE BACK TO THE JURY BECAUSE 1) THE DANGER EXISTED THAT THE JURY CONSIDERED THE STATEMENT AS SUBSTANTIVE EVIDENCE, AND 2) THE STATEMENT CONTAINED PREJUDICIAL INFORMATION THAT THE DEFENDANT WAS A GANG MEMBER.**

The State argues that Gary Davis' prior consistent statement could be considered as substantive evidence because prior statements of identification are admissible as substantive evidence to corroborate an in-court identification (State's brief at 5-6).  However, as with Fuhlman's prior consistent statement, Davis' transcribed statement was not limited to his prior identification of the defendant. Davis' statement included extensive details of what he claimed occurred before, during, and after the shooting. For example, Davis discussed statements he claimed the defendant made before the shooting, the type of gun the shooter used, the number of shots he saw fired, what happened to the victim after he was shot, and what he (Davis) hoped would happen to the defendant (People's Exhibit No. 11).  In addition, Davis' statement contained his claim that the defendant was a member of the Vice Lords street gang (People's Exhibit No. 1).  As with Fuhlman's statement, the prior consistent statement of Gary Davis involved much more than Davis' prior identification of the defendant. Consequently, the State's contention to the contrary notwithstanding, Davis' prior consistent statement could not be considered as substantive evidence.

6

## C. THE TRIAL COURT'S DECISION TO SEND THE PRIOR CONSISTENT STATEMENTS OF FUHLMAN AND DAVIS TO THE JURY CONSTITUTED REVERSIBLE ERROR.

With respect to this subpoint, the defendant would rely on the argument in his original brief. That argument demonstrates that the trial court's erroneous decision to allow the jury to take the transcripts of the prior consistent statements into the jury room deprived the defendant of a fair trial.

Accordingly, for the reasons here and in his original brief, the defendant renews his request that this Honorable Court reverse his conviction and remand this cause for a new trial.

7

**II.  THE TRIAL COURT ALSO ERRED IN ALLOWING THE STATE'S REQUEST THAT GARY DAVIS BE CALLED TO THE STAND AS A COURT'S WITNESS BECAUSE THE STATE FAILED TO ESTABLISH A PROPER FOUNDATION FOR THE PROCEDURE AND THERE WAS NO NEED TO CALL DAVIS AS A COURT'S WITNESS UNDER CURRENT LAW.**

The defendant relies on the argument and authorities cited in his original brief.

NOTICE

E-FILED

The text of this opinion may be changed or corrected prior to the time for filing of a Petition for Rehearing or the disposition of the same.

Tuesday, 26 September, 2006 01:59:03 PM
Clerk, U.S. District Court, ILCD

FILED 12/28/01

RMH

No. 3--99--0706

RECEIVED

DEC 31 2001

SAAP
THIRD DISTRICT

IN THE APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2001

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 14th Judicial Circuit, Rock Island County, Illinois |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 94--CF--649 |
| DAVID ALLEN GREER, | ) ) | Honorable James Teros |
| Defendant-Appellant. | ) | Judge, Presiding |

RULE 23 ORDER   "Not To Be Published"

The defendant, David Allen Greer, was charged by indictment with first-degree murder. He was convicted following a jury trial and sentenced to 50 years in prison. On appeal, his conviction was reversed and the cause remanded for a new trial. Following a second jury trial, the defendant was again convicted of first-degree murder and again sentenced to a term of 50 years imprisonment. On appeal, the defendant maintains that the trial court erred in: (1) allowing the transcripts of prior consistent statements of two witnesses to go to the jury room during deliberations; and (2) allowing a certain individual (Gary Davis) to be called as the court's witness. We affirm.

Because the parties are familiar with the facts, we will not provide a detailed recitation, but will only address the facts as they are necessary to an understanding of our ruling on the issues.

EXHIBIT J

The defendant first maintains that the trial court erred in allowing transcripts of certain prior consistent statements of two witnesses to go to the jury room. We find no merit to his argument. As a preliminary matter, we note that the defendant did not object at trial to the admission of the statements into evidence; he only objected at trial and in his post-trial motion to the statements going to the jury room during deliberations. Thus, the defendant has waived the issue of the admissibility of the statements and we find no plain error in their admission. People v. Morgan, 142 Ill. 2d 410 (1991).

Turning to the merits of the defendant's argument, a trial judge's decision as to what evidence may go to the jury room during deliberations will not be overturned absent an abuse of discretion. People v. Lambert, 288 Ill. App. 3d 450 (1997). An abuse of discretion exists only when the trial judge's ruling is arbitrary, fanciful, or unreasonable, or when no reasonable person would take the view adopted by the trial court. People v. Illgen, 145 Ill. 2d 353, 355 (1991). Here, the statements at issue were admissible under section 115-12 of the Criminal Code (725 ILCS 5/115-12 (West 1998)) as prior consistent statements of identification. Since the evidence was in fact admissible, we find nothing in the record to support a conclusion that permitting this evidence to go to the jury was an abuse of discretion.

Although we find no abuse of discretion in the trial court allowing the prior consistent statements to go to the jury room, we also note that any error would have been harmless given the overwhelming evidence of the defendant's guilt. When it does

2

not appear justice had been denied or that a finding of guilt resulted from an error, a conviction will not be reversed. People v. Richardson, 123 Ill. 2d 322, 326 (1988). Here, the evidence of the defendant's guilt was overwhelming.

The defendant next maintains that the trial court erred in allowing Gary Davis to be called as the court's witness. We disagree. A party may ask the trial judge to call a witness as the court's witness when his testimony will concern non-collateral issues and is necessary to prevent a miscarriage of justice. People v. R.D., 155 Ill.2d 122 (1993). Whether to call a witness as a court's witness is within the trial court's discretion and will not be reversed absent an abuse of that discretion. People v. Pastorino, 91 Ill. 2d 178 (1982).

Here, it cannot be said that the trial court abused its discretion in calling Davis as a court's witness. The People adequately established the foundation for his testimony. Davis testified at the defendant's first trial that he saw the defendant shoot the victim. However, in a letter attached to the defendant's post-trial motion, Davis recanted that testimony, saying he was present and did not see the shooting. Davis also testified at the hearing on the defendant's post-trial motion. Prior to the second trial, the People requested that Davis be called as a court's witness as they could not vouch for his credibility given his recantation of his testimony from the first trial. We note that the trial court took proper steps to inform the jury that Davis was a court witness, not because he was particularly credible, but because he was particularly not credible. We find no abuse of

3

discretion in the trial court's allowing Davis to testify as a court's witness.

For the foregoing reasons, the judgment of the circuit court of Rock Island County is affirmed.

Affirmed.

HOLDRIDGE, J., with HOMER, P.J., and MCDADE, J., concurring.

E-FILED
Tuesday, 26 September, 2006  01:59:42 PM
Clerk, U.S. District Court, ILCD

ORIGINAL

NO.  **93450**

| | | |
|---|---|---|
| People State of Illinois, | ) | Appellate Court, |
| | ) | Third District |
| Respondent | ) | No. 3-99-0706 |
| | ) | |
| v. | ) | Circuit Court, |
| | ) | Rock Island County |
| David Allen Greer, | ) | No. 94CF649 |
| | ) | |
| Petitioner | ) | Hon. James Teros, |
| | ) | Judge Presiding. |

**PETITION FOR LEAVE TO APPEAL**

**FILED**

MAR 8 – 2002

**SUPREME COURT CLERK**

70 - 030802

R - 122801

No RH

David Allen Greer
Reg. No. N-72100
P. O. Box 900
Sumner, IL 62466

EXHIBIT K

NO._____

## IN THE SUPREME COURT OF THE STATE OF ILLINOIS

---

| | |
|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) PETITION FOR LEAVE TO |
| | ) APPEAL FROM THE |
| Plaintiff-Appellee, | ) APPELLATE COURT OF |
| | ) ILLINOIS, |
| | ) THIRD DISTRICT, |
| | ) NO. 3-99-0706 |
| | )        Prev. No. 94-CF-649 |
| -vs- | ) THERE HEARD ON APPEAL |
| | ) FROM THE CIRCUIT COURT |
| | ) FOR THE (14th JUDICIAL CIRCUI |
| | ) ROCK ISLAND COUNTY. |
| DAVID ALLEN GREER, | ) HONORABLE |
| | ) JAMES TEROS, |
| Defendant-Appellant, Pro Se. | ) PRESIDING JUDGE. |
| | ) |

---

## PETITION FOR LEAVE TO APPEAL
## TO THE ILLINOIS SUPREME COURT

TO THE HONORABLE JUSTICE OF THE THE SUPREME COURT OF THE STATE OF

ILLINOIS:

May it please the court:

### I.

#### PRAYER FOR LEAVE TO APPEAL

Your Petitioner, David Allen Greer  Pro se, respectfully

petitions this Honorable Court for Leave to Appeal pursuant
to Supreme Court RAule 315, from the judgement of the Appellate

Court of Illinois, Third District, which affirmed the judgement

of conviction entered by the Circuit Court of Rock Island County,

Illinois upon the _____ finding petitioner

guilty of First - Degree Murder.

II.

## OPINION AND PROCEEDINGS BELOW

On 08/09/1999, Petioner was found guilty of **first degree murder**. Petitioner was subsequently sentenced to a term of **fifty (50) years** prison term upon his conviction. He appealed this conviction to the Illinois Appellate Court, THIRD JUDICIAL DISTRICT. On **December 28, 2001** the Court delivered its opinion in said appeal, affirming the judgement of conviction and sentence. No petition for hearing was filed. A Motion For Extention of Time For Leave ToAppeal To The Illinois Supreme Court on **January 22, 2002**. Said motion was granted and time to file was extended to **March 8, 2002**.

III.

## POINTS RELIED UPON FOR REVERSAL

A.  WHETHER THE COURT ERRORED IN ALLOWING THE TRANSCRIPT OF STEVE FUHLMAN'S PRIOR STATEMENT TO BE PUBLISHED TO THE JURY AS IT CALLED ATTENTION TO AND EMPHASIZED THOSE PARTICULAR STATEMENTS.

B.  WHETHER THE COURT ERRORED IN ALLOWING THE TRANSCRIPT OF GARY DAVIS' PRIOR STATEMENT TO BE PUBLISHED TO THE JURY AS IT UNDULY CALLED ATTENTION TO AND EMPHASIZED THOSE PARTICULAR STATEMENTS.

C.  WHETHER THE COURT ERRORED IN MAKING GARY DAVIS A COURT WITNESS.

D.  WHETHER THE COURT ERRORED IN ALLOWING GARY DAVIS, AFTER BEING MADE A COURT WITNESS, TO BE CROSS EXAMINED BY THE STATE ABOUT WHY HIS STORY CHANGED.

E.  WHETHER THE COURT ERRORED IN DENYING THE DEFENSE MOTION FOR MISTRIAL BASED ON GARY DAVIS MENTIONING THE PRIOR TRIAL.

F.  WHETHER AN ABUSE OF/OR, LACK OF DISCRETION EXISTED ON THE PART OF THE TRIAL JUDGE CONCERNING INSURANCE THAT THE JURY WAS COMPLETELY CAPABLE OF REMAINING IMPARTIAL AFTER EXPOSURE TO THE STATEMENTS OF STEVE FUHLMAN AND GARY DAVIS DURING DELIBERATION OF THE JURY.

G.  WHETHER THE JURY COULD REMAIN COMPLETELY IMPARTIAL DURING THE TRIAL PRO-CEEDINGS AND DURING DELIBERATION AFTER BEING EXPOSED TO THE STATEMENTS OF STEVE FUHLMAN AND GARY DAVIS.

H.  WHETHER THERE WAS INEFFECTIVE ASSISTANCE OF COUNSEL FOR THE DEFENDANT DURING THE TRIAL PROCEEDINGS.

IV.

## STATEMENT OF FACTS

On August 24,1994, the defendant, David Allen Greer, was charged by indictment with the offense of first degree murder (C2). Specifically, the indictment alleged that, on July 13,1993, the defendant, without lawful justification, fired a handgun at Brandon Ellison, shooting him in the back, knowing that such acts created a strong probability of death or great bodily harm to Ellison, thereby causing Ellison's death.

Following a jury trial that commenced on November 15, 1994 (R125,et seg.) , the defendant was convicted of first degree murder (R8011/ C131). During post-trial proceedings, Gary Davis, who had testified at trial for the state, recanted his trial testimony. At trial, Davis testified that he saw the defendant shoot Brandon Ellison with a gun on the date in question in the area of the Arsenal Courts in Rock Island (R453-454, 456-458). In his post-trial motion , the defendant requested a new trial based upon a letter the defendant recieved from Gary Davis which indicated that Davis' testimony at trial was not truth because Davis was not present in the Arsenal Courts on the date in question and did not see the shooting (C143-146).

At the hearing on the defendant's post-trial motion onFebruary 16,1995, Gary Davis testified thaT̂he sent the letter to the defendant in January of 1995 (R816-819). Davis further testified that he did not see the defendant shoot Brandon Ellison as he had previously testified (R819). At the conclusion of the hearing, the trial court denied the defendant's request for a new trial based on the recantation of Gary Davis (R894-897). On appeal, this court reversed the defendant's conviction and remanded the cause for a new trial based upon the trial court's improper restriction of cross-examination

/

of a State's witness (C219-230). <u>People v. Greer</u>, 293 Ill.App. 3d 861, 689N.E. 2d 134 (3d Dist. 1997).

The defendant was retried for the offense of first degree murder at a jury trial commencing on July 6, 1999 (R1005, <u>et seq</u>). For the State, Rock Island police officer Thomas Mulder testified that, about 7:20 p.m. on July 13, 1993, he arrived at the scene of the shooting of Brandon Ellison (R1055-1057). Officer Mulder examined a .22 caliber revolver that he found on Ellison's left side (R1067-1068). He found four live rounds in the gun, one empty cylinder, and one discharged empty shell casing directly under the hammer (R1068-1069).

Ernestine Senter testified that, between 4 p.m. and 4:30 p.m. on July 13, 1993, she and her husband were on the front porch of their house at 1417 Fifth Street (R1090-1094). At this time, Ernestine heard three rapid shots followed by two more shots (R1092). The shots came from the area of a little park across from her house in the Arsenal Courts (R1093). As Ernestine got down for cover, she saw a young man run from the park to Fifth Street and then to the alley north of her house (R1094-1097). The young man went into the alley, came back out, and went into the alley again (R1098-1099). Ernestine Testified that the young man who ran into the alley did not fire any shots (R1102-1103).

Allen Senter, the husban of Ernestine Senter, testified via a videotaped evidence deposition pursuant to the trial court's finding that he was un-available to testify at trial (R1022-1041,1111;EX 1). Senter testified that he heard three shots fired on July 13, 1993, when he was on the front porch of his

house with his wife (EX1 at 4-5). When the shots were fired, Allen saw a man running from the Arsenal Courts, across the street, and into the alley (EX1 at 4-5). The man then came back out of the alley and pointed a gun (EX1 at 7-8). Allen testified that the man did not fire the gun (EX1 at 8).

Clarence Ellison, the father of Brandon Ellison, identified a photograph of his son and testified that Brandon died on July 13, 1993 (R1144-1146).

The next witness to testify was Gary Davis. Prior to Davis' testimony, the prosecutor requested that Davis be called as a court's witness(R1122-1126). In support of this request, the prosecutor argued that, based on Davis' recantation after the defendant's first trial, the State could not vouch for his credibility (R1124-1128). Following defense counsel's objection, the trial court asked the prosecutor to make an offer of proof (R1128-1134).

In the offer of proof, Gary Davis testified that he knew Brandon Ellison and the defendant (R1149-1151). Davis testified that he was present in the Arsenal Courts when the defendant confronted Ellison, pulled out a pistol, and shot Ellison after Ellison took off running (R1151-1161).

Following this testimony, defense counsel argued that the State failed to meet its burden of showing it could not vouch for Davis' credibility because Davis' testimony in the offer of proof was consistent with the State's theory in the offer of proof was consistent with the State's theory (R1165). The court then asked the state why it was asking that Davis be made a court's witness (R1165). After indicating that its request was based on Davis' prior recantation, the State resumed its offer of proof (R1165).

Upon resumption of the offer of proof, Davis testified that, on February 16, 1995, he testified uner oath that he did not see the shooting (R1166). He admitted that he wrote a letter to the defendant--dated January 3,1995--in which he stated that he did not see the shooting (R1167).

Upon questioning by the court, Davis testified that the first version he gave was true--that the defendant killed Brandon Ellison (R1168). Davis then added, "I swore my life today. No more am I scared of you, homeboy, you killed my homeboy" (R1168). Davis explained that he recanted his original version to protect his family (R1168-1170).

Following the offer of proof, defense counsel objected to Davis being called as a court's witness because, although he had given different statements, Davis was now cooperating with the state and, if anything was hostile to the defendant (R1171-1172). Defense counsel noted that Davis' recantation was impeachment material and that, while many witnesses are impeached, they are not made court's witnesses (R1172). Upon questioning by the court, counsel indicated that, as with any prior inconsistent statement, he intended to impeach Davis with the prior statement (R1172-1173).

After hearing the offer of proof and the arguments of counsel, the trial court found that neither party could vouch for the credibility of Davis (R1173-1176). The court determined that it would call Davis as a court's witness and allow both parties to cross examine him (R1176). When the jury returned to courtroom, the court informed the jurors as follows:

THE COURT: You may be seated. Ladies and gentlemen, the next witness called is a Gary DAvis. The court has declared Mr. DAvis a court witness. What a court witness is, is a person who is called to testify he is not either called by the State because because they cannot vouch for his credibility, nor is he a defense witness, but what he has is statements that are material to the issues in fact in this case, and issues involved in the murder prosecution here.

7.

**THE COURT:** Both sides, the State, and the defense, will be allowed to cross-examine him as to the events that  occured on July 13,1993 (R1178).

Upon examination by the State, Gary Davis testified that Brandon Ellison, whose nickname was "Little Lord," was a good friend of his (R1179). Davis also knew the defendant, whose nickname was "Crock" (R1180-1181). Davis testified that he was present in the Arsenal Courts when Ellison was killed (R1179). On that day, Davis arrived at the Arsenal Courts about 4 p.m. (R1180). Among others, the defendant's girlfriend (Betty Rhoden), and Brandon Ellison were there (R1180-1181).

Davis testified that, while he was at the Arsenal Courts that dy, he told Brandon Ellison that Brandon had a hard head and that he did not listen(R1181) . Davis said this becauseBrandon had hit Ronnie Greer, the defendant's brother , on the side of the head and discharged a firearm (R1182). After Davis said this, the defendant and Brandon walked towards each other (R1182-1185). Davis heard the defendant say, "Little bitch, I told you I was going to get you" (R1185). Davis then saw a pistol in the defendant's hand after the defendant raised his shirt up (R1186).  Next, Brandon Ellison turned and ran (R1186). Davis testified that the defendant shot the pistol one time and it misfired (R1186). The defendant shot again, and Brandon started stumbling (R1186). At This point, Davis ran to a nearby porch (R1186). When he got there, he saw Brandon running on Fifth Street and heard two more shots(R1186-1188). He then saw Brandon running towards the alley(R1189). Davis testified that he did not he did not see Brandon make any attempt to pull out a weapon, although Brandon was known to carry a gun(R1186-1187,1190-1191). According to davis, he called the Rock Island Police Department the day after the shooting and went to the police station, where he identified the defendant from a photographic lineup (R1191-1192).

Upon examination by the defense, Davis testified that he had six prior felony convictions(R1192-1193). He also testified that, in February of 1995, he testified under oath in this case that he did not see the defendant shoot anybody, tht he was not present when the shooting occufred, and that he had put a story together based on what he had heard from others(R1194-1195). Davis testified that he also wrote a letter to lthe defendant in which he told the defendant he knew nothing about the shooting (R1195).

Davis went on to testify that the defendant was already in the Arsenal Courts when Davis arrived at 4 p.m. (R1196). During this time, the defendant did not leave the park (R1196). Davis testified that he saw the defendant aim the gun at Brandon and, after the first shot misfired, Davis saw Brandon get hit with the secone shot(R1201-1204). He testified that the defendant was wearing black shorts, adark shirt, and white tennis shoes that day; he did not remember if the defendant was wearing a hat (R1206).

The State examined Gary DAvis again. Davis testified that, after the shooting, he saw the defendant again in the park about 9 or 10 p.m. (R1207). He further testified that, in November of 1994, he testified for the prosecution at an earlier hearing in this case (R1207). He testified that, at the prior hearing, he gave the same account he had given in this trial(R1208).

Davis further testified that People's Exhibit No. 11 was a tran--
script of a tape recorded interview he gave Officer Mulder on
July 14, 1993, the day after the shooting, at the time he identi-
fied the defendant from an array of photographs (R1191-1192,1214)
. Davis testified that his transcribed statement was consistent
with the testimony he had given in the present trial(R1214-1215).
The court exhibit No. 11, but the defense reserved the right
to object to its publication to the jury(R1215).

The prosecutor then asked Davis why he recanted his testi-
(R1215). Davis testified that he changed his testimony because
the area he came from was highly gang affiliated and he knew      ,
that,  by making a statement against the defendant, Davis' family
could be in jeopardy and he wanted to protect his family(R1216).
Upon final examination by the defense, Davis testified that
he was now taking his oath seriously because his family was
backing him (R1217-1218).

The State then resumed its case by calling Dr. Shaku Teas
to the stand. Dr. Teas testified that she performed the autopsy
on Brandon Ellison on July 14, 1993 (R1231-1235). Dr. Teas deter-
mined the cause was a gunshot wound to the back(R1235-1237).
On cross-examination, she testified that a person could run
a great distance and then collapse with such a wound (R1239-
1240).

Steve Fuhlman testified that, on July 13,1993, he and his
family were living at 1419 Fifth Street in Rock Island(R1240-
1242). Prior to July 13, Fuhlman had seen the defendant every
couple of days, for six months to a year, standing and talking
to people on Fifth Street(R1244-1245).

Fuhlman had also spoken with the defendant face-to-face once
or twice on the side of Fuhlman's house about working on a car
(R1243). In the summer of 1993, Fuhlman made a living working
on cars that people brought to his house (R1243-1244). He testi-
fied that, about 10 or 11 a.m. on July 13, he saw the defendant
walk past his house and head toward the Arsenal Courts (R1268).

Fuhlman testified that, at about 5:45 p.m. on July 13, he
was working on his family's car, which was parked on Fifteenth
Avenue at the corner(R1245-1246). As Fuhlman was putting a hubcap
on the front driver's side, he heard a commotion coming out
of the Arsenal Courts(R1246). Fuhlman saw a man with a gun chas-
ing another man(R1246-1247). When the man with the gun came
to the corner of a building, he fired two shots and then a third
shot(R1246-1247,1249). Fuhlman identified the defendant as the
shooter(R1247,1253). He testified that, a day after the shooting,
he was asked by the female detective who came to his home to
look at six photographs (R1252-1253). Fuhlman testified that
he selected the defendant's photograph as being the shooter(R1252
).

On cross-examination, Steve Fuhlman testified that the
shooter was wearing dark knee-high shorts, a light-colored shirt,
and a turquoise bandana around his head which was tied in the
back "gypsy style" (1253-1254). The bandana stood out on a bright
day(R1254). Fuhlman recalled giving the police a statement on
July 14 in which he told an officer the shooter was 5'8" or
5'10" tall, had a stocky build and was 28 to 32 years old(R1254-
1256,1259).

8

Fuhlman also testified that the first police officer he talked to asked him if he would be able to identify the shooter(R1260). Fuhlman told the officer he was not sure(R1260). According to Fuhlman, he told the officer he was not sure because he did not want to get involved, even though he knew who the shooter was (R1260).

On redirect examination, Fuhlman testified that police officers came to his house about an hour after the shooting(R1269). It was at this time that Fuhlman told the officers he was not sure he could identify the shooter (R1269-1270). He gave these officers a description of what he had seen and, based upon that, the officers sent a female detective to his house the next day (R1270). Fuhlman gave the female detective a tape-recorded statement which was transcribed in People's Exhibit No. 8 (R1270-1271). AThe court admitted People's Exhibit No. 8, but defense counsel reserved the right to object to its pu-lication to the jury (R1271).

Outside the presence of the jury, the prosecutor asked Steve Fuhlman to explain why he was reluctant to come forward with information about who had done the shooting(R1273). F uhlman responded that he was reluctant because he knew the defendant to be gang leader (R1272-1273). Defense counsel objected to any testimony that Fuhlman knew the defendant to be a gang leader (R1273). The trial court sustained the objection, ruling that character was not at issue and it was "going to deny anything about the gang activity at this point" (R1273).

9.

Patricia Jo Dooley, a Rock Island police detective, testified that she went to Steve Fuhlman's house on July 14, 1993, and showed him six photographs (R1279-1280). Fuhlman selected the photograph of the person he said was the shooter (R1280-1281). Officer Dooley testified that she also took a taped statement from Fuhlman on that date (R1281).

As the final witness in its case-in-chief, the State recalled Officer Thomas Mulder. Mulder testified that, on the day after the shooting, he showed Gary Davis pictures of six persons and asked him to identify the person who shot Brandon Ellison (R1304). Davis selected the photo of the defendant (R1304-1305).

For the defense, Melvin Quick testified that he ran a convenience store at his residence at 1501 Fifth Street, and that his residence was across the street from Steve Fuhlman's residence (R1308-1309). Quick testified that, immediately after the shooting on July 13, 1993, he looked out his window and saw Fuhlman sitting on the ground fixing his car tire (R1311). He testified that Fuhlman stayed at his car and never got up (R1315). Quick also testified that Fuhlman's car was parked by the tree on Fuhlman's property, about one-half car length farther back than the location of the car as depicted in the photograph taken by the police (R1312-1313). Quick had previously been convicted of theft (R1321).

Betty Rhoden, who was the defendant's girlfriend on the date of the incident, testified that she spent nearly the entire day of July 13, 1993, with the defendant (R1334-1337).

10.

They were in the process of moving into the residence of her grandmother, Lillie Rhoden, at 1421 Seventh Street (R1335). She and the defendant spent the day painting and cleaning with many others(R1336,1339-1342). Betty left the house between 6:00 and 6:30 p.m., but the defendant stayed at the house(R1336-1337). About an hour before that, Betty left the house with the defendant and her grandmother (R1337). They returned in ten or fifteen minutes(R1337). Betty testified that she had an aggravated battery conviction (R1350).

Henry Rhoden testified that he spent the entier day of July 13, 1993, at the house of his mother, Lillie Rhoden, at 1421 Seventh Street in Rock Island(R1323-1324,1327,1329-1330). Henry was painting the basement with the defendant,Bett Rhoden, and Steve Slater(R1325). He testified that the defendant was at the house all day, except for about ten minutes when the defendant left between 5 and 5:30 p.m. with Betty and Lillie(R1324 -1325). The defendant came back and helped finish painting, and he remained at the house until 9:30 or 10p.m. (R1325-1326, 1330-1331). Henry testified that he had serveral felony convictions (R1333-1334).

Lewis Pemberton testified that he was hired by the defendant to put down some carpeting and do some painting at the residence inRock Island on July 13, 1993 (R1350-1352). Pemberton testified that the defendant was there all day and, when Pemberton left the late afternoon, the defendant was still at the house(R1355-1356).

*14.*

About ten minutes later, as he walked on Fifteenth Avenue about a block away from Quick's store, he heard two shots(R1356-1358, 1359-1362). Pemberton saw Steve Fuhlman working on the brakes of his car, which was parked by a tree across from Quick's store (R1358-59).

In his own behalf, the defendant testified that he was 5'5" tall, weighed 165 pounds, and was 25 years old in July of 1993 (R1369-1370). He was convicted of burglary in 1986(R1370). On July 13, 1993, he was at Lillie Rhoden's house painting and getting ready to move in(R1370). He left the house that morning for about 20 minutes to get utensils and paint(R1373). He left the house again between 5 and 5:30 p.m. with Betty and Lillie Rhoden (R1371,1373). They went to Mr. Quick's store, where the defendant congrgated with some people(R1373-1374). They stayed about 15 or 20 minutes and got back to Lillie's house between 5 and 5:30 p.m. (R1373-1374).

The defendant testified that he did not leave the house after 5:30 p.m. (R1374-1375). He testified that he did not go to the Arsenal Courts on the date in question (R1374-1375). The defendant denied chasing anyone through the Arsenal Courts, he testified that he did not shoot anybody (R1375).

In rebutal for the State, Officer Patricia Jo Dooley testified she spoke with the defendant at the police station on July 14, 1993 (R1384). At this time, the defendant told Dooley he left the house only once on July 13, he did not mention leaving the house in the morning for paint (R1384).

*13.*

Rock Island police officer Bill Sowards testified that he spoke to Betty Rhoden at the police station on July 14, when she came to the police station with the defendant (R1388-1389). According to Sowards, Betty never mentioned that Henry Rhoden was at the house at 1421 Seventh Street on July 13 (R1390-1391). Betty told Sowards that she made one trip from the house that day; she left by herself at 6:15 p.m. and when she returned the defendant was still there (R1391). She told Sowards the defendant was at the house all day (R1391). On July 15, Betty gave a taped statement in which she said she left the house with the defendant at 5 or 5:15 p.m. on the day in question(R1392). Peggy Teague testified that she saw the defendant walking through the Arsenal Courts about 11 a.m. on July 13, 1993(R1405-1407).

Laverne Bester testified that she was living in the Arsenal Courts apartments during the summer of 1993 (R1409). She testified she had known the defendant all of his life (R1411). On July 13, she heard shots being fired when she was sitting in the park just outside her apartment, where she had been sitting since 3 p.m. (R1410-1411). Bester testified that she saw the defendant in the park in the Arsenal Courts before the shots were fired(R1411). The defendant left about 20 to 25 minutes before the shots were fired (R1411-1412). Bester testified that she saw the defendant again about 15 or 20 minutes after the shooting (R1412).

13.

When the shots were fired, Betty Rhoden was standing 20 to 30 feet away from Bester (R1412).

On cross-examination, Bester testified that she saw the defendant on and off all day (R1413-1414). She testified that she went into her house to watch the news about 5 or 5:15p.m. , and she came back outside after she watched the news (R1414). Bester remembered testifying at a previous hearing in 1994 and being asked what she did after 5 p.m.(R1414-1415). She recalled answering that she went in the house to watch the news (R1415). She was then asked at the hearing if the shooting occurred before the news came on, and she answered yes (R1415-1416). Bester testified it was not true that she had only seen the defendant before the news came on (R1416).

Following closing arguments (R1431-1466), the parties discussed which exhibits should go back to the jury (R1466-1470).

Over a defense objection, the court allowed the transcript of Steve Fuhlman's tape-recorded statement to the police (People's Exhibit No. 8) to go back to the jury (R1468). Also over a defense objection, the court allowed the transcript of Gary Davis' taped-recorded statement to the police (People's Exhibit No. 11) to go back to the jury (R1468).

After deliberations, the jury found the defendant guilty of first degree murder (R1471/C351).

On August 6, 1999, the trial court sentenced the defendant to a prison term of 50 years (R1491/ C387). The defendant's motion to reconsider the sentence was heard and denied on Septem-10, 1999 (C388-389/ R1494-1496).

TAhe defendant filed a timely notice of appeal on September 14, 1999, and the Office of the State Appellate Defender was appointed to represent him (C391-392).

*15.*

**V.**

**ARGUMENT**

**A.    ARGUMENT FOR SECTION III./POINT A. AND POINT B.**

It is well settled that the testimony of a witness cannot be bolstered or or supported by evidence that the witness has made prior consistent statements out of court. People v. Emerson, 97Ill.2d 487,455 N.E.2d 41 (1983)/People v. Clark, 52 Ill.2d 374, 288 N.E.2d 363 (1972). Such "corroboration by repetion" is likely to cause the jury to attach more credibility to the witness' story because it is the most often repeated. People v. West, 263 Ill. App. 3d 1041, 636 N.E.2d 948, 953 (1st Dist. 1994); People v. Sanders, 59 Ill. App. 3d 650, 375 N.E.2d 921 (5th Dist. 1978). However, to rebut a charge or an inference that the witness is motivated to testify falsely or that his testimony is of recent fabrication, a prior consistent statement may be introduced if it was made prior to the time that the motive to fabricate came into existence. People v. Emerson, 455 N.E.2d at 47; People v. Clark, 288N.E.2d at 371; People v. Tidwell, 88Ill. App. 3d 808, 410 N.E. 1163, 1165 (1st Dist. 1980).
Generally, the trial court has considerable discretion in deciding what exhibits should be given to the jury. People v. Carr, 368 N.E.2d at 131.
In the case at bar, the trial court committed reversible error when it permitted the jurors to take with them, during deliberations, the transcripts of prior consistent statements given to the police by the State's two eyewitnesses, Steve Fuhlman and Gary Davis.
The defendant would argue that the above mentioned would constitues improper court procedure on the part of the trial court. The defendant also feels said actions by the court deprived him of his 14th Amendment right of due process.

**C.    ARGUMENT FOR SECTION III./POINT C. AND POINT D.**

Defendant feels that the court/errored in these procedures and in doing so deprived him of his 14th Amendment right to due process. No cases cited.

**D.    ARGUMENT FOR SECTION III./POINT E.**

Defendant feels that the court erroed in denying this aspect of litigation , and in doing so deprived him of his 14th Amendment right to due process.    No cases cited.

**E.    ARGUMENT FOR SECTION III./POINT F.**

The defendant feels that it was the responsibility of the trial judge to have used better discretion in maintainiy the impartialness of the jury. The defendant feels that the trial judge's abuse of or lack of discration existed on the part of court concerning the insurance that the jury stayed completely capable of remaining impartial after exposure to the statements of Fuhlman and Davis during deliberation.
While decision to accept potential juror as impartial is discretionary with the trial judge, the judge must ensure that the defendant recieves trial before a fair and impartial jury. By not insuring the impartialality of the jurors ,defendant fe el,that his 14th amendmont right to due process was deprived.

### ARGUMENT CONTINUED

**P.  ARGUMENT FOR SECTION III./POINT G.**

The defendant would argue that POINT G. is reverseble because the court errored by assuming the defendant's jury was affected by the action, should we say lack of action concerning the attitudes of the jury as being impartial at the time of deliberation. The defendan even further stipulates that;

Even if sufficient competent evidence is introduced to establish defen-guilt beyond reasonable doubt, there is still reversible error when improper admission clouds evidence to such degreethat it is impossible to tell whether the jury relied on it. People v. Lambert, criminal Law-1169.1 (1).

The defendant would further state that; Where the Appellate Courts decision to support a conclusion under section 115-12 of the Criminal Code (725 ILCS 5/ns-12 ) (West 1998) as prior consistent statements of identifica-tion. The defendant would & disagree in the courts conclusion that such an error would have been harmless giving the overwhelming evidence of the posi-bilty of the defendant's guilt.

The defendant would further argue that because the reasons for reversal mentioned in POINT G., the defendant feels that the trial court and the appel-late court deprived him of his 14th Amendment right to due process.

**G.  ARGUMENT FOR SECTION III./POINT H.**

It is the opinion of the defendant that; Due to the ineffective assis-tance of counsel, the folling additional and alternative remidies necessary essential recourse, regarding the the presentation of the defendant's defense, were not proper or adequetely litigated during trial:

(1.)  Counsel for the defense failed to make any contemporneous objection, as well as the objection of action and its procedures pertaining to the admission of the statements of Steve Fuhlman and Gary davis, as evidence at the trial and in his post trial motion. In not doing such, counsel for the defense, un-knowningly to the defendant, waived the defendant's right and any future counsel's right the ability to address objections necessay to deny the use of or admission of said statements. The defendant would ask the court to consider this and any other subsequential acts similar in nature during the proceeding s, to also be addressed under the question of law. Should the defendant be held accountable for the actions, or the lack of proper actions bya court appointed counsel, who by his actions during trial proceedings represents a defendant who is reasonably unaware of the possible outcome resulting from the improper action or lack of proper actions that would or could be harmful to the defendant's defense.  No cases cited.

The defendant would furtherstipulate that as a result of these points, the defendant would charge that his 6th, 9th, & 14th Amendment rights were violated. (People -vs-Enoch) (Criminal Law -1030 (1, 2), 1036.3, 1063 (1)

## VI.

### CONCLUSION

WHEREFORE, the petitioner, <u>DAVID ALLEN GREER</u>, respectfully

respectfully requests this Honorable Court to grant this Petition for Leave

to Appeal and, <u>reverse his conviction, remand for a new trial</u>.

Respectfully submitted,

<u>DAVID ALLEN GREER</u>
                   Pro se.
No. <u>N72100</u>

<u>Lawrence Correctional Center</u>

P.O. Box <u>900</u>

Sumner , Illinois  62466

_18._

**E-FILED**
Tuesday, 26 September, 2006  02:01:18 PM
Clerk, U.S. District Court, ILCD

**STATE OF ILLINOIS**
**SUPREME COURT**

At a Term of the Supreme Court, begun and held in Springfield, on Monday, the thirteenth day of May, 2002.

Present: Moses W. Harrison II, Chief Justice

Justice Charles E. Freeman        Justice Mary Ann G. McMorrow
Justice Thomas R. Fitzgerald      Justice Robert R. Thomas
Justice Thomas L. Kilbride        Justice Rita B. Garman

---

On the thirtieth day of May, 2002, the Supreme Court entered the following judgment:

No. 93450

People State of Illinois,

    Respondent

    v.

David Allen Greer,

    Petitioner

Petition for Leave
to Appeal from
Appellate Court
Third District
3-99-0706
94CF649

The Court having considered the Petition for leave to appeal and being fully advised of the premises, the Petition for leave to appeal is DENIED.

As Clerk of the Supreme Court of the State of Illinois and keeper of the records, files and Seal thereof, I certify that the foregoing is a true copy of the final order entered in this case.

IN WITNESS WHEREOF, I have hereunto subscribed my name and affixed the Seal of said Court, this twenty-first day of June, 2002.

Clerk,
Supreme Court of the State of Illinois

EXHIBIT L

E-FILED
Tuesday, 26 September, 2006 02:01:52 PM
Clerk, U.S. District Court, ILCD

```
                                    FILED in the CIRCUIT COURT
                                       of ROCK ISLAND COUNTY
                                          CRIMINAL DIVISION

                                        JUL 1 5 2002

                                    Clerk of the Circuit Court
                                    [signature]
```

IN THE CIRCUIT COURT
OF THE FOURTEENTH JUDICIAL CIRCUIT
ROCK ISLAND COUNTY, ILLINOIS

PEOPLE OF THE STATE OF ILLINOIS, )
)
      Plaintiff-Respondent, )    **POST-CONVICTION**
)
)
)
           vs. )    No. <u>94-CF-649</u>
)
)
)    Honorable
DAVID ALLEN GREER, )    James Teros,
)    Judge Presiding.
      Defendant-Petitioner. )

## PETITION FOR POST-CONVICTION RELIEF

    **NOW COMES**, David Allen Greer, petitioner, pro-se, and moves this Honorable Court pursuant to Section 122-1 et seq. of the Post-Conviction Hearing Act (725 ILCS 5/122-1 et seq.) for relief from the conviction in the above-captioned cause.

    **IN SUPPORT** thereof, petitioner states as follows:

    1.) Petitioner had been previously convicted of first degree murder in this cause, which was reversed and remanded by the Third District Appellate Court. (People v. Greer, 293 Ill.App.3d 861, 689 N.E.2d 134, rehearing denied, (3rd Dist.1998)).

    2.) Following another trial by jury, petitioner was once again convicted of first degree murder, and on August 6th, 1999, the trial court sentenced him to a term of 50 years in the Illinois Department of Corrections.

    3.) Petitioner sought a reconsideration of the sentence imposed, which was heard and denied on September 14th, 1999.

    4.) Petitioner timely filed a notice of appeal on September 14th, 1999.

EXHIBIT M

5.) On December 28th, 2001, the Third District Appellate Court affirmed conviction and sentence. (People v. Greer, No. 3-99-0706, (3rd Dist. Dec. 28th, 2001), (Unpublished under S. Ct. Rule 23 Order)).

6.) Rehearing was not sought in the Appellate Court.

7.) Petitioner sought leave to appeal to the Illinois Supreme Court, which was filed with the court on March 8th, 2002, based upon the court's grant of an extension of time for filing.

8.) On __MAY 30th, 2002__, 2002, the Illinois Supreme Court denied leave to appeal. (People v. Greer, No. 93450).

9.) Petitioner asserts the following grounds in support of relief requested:

a. Petitioner was denied a fair trial and due process under the 6th Amendment and Due Process Clause of the 14th Amendment of the United States Constitution where prosecution admitted highly prejudicial evidence of "other crimes and bad acts". Petitioner incorporates herein facts and argument set forth in Memorandum of Law filed herewith, as if fully set forth herein.

b. Petitioner was denied effective assistance of counsel and a fair trial under 6th Amendment and Due Process Clause of 14th Amendment of the United States Constitution where counsel failed to seek a suppression of identification evidence, and failed to object to in-court identification of petitioner, and failed to object to admission of evidence of "other crimes and bad acts" at the time of its admission so as to preserve for appellate review. Petitioner incorporates herein facts and argument set forth in Memorandum of Law filed herewith, as if fully set forth herein.

c. Petitioner was denied effective assistance of appellate counsel under the 6th Amendment and Due Process Clause of the 14th Amendment of the United States Constitution where appellate counsel failed to raise the above-cited instances of ineffectiveness of trial counsel. Petitioner incorporates herein facts and argument

(2)

set forth in Memorandum of Law filed herewith, as if fully set
forth herein.

10.)  Petitioner is unable to attach portions of trial proceed-
ings in support of his claims due to his copies having been lost
in a house fire where they were stored for safe keeping, which is
more fully set forth in affidavit attached hereto. Additionally,
due to the exigent deadline for this filing, he would be unable to
obtain a copy from the courts in a timely manner.

11.)  Petitioner requests leave of this court to proceed as a
poor person, and in support thereof states that he was previously
permitted to proceed as a poor person in the trial court and on
appellate review, and that his financial status has not changed
for the better, such that he is still unable to pay for the costs
of this proceeding.

12.)  Petitioner requests the appointment of counsel to repres-
ent him in these proceedings. He also requests the right to reserve
leave to amend, or supplement, petition after appointment of coun-
sel, particularly in light of fact that this instant petition is
being prepared without the benefit of the trial proceedings. As
stated above, he is without adequate funds with which to procure
counsel to represent him in these proceedings.

13.)  Petitioner believes that the claims raised herein are
meritorious, and has not filed this action to harass, vex, annoy
or prejudice the respondent.

**WHEREFORE**, for the foregoing reasons, petitioner requests this
Honorable Court to docket his petition, appoint counsel, and grant
him leave to proceed as a poor person, order a hearing on the claims
raised herein, and enter a finding that petitioner was denied eff-
ective representation at both trial and appellate levels, and order
a new trial in this cause, and any other relief this Court deems
just.

Date: __7. 8. 02__, 2002.    Respectfully submitted,

_Curtis A. Greer_

David Allen Greer
Reg. No. N72100
(3)    Lawrence Correctional Center
P.O. Box 900
Sumner, Illinois 62466

STATE OF ILLINOIS      )
                       ) SS.
COUNTY OF LAWRENCE     )

### VERIFICATION BY CERTIFICATION

I, __David Allen Greer__ depose and state under PENALTY of PERJURY as provided by law pursuant to §1-109 of the Illinois Code of Civil Procedure; that I have read the foregoing; that I have knowledge of its contents and that the matters set out therein are true and correct in both substance and fact based upon my personal knowledge; and as to matters stated to be on information and belief, I believe those to be true and correct.

Date: __7.8.02__, 2002.

AFFIANT;

(4)

ROCK ISLAND POLICE DEPARTMENT VOLUNTARY STATEMENT
VOLUNTARY STATEMENT

Incident No. 93-37060

I, the undersigned, Steven Alfred Fuhlman,  am
_____ years of age, having been born on__
Address:  1419 5th St., Rock Island, Illinois;

I have been advised and fully understand the Waiver of Rights
Form that I have just signed.  I declare that the following voluntary
statement is made of my own free will without fear or threat of
physical harm, without promise of reward, without coercion and without
leniency or offer of leniency, by any person or persons whomsoever:

This Statement is Being Taken At 1419 5th St., Rock Island, IL,
on 07/14/93 at 14:50 hrs. by Inv. P.J. Dooley #1112 and
transcribed from tape by Frances Bauer #1578.  Also present is Donna
Fuhlman, wife of Steven Fuhlman.

Q.  Mr. Fuhlman, would you state your full name please?
A.  Steven Alfred Fuhlman.

Q.  And your present address and phone number?
A.  1419 5th St. Rock Island, 793-4194.

Q.  How much education have you had?
A.  I've got a GED, only through 11th grade.

Q.  Okay, you can read and write and understand English?
A.  Yeh.

Q.  And this statement which you're giving is a voluntary statement?
A.  Yeh.

Q.  Mr. Fuhlman, we're talking about an incident that occurred in the
    area of your home yesterday, on 07/13/93, in which there was a
    shooting.   Do you recall this incident?
A.  Yes I do.

Q.  Okay, earlier, I showed you a photo lineup and you identified a
    subject from this lineup as being the person that you believed to
    be the shooter.
A.  Right.

Q.  Would you look at this group of photographs and tell me if that
    looks like the same group of photographs that I showed you earlier?
A.  Yes it is.

Q.  For the record, let me indicate that the photographs that are in
    this group of #28842, #26514, #33157, #30522, #29726, and #32405.
    Of this group of photographs, which one would you identify as the
    shooter?
A.  This one right there.

WITNESS _____     SIGNATURE _____
        DATE?TIME  7-15-93  8A20
          PAGE: 1    fb

EXHIBIT
Parles # 8

ß000001

ROCK ISLAND POLICE DEPARTMENT VOLUNTARY STATEMENT
Statement of Steven A. Fuhlman                July 14, 1993

Q. Let the record indicate that Mr. Fuhlman has chosen photograph #28842. How do you know this person as you see him in this photograph?
A. I've seen him around the neighborhood.

Q. How often would you say you see him in this neighborhood on the average?
A. Daily.

Q. What does he do here?
A. ___

Q. And how close to your home does he do that?
A. I live on 15th and 5th, and he does it on the corner of 5th and 15th, in front of the store.

Q. So he does this right across the street from your residence?
A. Right.

Q. On a regular basis?
A. And across the street in the courts.

Q. Yesterday at approximately the time of the shooting, where were you?
A. I was on 15th St., working on my vehicle.

Q. Okay, let me correct that, that would be 15th Ave.?
A. 15th Ave.

Q. Okay, you were working on your vehicle and what did you see?
A. I heard some commotion, I was working on the driver's side front tire, putting some wire wheels back on that I take off during the winter, and I was sitting on the ground and I looked around in front of the car and seen a man with a gun and the man fired two shots off, waited a second and fired the third shot off.

Q. And then what did he do?
A. Ran towards the west.

Q. Back into Arsenal Courts?
A. Right.

Q. Where was the gun when he ran back towards Arsenal Courts?
A. In his right hand.

Q. Still in his hand?
A. Yeh.

Q. When the subject fired the shots, was he in the street at the time or was he by the building?
A. He was at the corner of the building in between two buildings.

WITNESS _____ SIGNATURE _____
DATE?TIME  7-15-93
PAGE: 2      fb

E000002

ROCK ISLAND POLICE DEPARTMENT VOLUNTARY STATEMENT
Statement of Steven A. Fuhlman           July 14, 1993

Q. And the subject that you saw with the gun is the same subject that you have chosen out of this group of photographs?
A. Yes, he had a green bandana on, white shirt, and shorts or dark colored shorts.

Q. What color shorts?
A. Dark colored shorts.

Q. Dark colored shorts? And earlier you described to me how that bandana was on his head?
A. It was like a gypsy, like gypsies wear.

Q. So that it covered the top of his head?
A. Covered the whole head.

Q. You also described this subject as being a M/B, is that correct?
A. Right.

Q. Did you observe any facial hair?
A. No.

Q. And his height and build, how did you describe that?
A. About 5'8" or 5'10", muscular build.

Q. When you observed him with the weapon, can you tell me from what you saw whether it was a revolver or a semiautomatic?
A. It was a revolver, dark in color, looked to be a snubnose or something like that, it didn't have a long barrel.

Q. Okay, after the shooting occurred, what did you do?
A. Went back to working on the car.

Q. And you had earlier told me you heard some things being said or you heard some noises after that, what was it you heard?
A. Well, directly after the shooting, I watched the guy run back towards the west and I don't know where he went, there was a bunch of other guys back there and other cars, there were about 4-5 cars parked there so I don't know where he went and then I heard the police show up and the ambulance, and I went to my back yard and watched as they picked the gun up with blood on it and drug the man out of the bushes that had been shot.

Q. Originally when the shots were fired, were you aware that anyone had actually been hit?
A. No.

Q. You told me earlier that when this shooting occurred, there were other people out in the area that should have seen this?
A. Yeh.

Q. Is it true that there were people in front of the store?

WITNESS _____    SIGNATURE _____
DATE/TIME 7-15-95  0920
PAGE: 3        fb

000003

ROCK ISLA.. POLICE DEPARTMENT VOLUNTA.. STATEMENT
Statement of Steven A. Fuhlman          July 14, 1993

A.  Yes.

Q.  Approximately how many people would you estimate were in front of
the store?
A.  At least five.

Q.  And would you say they were adults or kids?
A.  Well, they were ranging from, you know, 16 on up to 20-25,
somewhere around there.

Q.  And you also said that there were some kids sitting over on the
benches in the Arsenal Courts park right across the street?
A.  Yeh.

Q.  How old would you put their ages?
A.  14 to 18.

Q.  And about how many of those subjects?
A.  About five.

Q.  And you further said that there were other people back in the area
of the parking lot towards which the suspect ran.
A.  Right.

Q.  How many people would you estimate were over there?
A.  I would say about ten.

Q.  To clarify just a little bit as to where you saw the suspect run,
earlier you had said that as he ran chasing the other subject, he
had to run between some items across the street over here.  What
was it you said?
A.  Between the tree and the trash can.

Q.  And then he stopped right at the corner of that building?
A.  Right.

Q.  And fired the shots.  So he never did enter the street himself?
A.  No.

Q.  Could you see the victim at the time the shots were fired?
A.  Yes I could.

Q.  You could see the victim at the time that the shots were fired?
A.  No, I seen the victim as he was being chased out of the courts.

Q.  Okay.
A.  And I barely seen him.  He looked to be slender, you know, and
probably about 5'8"-5'10", you know.  He wasn't a real big guy.

Q.  Okay, but at the time that the shots were actually fired was the
victim then out of your sight?

WITNESS _____ SIGNATURE _____
          DATE?TIME  7-15-93  0920
              PAGE: 4      fb

E000004

ROCK ISLAND POLICE DEPARTMENT VOLUNTARY STATEMENT
Statement of Steven A. Fuhlman          July 14, 1993

A.  Right.

Q.  You also said that you were aware that the suspect that did the
    shooting used to drive a certain kind of vehicle, what type of
    vehicle do you remember seeing him in?
A.  A light green Oldsmobile, it had a white vinyl top, a set of fancy,
    they're not wire rims, they're aluminum rims.

Q.  And have you seen him in that car recently?
A.  Not for awhile.

Q.  What do you commonly see him?
A.  On a bicycle, ten speed or whatever on up from that, like the
    mountain bike.

Q.  Have you seen the shooter in the area any time prior to this
    incident on that particular day?
A.  I don't know, you know, I see people all the time and he might even
    rode by on a bicycle but you know, it's a daily thing and I get
    used to seeing people out here and you know, unless he'd stopped
    and said something to me, you know.

Q.  So not specifically that day do you remember whether he was here?
A.  Right.

Q.  Do you have anything to add to this statement?
A.  Not really.

Q.  Were you under the infuence at the time, were you under the
    influence of drugs at the time of the incident?
A.  I don't do drugs.

Q.  Were you under the influence of alcohol at the time of the
    incident?
A.  No.

Q.  Has this statement been the truth to the best of your knowledge?
A.  Yes.

Q.  Were there any threats or promises made to you to make this
    statement?
A.  No.

Q.  And when this statement is typed and you have found to be accurate,
    would you be willing to approve and sign this statement?
A.  Yeh.

Statement Concluded:
07/14/93 @ 15:09 hrs.

WITNESS _____  SIGNATURE x _____
         DATE?TIME 7-15-93 0920
              PAGE: 5     fb

000005

ROCK ISLAND POLICE DEPARTMENT VOLUNTARy STATEMENT
VOLUNTARY STATEMENT

Incident No. 93-37060

I, the undersigned, Gary Dewayne Davis,  am
___20___ years of age, having been born on 4-2-73
Address:  801 12th Ave., Rock Island, Illinois;

      I have been advised and fully understand the Waiver of Rights
Form that I have just signed.  I declare that the following voluntary
statement is made of my own free will without fear or threat of
physical harm, without promise of reward, without coercion and without
leniency or offer of leniency, by any person or persons whomsoever:

      This Statement is Being Taken At R.I.P.D., C.I.B. Interview Room,
on 07/14/93 at 15:52 hrs. by Inv. Thomas J. Mulder #1131 and
transcribed from tape by Frances Bauer #1578.

Q.  Would you state your full name?
A.  Gary Dewayne Davis.

Q.  Okay, Mr. Davis, what is your present address and telephone number?
A.  My present address is 801 12th Ave.

Q.  And do you have a phone number there?
A.  Yes, it's 793-1838.

Q.  And how much education have you had?
A.  12th grade.

Q.  And it's true that you can read, write, and understand the English
    language?
A.  Yes sir.

Q.  Is it true that this is a voluntary statement given by you?
A.  Yes sir.

Q.  And since coming in contact with the Rock Island Police Dept.,
    concerning this case, have you been treated in a fair manner?
A.  Yes sir.

Q.  Briefly, we're here to talk about an incident, a shooting incident
    that occurred on July 13th, 1993, at approximately 6:45 p.m. in the
    area of the Arsenal Courts, this resulted in the death of Brandon
    Ellison.  Is it true that you previously knew Mr. Ellison?
A.  He was a good friend.

Q.  And what name do you know him by or refer to him as?
A.  Little Lord.

Q.  Okay, that's his street name that he uses?
A.  Yeh, that's what I call him.

WITNESS _____     SIGNATURE _____
                DATE?TIME 7/14/93   19:1
                PAGE:  1      fb

EXHIBIT
PEOPLE'S #
___11___

000006
WKI

ROCK ISLAND POLICE DEPARTMENT VOLUNTARY STATEMENT
Statement of Gary D. Davis                July 14, 1993

Q. Okay, we had previously talked prior to this statement being taped
and could you briefly give me a run down on the events that
occurred that night as you saw them?

A. Okay, approximately about 4 o'clock I came to the Arsenal Courts, I
was standing out there talking to a friend at first and then a
little bit later after the conversation I seen Little Lord walk
through and I told him, I said you just got a hard head, you don't
listen huh, and he said -- -- --, so you know I knew he was down
there you know gonna sell dope but I knew Crock was out there also
but I thought beans probably was washed but as soon as Lord turned
the corner, Crock came across, Crock crossed the street, -- and
Lord had words, then Lord took off running in between the two
buildings, that's when Crock ran from one curb to the other curb
and fired his first shot.  That's when I seen Little Lord stagger
close to running off into 5th St.  and that's when I know I seen
enough and I broke but the incident it was just, it was like no
remorse.  It was like the man just killed him and didn't even
hesitate about it, and a few hours later after the police was
coming there, he was right back outside.  It was like nothing
happened and he had, I just couldn't understand it, it was one of
his own brothers that he killed.

Q. This incident occurred.  We had previously gone over the locations
on this rough map that I'm showing you now, shows a small park area
on 5th St. approximately 15th Ave. in the Arsenal Courts, correct?
A. Yeh, it's approximately about, yeh, it's in front of 15th Ave.

Q. Okay, and you indicate an area that Crock was standing at, this
would be on 4 1/2 St. basically straight across from the little
park on.
A. This side.

Q. According to the map, you were standing a little bit north of that
by the corner of the building when you first saw Lord?
A. Yes sir.

Q. And then Lord.
A. Lord walked around the building.

Q. He turned what would be south.
A. And that's when I walked up and Crock was coming across the street
and him and Lord had some words, then Lord took off and Crock
finally made it across the curb, that's when he fired his first
shot.  Lord got to the curb stepping off into 5th St. and that's
when he started stumbling and that's when I said oh shit, I heard,
I heard enough and that's when I heard two more shots, then.

Q. Did you see any blood on Little Lord when that happened?
A. No, I didn't see no blood but I seen Crock fire the pistol.

Q. Did you see where Crock got the pistol from?

WITNESS _____    SIGNATURE _____
            DATE?TIME 7/14/93    1914
                PAGE: 2    fb

E000007

WK 2

ROCK ISLAND POLICE DEPARTMENT VOLUNTARY STATEMENT
Statement of Gary D. Davis          July 14, 1993

A. Took it out from under his shirt.

Q. Okay, do you remember what clothing Crock was wearing?
A. I think it was a black T-shirt, some like black kind of shorts or something like that, and he had on some white shoes that was new, they was white Reeboks.

Q. Do you remember anything about Lord's clothing, what color it was or anything?
A. He had on like a beige shirt as yourself explained and some beige pants and some black shoes which I seen him in the outfit a thousand times but, and, in a way I kind of knew he had the pistol because he goes nowhere without it, if he come down there.

Q. Who's that, Lord?
A. Little Lord.

Q. Little Lord goes nowhere without the pistol.  Do you know what kind of pistol it was that Little Lord had?
A. It was a black, looked like a .22 or .32 revolver, had a brown handle on it.

Q. And could you tell what kind of gun it was that Crock had?
A. Crock was like, it looked like a, about .38, it was either a .38 or something, I know it was loud, but I don't..

Q. You don't know if his was a revolver or semiautomatic?
A. I think it was an automatic, nah, it was a revolver cause it clicked the first time, he tried to click, didn't nothing pop out but the second time that's when Little Lord got shot and the second and third time bullets fired out, it was just so loud, he didn't have no more than about four shells in it, so it had to be a revolver.

Q. Do you know what lead up to this confrontation between Crock and Little Lord?
A. It was a dispute, Lord, I mean Ricky Morrison had got, Ricky Morrison and Brandon have been getting into it with fellow Vice Lords down in the Arsenal Courts for the past few weeks and a lot of dipute they're having in between them, Brandon on the other hand took Crock's little brother's bike, okay, and then the stuff about Lord, Ricky got into it with his brother; in all the confusion, Crock you know I guess, it was basically like this, kill who kill first because you know, they wasn't talking or nothing.  But really Brandon he kind of acted like he wasn't worried about it, we just kicked on the porch and talked, he wasn't never worried about it and I knew he was crazy but I didn't think he was stupid.

Q. Could you hear or understand what Lord and Crock were arguing about before the shooting, did you hear any exchange or?
A. I heard Crock when he said, "little bitch, I told you I was gonna

WITNESS _____    SIGNATURE _____
        DATE?TIME _7/14/93  19:19_
        PAGE: 3      fb

E000008

WK3

ROCK ISLAND POLICE DEPARTMENT VOLUNTARY STATEMENT
Statement of Gary D. Davis                July 14, 1993

A.  (Cont'd) get you," that's all I heard him say really.

Q.  And you refer to Lord Rick, is that Ricky Morrise?
A.  Yes.

Q.  And Crock, do you know his real name?
A.  No, I don't know Crock's real name.

Q.  And I showed you some mug photos earlier today?
A.  Yes sir.

Q.  I'm currently showing you a mug photo now, is that the subject you
    identified as Crock?
A.  Yes sir.



Q.  Okay, I'd like the tape to reflect that the mug photo is of David
    Greer, it's Rock Island Police Dept. mug #28842, the photo was
    taken on the 13th day of '93, the month is not clearly displayed on
    the mug photo.  You advised that Lord Rick and Crock are both gang
    members?
A.  Yes, we're all in the same organization.



Q.  What organization is that?
A.  Vice Lords.

Q.  Was Little Lord a Vice Lord also?
A.  Yes.

Q.  And you advised that you knew that he had some dope on him when he
    went down into the area?
A.  Yes.

Q.  Did you see it or just?
A.  No, I just knew that he had some.

Q.  You knew what he was there for?
A.  Yeh, he had some the day before and he said he was going to get rid
    of it, and that's the only place really you can come and get rid of
    it.

Q.  Okay, do you where Crock lives?
A.  Yes, it's down in Arsenal Courts, he stays with Dinky's
    grandmother.

Q.  Dinky, do you know his real name?
A.  No sir, I don't.

Q.  Do you know if Crock has a girlfriend that stays down in the
    Arsenal Courts?
A.  Yes, he goes with Dinky's sister, Wink.

WITNESS _____  SIGNATURE _____
            DATE?TIME 7/14/93  19:14
                PAGE: 4      fb

000009

WK4

ROCK ISLAND POLICE DEPARTMENT VOLUNTARY STATEMENT
Statement of Gary D. Davis          July 14, 1993

Q. Do you know if Betty Rhoden would be her correct name?
A. I believe that might be it, yes sir.

Q. But you're not positive on that?
A. I'm not positive.

Q. Did you see Little Lord after he stumbled, did you see where he went after that?
A. No, I just seen, when I seen him stumble, I just broke cause it was just crazy and I didn't want to get shot, a bunch of people just kind of scattered and.

Q. Which way did you run then or where did you go?
A. I ran, when I was standing right there, and I seen Little Lord stumble, I broke back around where I came from, then I shot to that side and got up in the house where one of my other brothers was.

Q. By brothers you mean one of your fellow Vice Lords?
A. Yes sir.

Q. Okay, when this occurred, can you estimate how far away from Crock you were when you first saw him fire a shot?
A. I'll say no more than about maybe 20-25 feet, something like that, not that far, I wasn't that far away.

Q. You have no doubt in your mind that it was Crock who fired the shot?
A. No doubt.

Q. Do you know if Little Lord fired his gun back at Crock?
A. Little Lord didn't have time to fire.

Q. Okay, when this occurred, were you under the influence of drugs?
A. No sir.

Q. Were you under the influence of any alcoholic beverage at the time of this?
A. No sir.

Q. Okay, is there anything else that you'd like to add to this statement?
A. No, but I hope you slam his ass.

Q. Has this statement been the truth to the best of your knowledge?
A. I swear.

Q. Were there any threats or promises made to you to give this statement?
A. No sir.

Q. And once this statement is typed and you have found it to be

WITNESS _J Mult_          SIGNATURE _Gary Davis_
                 DATE?TIME 7/14 93  19:14
                 PAGE: 5      fb

R000010

WK5

ROCK ISLAND POLICE DEPARTMENT VOLUNTARY STATEMENT
Statement of Gary D. Davis                July 14, 1993

Q.  (Cont'd) exactly as you have said, would you be willing to sign
    this statement?
A.  Yes sir.

                              Statement Concluded:
                              07/14/93 @ 16:04 hrs.

WITNESS _____    SIGNATURE _____
                   DATE?TIME 7/14/93  19:14
                        PAGE: 6       fb

00001 WKe

# STATE OF ILLINOIS



3-99-0706

People v. David Allen Greer

**APPELLATE COURT**          **THIRD DISTRICT**

**OTTAWA**

At a term of the Appellate Court, begun and held at Ottawa, on the 1st Day of January in the year of our Lord Two Thousand one, within and for the Third District of Illinois:

Present -

HONORABLE THOMAS J. HOMER, Presiding Justice                    X

HONORABLE PEG BRESLIN, Justice

HONORABLE TOM M. LYTTON, Justice

HONORABLE WILLIAM E. HOLDRIDGE, Justice                    X

HONORABLE MARY W. McDADE, Justice                    X

HONORABLE KENT SLATER, Justice

GIST FLESHMAN, Clerk

BE IT REMEMBERED, that afterwards on

_December 28, 2001_  the  Order  of the Court was filed in the Clerk's Office of said Court, in the words and figures following viz:

NOTICE

The text of this opinion may be changed
or corrected prior to the time for filing of a
Petition for Rehearing or the disposition
of the same.

No. 3--99--0706

IN THE APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2001

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 14th Judicial Circuit, Rock Island County, Illinois |
| Plaintiff-Appellee, | ) ) ) | |
| v. | ) ) | No. 94--CF--649 |
| DAVID ALLEN GREER, | ) ) | Honorable James Teros |
| Defendant-Appellant. | ) | Judge, Presiding |

RULE 23 ORDER    "Not To Be Published"

The defendant, David Allen Greer, was charged by indictment with first-degree murder. He was convicted following a jury trial and sentenced to 50 years in prison. On appeal, his conviction was reversed and the cause remanded for a new trial. Following a second jury trial, the defendant was again convicted of first-degree murder and again sentenced to a term of 50 years imprisonment. On appeal, the defendant maintains that the trial court erred in: (1) allowing the transcripts of prior consistent statements of two witnesses to go to the jury room during deliberations; and (2) allowing a certain individual (Gary Davis) to be called as the court's witness. We affirm.

Because the parties are familiar with the facts, we will not provide a detailed recitation, but will only address the facts as they are necessary to an understanding of our ruling on the issues.

The defendant first maintains that the trial court erred in allowing transcripts of certain prior consistent statements of two witnesses to go to the jury room.  We find no merit to his argument.  As a preliminary matter, we note that the defendant did not object at trial to the admission of the statements into evidence; he only objected at trial and in his post-trial motion to the statements going to the jury room during deliberations.  Thus, the defendant has waived the issue of the admissibility of the statements and we find no plain error in their admission.  People v. Morgan, 142 Ill. 2d 410 (1991).

Turning to the merits of the defendant's argument, a trial judge's decision as to what evidence may go to the jury room during deliberations will not be overturned absent an abuse of discretion. People v. Lambert, 288 Ill. App. 3d 450 (1997).  An abuse of discretion exists only when the trial judge's ruling is arbitrary, fanciful, or unreasonable, or when no reasonable person would take the view adopted by the trial court.  People v. Illgen, 145 Ill. 2d 353, 355 (1991).  Here, the statements at issue were admissible under section 115-12 of the Criminal Code (725 ILCS 5/115-12 (West 1998)) as prior consistent statements of identification.  Since the evidence was in fact admissible, we find nothing in the record to support a conclusion that permitting this evidence to go to the jury was an abuse of discretion.

Although we find no abuse of discretion in the trial court allowing the prior consistent statements to go to the jury room, we also note that any error would have been harmless given the overwhelming evidence of the defendant's guilt.  When it does

2

not appear justice had been denied or that a finding of guilt resulted from an error, a conviction will not be reversed. People v. Richardson, 123 Ill. 2d 322, 326 (1988). Here, the evidence of the defendant's guilt was overwhelming.

The defendant next maintains that the trial court erred in allowing Gary Davis to be called as the court's witness. We disagree. A party may ask the trial judge to call a witness as the court's witness when his testimony will concern non-collateral issues and is necessary to prevent a miscarriage of justice. People v. R.D., 155 Ill.2d 122 (1993). Whether to call a witness as a court's witness is within the trial court's discretion and will not be reversed absent an abuse of that discretion. People v. Pastorino, 91 Ill. 2d 178 (1982).

Here, it cannot be said that the trial court abused its discretion in calling Davis as a court's witness. The People adequately established the foundation for his testimony. Davis testified at the defendant's first trial that he saw the defendant shoot the victim. However, in a letter attached to the defendant's post-trial motion, Davis recanted that testimony, saying he was present and did not see the shooting. Davis also testified at the hearing on the defendant's post-trial motion. Prior to the second trial, the People requested that Davis be called as a court's witness as they could not vouch for his credibility given his recantation of his testimony from the first trial. We note that the trial court took proper steps to inform the jury that Davis was a court witness, not because he was particularly credible, but because he was particularly not credible. We find no abuse of

3

discretion in the trial court's allowing Davis to testify as a court's witness.

For the foregoing reasons, the judgment of the circuit court of Rock Island County is affirmed.

Affirmed.

HOLDRIDGE, J., with HOMER, P.J., and MCDADE, J., concurring.

4

STATE OF ILLINOIS,      )
APPELLATE COURT,        )  ss.
THIRD DISTRICT          )

            As Clerk of the Appellate Court, in and for said Third District of the State of Illinois, and keeper of the Records and Seal thereof, I do hereby certify that the foregoing is a true, full and complete copy of the opinion of the said Appellate Court in the above-entitled cause, now of record in this office.

            In Testimony Whereof, I hereunto set my hand and affix the seal of said Appellate Court at Ottawa, this 28th day of December in the year of our Lord two thousand one.

_____
    Clerk of the Appellate Court

E-FILED
Tuesday, 26 September, 2006  02:02:49 PM
Clerk, U.S. District Court, ILCD

Re: People v. Greer, No. 94-CF-640
(Post-Conviction Petition)

STATE OF ILLINOIS  )
                   )  SS.
COUNTY OF LAWRENCE )

## **AFFIDAVIT**

    I, <u>David Allen Greer</u>, depose and state under penalty of perjury as provided by law pursuant to Section 1-109 of the Illinois Code of Civil Procedure that the following is true and correct made upon my personal knowledge; that I am competent to testify thereto if called upon as a witness:

Date:  _7 . 8·02_ , 2002.                    _Daniel A. Greer_
                                             AFFIANT;

IN THE CIRCUIT COURT
OF THE FOURTEENTH JUDICIAL CIRCUIT
ROCK ISLAND COUNTY, ILLINOIS

---

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | |
| | ) | **POST-CONVICTION** |
| Plaintiff-Respondent, | ) | |
| | ) | |
| | ) | |
| | ) | |
| vs. | ) | No. 94-CF-649 |
| | ) | |
| | ) | |
| | ) | Honorable |
| DAVID ALLEN GREER, | ) | James Teros, |
| | ) | Judge Presiding. |
| Defendant-Petitioner. | ) | |

---

**MEMORANDUM OF LAW IN SUPPORT OF
PETITION FOR POST-CONVICTION RELIEF**

**Statement of the Case:**

   This is an action seeking post-conviction relief by a criminal
defendant pursuant to the Post-Conviction Hearing Act (725 ILCS
5/122-1 et seq.). The petitioner (hereinafter referred to as
Greer) asserts that his trial attorney failed to object to the
admission of prejudicial evidence about other crimes and bad acts
at the time of, or prior to, its admission, and failed to move to
suppress evidence of identification or object to in-court ident-
ification of petitioner, and as a result he was denied effective
assistance of counsel and a fair trial. Additionally, he asserts
that because his appointed appellate counsel failed to raise the
aforesaid issues of ineffectiveness of trial counsel, that he was
denied effective assistance of counsel at the appellate level. That
the alleged errors rise to the level of a denial of rights guara-
nteed under the 6th and 14th amendments of the United States
Constitution.

**Statement of Facts:**

Greer was convicted of First Degree Murder in the shooting death of Brandon Ellison on July 13th, 1993. The prosecution's theory that motivated the shooting was a dispute between Greer and Ellison over Ellison striking Greer's brother in the head with a gun earlier. The shooting was an act of retaliation.

The prosecution relied heavily on the testimony of two eye-witnesses, Gary Davis and Steven Fuhlman, who alleged that they had witnessed the shooting and within two days had identified Greer as the shooter, although Fuhlman had initially told the investigators that he saw nothing and knew nothing about the shooting, and Davis had recanted his earlier statement implicating Greer, but then recanted once again and testified according to the initial statement given to the investigators. Both Davis and Fuhlman provided tape recorded statements to the investigators within two days following the shooting. Both Davis and Fuhlman identified Greer during trial as the shooter. Both Davis and Fuhlman testified that they knew Greer from the neighborhood.

This was the second trial in the cause after the Third District Appellate Court reversed the first conviction because the trial court refused to allow impeachment of credibility of Fuhlman on point of his desire to move from the neighborhood but was financially unable to do so, and was behind in property taxes, and prior to trial the State finacially assisted his move from the neighborhood. The court held that the issue was not collateral to the question of whether Fuhlman would testify falsely in order to obtain help in moving. That the jury was entitled to consider these facts in light of Fuhlman's credibility.

After the prosecution introduced the transcribed statement of Davis, People's Exhibit No. 11, trial counsel asked to reserve the right to object to the statement being published to the jury. Following closing arguments, over the objection of trial counsel, both Davis's statement, and Fuhlman's transcribed statement, People's Exhibit No. 8, was permitted to go back with the jury during deliberations.

-2-

Trial counsel did not move to suppress the identification evidence of both Davis and Fuhlman out-of-court identification of Greer by police mug shot. Neither did trial counsel object to in-court identification of Greer as the shooter.

Appellate counsel raised issue of trial court abusing its discretion in allowing the statments of Davis and Fuhlman to go back to the jury, but only in the sense that it was error for the court to allow them to go back to the jury without a limiting instruction, and in fear that it would be considered substantive evidence by the jury. No issue was raised specifically in a constitutional sense as to the denial of a fair trial. Moreover, the Appellate Court found that the issue of the prejudicial effect of the statements on the jury was waived due to trial counsel not having objected to it admission into evidence. The alleged error of allowing them to go back to the jury without a limiting instr- uction was disposed of on the basis that trial counsel failed to tender a limiting instruction, and that the statements were admissible as a matter of statutory law as prior consistent state- ments of identification.

### ARGUMENT

A.   Greer Was Denied A Fair Trial And Due Process Under 6th Amendment And Due Process Clause Of The 14th Amendment Of The United States Cons- titution Where Prosecution Admitted Highly Prejudicial Evidence Of "Other Crimes And Bad Acts".

As a preliminary matter, for purposes of review under Post-Conviction Hearing Act, determinations of a reviewing court on direct appeal are res judicata as to issues actually decided. People v. Erickson, 183 Ill.2d 213, 700 N.E.2d 1027 (1998).

The issue here, however, was not raised on direct appeal in a constitutional sense regarding the denial of a fair trial as envisioned by the United States Constitution. Rather, the issue on direct appeal was whether or not trial judge abused his discretion when he allowed the statements of Gary Davis and

-3-

Steven Fuhlman to go back with the jury during deliberation
without instructing the jury on their limited purpose so as to
ensure that they are not considered as substantive evidence by
the jury. (See, Brief and Argument for Defendant-Appellant at 18-
27).  It was, however, interjected on direct appeal that the
statements contained prejudicial information about "gang" activity
and should not have been presented to the jury. (Id. at 23-25).

   However, the appellate court held that any error resulting in
prejudice as a result of the admission of the statements was
waived due to a failure to object at trial to the admission of
the statements. (People v. Greer, No. 3-99-0706, Slip Op. at 2,
3rd Dist. December 28th, 2001, Unpublished Order under Ill.S.Ct.
Rule 23).

   Accordingly, the instant issue has not been fully adjudicated
on direct appeal, and because this issue is attributed to the
ineffectiveness of trial counsel for failure to object at trial
to the admission of the statements, it was incumbent on appellate
counsel to raise the issue on direct appeal, which is discussed
more fully below.

   Furthermore, for purposes of Federal Habeas Corpus Review
under 28 U.S.C. §2254, a State criminal defendant is required to
exhaust his State remedies as to all claims as a Federal constit-
utional claim. Duncan v. Henry, 130 L.Ed.2d 865, 115 S.Ct. 887,
rehearing den., 131 L.Ed.2d 245, 115 S.Ct. 1394 (1995). It cannot
be said here that this issue was raised as a Federal constitut-
ional claim; rather, a determination was only sought based on
state law remedies as an evidentiary error. (See eg., U.S. ex
rel. Lash v. Cooper, (N.D.Ill. 1996), 952 F.Supp. 1245; Hunter
v. Gramley, (N.D.Ill.1994), 860 F.Supp. 533).

   As to the claim here, the general rule, subject to exceptions,
is that,in a prosecution for a particular crime, evidence which
shows or tends to show that the accused has committed another
crime wholly independent of, and unconnected with, that for which
he is on trial, is irrelevant and inadmissible. People v. Robinson,
167 ill.2d 53, 656 N.E.2d 1090 (1995). Such evidence of an indep-
endent crime is inadmissible for the reason that it does not

-4-

ordinariliy tend to establish the commission by the accused of
the offense charged, but tends to "overpursuade" the jury that
the accused is a bad person deserving punishment. People v.
Donaldson, 8 Ill.2d 510, 134 N.E.2d 776 (1956); People v.
Robinson, Id., Supra. .

Furthermore, such evidence is not admissible because of its
prejudicial effect. To present to the jury evidence demonstrat-
ing a defendant's general propensity to commit crime, is so impr-
oper as to deny the defendant's constitutional right to a fair
trial. People v. Placek, 184 Ill.2d 370, 704 N.E.2d 393 (1998);
People v. Kliner, 185 Ill.2d 81, 705 N.E.2d 850, rehearing den.,
(Feb.1st 1999).

Where evidence which tends to show that an accused has committed
crimes or acts of misconduct which are distinct and entirely unre-
lated to the one for which he is being tried is contained in an
otherwise competent statement or confession, such material must be
deleted before the statement is presented to the jury for consid-
eration, unless to to so would severely impair the latter's evid-
ential value. People v. Gregory, 22 Ill.2d 601, 177 N.E.2d 120
(1961); People v. Oden, 20 Ill.2d 470, 170 N.E.2d 582 (1960).

However, while it is incumbent upon the judge to weigh the rel-
evance of the evidence to establish the purpose for which it is
offered against the prejudicial effect the introduction of such
evidence may have upon the defendant, People v. Stewart, 105 Ill.
2d 22, 473 N.E.2d 840 (1984), it is also incumbent upon the defen-
dant to object to the extraneous and prejudicial evidence. Robinson,
Id., Supra. .

Like many other "non-structural" constitutional trial errors,
the erroneous admission of evidence is analized under the harmless
error standard, i.e., errors of a constitutional nature may be
harmless, only if a court can declare beyond a reasonable doubt
that the error did not contribute to the finding of guilty.
Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, (1967); People
v. Sullivan, 72 Ill.2d 36, 377 N.E.2d 17 (1978).

Accordingly, while the erroneous admission of evidence of other
crimes carries a high risk of prejudice and ordinarily necessi-
tates a reversal of the conviction, (See e.g., Placek, Supra.),

-5-

it has been said, on the other hand, that evidence of other crimes
will not authorize a reversal where the guilt of the accused was
established by practically undisputed and overwhelming evidence,
or where other undisputed or uncontradicted competent evidence
justified the verdict and the evidence left no reasonable doubt
of the accused's guilt. (See e.g., People v. Haynes, 174 Ill.2d
204, 673 N.E.2d 318, rehearing den., (Dec. 2, 1996); People v.
King, 293 Ill.App.3d 739, 688 N.E.2d 825, reh'g den. (Jan.5,1998);
People v. Kliner, Supra.).

However, while evidence other than that which was improperly
admitted is sufficient to justify a conviction, it has been held
that where it cannot be said that the evidence was such that the
jury could have reached no other conclusion than that of guilt
if the erroneous and prejudicial evidence had not been admitted,
the error is presumed to have effected the trial result. People
v. Hannon, 381 Ill. 206, 44 N.E.2d 923 (1942). This is particul-
arly true because it cannot be said what weight the jury gave the
evidence in reaching its verdict. People v. Riley, 63 Ill.App.3d
176, 379 N.E.2d 746 (1st Dist,1978); People v. Lambert, 288 Ill.
App.3d 450, 681 N.E.2d 675, app. den., 174 Ill.2d 580, 686 N.E.2d
1168 (2d Dist.1997). When the evidence is conflicting, and where
there is any incompetent and prejudicial evidence in the record,
a court will not presume that the jury acted on only the competent
evidence; rather, any doubt as to the prejudicial effect of the
erroneous admission of the evidence in question, should be resol-
ved in favor of the defendant. People v. Sisti, 87 Ill.App.2d 107,
230 N.E.2d 500 (4th Dist.(1967); People v. Harris, 83 Ill.App.2d
422, 228 N.E.2d 179 (5th Dist.(1967). In this connection, as is
the case here, when the outcome of the trial depends entirely on
the credibility of an accuser and the defendant, no error should
be permitted to intervene. People v. Bobo, 278 Ill.App.3d 130,
662 N.E.2d 623 (5th Dist.1996); People v. E.Z., 262 Ill.App.3d 29,
633 N.E.2d 1022 (2nd Dist.1994).

In applying the foregoing principles of law, here the prejudi-
cial evidence was the transcribed statements of Gary Davis (People's
Ex. No. 11),and Steven Fuhlman (People's Ex. No. 8).(See, Copies

-6-

attached to petition). Both Davis and Fuhlman were eyewitnesses
for the prosecution implicating Greer as the shooter. It was on
this premises, the prosecution argued, that the jury should be
permitted to take the statements back with them during delibera-
tion – because they were prior consistent statements identifying
Greer as the shooter, and because the defense raised a recent
fabrication of testimony issue on part of Fuhlman.

It is true, however, that evidence tending to identify the
accused as the person who committed the crime charged is one of
the recognized exceptions to the general rule requiring exclusion
of evidence of other crimes and bad acts, and will not be excluded
because it proves or tends to prove that the accused was guilty
of another and independent crime. People v. Gonzalez, 142 Ill.2d
481, 643 N.E.2d 568 (1991); People v. Purnell, 105 Ill.App.2d 419,
245 N.E.2d 635 (1st Dist.1969). On the other hand, when the ident-
ity of the defendant can be clearly shown without the use of evid-
ence of another crime, evidence of another crime is inadmissible.
People v. Johnson, 81 Ill.App.3d 359, 401 N.E.2d 288 (2nd Dist.
1980); People v. Lindgren, 79 Ill.2d 129, 402 N.E.2d 238 (1980).

Here, the statement of Gary Davis is plagued with numerous
references about "gang" activity, and specifically Greer being a
member of an illegal street gang. Additionally, the statement made
reference to a specific police photo mug shot of Greer, with an
actual police department number, and date, being a date prior to
the date of the charged crime. And, in conjunction with Fuhlman's
statement, Davis's statement made reference to illegal drug
activity, a colloquy as follows:

Fuhlman's Statement:    Page 2
    "Q.  How often would you say you see him in the neighborhood
         on the average?
     A.  Daily.

     Q.  What does he do here?
     A.   [blank]

     Q.  And how close to your home does he do that?
     A.  I live on 15th and 5th, and he does it on the corner of
         5th and 15th, in front of the store.

     Q.  So he does this right across the street from your
         residence?

-7-

A.  Right.

Q.  On a regular basis?
A.  And across the street in the courts. "

Now, looking at the statement of Davis on page 7 where he makes
reference to going down to the "courts" to sell dope, and again
on page 9 where he makes reference to going down into "that area"
to sell dope, and "that's the only place really you can come and
get rid of it." Take that in conjunction with Fuhlman's statement,
and in light of the fact that it was left blank when asked what
Greer does there, it can be inferred that Greer is selling dope
or otherwise engaged in illegal drug activities. It is obvious
that where it was left blank, that response from Fuhlman was an
implication of "something" illegal, otherwise, why would his
response not have been documented there?

Illinois courts have recognized that evidence of other crimes
and bad acts includes "gang" activity, and have found such evidence
to be prejudicial to a defendant if not admitted for any of the
recognized exceptions, or for a proper purpose. People v. Smith,
141 Ill.2d 40, 565 N.E.2d 900 (1990); People v. Johnson, 218 Ill.
App.3d 967, 578 N.E.2d 1274, app. den., 142 Ill.2d 659, 584 N.E.2d
135 (1st Dist.1991); People v. Mason, 274 Ill.App.3d 715, 653 N.E.
2d 1371 (1st Dist.1995). The same has been held regarding evidence
implying prior crimes. People v. Wheeler, 71 Ill.App.3d 91, 388
N.E.2d 1284 (1979)(discussion of the use of mug shots); People v.
Adams, 22 Ill.App.3d 665, 318 N.E.2d 278 (1st Dist.1974)(introd-
uction of police "mug shots" into evidence can be prejudicial as
evidence of other criminal activities); People v. Bennett, 413 Ill.
601, 110 N.E.2d 175 (1953)(evidence that the accused had been pre-
viously arrested). And the same can be said for references to ill-
egal drug activities. People v. Haywood, 250 Ill.App.3d 371, 621
N.E.2d 47 (1st Dist.1993)(implication that defendant was a drug
trafficker, was so inflammatory that it resulted in the denial of
a fair trial).

In the instant case, the prosecution's theory was that of a ret-
aliation by Greer against the deceased for what the deceased had
done to his brother. (R1182-1186) Fn.1 (next page)

-8-

This case has nothing to do with "gangs" or "drugs", unlike
the situation in <u>Gonzalez</u>. There evidence of gang membership was
admissible to show common purpose or design where it was stated
to be common knowledge that when members of that gang raised
their "hoodies", it signaled that someone was going to be killed.
<u>U.S. ex rel. Gonzalez v. DeTella</u>, (N.D.Ill.1996), 918 F.Supp.1214.

Or, the situation in <u>Thomas</u>. There the defendant was charged
with being part of a drug conspiracy, and evidence that defend-
ants belonged to the same Mafia Insane Vice Lords gang was admiss-
ible to illuminate the relationship in the conspiracy. <u>U.S. v.
Thomas</u>, (7th Cir.1996), 86 F.3d 647, 652-54. Or, the situation
in <u>Santiago</u>. There evidence of defendant's dealings with the pris-
on gang "the Mexican Mafia" was properly admitted to explain
motive in killing an inmate who defendant was not acquainted with.
<u>U.S. v. Santiago</u>, (9th Cir.1995), 46 F.3d 885,889.

Accordingly, if in the instant case all the prosecution wanted
to do was to establish the prior identification of Greer, such
could have, clearly, been accomplished through the testimony of
both Davis and Fuhlman, along with the testimony of the detectives
who were present when Davis and Fuhlman picked Greer out of a
photo array, without the need to submit either of the statements
to the jury. Davis testified that he had identified Greer from a
police photo array (R1191-92), and officer Mulder testified to the
same account. (R1214,1304-05). Fuhlman testified that he sellected
Greer's photo from a police photo array the day after the shooting
(R1252), and detective Patricia Jo Dooley testified to the same
account. (R1279-81).

In <u>Lindgren</u>, held that evidence of another crime was improperly
admitted to show that the defendant was near the scene of the crime
on trial. The court stated that "[T]he State could have established
defendant's presence without mentioning the other crime - 'the same
witness could testify to time and place proximity without mention-
ing a distinct crime' ... [and such] a limitation hinders the pro-
secution in no legitimate way." <u>People v. Lindgren,</u> Supra.

---

Fn. 1, Greer is without the transcripts of the trial proceedings and is citing
from the direct appeal briefs alone.

Alternatively, the prosecution could have easily deleted the the prejudicial references from the statements before submitting them to the jury, and which would not have severely impaired their evidentiary value. (See e.g., Gregory, Supra., Oden, Supra.).

In Old Chief, the U.S. Supreme Court announced general guidelines for weighing prejudice against probative value under Federal Rules of Evidence, Rule 403, and held that "[O]n objection, the trial judge should decide whether a particular item of evidence raised a danger of unfair prejudice. If an alternative were found to have substantially the same or greater probative value but a lower danger of unfair prejudice, sound judicial discretion would discount the value of the item first offered and exclude it if its discounted probative value were substantially outweighed by unfairly prejudicial risk." Old Chief v. U.S., 136 L.Ed.2d 574, 117 S.Ct. 644, 651. (Rule 403: Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.).

Where Illinois' principle and rules of evidence are synonymous with Rule 403, it should follow then that the holding announced in Old Chief is applicable to State court proceedings concerning the admissibility of evidence. Thus, had the trial counsel objected to the admission of the statements in the instant case, it can be reasoned that the less prejudicial and alternative evidence available to establish the prior identification of Greer, would have in fact been the testimony of the witnesses themself, without mentioning or making references to any distinct criminal activities, or implications of prior criminal activity.

In light of the fact that the entire prosecution in this case was based on the eyewitness identification evidence of Davis and Fuhlman, who had recanted the initial identification of Greer (R1215-16), and who had initially stated that he could not identify the shooter (R1260,1269-70), and there was no physical evidence connecting Greer to the crime, and the meager circumstantial evidence presented, it cannot be said that the prejudicial statements did not "overpursuade" the jury that Greer was generally

-10-

a bad character deserving punishment. Afterall, it is well settled
that communities will resort to extreme measures to rid themself
of "gang bangers" and drug dealers. That's what the statements of
Davis and Fuhlman portrayed Greer as to the jury. Thus, in that
connection, it cannot be said that the prejudicial information
submitted to the jury did not contribute to its verdict beyond
a reasonable doubt, or that the jury considered only competent
evidence and disregarded the prejudicial evidence.

For the foregoing reasons, Greer was denied a fair trial, and
this court should vacate his conviction and order a new trial in
this cause.

> B.  Petitioner Was Denied Effective Assistance Of
>     Counsel And A Fair Trial Under The 6th Amendment
>     And Due Process Clause Of 14th Amendment Of The
>     United States Constitution Where Counsel Failed
>     To Seek A Suppression Of Identification Evidence,
>     And Failed To Object To In-Court Identification
>     Of Greer, And Failed To Object To Admission Of
>     Evidence Of "Other Crimes And Bad Acts" At The
>     Time Of Its Admission So As To Preserve For
>     Appellate Review.

According to the United States Supreme Court in Strickland v
Washington, assistance of counsel constitutionally assured under
6th Amendment of the U.S. Constitution, applicable to States
through 14th Amendment, has not been provided if the performance
of a defendant's counsel does not meet an objective standard of
reasonable competence and the deficiencies are sufficiently ser-
ious to establish a reasonable probability that, but for the
counsel's professional inadequacy, the result would have been
different.

To establish ineffective assistance of counsel, a defendant
must show that: (1) his counsel's performance fell below an obj-
ective standard of reasonableness, as measured by reference to
prevailing professional norms, and (2) the substandard represent-
ation so prejudiced the the defense as to render the proceeding
unfair and the result unreliable, and there is a reasonable prob-
ability that, absent the errors, the outcome would have been

-11-

different. Thus, a defendant must demonstrate not only that his counsel was incompetent, but also that this incompetence was prejudicial to the outcome of the case. <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052,2064 (1984); <u>People v. Albanese</u>, 104 Ill.2d 504, 473 N.E.2d 1246 (1984).

To satisfy the prejudice prong, that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, a "reasonable probability" is a probability sufficient to undermine the confidence in the outcome. <u>Strickland</u>, at 2068.

Additionally, under <u>Strickland</u> a defense attorney is required to make a reasonable investigation "or to make a reasonable decision which makes particular investigations unnecessary." <u>Strickland</u> at 2066; see also, <u>People v. Madej</u>, 177 Ill.2d 116, 685 N.E.2d 908 (1997). In this connection, a review of counsel's competency does not extend to areas involving trial tactics or strategy, which are purely matters of professional judgment. <u>People v. White</u>, 180 Ill.App.3d 781, 536 N.E.2d 481 (4th Dist.1989). Unless, the counsel's competency involving areas of trial tactics and strategy is not the product of an informed judgment. (<u>See</u> e.g., People v. Truly, 230 Ill.App.3d 948, 595 N.E.2d 1230 (1st Dist.1992)(an attorney who fails to make a full investigation is in no position to make a strategic decision about calling witnesses)).

It necessarily follows that any error as a result of counsel's incompetence, even if professionally unreasonable, will be held to review under the harmless standard, i.e., errors of a constitutional nature may be harmless, only if a court can declare beyond a reasonable doubt that the error did not contribute to the finding of guilt. <u>People v. Smith</u>, 176 Ill.2d 217, 680 N.E.2d 291 (1997); <u>Chapman v. California</u>, 386 U.S. 18, 87 S.Ct. 824 (1967). Unless, the error results in a constructive or actual denial of the assistance of counsel altogether, and which is therefore legally presumed to result in prejudice. <u>U.S. v. Cronic</u>, 466 U.S. 648, 104 S. Ct. 2039,2046 (1984); see also, <u>People v. Moore</u>, 279 Ill.App.3d 152, 663 N.E.2d 490 (5th Dist.1996); and, <u>People v. Wood</u>, 91 Ill.App.3d 414, 414 N.E.2d 759 (5th Dist.1980).

Here, Greer bases his claim of ineffective assistance of counsel
on essentially two grounds: (1) that counsel failed to seek a supp-
ression of the identification evidence of both Gary Davis and
Steve Fuhlman, and in conjunction failed to object to the in-court
identification of Greer as the shooter in this cause; and, (2) that
counsel failed to object to the admission of prior identification
statements of both Davis and Fuhlman into evidence at the time of
their introduction.

The latter ground is discussed more fully above in claim (A) as
to the resultant prejudice to defendant and application of the
harmless error standard, and therefore Greer incorporates claim(A)
herein as if it were fully set forth. As to the first prong of
the Strickland standard, i.e., that his counsel's performance fell
below an objective standard of reasonableness, as measured by refe-
rence to prevailing professional norms, Greer submits that obviou-
sly counsel recognized the inherent prejudice contained in the
statements, particularly the statement of Davis, where he objected
to its use as substantive evidence as a prior consistent identifi-
cation of Greer, and reserved the right to object to its publicat-
ion to the jury. (R1215,1270-71). Additionally, following closing
arguments, counsel objected to allowing the statements to go back
with the jury during deliberation, (R1468), although for the same
reason - substantive evidence of prior consistent identification.

It is obvious that counsel misapprehended the law regarding the
use of prior consistent statements of identification under Section
115-12 of the Criminal Code (725 ILCS 5/115-12). (See e.g., People
v. Davis, 137 Ill.App.3d 769, 484 N.E.2d 1098 (1st Dist.1985)).

Illinois courts have long found incompetency rooted in a counsel's
lack of knowledge in applicable law. (See e.g., People v. Brandon
162 Ill.2d 450, 643 N.E.2d 712 (1994)(failing to raise the claim
in the trial court was counsel's lack of awareness of the applicable
law); People v. Ortiz, 224 Ill.App.3d 1065, 586 N.E.2d 1384 (1992)
(counsel did not know the fundamental rules governing the examina-
tion of witnesses); People v. DeSimone, 9 Ill.2d 522, 138 N.E.2d
556 (1956)(defense counsel was incompetent-showed lack of knowledge
of basic criminal procedures and rules of evidence)).

-13-

Furthermore, the fact that counsel raised the claim that Greer was denied a fair trial as a result of the prejudicial information contained in the statements, evidences that he was aware of the potential prejudice to Greer that the statements would cause, but by that time it was too late. Any objection to the admission of the statements, like any other evidence, must be raised at the time of its introductory, or prior thereto, and before admitted into evidence. This is fundamental rules governing the admission and exclusion of evidence. Additionally, counsel cannot win on the post-trial claim when he himself knows that he failed to object to the admission of the statements based on the prejudicial information of other crimes and bad acts. Accordingly, that issue raised was nothing more than perfunctory. Counsel would have to first allege his own incompetence, which was not done.

In further support of counsel's incompetence in this regard, even the appellate court on direct appeal noted that "defendant did not object at trial to the admission of the statements into evidence; he only objected at trial and in post-trial motion to the statements going to the jury room during deliberations", "thus, defendant has waived the issue of admissibility of the statements." (See, Rule 23 Order, attached to petition, pg.2).

It is incumbent upon trial counsel to object to the admission of extraneous and prejudicial evidence, as such is a prerequisite in order to obtain a ruling from the court so as to preserve the issue for appellate review. People v. Robinson, 167 Ill.2d 53, 656 N.E.2d 1090 (1995)(evidence of other crimes).

For the foregoing reason, trial coulsel's performance in this cause fell below the objective standard of reasonableness, as compared to other caselaw precedence and prevailing professional norms, and as set forth in claim (A) above, Greer was denied a fair trial. Additionally, as a result of trial counsel's incompetence, such caused Greer to have lost the issue on direct review.

As to the identification evidence of Davis and Fuhlman, under Illinois law in order to succeed on claim that counsel was ineffective for failing to seek a suppression of evidence, it must first be shown that unargued suppression motion was meritorious and that

-14-

there is a reasonable probability verdict would have been different without excludable evidence. <u>People v. Harris</u>, 182 Ill.2d 114, 695 N.E.2d 447 (1998), cert.den., 142 L.Ed.2d 537, 119 S.Ct. 595 (1998).

Here, counsel did not even investigate into seeking a suppression of the identification of Greer by witnesses Davis and Fuhlman, that alone may constitute incompetency. <u>Strickland</u> at2066; <u>Madej</u>, Supra.

Moreover, under some circumstances defendant has a right to a fair and impartial hearing to determine whether his identification was based soley on a witness's identification at the time of the crime or whether it was influenced by actions of police or other extraneous factors. <u>People v. Dennis</u>, 47 ill.2d 120, 265 N.E.2d 385 (1970), cert.den., 403 U.S. 907, 91 S.Ct. 2212; see also, <u>People v. DeJesus</u>, 163 Ill.App.3d 530, 516 N.E.2d 801 (1st Dist.1987), app.den., 119 Ill.2d 562, 522 N.E.2d 1249.

The United States Supreme Court in <u>Stoval v. Denno</u> held that an accused is entitled to a fair identification procedure, and is deprived of due process if the totality of the circumstances of pre-trial identification are unnecessarily suggestive and conducive to mistaken identification. 388 U.S. 293, 87 S.Ct. 1967 (1967).

In <u>Moore v. Illinois</u>, the united States Supreme Court held that an in-court identification based on the unnecessarily suggestive pre-trial identification is inadmissible. 54 L.Ed.2d 424, 98 S.Ct. 458, on remand, 577 F.2d 411, cert.den., 59 L.Ed.2d 471, 99 S.Ct. 1242 (1978).

However, there is a caveat to the holding of <u>Stoval</u>, and that is that an in-court identification may nevertheless be admissible if it is shown, by clear and convincing evidence, that the in-court identification had independent origin, arising from an earlier uninfluenced observation of the accused. <u>Manson v. Braithwaite</u>, 432 U.S. 98, 97 S.Ct. 2243 (1977); Accord, <u>Moore v. Illinois</u>, Supra.

Factors to be considered to determine the reliability of the identification in-court include: the witness's opportunity to view the criminal at the time of the crime, the witness's degree of attention, the accuracy of any prior description of the criminal, the level of certainty demonstrated by the confrontation, the time between the crime and the confrontation, <u>Manson</u>, Supra.; see also,

-15-

<u>Neil v. Biggers</u>, 409 U.S. 188, 93 S.Ct.375 (1972), and the acqu-
aintance with a suspect prior to the crime. <u>People v.Farrar</u>, 7 Ill.
App.3d 312, 287 N.E.2d 475 (2nd Dist.1972).

But, the admission of an in-court identification, by a witness
who identified the defendant at an illegal pre-trial confrontation,
without first determining that the in-court identification was
not tainted by the illegal confrontation but was of independent
origih, is constitutional error. <u>Gilbert v. California</u>, 388 U.S.
263, 88 S.Ct. 1951 (1967), abrogation on other grounds recognized
by, Curtis v. Duval, 124 F.3d 1 (1st Cir.1997).

Thus, it is always necessary to scrutinize any pre-trial conf-
rontation to determine whether there has been an abuse of identi-
fication procedures, and police abuse of pre-trial identification
procedures during the course of a criminal investigation is not
beyond the reach of the federal constitution. <u>Kirby v. Illinois</u>,
406 U.S. 682, 92 S.Ct. 1877 (1972).

In the instant case, the evidence showed that the police came
to Fuhlman's house about an hour after the shooting, at which time
Fuhlman told the officers he was not sure he could identify the
shooter. (R1269-70). The next day after the shooting Gary Davis
came forward and related to Officer Mulder that Greer was the
shooter, at which time a photo array of 6 photos was presented to
Davis and from those photo's Davis picked out Greer. Subsequently,
Davis provided a tape recorded statement about the circumstances
surrounding the shooting from his personal observation. (R1080,
1191-92,1304-05). Davis testified that the deceased was a good
friend of his (R1179), and that he knew Greer by the nickname
"Crock". (R1180-81). After the police was armed with this informa-
tion, Detective Dooley then went back to Fuhlman's house with the
photo array which included a police mug shot of Greer, at which
time Fuhlman selected Greer's photo from the array as being the
shooter. (R1252-53,1279-81). Dooley then obtained a tape recorded
statement from Fuhlman. (R1281). However, when asked why he was
reluctant to come forward initially with information who the
shooter was, even though he apparently knew Greer, afterall, he had
spoken to Greer face to face a couple times and had seen him every

-16-

couple days for six months to a year (R1243-45), Fuhlman respon-
ded that he was reluctant because he knew Greer to be a gang leader.
(R1272-73). But, in his statement after coming forward, initially
on page 2 he indicates that he has seen Greer essentially on num-
erous occasions, but then on page 5, he is unsure whether he has
seen the shooter in the area prior to the shooting, and never ment-
ions anything about knowing him to be a gang leader. (<u>See</u>, State-
ment, People's Ex. No. 8 attached to petition). Then there is the
issue about Fuhlman wanting to move out of the neighborhood even
prior to the shooting, but was financially unable, and it turns
out that the State finance his move out of the neighborhood, which
was the basis of the reversal following the first trial in this
cause. (<u>See</u>, People v. Greer, 293 Ill.App.3d 861, 689 N.E.2d 134
(3rd Dist.1997)).

Then you have evidence from an unbiased citizen that presented
testimony which contradicted Fuhlman's account of having been in
the location that he claimed to have seen the shooter. (R1308-13).

Based on the foregoing discrepancies, one has to question what
really motivated Fuhlman to identify Greer, or allegedly identify
him, from the photo array displayed by Detective Dooley. Afterall,
he claims to have known Greer as a gang leader, and so if he was
reluctant to come forward initially when confronted shortly after
the shooting, presumable in fear of retribution, how would he feel
any safer after identifying Greer and giving a statement implicat-
ing him as the shooter. A mere day later could not have sufficiently
subdued any fear he may have had, if in fact any fear really exis-
ted, without some type of "assurances".

Then there is Davis. He was a real good friend of the deceased.
Yet, in 1995 he testified under oath that he did not see the shoot-
ing, and even wrote a letter to Greer, dated January 3rd, 1995, in
which he stated that he did not see the shooting and had just made
everything up from information that he gathered from others on the
street. (R1166-67,1194-95). But now at the instant trial he claims
that what he had initially told the police in his statement was
true. (R1168). And to explain why he recanted his earlier version,
he stated that it was to protect his family (R1170), and just like

Fuhlman, he stated that the area he lived in was highly gang
affiliated and feared retribution against himself and his family
for making a statement against Greer. (R1215-16). But now he is
taking his oath seriously because his family is backing him.
(R1217-18).

Ironically, however, there is absolutely no testimony from Davis
that since the time of him having given the police a statement and
identified Greer from a photo array, either he or his family have
been threatened or harmed in retaliation for his actions. Moreover,
it cannot be ignored that Davis, by his own admission, is a member
of the same street gang as Greer ( People's Ex. No.11, pg.9), yet
there has been no testimony that he has renunciated his affiliat-
ion with that gang.

And then it cannot be ignored that Davis initially informed the
police in his statement that there had been confrontations between
the deceased and a Ricky Morrison ("Lord Ricky") with other members
of the Vice Lord gang for a few weeks preceding the shooting. And,
"Lord Ricky" had gotten into a dispute with Greer's brother. (See,
People's Ex. No.11, pg. 8, attached to petition). This information
gives the inference that the shooter could have been any one of
the other gang members, or even Greer's brother himself.

Of course, it also cannot be ignored that Davis is a six time
convicted felon (R1192-93), and was at the time of trial serving a
sentence in Arkansas. (R1216-17). Additionally, he had to be made
a court's witness because neither the prosecution or the defense
could vouch for his credibility as a witness. (R1178). At one point,
although not in the presence of the jury, the judge stated that he
ought to have Davis charged with perjury.

In light of the above facts, one has to question the reliability
of Davis's identification of Greer, not so much as to the accuracy,
but as to motive. There is probably no question that Davis knows
Greer, afterall they are in the same street gang and from the same
neighborhood. Moreover, while generally a credibility issue for
the trier of facts, courts have nevertheless found issues of motive
and prior convictions to be relevant to the believability of a
witness. People v. Hermens, 5 Ill.2d 277, 125 N.E.2d 500 (1955)(where
it appears that a witness has hopes of reward from the prosecution,

-18-

his testimony should not be accepted unless it carries the absol-
ute conviction of truth); <u>Davis v. Alaska</u>, 415 U.S. 308, 94 S.Ct.
1105 (1974)(introducing evidence of prior criminal convictions
of that witness).

Thus, the credibility issue in conjunction with reliability of
Davis cannot be ignored, and neither the motive of Fuhlman to
identify Greer in the first place. Furthermore, if in fact the
credibility of Davis is such that his identification and implic-
ation of Greer is not clear and convincing, one must then question
how that affects the identification of Greer by Fuhlman. Afterall,
it was Davis who first identified and implicated Greer, after
Fuhlman had denied seeing the shooter, and then after the police
was armed with the information that they had obtained from Davis,
they then returned to Fuhlman's house, at which time Fuhlman then
made an identification of Greer as the shooter, presumably based
upon pursuasive tactics employed by the police. If in fact Davis
fabricated his statement that Greer was the shooter, then this
necessarily negates Fuhlman's identification as well, unless shown
to be based upon an independant origin, which too is questionable
in this cause.

On the other hand, if in fact Davis was truthful, but Fuhlman's
identification was the product of pursuation premised on the motive
to obtain relief from the State to move out of the neighborhood,
there still exists the credibility issue with Davis regarding his
recantation, and the fact that he was made a courts witness on that
basis, and without the testimony of Fuhlman to corroborate Davis's
testimony, the conviction becomes less likely.

Under the circumstances here, where it appears there was both
a discrepancy and suggestiveness in the pre-trial identification
of Greer, a motion to suppress the identification evidence of
Davis or Fuhlman, or both, would have been meritorious. This req-
uired standard does not mean to suggest that the motion had to be
successful, just meritorious. Further, there is more than a reas-
onable probability that the outcome would have been different with
the exclusion of the evidence of either Davis's or Fuhlman's ident-
ification of Greer, or both, afterall, that is the prosecutions

-19-

only evidence connecting Greer to the crime.

Here, as recited above, Greer's trial counsel failed to object to the in-court identification, and more significantly, failed to even investigate into filing a motion to suppress the identification evidence. Over and over courts have held such inactions to constitute performance having fallen below an objective standard of reasonableness, and rendering the proceedings unfair and the result unreliable. (See e.g., People v. Brinson, 80 Ill.App.3d 388, 399 N.E.2d 1010 (2nd Dist.1980)(counsel found incompetent-did not move to suppress identifications that were "obviously weak" and where "it appears there was both discrepancy and suggestiveness"); People v. Moore,279 Ill.App.3d 152, 663 N.E.2d 490 (5th Dist.1996) (statement only evidence connecting defendant to the crime, lacking in any type of defense); People v. McPhee, 256 Ill.App.3d 102, 628 N.E.2d 523 (1st Dist.1993)(suppression strongest argument in case); People v. Stewart, 217 Ill.App.3d 373, 577 N.E.2d 175 (3rd Dist.1991)(close case and appeared to be no other defense); Smith v. Dugger, 911 F.2d 494 (11th Cir.1990)(failed to move to suppress statement which constituted primary evidence in State's case)).

For the foregoing reasons, Greer was denied effective assistance of counsel and a fair trial in this cause, and this court should vacate his conviction and order a new trial.

        C.  Petitioner Was Denied Effective Assistance Of
            Appellate Counsel Under The 6th Amendment And
            Due Process Clause Of The 14th Amendment Of The
            United States Constitution Where Appellate
            Counsel Failed To Raise The Above-Cited Insta-
            nces Of Ineffectiveness Of Trial Counsel.

In Douglas v. California, the United States Supreme Court held that a criminal defendant has a constitutional right to counsel on direct appeal. 372 U.S. 353, 83 S.Ct. 814 (1963). The U.S. Supreme Court took this principle one step further in Evitts v. Lucey, holding that a defendant has a due process right to the effective assistance of counsel on direct appeal from a criminal conviction. 469 U.S. 387, 105 S.Ct. 830 (1985).

-20-

In determining whether counsel on appeal was ineffective, the Strickland v. Washington standard is applied. And while appellate counsel is not required to brief every conceivable issue, counsel may be found incompetent for failing to raise issues that he or she believes to be without merit only where that appraisal of the merits is "patently wrong". Finally, to find that appellate counsel rendered ineffective assistance by failing to argue a particular issue, the defendant must show that the failure to raise the issue was objectively unreasonable and that the sentence or conviction would have been reversed had the issue been raised. People v. Whitehead, 169 Ill.2d 355, 662 N.E.2d 1304 (1996); Strickland v. Washington, 446 U.S. 668 (1984).

Here, Greer's counsel on direct appeal in this cause rendered ineffective assistance for failing to raise the ineffectiveness of trial counsel for the reasons stated in claims (A) and (B) above, and for the convenience of the reader, Greer incorporates those claims herein as if they were fully set forth. Afterall, because Greer is required to show that the conviction would have been reversed had those issues in claims (A) and (B) been raised, it necessarily follows that the ineffectiveness of appellate counsel can be disposed of by first reaching a determination on the merits of those issues. If a determination of those claims are favorable to Greer, it would then become necessary to hold an evidentiary hearing to determine whether the appellate counsel's appraisal of those issues, if appraised, was "patently wrong", or why counsel failed to raise the issues such that it was objectively unreasonable to not have raised the issues. (See e.g., People v. Mack, 167 Ill.2d 525, 658 N.E.2d 437 (1995)).

In sum, Greer asserts that he was denied effective assistance of appellate counsel, and as a consequence he was denied a review of those claims set forth in claims (A) and (B), which if raised would have resulted in the reversal of his conviction.

As a supplemental note for the court's edification, the Illinois Supreme Court held in People v. Whitehead that on post-conviction review, res judicata and waiver as to issues that were either actually raised or which could have been raised on direct appeal, is

-21-

relaxed in three situations: (1) where required by fundamental fairness; (2) where the waiver stems from the incompetency of appellate counsel; and, (3) where the facts relating to the claim did not appear on the face of the original appellate record. As to the third situation, the Court noted: "[I]t is not so much that a claim 'could not have been presented' or 'raised' by a party on direct appeal, but rather that such a claim could not have been considered by the reviewing court because the... evidentiary basis was de hors the record....".

Here, as to claim set forth regarding trial counsel's failure to object to the admission of Davis and Fuhlman's identification statements, since no objection was made, which was the finding of the appellate court on review, it follows that the appellate court could not have considered the claim on direct review, and did not consider it. Thus, such claim is cognizable for post-conviction review, without regard to the ineffectiveness of appellate counsel.

## CONCLUSION

For the foregoing reasons, this court should docket Greer's petition for post-conviction relief, appoint counsel, order an evidentiary hearing, and based upon a finding that Greer was denied his constitutional rights guaranteed under the 6th and 14th amendments of the U.S. Constitution vacate his conviction and order a new trial in this cause.

Date: ___7. 8. 02___ , 2002.          Respectfully submitted,

David Allen Greer
Reg. No. N72100
Lawrence Correctional Centee
P.O. Box 900
Sumner, Illinois 62466

E-FILED
Tuesday, 26 September, 2006  02:03:29 PM
Clerk, U.S. District Court, ILCD

IN THE CIRCUIT COURT OF THE FOURTEENTH JUDICIAL CIRCUIT
ROCK ISLAND COUNTY, ILLINOIS
GENERAL DIVISION

PEOPLE OF THE STATE OF ILLINOIS,       )
                                       )
          Plaintiff,                   )
                                       )
     vs.                               )    No. 94 CF 649
                                       )
DAVID GREER,                           )
                                       )
          Defendant.                   )

*FILED in the CIRCUIT COURT
of ROCK ISLAND COUNTY
CRIMINAL DIVISION*

*FEB - 3 2003*

*Clerk of the Circuit Court*

## AMENDED POST-CONVICTION PETITION

Comes now Defendant, DAVID GREER, by his attorney, Raymond J. Conklin,

and files this Amended Post-Conviction Petition pursuant to 725 ILCS 5/122-1 et. seq.

### JURISDICTION

Following a re-trial, Defendant was found guilty after a jury trial of first degree

murder.  On August 6, 1999, Defendant was sentenced to 50 years Department of

Corrections.

Defendant's conviction was affirmed by the Appellate Court on or about

December 28, 2001.  A copy of said opinion is attached hereto as Exhibit 1.  On or

about May 30, 2002, Defendant's Petition for Leave to Appeal was denied by the Illinois

Supreme Court.

Defendant timely filed his pro-se Post-Conviction Petition on July 15, 2002.

### ISSUE - INEFFECTIVE ASSISTANCE OF TRIAL AND APPELLATE COUNSEL

At trial, Steve Fuhlman and Gary Davis testified as eye witnesses to the

shooting.  Gary Davis testified as a court witness.  Both witnesses had given recorded

-1-

EXHIBIT N

statements to the police after the shooting.  Both statements were admitted as prior consistent statements.  Mr. Fuhlman's typed statement was admitted as People's Exhibit No. 8 (Exhibit 2 attached hereto) and Mr. Davis' statement was admitted as People's Exhibit 11 (Exhibit 3 attached hereto).  Defense counsel did not object to the admission of the statements but objected to the statements being published to the jury.  (R1215; 1271).  Following the submission of evidence, defense counsel objected to the statements being sent to the jury room while the jury deliberated.  (R1468).

During trial, the Trial Court sustained a defense objection to proposed testimony that the witnesses were reluctant to come forward because the Defendant was a gang member.  (R1272, 1273).  In addition, defense counsel made an oral Motion in Limine which was granted to exclude reference to Defendant being a Vice Lord.  (R1365).

The statement of Steve Fuhlman, on page 02 of said statement, contains the following questions and answers:

Q:    How often would you say you see him (reference to Defendant) in this neighborhood on the average?

A:    Daily.

Q:    What does he do here?

A:

Q:    And how close to your home does he do that?

A:    I live on 15th and 5th and he does it on the corner of 5th and 15th in front of the store.

Q:    So he does this right across the street from your residence?

A:    Right.

-2-

Q:    On a regular basis?

A:    And across the street in the Courts.

The above questions and answers are an obvious reference to the Defendant selling drugs in this neighborhood.

The statement of Gary Davis makes reference to "fellow Vice Lords" on pages 08 and 09. ( In Davis' statement "Crock" is the Defendant). In addition, in Davis' statement, Davis is shown a photo array and presumably selected the Defendant's photo from that array. On page 09 of that statement, those photographs are referred to as mug photos, clearly advising the jury that Defendant had been arrested previously.

Although the transcribed statements of these witnesses were admitted as prior consistent statements, the statements also advised the jury that Defendant was engaging in illegal activity, presumably selling drugs; had previously been arrested or had prior involvement with the police department because of mug shots, and was a member of the Vice Lords.

The admission of the statements should have been objected to on this basis. The objection to the statements going to the jury room should have pointed out to the Trial Court that the statements contained improper matter. Further, although appellate counsel raised the issue of the propriety of the statements going to the jury room, appellate counsel failed to raise the issue of whether the statements contained improper and prejudicial material.

-3-

Wherefore, Defendant requests that his Post-Conviction Petition be granted and a new trial ordered.

                                        David Greer, Defendant

                           By:          _____
                                        Raymond J. Conklin
                                        Attorney for Defendant


ROBERTSON & CONKLIN
115 - 17TH STREET
ROCK ISLAND, IL 61201
(309) 793-4005

-4-

IN THE CIRCUIT COURT OF THE FOURTEENTH JUDICIAL CIRCUIT
ROCK ISLAND COUNTY, ILLINOIS
GENERAL DIVISION

PEOPLE OF THE STATE OF ILLINOIS,  )
                                   )
       Plaintiff,                  )
                                   )
  vs.                              )     No. 94 CF 649
                                   )
DAVID GREER,                       )
                                   )
       Defendant.                  )

## CERTIFICATE PURSUANT TO

## SUPREME COURT RULE 651(c)

    I, Raymond J. Conklin, attorney for David Green, state that I have consulted with

Petitioner by mail to ascertain his contentions of deprivation of constitutional rights, I

have examined the record of the proceedings at trial and I have made amendments

deemed necessary for an adequate presentation of Petitioner's contentions.

    This affidavit is pursuant to Supreme Court Rule 651(c).


                          _____
                          Raymond J. Conklin
                          Attorney for Defendant
                          ROBERTSON & CONKLIN
                          115 - 17th Street
                          Rock Island, IL  61201
                          (309) 793-4005


Subscribed and sworn to before me this 3rd day of February, 2003.

_____
Notary Public

**OFFICIAL SEAL**
**MARY ELLEN GOCHANOUR**
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 5-18-2006

-5-

STATE OF ILLINOIS



3-99-0706
People v. David Allen Greer

**APPELLATE COURT        THIRD DISTRICT**

**OTTAWA**

At a term of the Appellate Court, begun and held at
Ottawa, on the 1st Day of January in the year of our Lord
Two Thousand one, within and for the Third District of Illinois:

Present -

      HONORABLE THOMAS J. HOMER, Presiding Justice     X

      HONORABLE PEG BRESLIN, Justice

      HONORABLE TOM M. LYTTON, Justice

      HONORABLE WILLIAM E. HOLDRIDGE, Justice     X

      HONORABLE MARY W. McDADE, Justice     X

      HONORABLE KENT SLATER, Justice

      GIST FLESHMAN, Clerk

BE IT REMEMBERED, that afterwards on
December 28, 2001   the  Order  of the Court was filed
in the Clerk's Office of said Court, in the words and figures
following viz:



**EXHIBIT**

1

NOTICE

The   .t of this opinion may be changed
or corrected prior to the time for filing of a
Petition for Rehearing or the disposition
of the same.

No. 3--99--0706

IN THE APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2001

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 14th Judicial Circuit, Rock Island County, Illinois |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 94--CF--649 |
| DAVID ALLEN GREER, | ) ) | Honorable James Teros |
| Defendant-Appellant. | ) | Judge, Presiding |

RULE 23 ORDER   "Not To Be Published"

The defendant, David Allen Greer, was charged by indictment with first-degree murder. He was convicted following a jury trial and sentenced to 50 years in prison. On appeal, his conviction was reversed and the cause remanded for a new trial. Following a second jury trial, the defendant was again convicted of first-degree murder and again sentenced to a term of 50 years imprisonment. On appeal, the defendant maintains that the trial court erred in: (1) allowing the transcripts of prior consistent statements of two witnesses to go to the jury room during deliberations; and (2) allowing a certain individual (Gary Davis) to be called as the court's witness. We affirm.

Because the parties are familiar with the facts, we will not provide a detailed recitation, but will only address the facts as they are necessary to an understanding of our ruling on the issues.

The defendant first maintains that the trial court erred in allowing transcripts of certain prior consistent statements of two witnesses to go to the jury room. We find no merit to his argument. As a preliminary matter, we note that the defendant did not object at trial to the admission of the statements into evidence; he only objected at trial and in his post-trial motion to the statements going to the jury room during deliberations. Thus, the defendant has waived the issue of the admissibility of the statements and we find no plain error in their admission. People v. Morgan, 142 Ill. 2d 410 (1991).

Turning to the merits of the defendant's argument, a trial judge's decision as to what evidence may go to the jury room during deliberations will not be overturned absent an abuse of discretion. People v. Lambert, 288 Ill. App. 3d 450 (1997). An abuse of discretion exists only when the trial judge's ruling is arbitrary, fanciful, or unreasonable, or when no reasonable person would take the view adopted by the trial court. People v. Illgen, 145 Ill. 2d 353, 355 (1991). Here, the statements at issue were admissible under section 115-12 of the Criminal Code (725 ILCS 5/115-12 (West 1998)) as prior consistent statements of identification. Since the evidence was in fact admissible, we find nothing in the record to support a conclusion that permitting this evidence to go to the jury was an abuse of discretion.

Although we find no abuse of discretion in the trial court allowing the prior consistent statements to go to the jury room, we also note that any error would have been harmless given the overwhelming evidence of the defendant's guilt. When it does

2

not appear justice had been denied or that a finding of guilt resulted from an error, a conviction will not be reversed. <u>People v. Richardson</u>, 123 Ill. 2d 322, 326 (1988). Here, the evidence of the defendant's guilt was overwhelming.

The defendant next maintains that the trial court erred in allowing Gary Davis to be called as the court's witness. We disagree. A party may ask the trial judge to call a witness as the court's witness when his testimony will concern non-collateral issues and is necessary to prevent a miscarriage of justice. <u>People v. R.D.</u>, 155 Ill.2d 122 (1993). Whether to call a witness as a court's witness is within the trial court's discretion and will not be reversed absent an abuse of that discretion. <u>People v. Pastorino</u>, 91 Ill. 2d 178 (1982).

Here, it cannot be said that the trial court abused its discretion in calling Davis as a court's witness. The People adequately established the foundation for his testimony. Davis testified at the defendant's first trial that he saw the defendant shoot the victim. However, in a letter attached to the defendant's post-trial motion, Davis recanted that testimony, saying he was present and did not see the shooting. Davis also testified at the hearing on the defendant's post-trial motion. Prior to the second trial, the People requested that Davis be called as a court's witness as they could not vouch for his credibility given his recantation of his testimony from the first trial. We note that the trial court took proper steps to inform the jury that Davis was a court witness, not because he was particularly credible, but because he was particularly <u>not</u> credible. We find no abuse of

3

discretion in the trial court's allowing Davis to testify as a court's witness.

For the foregoing reasons, the judgment of the circuit court of Rock Island County is affirmed.

Affirmed.

HOLDRIDGE, J., with HOMER, P.J., and MCDADE, J., concurring.

4

STATE OF ILLINOIS,   )
APPELLATE COURT,     )  ss.
THIRD DISTRICT       )

           As Clerk of the Appellate Court, in and for
said Third District of the State of Illinois, and keeper of the
Records and Seal thereof, I do hereby certify that the foregoing
is a true, full and complete copy of the opinion of the said
Appellate Court in the above-entitled cause, now of record in
this office.

           In Testimony Whereof, I hereunto set my hand
           and affix the seal of said Appellate Court at
           Ottawa, this 28th day of December in the year of
           our Lord two thousand one.

           —————————————————————
              Clerk of the Appellate Court

ROCK ISLAN.. POLICE DEPARTMENT VOLUNTAR.. STATEMENT
VOLUNTARY STATEMENT

Incident No. 93-37060

I, the undersigned, Steven Alfred Fuhlman,  am
_____ years of age, having been born on__
Address:   1419 5th St., Rock Island, Illinois;

I have been advised and fully understand the Waiver of Rights
Form that I have just signed.  I declare that the following voluntary
statement is made of my own free will without fear or threat of
physical harm, without promise of reward, without coercion and without
leniency or offer of leniency, by any person or persons whomsoever:

This Statement is Being Taken At 1419 5th St., Rock Island, IL,
on 07/14/93 at 14:50 hrs. by Inv. P.J. Dooley #1112 and
transcribed from tape by Frances Bauer #1578.  Also present is Donna
Fuhlman, wife of Steven Fuhlman.

Q.  Mr. Fuhlman, would you state your full name please?
A.  Steven Alfred Fuhlman.

Q.  And your present address and phone number?
A.  1419 5th St. Rock Island, 793-4194.

Q.  How much education have you had?
A.  I've got a GED, only through 11th grade.

Q.  Okay, you can read and write and understand English?
A.  Yeh.

Q.  And this statement which you're giving is a voluntary statement?
A.  Yeh.

Q.  Mr. Fuhlman, we're talking about an incident that occurred in the
    area of your home yesterday, on 07/13/93, in which there was a
    shooting.   Do you recall this incident?
A.  Yes I do.

Q.  Okay, earlier, I showed you a photo lineup and you identified a
    subject from this lineup as being the person that you believed to
    be the shooter.
A.  Right.

Q.  Would you look at this group of photographs and tell me if that
    looks like the same group of photographs that I showed you earlier?
A.  Yes it is.

Q.  For the record, let me indicate that the photographs that are in
    this group of #28842, #26514, #33157, #30522, #29726, and #32405.
    Of this group of photographs, which one would you identify as the
    shooter?
A.  This one right there.

WITNESS _____        SIGNATURE _____

EXHIBIT
Peoples # 8

EXHIBIT
2

IMAGED

ROCK ISLAND POLICE DEPARTMENT VOLUNTARY STATEMENT
Statement of Steven A. Fuhlman          July 14, 1993

Q. Let the record indicate that Mr. Fuhlman has chosen photograph
   #28842.  How do you know this person as you see him in this
   photograph?
A. I've seen him around the neighborhood.

Q. How often would you say you see him in this neighborhood on the
   average?
A. Daily.

Q. What does he do here?
A. ——.

Q. And how close to your home does he do that?
A. I live on 15th and 5th, and he does it on the corner of 5th and
   15th, in front of the store.

Q. So he does this right across the street from your residence?
A. Right.

Q. On a regular basis?
A. And across the street in the courts.

Q. Yesterday at approximately the time of the shooting, where were
   you?
A. I was on 15th St., working on my vehicle.

Q. Okay, let me correct that, that would be 15th Ave.?
A. 15th Ave.

Q. Okay, you were working on your vehicle and what did you see?
A. I heard some commotion, I was working on the driver's side front
   tire, putting some wire wheels back on that I take off during the
   winter, and I was sitting on the ground and I looked around in
   front of the car and seen a man with a gun and the man fired two
   shots off, waited a second and fired the third shot off.

Q. And then what did he do?
A. Ran towards the west.

Q. Back into Arsenal Courts?
A. Right.

Q. Where was the gun when he ran back towards Arsenal Courts?
A. In his right hand.

Q. Still in his hand?
A. Yeh.

Q. When the subject fired the shots, was he in the street at the time
   or was he by the building?
A. He was at the corner of the building in between two buildings.

WITNESS _____    SIGNATURE _____
          DATE?TIME  7-15-93
          PAGE: 2        fb

ROCK ISL⌐ ⌐ POLICE DEPARTMENT VOLUNⁱ ⌐ STATEMENT
Statement of Steven A. Fuhlman          July 14, 1993

Q. And the subject that you saw with the gun is the same subject that you have chosen out of this group of photographs?
A. Yes, he had a green bandana on, white shirt, and shorts or dark colored shorts.

Q. What color shorts?
A. Dark colored shorts.

Q. Dark colored shorts?  And earlier you described to me how that bandana was on his head?
A. It was like a gypsy, like gypsies wear.

Q. So that it covered the top of his head?
A. Covered the whole head.

Q. You also described this subject as being a M/B, is that correct?
A. Right.

Q. Did you observe any facial hair?
A. No.

Q. And his height and build, how did you describe that?
A. About 5'8" or 5'10", muscular build.

Q. When you observed him with the weapon, can you tell me from what you saw whether it was a revolver or a semiautomatic?
A. It was a revolver, dark in color, looked to be a snubnose or something like that, it didn't have a long barrel.

Q. Okay, after the shooting occurred, what did you do?
A. Went back to working on the car.

Q. And you had earlier told me you heard some things being said or you heard some noises after that, what was it you heard?
A. Well, directly after the shooting, I watched the guy run back towards the west and I don't know where he went, there was a bunch of other guys back there and other cars, there were about 4-5 cars parked there so I don't know where he went and then I heard the police show up and the ambulance, and I went to my back yard and watched as they picked the gun up with blood on it and drug the man out of the bushes that had been shot.

Q. Originally when the shots were fired, were you aware that anyone had actually been hit?
A. No.

Q. You told me earlier that when this shooting occurred, there were other people out in the area that should have seen this?
A. Yeh.

Q. Is it true that there were people in front of the store?

WITNESS _____  SIGNATURE _____
DATE/TIME  7-15-93  0920
PAGE: 3      fb

IMAG00003D

ROCK ISL.   POLICE DEPARTMENT VOLUNT.   STATEMENT
Statement of Steven A. Fuhlman            July 14, 1993

A.  Yes.

Q.  Approximately how many people would you estimate were in front of
    the store?
A.  At least five.

Q.  And would you say they were adults or kids?
A.  Well, they were ranging from, you know, 16 on up to 20-25,
    somewhere around there.

Q.  And you also said that there were some kids sitting over on the
    benches in the Arsenal Courts park right across the street?
A.  Yeh.

Q.  How old would you put their ages?
A.  14 to 18.

Q.  And about how many of those subjects?
A.  About five.

Q.  And you further said that there were other people back in the area
    of the parking lot towards which the suspect ran.
A.  Right.

Q.  How many people would you estimate were over there?
A.  I would say about ten.

Q.  To clarify just a little bit as to where you saw the suspect run,
    earlier you had said that as he ran chasing the other subject, he
    had to run between some items across the street over here.  What
    was it you said?
A.  Between the tree and the trash can.

Q.  And then he stopped right at the corner of that building?
A.  Right.

Q.  And fired the shots.  So he never did enter the street himself?
A.  No.

Q.  Could you see the victim at the time the shots were fired?
A.  Yes I could.

Q.  You could see the victim at the time that the shots were fired?
A.  No, I seen the victim as he was being chased out of the courts.

Q.  Okay.
A.  And I barely seen him.  He looked to be slender, you know, and
    probably about 5'8"-5'10", you know.  He wasn't a real big guy.

Q.  Okay, but at the time that the shots were actually fired was the
    victim then out of your sight?

WITNESS _____   SIGNATURE _____
            DATE?TIME  7-15-93 0920
                PAGE: 4      fb

E000004

ROCK ISLAND POLICE DEPARTMENT VOLUNTARY STATEMENT
Statement of Steven A. Fuhlman            July 14, 1993

A. Right.

Q. You also said that you were aware that the suspect that did the shooting used to drive a certain kind of vehicle, what type of vehicle do you remember seeing him in?
A. A light green Oldsmobile, it had a white vinyl top, a set of fancy, they're not wire rims, they're aluminum rims.

Q. And have you seen him in that car recently?
A. Not for awhile.

Q. What do you commonly see him?
A. On a bicycle, ten speed or whatever on up from that, like the mountain bike.

Q. Have you seen the shooter in the area any time prior to this incident on that particular day?
A. I don't know, you know, I see people all the time and he might even rode by on a bicycle but you know, it's a daily thing and I get used to seeing people out here and you know, unless he'd stopped and said something to me, you know.

Q. So not specifically that day do you remember whether he was here?
A. Right.

Q. Do you have anything to add to this statement?
A. Not really.

Q. Were you under the infuence at the time, were you under the influence of drugs at the time of the incident?
A. I don't do drugs.

Q. Were you under the influence of alcohol at the time of the incident?
A. No.

Q. Has this statement been the truth to the best of your knowledge?
A. Yes.

Q. Were there any threats or promises made to you to make this statement?
A. No.

Q. And when this statement is typed and you have found to be accurate, would you be willing to approve and sign this statement?
A. Yeh.

Statement Concluded:
07/14/93 @ 15:09 hrs.

WITNESS _____  SIGNATURE x _____
DATE?TIME 7-15-93 0920
PAGE: 5      fb

ROCK ISLAN  POLICE DEPARTMENT VOLUNTA... STATEMENT
VOLUNTARY STATEMENT

Incident No. 93-37060

I, the undersigned, Gary Dewayne Davis, am
20 years of age, having been born on 4-2-73
Address:  801 12th Ave., Rock Island, Illinois;

I have been advised and fully understand the Waiver of Rights
Form that I have just signed.  I declare that the following voluntary
statement is made of my own free will without fear or threat of
physical harm, without promise of reward, without coercion and without
leniency or offer of leniency, by any person or persons whomsoever:

This Statement is Being Taken At R.I.P.D., C.I.B. Interview Room,
on 07/14/93 at 15:52 hrs. by Inv. Thomas J. Mulder #1131 and
transcribed from tape by Frances Bauer #1578.

Q.  Would you state your full name?
A.  Gary Dewayne Davis.

Q.  Okay, Mr. Davis, what is your present address and telephone number?
A.  My present address is 801 12th Ave.

Q.  And do you have a phone number there?
A.  Yes, it's 793-1838.

Q.  And how much education have you had?
A.  12th grade.

Q.  And it's true that you can read, write, and understand the English
    language?
A.  Yes sir.

Q.  Is it true that this is a voluntary statement given by you?
A.  Yes sir.

Q.  And since coming in contact with the Rock Island Police Dept.,
    concerning this case, have you been treated in a fair manner?
A.  Yes sir.

Q.  Briefly, we're here to talk about an incident, a shooting incident
    that occurred on July 13th, 1993, at approximately 6:45 p.m. in the
    area of the Arsenal Courts, this resulted in the death of Brandon
    Ellison.  Is it true that you previously knew Mr. Ellison?
A.  He was a good friend.

Q.  And what name do you know him by or refer to him as?
A.  Little Lord.

Q.  Okay, that's his street name that he uses?
A.  Yeh, that's what I call him.

WITNESS _____   SIGNATURE _____

DATE & TIME 7/14/93  19:11   fb

EXHIBIT
PEOPLE'S #
11

EXHIBIT
3

000006

ROCK ISLA     POLICE DEPARTMENT VOLUNT.     STATEMENT
Statement of Gary D. Davis                July 14, 1993

Q.  Okay, we had previously talked prior to this statement being taped
    and could you briefly give me a run down on the events that
    occurred that night as you saw them?

A.  Okay, approximately about 4 o'clock I came to the Arsenal Courts, I
    was standing out there talking to a friend at first and then a
    little bit later after the conversation I seen Little Lord walk
    through and I told him, I said you just got a hard head, you don't
    listen huh, and he said -- -- --, so you know I knew he was down
    there you know gonna sell dope but I knew Crock was out there also
    but I thought beans probably was washed but as soon as Lord turned
    the corner, Crock came across, Crock crossed the street, -- and
    Lord had words, then Lord took off running in between the two
    buildings, that's when Crock ran from one curb to the other curb
    and fired his first shot.  That's when I seen Little Lord stagger
    close to running off into 5th St. and that's when I know I seen
    enough and I broke but the incident it was just, it was like no
    remorse.  It was like the man just killed him and didn't even
    hesitate about it, and a few hours later after the police was
    coming there, he was right back outside.  It was like nothing
    happened and he had, I just couldn't understand it, it was one of
    his own brothers that he killed.

Q.  This incident occurred.  We had previously gone over the locations
    on this rough map that I'm showing you now, shows a small park area
    on 5th St. approximately 15th Ave. in the Arsenal Courts, correct?
A.  Yeh, it's approximately about, yeh, it's in front of 15th Ave.

Q.  Okay, and you indicate an area that Crock was standing at, this
    would be on 4 1/2 St. basically straight across from the little
    park on.
A.  This side.

Q.  According to the map, you were standing a little bit north of that
    by the corner of the building when you first saw Lord?
A.  Yes sir.

Q.  And then Lord.
A.  Lord walked around the building.

Q.  He turned what would be south.
A.  And that's when I walked up and Crock was coming across the street
    and him and Lord had some words, then Lord took off and Crock
    finally made it across the curb, that's when he fired his first
    shot.  Lord got to the curb stepping off into 5th St. and that's
    when he started stumbling and that's when I said oh shit, I heard,
    I heard enough and that's when I heard two more shots, then.

Q.  Did you see any blood on Little Lord when that happened?
A.  No, I didn't see no blood but I seen Crock fire the pistol.

Q.  Did you see where Crock got the pistol from?

WITNESS _____     SIGNATURE _____
         DATE?TIME 7/14/93    1914
              PAGE: 2    fb

E000007

WK 2

ROCK ISLAND POLICE DEPARTMENT VOLUNTARY STATEMENT
Statement of Gary D. Davis          July 14, 1993

A.  Took it out from under his shirt.

Q.  Okay, do you remember what clothing Crock was wearing?
A.  I think it was a black T-shirt, some like black kind of shorts or
something like that, and he had on some white shoes that was new,
they was white Reeboks.

Q.  Do you remember anything about Lord's clothing, what color it was
or anything?
A.  He had on like a beige shirt as yourself explained and some beige
pants and some black shoes which I seen him in the outfit a
thousand times but, and, in a way I kind of knew he had the pistol
because he goes nowhere without it, if he come down there.

Q.  Who's that, Lord?
A.  Little Lord.

Q.  Little Lord goes nowhere without the pistol.   Do you know what
kind of pistol it was that Little Lord had?
A.  It was a black, looked like a .22 or .32 revolver, had a brown
handle on it.

Q.  And could you tell what kind of gun it was that Crock had?
A.  Crock was like, it looked like a, about .38, it was either a .38 or
something, I know it was loud, but I don't..

Q.  You don't know if his was a revolver or semiautomatic?
A.  I think it was an automatic, nah, it was a revolver cause it
clicked the first time, he tried to click, didn't nothing pop out
but the second time that's when Little Lord got shot and the second
and third time bullets fired out, it was just so loud, he didn't
have no more than about four shells in it, so it had to be a
revolver.

Q.  Do you know what lead up to this confrontation between Crock and
Little Lord?
A.  It was a dispute, Lord, I mean Ricky Morrison had got, Ricky
Morrison and Brandon have been getting into it with fellow Vice
Lords down in the Arsenal Courts for the past few weeks and a lot
of dipute they're having in between them, Brandon on the other hand
took Crock's little brother's bike, okay, and then the stuff about
Lord, Ricky got into it with his brother; in all the confusion,
Crock you know I guess, it was basically like this, kill who kill
first because you know, they wasn't talking or nothing.  But really
Brandon kind of acted like he wasn't worried about it, we just
kicked on the porch and talked, he wasn't never worried about it
and I knew he was crazy but I didn't think he was stupid.

Q.  Could you hear or understand what Lord and Crock were arguing about
before the shooting, did you hear any exchange or?
A.  I heard Crock when he said, "little bitch, I told you I was gonna

WITNESS _____  SIGNATURE _____
             DATE?TIME  7/14/93  19:14
                PAGE:  3      fb

B000008

ROCK ISLAN  OLICE DEPARTMENT VOLUNTA  STATEMENT
Statement of Gary D. Davis                    July 14, 1993

A. (Cont'd) get you," that's all I heard him say really.

Q. And you refer to Lord Rick, is that Ricky Morrise?
A. Yes.

Q. And Crock, do you know his real name?
A. No, I don't know Crock's real name.

Q. And I showed you some mug photos earlier today?
A. Yes sir.

Q. I'm currently showing you a mug photo now, is that the subject you
identified as Crock?
A. Yes sir.

Q. Okay, I'd like the tape to reflect that the mug photo is of David
Greer, it's Rock Island Police Dept. mug #28842, the photo was
taken on the 13th day of '93, the month is not clearly displayed on
the mug photo.  You advised that Lord Rick and Crock are both gang
members?
A. Yes, we're all in the same organization.

Q. What organization is that?
A. Vice Lords.

Q. Was Little Lord a Vice Lord also?
A. Yes.

Q. And you advised that you knew that he had some dope on him when he
went down into the area?
A. Yes.

Q. Did you see it or just?
A. No, I just knew that he had some.

Q. You knew what he was there for?
A. Yeh, he had some the day before and he said he was going to get rid
of it, and that's the only place really you can come and get rid of
it.

Q. Okay, do you where Crock lives?
A. Yes, it's down in Arsenal Courts, he stays with Dinky's
grandmother.

Q. Dinky, do you know his real name?
A. No sir, I don't.

Q. Do you know if Crock has a girlfriend that stays down in the
Arsenal Courts?
A. Yes, he goes with Dinky's sister, Wink.

WITNESS _____ SIGNATURE _____
DATE?TIME 7/14/93 19:14
PAGE: 4    fb

**000009
WK 4

ROCK ISLAND POLICE DEPARTMENT VOLUNTARY STATEMENT
.tatement of Gary D. Davis          July 14, 1993

Q. Do you know if Betty Rhoden would be her correct name?
A. I believe that might be it, yes sir.

Q. But you're not positive on that?
A. I'm not positive.

Q. Did you see Little Lord after he stumbled, did you see where he went after that?
A. No, I just seen, when I seen him stumble, I just broke cause it was just crazy and I didn't want to get shot, a bunch of people just kind of scattered and.

Q. Which way did you run then or where did you go?
A. I ran, when I was standing right there, and I seen Little Lord stumble, I broke back around where I came from, then I shot to that side and got up in the house where one of my other brothers was.

Q. By brothers you mean one of your fellow Vice Lords?
A. Yes sir.

Q. Okay, when this occurred, can you estimate how far away from Crock you were when you first saw him fire a shot?
A. I'll say no more than about maybe 20-25 feet, something like that, not that far, I wasn't that far away.

Q. You have no doubt in your mind that it was Crock who fired the shot?
A. No doubt.

Q. Do you know if Little Lord fired his gun back at Crock?
A. Little Lord didn't have time to fire.

Q. Okay, when this occurred, were you under the influence of drugs?
A. No sir.

Q. Were you under the influence of any alcoholic beverage at the time of this?
A. No sir.

Q. Okay, is there anything else that you'd like to add to this statement?
A. No, but I hope you slam his ass.

Q. Has this statement been the truth to the best of your knowledge?
A. I swear.

Q. Were there any threats or promises made to you to give this statement?
A. No sir.

Q. And once this statement is typed and you have found it to be

WITNESS _____ SIGNATURE _____
DATE?TIME 7/14/93 15:14
PAGE: 5    fb

E000010

ROCK ISLAND POLICE DEPARTMENT VOLUNTARY STATEMENT
Statement of Gary D. Davis          July 14, 1993

Q. (Cont'd) exactly as you have said, would you be willing to sign this statement?
A. Yes sir.

                              Statement Concluded:
                              07/14/93 @ 16:04 hrs.

WITNESS _____  SIGNATURE _____
              DATE?TIME 7/14/93  19:14
              PAGE: 6      fb

E00001

E-FILED
Tuesday, 26 September, 2006  02:03:55 PM
Clerk, U.S. District Court, ILCD

1994CF000649D 001
PEOPLE                              OSBORN, DAVID
VS.
GREER, DAVID ALLEN N72100          ZIMMER, RICHARD A

---------------------------------------------------------------------
ENTERED    JDG CR  TEXT                                    CHANGED USER
---------------------------------------------------------------------

| ENTERED | JDG CR | TEXT | CHANGED | USER |
|---|---|---|---|---|
| 8/24/1994 | JMT | **Indictment filed on 08/24/94. | | JAD |
| | | ABOVE COMPLAINT SHOULD BE DOCKETED AS AN INDICTMENT-SAME BEING RETURN- | | JMT |
| | | ED BY TH GRAND JURY; INDICTMENT SUPPRESSED FOR GOOD CAUSE; PROBABLE | | JMT |
| | | CAUSE MADE FOR ISSUANCE OF SUBPOENA FOR RECORDS; CLERK TO ISSUE SAME. | | JMT |
| | | ORDERED THAT INDICTMENT BE SUPPRESSED AND NO INFORMATION BE RELEASED | | JMT |
| | | AS TO THE CHARGE, THE PARTY OR AS TO THE EVENT--THIS ORDER APPLIES TO | | JMT |
| | | THE PROSECUTOR'S OFFICE, THE POLICE AND ALL COURT OFFICIALS. WARRANT | | JMT |
| | | ISSUED. BOND SET AT $1,000,000..(SO)JMT. | | JMT |
| 8/24/1994 | | Order Entered.  (SO) | | DBK |
| | | Warrant returned and filed. | 9/08/1994 | PJR |
| | | | | |
| 8/31/1994 | JDO SB | At request of the State, attorneys may discuss any aspect | | JDO |
| | | of case consistent with canons of ethics. JDOS | | JDO |
| 8/31/1994 | TCB | Defendant appears in court and in custody for 1st Appearance. | | BSP |
| | | Advised of charges, rights and penalties. | | BSP |
| | | Def will hire own atty. State to set hearing | | BSP |
| | | Defendant admonished in open court. | | BSP |
| | | Defendant is remanded on $1,000,000.00 bond. | | BSP |
| | | MITTIMUS ISSUED, COPY FILED | | BSP |
| 8/31/1994 | | Entry of Appearance Demand for Speedy Trial filed by atty Malvik. | 9/06/1994 | TAR |
| | | Motion to Suppress Statements of Defendant filed w/prf. of service. | 9/06/1994 | TAR |
| | | Motion for Bill of Particulars filed w/prf. of service. | 9/06/1994 | TAR |
| | | Motion for Discovery Before Trial filed w/prf. of service. | 9/06/1994 | TAR |
| | | Motion for List of Witnesses and to Produce Confession filed w/prf. | 9/06/1994 | TAR |
| | | of service. | 9/06/1994 | TAR |
| | | | | |
| 9/02/1994 | | COPY OF MOTION AND ORDER FROM 8/25/94 WITH FAX OF TELEPHONE LIST FILED | | DBK |
| | | Notice filed t/w Prf of Srvc. FURTHER ARRAIGNMENT 9-13-94 @ 11:00AM. | 9/06/1994 | PJR |
| | | | | |
| 9/08/1994 | | States' Motion for Protective and Regulatory Orders Pursuant to | 9/10/1994 | PJR |
| | | Discovery filed. | 9/10/1994 | PJR |
| | | Notice filed t/w Prf of Srvc. | 9/10/1994 | PJR |
| | | | | |
| 9/13/1994 | JTT CDT | Defendant in court with Atty Malvik.  State by ASA Senko. | | JAD |
| | | Cause comes on for Further hearing. Cause proceeds to arraignment. | | JAD |
| | | Deft arraigned.  Plea of not guilty entered.  Jury trial date is | | JAD |
| | | 11/14/94, Pre-trial is 11/07/94, and plea date is 11/10/94. | | JAD |
| | | Matter continued for this afternoon on Motion. | | JAD |
| | | Deft. warned and  remanded on $1,000,000.00 bond. | | JAD |
| | | Waiver of Preliminary Hrg. filed. | | JAD |
| | | MITTIMUS ISSUED, COPY FILED. | | JAD |
| | | State's Motion for Preotective and Regulatory Orders Pursuant to | 9/14/1994 | PJR |
| | | Discovery filed in open court. | 9/14/1994 | PJR |
| | | Deft appears in court in custody with atty Malvik. State by ASA | | PJR |
| | | Kalinak. Cause comes on for State's Motion.              Chg | 9/14/1994 | PJR |
| | | State moves to have hearing done in-camera. Court reviews case law. | | PJR |
| | | Motion to have hearing done in-camera is denied. | | PJR |
| | | Sworn testimony heard. | | PJR |
| | | Upon consideration, Court denies motion re: list of witnesses. | | PJR |
| | | Court does order that state has 10 days at which time state is then to | | PJR |
| | | disclose list of witnesses. Status hearing to be held in 10 days. | | PJR |
| | | Deft remanded. | | PJR |
| | | Mittimus issued, copy filed. | | PJR |
| | | | | |
| 9/19/1994 | | Notice of Hearing on Motion filed for 9/22/94 t/w aff. of pr. of serv. | 9/20/1994 | DBK |
| | | Notice of Hearing on Motion filed for 9/22/94 t.w aff. of pr. of serv. | 9/20/1994 | DBK |
| | | | | |
| 9/20/1994 | | State's Motion for Evidence Deposition filed. | 9/21/1994 | TAR |
| | | Affidavit in Support of Deposition filed w/prf. of service. | 9/21/1994 | TAR |
| | | | | |
| 9/22/1994 | JTT CDT | Cause called for Status Hearing.  State by Kalinak. Malvik for deft. | | DBK |
| | | Schultz present to represent Mr. and Mrs. Santer. | | DBK |
| | | State has filed in Open Court, 3 Motions on Material Witness for | | DBK |
| | | Recognizance Bond. | | DBK |
| | | Court makes Mr. Fuhlman a Material witness on $5,000.00 Recog bond. | | DBK |
| | | Order entered to such. | | DBK |

EXHIBIT O

1994CF000649D 001
PEOPLE                                    OSBORN, DAVID
VS.
GREER, DAVID ALLEN N72100                  ZIMMER, RICHARD A
----------------------------------------------------------------------------------------
ENTERED    JDG CR  TEXT                                                    CHANGED USER
----------------------------------------------------------------------------------------

|            |        | TEXT | CHANGED | USER |
|------------|--------|------|---------|------|
|            |        | Court makes Mrs.Santer a Material witness on a $5,000.00. Recog bond. |  | DBK |
|            |        | Order entered to such. |  | DBK |
|            |        | Deft now appears in court. Court receives a Motion on a Affidavit |  | DBK |
|            |        | for potential Material Witness, to take an evidence deposition. |  | DBK |
|            |        | Court will grant the right to take the evidence deposititon due to |  | DBK |
|            |        | the evidence given of behalf of Mr. Santer's health condition. |  | DBK |
|            |        | Motion to Suppress filed by defense on statement by deft from 1993 is |  | DBK |
|            |        | requested to be withdrawn. |  | DBK |
|            |        | Court allows motion to be withdrawn. |  | DBK |
|            |        | Status hearing will be set in 30 days by telephone conference. |  | DBK |
|            |        | Mittimus filed, copy filed. |  | DBK |
| 9/22/1994  | JTT    | Motion and Order for Recognizance for witness S. Fuhlman entered and | 9/27/1994 | PJR |
|            |        | filed. (SO) | 9/27/1994 | PJR |
|            |        | Motion and Orders for Recognizance for witness E. Senter entered and | 9/27/1994 | PJR |
|            |        | filed. (SO) | 9/27/1994 | PJR |
|            |        | Order entered re: deposition of Al Senter. (SO) | 9/27/1994 | PJR |
|            |        | Order entered: Motion to Withdraw Motion to Suppress granted. (SO) | 9/27/1994 | PJR |
|            |        | Order entered re: Hearing on Motion for Protective and Regulatory | 9/27/1994 | PJR |
|            |        | Order Regarding Discovery. (SO) | 9/27/1994 | PJR |
| 9/23/1994  | JTT    | Motion for Recognizance Bond for A Material Witness filed. | 9/27/1994 | PJR |
|            |        | Order entered: Laverne Bester found to be a material witness. Witness | 9/27/1994 | PJR |
|            |        | released on $5,000.00 ROR bond. (SO) | 9/27/1994 | PJR |
| 9/26/1994  | JTT CDT | Wtiness William C. Smith fails to appear 9-23-94 after being served |  | PJR |
|            |        | by a subpoena. Court issues a bench capias to pick up... no bond. |  | PJR |
|            |        | Bond will be set at time that deft is brought before this court |  | PJR |
|            |        | upon arrest. |  | PJR |
| 9/27/1994  |        | Bench Warrant issued for witness William C. Smith, copy filed. |  | PJR |
| 10/13/1994 | JTT    | State by ASA Kalinak. SA Douglas also appears. Deft not present nor is | 10/17/1994 | PJR |
|            |        | Atty Malvik. Cause comes on for hearing to place witnesses into | 10/17/1994 | PJR |
|            |        | protective custody. Such is ordered. State to draft and submit order. | 10/17/1994 | PJR |
|            |        | Review hrg to be held in 7 days; Thursday 10-20-94 @ 9:00am.    JTT/jdv Chg | 10/17/1994 | PJR |
| 10/14/1994 | JTT    | Order entered re: witnesses into protective custody. (SO) | 10/17/1994 | PJR |
| 10/18/1994 |        | Proof of Service filed. | 10/24/1994 | RGB |
| 10/20/1994 |        | Letter from State filed t/w pr.of service. | 10/25/1994 | DBK |
| 10/24/1994 |        | Supplemental Disclosure to Accused filed |  | RGB |
|            |        | Answer to the State's Motion for Pre-trial Discovery filed t/w pr of | 10/25/1994 | DBK |
|            |        | service. | 10/25/1994 | DBK |
|            |        | Supplemental disclosure to accused filed.                   Chg | 10/27/1994 | RGB |
| 10/27/1994 |        | Supplemental Disclosure to Accused field. | 10/28/1994 | RGB |
| 11/07/1994 | JTT PD | Atty Malvik appears. State by ASA Senko. Pre-trial held. Matter |  | PJR |
|            |        | proceeds to Thur and then to Trial next week. |  | PJR |
| 11/10/1994 | JTT PLD | Matter proceeds to trial Monday. |  | TAR |
| 11/10/1994 |        | Supplemental Disclosure to Accused filed t/w Prf of Service. | 11/11/1994 | PJR |
| 11/14/1994 |        | Supplemental Disclosure to the State filed. | 11/22/1994 | TAR |
| 11/14/1994 | JTT PLD | Deft. in court in person and by atty Malvik.  State by Kalinak.  Jury | 11/22/1994 | TAR |
|            |        | selection begins at 9:50 a.m.  Court recesses at 12:10 p.m. for lunch. | 11/22/1994 | TAR |
|            |        | Court reconvenes at 1:25 p.m.  Jury selection continues.  Jury | 11/22/1994 | TAR |
|            |        | selected at 4:15 p.m.  Court recesses until 9:00 a.m. on 11/15/94. | 11/22/1994 | TAR |
| 11/14/1994 |        | Mittimus issued.  Copy filed. | 11/22/1994 | TAR |
| 11/15/1994 | JTT PLD | Deft. in court in person by atty Malvik.  State by Kalinak.  Offer | 11/22/1994 | TAR |
|            |        | of proof made by Prosecution to introduce photographs.  Defense | 11/22/1994 | TAR |
|            |        | objects to admission of State photographs.  Court hears evidence | 11/22/1994 | TAR |
|            |        | on offer of proof.  Court allows State to introduce crime scene | 11/22/1994 | TAR |

1994CF000649D 001
PEOPLE OSBORN, DAVID
VS.
GREER, DAVID ALLEN N72100 ZIMMER, RICHARD A

| ENTERED | JDG | CR | TEXT | CHANGED | USER |
|---|---|---|---|---|---|
| | | | photo. Jury given final instructions. Opening statements given. | 11/22/1994 | TAR |
| | | | State begins presentation of its case-in-chief at 9:50 a.m. Court | 11/22/1994 | TAR |
| | | | recesses for lunch. Court reconvenes at 1:30. State continues | 11/22/1994 | TAR |
| | | | presentation of its case-in-chief. Court recesses for day at 4:15 pm. | 11/22/1994 | TAR |
| 11/15/1994 | | | Mittimus issued. Copy filed. | 11/22/1994 | TAR |
| 11/16/1994 | JTT | PLD | Deft. in court in person and by atty Malvik. State by Kalinak. | 11/22/1994 | TAR |
| | | | Court rules defense has opened the door on cross-examination of | 11/22/1994 | TAR |
| | | | witness Fuhlman to explain cross-examination matters. Court further | 11/22/1994 | TAR |
| | | | rules defense will be allowed to introduce evidence concerning self- | 11/22/1994 | TAR |
| | | | defense and possible manslaughter. State continues presentation of | 11/22/1994 | TAR |
| | | | its case-in-chief. Court recesses for lunch at 11:30 a.m. Court | 11/22/1994 | TAR |
| | | | reconvenes at 1:00 p.m. Deft. in court in person and by atty | 11/22/1994 | TAR |
| | | | Malvik. State by Kalinak. State continues presentation of its | 11/22/1994 | TAR |
| | | | case-in-chief. State rests its case at 2:00 p.m. Defense makes | 11/22/1994 | TAR |
| | | | motion for directed verdict. Court denies motion for directed | 11/22/1994 | TAR |
| | | | verdict. Defense makes motion for mistrial. Court denies motion | 11/22/1994 | TAR |
| | | | for mistrial. Defense presents its defense at 2:30 p.m. Court | 11/22/1994 | TAR |
| | | | recesses at 4:10 p.m. until 11/17/94 at 9:30 a.m. | 11/22/1994 | TAR |
| 11/17/1994 | JTT | PLD | Deft. in court in person and by atty Malvik. State by Kalinak. | 11/22/1994 | TAR |
| | | | Defense continues presentation of its defense. Court recesses for | 11/22/1994 | TAR |
| | | | lunch at 11:50 until 1:25 p.m. Court reconvenes at 1:25. Defense | 11/22/1994 | TAR |
| | | | makes offers of proof. Court denies defense from presenting evidence | 11/22/1994 | TAR |
| | | | of atty Senko as well as witness Yancy testifying to conversation | 11/22/1994 | TAR |
| | | | with atty Kalinak. Defense continues presentation of its defense. | 11/22/1994 | TAR |
| | | | Defense rests. State presents rebuttal testimony. State rests. | 11/22/1994 | TAR |
| | | | Court recesses until 9:00 a.m. on 11/18/94. | 11/22/1994 | TAR |
| 11/18/1994 | JTT | PLD | Deft. in court in person and by atty Malvik. State by Kalinak. | 11/22/1994 | TAR |
| | | | Conference on instructions held. Final arguments. Court instructs | 11/22/1994 | TAR |
| | | | the jury on the law. Case given to the jury at 12:40 p.m. Jury | 11/22/1994 | TAR |
| | | | returns a verdict of Guilty of First Degree Murder at 4:40 p.m. | 11/22/1994 | TAR |
| | | | Bond of the Defendant revoked. PSI Ordered. Matter to be set for | 11/22/1994 | TAR |
| | | | sentencing upon completion of PSI. | 11/22/1994 | TAR |
| 11/18/1994 | | | Mittimus issued. Copy filed. | 11/22/1994 | TAR |
| | | | Jury instructions filed. | 11/22/1994 | TAR |
| | | | Jury verdict form filed. | 11/22/1994 | TAR |
| | | | Court's Exhibit #1 filed. | 11/22/1994 | TAR |
| 11/18/1994 | JTT | | Order entered that RIPD and RI Co. State's Atty's office shall | 11/22/1994 | TAR |
| | | | provide the cost of final truck for relocation of Steve Fuhlman. | 11/22/1994 | TAR |
| | | | Cost shall not exceed $400.00. Witness and family discharged from | 11/22/1994 | TAR |
| | | | protective custody. (SO) | 11/22/1994 | TAR |
| 12/12/1994 | | | Order entered Re; reimbursement for expenses during protective custody | 12/16/1994 | DBK |
| | | | Copy to Acct, and RIPD, and State. | 12/16/1994 | DBK |
| 12/13/1994 | | | Supplemental Disclosure to Accused filed with Proof of Service. | 12/14/1994 | RGB |
| 12/15/1994 | | | Motion for Judgment of Not Guilty or in Alternative For A New Trial. | 12/16/1994 | DBK |
| 12/30/1994 | | | Corr from Deft to JWO rec'd and filed. All copies already sent perCER. | | PJR |
| 1/24/1995 | | | Motion to Produce State's Witness for Hearing on Motion for Judgment | 1/25/1995 | TAR |
| | | | of Not Guilty or in Alternative for a New Trial filed w/prf. of | 1/25/1995 | TAR |
| | | | service. | 1/25/1995 | TAR |
| 2/01/1995 | | | Petition for Order of Habeas Corpus Testificandum filed. | 2/02/1995 | DBK |
| | | | Order of Habeas Corpus Ad Testificandum filed. | 2/02/1995 | DBK |
| | | | Certified copy of Petition and Order sent certified mail on 2/3/95. | 2/02/1995 | DBK |
| | | | Order entered Re: RICJ to bring, R. ROBERSON from Anamosa Corr. Fac Chg | 2/06/1995 | DBK |
| 2/03/1995 | JTT | CDT | DEFT APPEARS WITH ATTY MALVIK, STATE BY KALINAK. MOTION IS PREMATURE, | | RGB |
| | | | MATTER WILL BE RESET. | | RGB |
| 2/03/1995 | | | ***3 PSI Reports filed. Original in file. Copy to SA & Atty Malvik. | 2/07/1995 | TAR |

```
1994CF000649D 001
PEOPLE                              OSBORN, DAVID
VS.
GREER, DAVID ALLEN N72100           ZIMMER, RICHARD A
```
--------------------------------------------------------------------------------
| ENTERED | JDG CR | TEXT | CHANGED USER |
--------------------------------------------------------------------------------

| ENTERED | JDG CR | TEXT | CHANGED | USER |
|---|---|---|---|---|
| 2/06/1995 | | Certified Mail Card Returned and filed. | 3/23/1995 | RGB |
| 2/08/1995 | | Copy of Voluntary Statement filed. | | TAR |
| | | Certified mail card ret'd and filed. | 6/27/1995 | PJR |
| 2/14/1995 | | Order of Habeas Corpus Ad Testificandum filed for a Gary Davis. | | DBK |
| | | Order of Habeas Corpus Ad Testificandum filed for a Rudy Hall. | | DBK |
| 2/16/1995 | JTT PD | Cause called for sentencing hearing, deft in court in custody with | | RGB |
| | | atty Malvick, State by Kalinak.  Evidence in aggravation and | | RGB |
| | | mitigation presented.  Witness Davis is admonished regarding self | | RGB |
| | | incrimination on perjury charges.  Atty Hoffman is appointed as | | RGB |
| | | counsel.  Motion for new trial by defense due to witness' recantation | | RGB |
| | | of trial testimony.  Matter is taken under advisement by the court, | | RGB |
| | | and will make a ruling at a later date to be determined.  Gary Davis | | RGB |
| | | is to be remanded in RICJ for further hearings, and to be kept out of | | RGB |
| | | general population in seperate confinement, away from the deft. | | RGB |
| | | Mittimus issued, copy filed. | | RGB |
| | | Exhibits and log for sentencing hearing sealed and filed in Circuit | | RGB |
| | | Clerks safe. | | RGB |
| 2/17/1995 | JTT PD | Order submitted, entered and filed.  (SO) | | RGB |
| 2/17/1995 | | Notice filed t/w Prf of Srvc. Hearing for New Trial and Sentencing on | 2/22/1995 | PJR |
| | | 3-3-95 @ 3:00. | 2/22/1995 | PJR |
| | | Notice filed t/w Prf of Srvc. | 2/22/1995 | PJR |
| | | Notice filed t/w Prf of Srvc. | 2/22/1995 | PJR |
| 2/22/1995 | | Amended Notice filed t/w Prf of Srvc.  Hearing 3-1-95 @ 3:00. | 2/23/1995 | PJR |
| | | Amended Notice filed t/w Prf of Srvc. | 2/23/1995 | PJR |
| 2/24/1995 | | Corr from deft rec'd from Ct. Admin ofc, filed. No copies to send. | 2/27/1995 | PJR |
| 3/01/1995 | JTT CDT | Deft. appears in court in custody with atty Malvik.  State by ASA | | TAR |
| | | Kalinak.  Atty Hoffman present on behalf of witness Davis.  Arguments | | TAR |
| | | of counsel heard concerning witness' recantation of trial testimony. | | TAR |
| | | Court allows witness Davis to testify further.  Cause proceeds with | | TAR |
| | | further sworn testimony from witness Davis and Officer Mulder. | | TAR |
| | | Motion for new trial is denied. | | TAR |
| | | Cause proceeds to hearing on Post Trial Motion.  Motion heard and | | TAR |
| | | denied.  Matter now proceeds to sentencing.  PSI report reviewed and | | TAR |
| | | considered.  Sworn testimony heard and considered.  Arguments of | | TAR |
| | | counsel heard and considered. | | TAR |
| | | Defendant sentenced to a term of 50 years Il, DOC, with 3 years MSR | | DBK |
| | | with credit for time served, and costs of these proceedings. | | DBK |
| | | Appeal rights given per SCR 605 (b). | | DBK |
| 3/01/1995 | | Mittimus issued.  Copy filed.                    * Chg | 3/03/1995 | SAW |
| 3/03/1995 | JTT | Sentencing Order entered and filed.  (SO)  Copy sent to SA & Jail. | 3/09/1995 | REO |
| 3/15/1995 | | Notice of appeal filed w/proof of service. | | REO |
| | | Notice of filing notice of appeal filed w/proof of service. | | REO |
| | | Motion to substitute Public Defender filed w/proof of service. | | REO |
| 3/15/1995 | EK | Order entered appointing Counsel on appeal. (so) | | REO |
| | | Affidavit of service of copies of notice of appeal filed. | | REO |
| 3/20/1995 | | Notice of Filing filed w/Aff. of Service. | | TAR |
| | | Notice of Appeal filed. | | TAR |
| 3/22/1995 | | Docketing order due dates filed. | | REO |
| 4/10/1995 | | Report of proceedings filed by Mary Thaxton for 111694 | 4/17/1995 | REO |
| 4/25/1995 | | Report of proceedings filed by Pat DuVall for 111594. | | REO |
| 5/05/1995 | | Bench Warrant returned and filed, re:  material witness William C. | 5/08/1995 | TAR |
| | | Smith. | 5/08/1995 | TAR |

1994CF000649D 001
PEOPLE                                OSBORN, DAVID
VS.
GREER, DAVID ALLEN N72100             ZIMMER, RICHARD A
--------------------------------------------------------------------------------
ENTERED    JDG CR  TEXT                                          CHANGED USER
--------------------------------------------------------------------------------

| ENTERED | JDG CR | TEXT | | CHANGED | USER |
|---|---|---|---|---|---|
| 5/08/1995 | JTT SB | Witness W. Smith appears, advised of contempt for failure to appear. | | | PJR |
| | | Deft is given 5 days with credit for time served for contempt. | | | PJR |
| | | Deft has already served 5 days in Mary Davis Home. | | | PJR |
| | | Juvenile Probation officer appears with witness. Atty Kee for Deft. | | | PJR |
| | | Rights explained. Witness waives extradition to IA. | | | PJR |
| | | Deft released on RI contempt charge for this case. | | | PJR |
| | | Order entered. (SO) | | | PJR |
| 5/08/1995 | | Copy to Juvenile Probation. | | 5/12/1995 | PJR |
| 5/09/1995 | | COPY OF INVENTORY FILED. (FROM ARREST OF WITNESS WILLIAM C SMITH.) | Chg | 5/12/1995 | PJR |
| | | ORIGINAL GIVEN TO JUVENILE PROBATION. | | 5/12/1995 | PJR |
| 5/10/1995 | | Amended docketing order due dates filed. | | 5/11/1995 | REO |
| 5/25/1995 | | Report of proceedings filed by Pat DuVall for 111794. | | | REO |
| 6/06/1995 | | Report of proceedings filed by Pat DuVall for 111694. | | | REO |
| 6/09/1995 | | Report of proceedings filed by Pat DuVall for 021695. | | | REO |
| 7/11/1995 | | Report of proceedings filed by Karen White for 101394. | | | REO |
| 8/08/1995 | | Amended docketing order due dates filed. | | 8/10/1995 | TAR |
| 8/28/1995 | | Affidavit in support of motion for trial transcriipts and common law | | 8/29/1995 | BJJ |
| | | records filed. | | 8/29/1995 | BJJ |
| | | Motion to proceed in forma pauperis and request for free transcripts | | 8/29/1995 | BJJ |
| | | filed by pet, pro-se. | | 8/29/1995 | BJJ |
| | | Certificate filed . | | 8/29/1995 | BJJ |
| 8/31/1995 | | Copy to SAO and JTT. | | | PJR |
| 10/26/1995 | | Amended docketing order due dates filed. | | 10/27/1995 | REO |
| 11/16/1995 | | Report of proceedings filed by C. D. Thompson for September 22, 1994. | | | REO |
| 11/21/1995 | | Report of proceedings filed by C. D. Thompson for September 13, 1994. | | | REO |
| 12/07/1995 | | Report of proceedings filed by C. D. Thompson for February 3, 1995. | | 12/08/1995 | REO |
| 12/22/1995 | | Report of proceedings filed by C. D. Thompson for March 1, 1995. | | | REO |
| 12/28/1995 | | Record to Appellate Court and transcripts to Defendant by Pak Mail. | | | REO |
| 1/16/1996 | | Certification of record returned and filed | | 1/17/1996 | BSP |
| 6/16/1998 | | Correspondence from Deft., copy to State and Judge Teros. | | | JKJ |
| 7/02/1998 | | Record receipt retd. to App. Ct. copy filed. Record retd. from App. | | | GKH |
| | | Ct. | | | GKH |
| 7/06/1998 | | Notice fo issuance of mandate filed. Copy to App. Ct. Mandate filed | | | GKH |
| | | reversed and remanded. | | | GKH |
| 7/13/1998 | JTT PAT | Defendant in court in person. State by SA Douglas. Matter to be | | | MEL |
| | | continued to status hearing on 7/16/98 at 1:30pm. Court appoints | | | MEL |
| | | Notice of appointment of Public Defender issued, copy filed. | | | MEL |
| | | public defender. | | | MEL |
| | | Defendant remanded on 1,000,000.00 bond. | Chg | 7/17/1998 | MEL |
| | | Mittimus issued, copy filed. | | | MEL |
| 7/17/1998 | JTT DR | Cause called for status hearing. Defendant in court in custody. | | | MEL |
| | | State by SA Douglas. Conflicts atty Zimmer is present. Public | | | MEL |
| | | Defender attorney Hoffman is present. Court to appoint attorney. | | | MEL |
| | | Court appoints conflicts attorney Zimmer. Trial date is on 9/28/98, | | | MEL |

1994CF000649D 001
PEOPLE                              OSBORN, DAVID
VS.
GREER, DAVID ALLEN N72100           ZIMMER, RICHARD A
--------------------------------------------------------------------------------
 ENTERED    JDG CR  TEXT                                              CHANGED USER
--------------------------------------------------------------------------------

|            |     | TEXT | | CHANGED | USER |
|------------|-----|------|---|---------|------|
| | | Pre Trial is on 9/21/98 and Plea is on 9/24/98. | | | MEL |
| | | Defendant remanded on 1,000,000.00 bond. | | | MEL |
| | | Mittimus issued, copy filed. | | | MEL |
| 7/17/1998 | | Order re: Conflicts atty Zimmer appointed and new trail dates entered. | | | MEL |
| | | Notice of Court Appointed Attorney Zimmer filed. | | | MEL |
| 7/20/1998 | | Ntoice t/w aff. of prf. of service filed. | | 7/22/1998 | RLF |
| | | Diclosure to accused t/w prf. of service filed. | Chg | 7/22/1998 | RLF |
| 7/22/1998 | | Affidavit filed. | | | RLF |
| | | Motion for rendition of Prisoner as a Witness in a Criminal | | | RLF |
| | | Proceeding filed. | | | RLF |
| 7/22/1998 JTT | | Certification under seal and Order granting Motion for rendition of | | | RLF |
| | | prisoner in a criminal proceeding t/w order filed. | | | RLF |
| | | Notice filed. | | | RLF |
| 7/27/1998 | | State's Motion for Recognizance of witness for appearance filed. | Chg | 9/11/1998 | MEL |
| 7/27/1998 JTT PM | | ASA Kalinak appears. Deft. and atty not present. | | | RLF |
| | | Cause called for Motion for Material Witness.  Motion allowed. | | | RLF |
| | | Witness is on a $50,000.00 Recognizance bond. | | | RLF |
| | | Witness to appear 9/28/98 at 9:30 a.m. | | | RLF |
| 7/27/1998 JTT | | RECOGNIZANCE OF WITNESS FOR APPEARANCE FILED. | | | RLF |
| | | Order Re: Witness Michael Ross put on $50,000.00 Recog bond. | | | RLF |
| 8/03/1998 | | Supplemental Disclosure to Accused t/w proof of service filed. | | 8/05/1998 | JKJ |
| 8/13/1998 | | Supplemental Disclosure to Accused t/w proof of service filed. | | | JKJ |
| | | Motion for Disclosure to Prosecution filed. | | | JKJ |
| 8/26/1998 | | Prf. of service filed. | | | RLF |
| | | Motion for evidence depositions t/w aff. filed. | | | RLF |
| | | Notice t/w aff. of prf. of service filed. | | | RLF |
| 9/11/1998 JTT SS | | Cause called for Status hearing. Defendant in court in custody with | | | MEL |
| | | atty Zimmer. State by ASA Kalinak. State feels the witness should not | | | MEL |
| | | testify at the Trial for health reasons. Defense objects. Court wants | | | MEL |
| | | to hear testimony from the doctor pertaining to the witnesses health. | | | MEL |
| | | State to set date on that matter. | | | MEL |
| | | Court sets new Trial dates, Trial will be held on 2/1/99, | Chg | 9/21/1998 | JLC |
| | | Pre-Trial will be on 1/25/99 and Plea will be on 1/28/99. | Chg | 12/18/1998 | MEL |
| | | Defendants remanded. | | | MEL |
| | | Mittimus issued, copy filed. | | | MEL |
| 9/22/1998 | | Notice for Defendant's Jury Trial on 2/1/99 at 9:30am filed t/w | | | MEL |
| | | affidavit of proof of service. | | | MEL |
| 11/10/1998 | | Notice of Motion on 12/18/98 t/w aff of prf of service filed. | | | JKJ |
| 12/18/1998 JTT PM | | Cause called for Motion for Evidence Disposition. Defendant in court | | | MEL |
| | | in custody with atty Zimmer. State by ASA Kalinak. Court allows the | | | MEL |
| | | taking of the deposition from a witness with bad health. | | | MEL |
| | | Defendants remanded. | | | MEL |
| | | Mittimus issued, copy filed. | | | MEL |
| | | Order re: Reasons as to why the witness will give a video deposition. | | | MEL |
| 12/29/1998 JTT | | **ORDER ENTERED AND FILED RE: PTC TO CHANGE FROM 1/25/99 TO 1/26/99** | | 12/30/1998 | JKJ |
| 1/04/1999 | | Copy of Affidavit filed. | | 1/05/1999 | JKJ |
| | | Copy of Motion for Rendition of Prisoner as a Witness in a Criminal | | 1/05/1999 | JKJ |
| | | Proceeding filed. | | 1/05/1999 | JKJ |
| 1/04/1999 JTT | | Certification Under Seal and Order Granting Motion for Rendition of | | 1/05/1999 | JKJ |
| | | Prisoner in Criminal Proceeding t/w Order entered and filed. | | 1/05/1999 | JKJ |
| | | Notice to summon inmate to appear and testify entered and filed. | | 1/05/1999 | JKJ |
| 1/06/1999 | | Notice for Video Disposition on 1/15/99 at 10:30am filed t/w | | 1/07/1999 | MEL |
| | | affidavit of proof of service. | | 1/07/1999 | MEL |

```
1994CF000649D 001
PEOPLE                              OSBORN, DAVID
VS.
GREER, DAVID ALLEN N72100           ZIMMER, RICHARD A
---------------------------------------------------------------------------
ENTERED    JDG CR  TEXT                                          CHANGED USER
---------------------------------------------------------------------------
```

| ENTERED | JDG CR | TEXT | CHANGED | USER |
|---|---|---|---|---|
| 1/14/1999 | JTT SS | Cause called for Continuance of Trial date. Deft is in court and | | DBK |
| | | in custody with atty Zimmer. | | DBK |
| | | Delay is attributed to deft. | | DBK |
| | | Order entered as to new court dates. Pre-Trial is set for 5/3/99 @ | | DBK |
| | | 1:00pm., Plea date is set for 5/6/99 @ 8:30am, and Trial date is set | | DBK |
| | | for 5/10/99 @ 9:00am. | | DBK |
| | | Deft remanded at $1,000.000.000. | | DBK |
| 1/19/1999 | | **AMENDED Jury Trial Notice for 5/10/99 @ 9:30am filed t/w aff of pr | | DBK |
| | | of serv. | | DBK |
| | | Affidavit filed. | | JKJ |
| | | Videotape of Evidence Deposition of Allan Senter in Circuit Clerk's | | JKJ |
| | | Safe. | | JKJ |
| 3/10/1999 | | Notice of hearing for Video Deposition with Audio on 3/25/99 at 10:00 | 3/11/1999 | MEL |
| | | t/w affidavit of service filed. | 3/11/1999 | MEL |
| 4/07/1999 | | Video tape filed and suppressed. (A. Senter) | 4/19/1999 | DBK |
| 4/13/1999 | | Disclosure to Prosecution filed t/w proof of service. | | MEL |
| 4/19/1999 | | Affidavit filed. | 4/22/1999 | DBK |
| | | Motion For Rendition of Prisoner As A Witness in a Criminal Proceeding | 4/22/1999 | DBK |
| | | filed. | 4/22/1999 | DBK |
| | | Certification Under and Order Granting Motion For Rendition of | 4/22/1999 | DBK |
| | | Prisoner in Criminal Proceeding filed t/w Order. | 4/22/1999 | DBK |
| | | Notice filed. | 4/22/1999 | DBK |
| 4/26/1999 | JTT | Order re: Defense atty to hire private investigator. | | MEL |
| 4/27/1999 | | Supplemental disclosure to accused t/w prf. of service filed. | | JKJ |
| 4/29/1999 | | *****************Volume II Started********************** | 4/30/1999 | MEL |
| | | Supplemental disclosure to accused t/w prf. of service filed. | | RLF |
| | | State's Motion in Limine t/w att. filed. | | RLF |
| 4/30/1999 | | Petition for Order of Habeas Corpus Ad Testificandum filed. | | RLF |
| 4/30/1999 | JTT | Order of Habeas Corpus Ad Testificandum filed. Cert. copy sent by cert | | RLF |
| | | mail to the Warden at Danville Corr. Center. | | RLF |
| 5/03/1999 | JTT SB | No action taken. | | RLF |
| 5/03/1999 | | Motion to continue t/w prf. of service and att. filed. | 5/04/1999 | RLF |
| | | Motion in Limine t/w prf. of service filed. | 5/04/1999 | RLF |
| | | Motion to bar t/w prf. of service and att. filed. | 5/04/1999 | RLF |
| 5/04/1999 | JTT PD | DEFT IN COURT AND IN CUSTODY WITH ATTY ZIMMER. STATE BY KALINAK. | | DBK |
| | | COURT HEARS MOTION TO BAR AND MOTION TO CONTINUE. | | DBK |
| | | COURT WILL NOT BAR TESTIMONY. MOTION TO BAR IS DENIED. | | DBK |
| | | MOTION TO CONTINUE IS HEARD AND ALLOWED. | | DBK |
| | | DELAY IS ATTRIBUTED TO DEFT. | | DBK |
| | | COURT CONTINUES THIS MATTER TO Trial on 7/6/99, Pre-trial on 6/28/99 Chg | 5/06/1999 | JKJ |
| 5/04/1999 | | and final plea date on 7/1/99. Order entered. Chg | 5/06/1999 | JKJ |
| | | Deft remanded at $1,000,000.000. | 5/06/1999 | DBK |
| | | Mittimus issued, copy filed. | 5/06/1999 | DBK |
| | | Notice of hearing for Defendant's Jury Trial on 7/6/99 at 9:30am | 5/05/1999 | MEL |
| | | t/w affidavit of service filed. | 5/05/1999 | MEL |
| 5/05/1999 | | Certified Mail Card returned and filed. | | JKJ |
| | | Supplemental disclosure to accused t/w prf. of service filed. | | MEL |
| | | Affidavit filed. | | RLF |
| | | Motion for rendition of prisoner as a witness in a criminal | | RLF |
| | | proceeding filed. | | RLF |
| 5/05/1999 | JTT | Notice filed. | | RLF |
| | | Certification under seal and Order granting Motion for rendition of | | RLF |
| | | prisoner in a criminal proceeding t/w Order filed. | | RLF |

```
1994CF000649D 001
PEOPLE                          OSBORN, DAVID
VS.
GREER, DAVID ALLEN N72100        ZIMMER, RICHARD A
-------------------------------------------------------------------------------
 ENTERED   JDG CR  TEXT                                          CHANGED USER
-------------------------------------------------------------------------------

 5/19/1999          Supplemental Disclosure to Accused filed w/pos.           AJB

 5/20/1999          Supplemental Disclosure to Accused filed w/pos.           AJB

 6/24/1999          Supplemental disclosure to accused t/w prf. of service filed.  RLF
                    Notice of hearing  JURY TRIAL 7/6/99 AT 9:30 A.M.          RLF
                    t/w affidavit of service filed.                           RLF

 6/28/1999 JTT      No action taken.                                          JKJ
 6/28/1999 JTT ME   Pre-trial held. State by ASA Kalinak. Matter continued to Plea date.  6/29/1999 MEL

 6/29/1999          Motion in Limine t/w prf of service filed.                JKJ
                    Supplemental disclosure to accused t/w prf. of service filed.  6/30/1999 MEL

 7/01/1999 JTT      No plea agreement reached.  Matter will proceed to Trial.  JKJ
 7/01/1999          Supplemental disclosure to accused t/w prf. of service filed.  RLF

 7/02/1999          State's Motion in Limine filed.                           MEL

 7/06/1999 JTT CDT  Cause called for Jury Trial, Deft in court in custody with atty Zimmer  RGB
                    State by ASA Kalinak.  Jury Selection begins at 9:40.  Jury Selection  RGB
                    completed at 11:50. Jury selected at 11:55am. Court recesses until  Chg  7/12/1999 MEL
                    1:30pm.                                                    Chg  7/12/1999 MEL
 7/06/1999 JTT CD   Mittimus issued, copy filed.                               7/12/1999 MEL
                    Court reconvenes outside the jury's presence at 1:40 PM.   CBG
                    Court rules on motions outside of jury's presence. Motion in limine  CBG
                    filed by the state granted on first part and reserved ruling on 2nd  CBG
                    part.  Motion in limine filed by the Defense dated 6-29-99 granted.  CBG
                    Court proceeds in the presence of the jury at 3:00 PM.     CBG
                    Opening statements given.  State begins it's case-in-chief.  CBG
                    Court recesses at 5:00 PM.  Court will reconvene at 9:30 AM on  CBG
                    7-7-99.                                                    CBG
                    Defendant remanded at $1,000,000.00 bond.                  CBG
                    Mittimus issued, copy filed.                               CBG

 7/07/1999 JTT ME   Cause called for Jury Trial. Defendant in court in custody with atty  MEL
                    Zimmer. State by ASA Kalinak. State continues it case in chief at  MEL
                    10:00am. Gary Davis is called as "Courts Witness". Defense makes a  MEL
                    motion for a Mis-Trial. Court wants both parties to research on this  MEL
                    matter. Court reserves ruling on mis-trial.                MEL
 7/07/1999 JTT SB   Court reconvines at 1:45pm. Court hears agruments from both parties  MEL
 7/07/1999 JDO ME   as to the Motion to Mis-Trial. State continues its case-in-chief.  MEL
 7/07/1999 JTT ME   Court ajourns Jury. State makes offer of proof with witness Gary Davis  7/12/1999 MEL
                    Court declares Davis a Court Witness.                      7/12/1999 MEL
                    Court excuses the Jury for the day at 3:45pm. Court continues this  MEL
                    matter to 7/8/99 at 9:30am.                                MEL
 7/07/1999 JTT CD   Defendant is remanded on 1,000,000.00 bond.                7/12/1999 MEL
 7/07/1999 JTT SB   Mittimus issued, copy filed.                               7/12/1999 MEL

 7/08/1999 JTT CD    Cause called for Jury Trial.  Defendant in Court in custody with  CBG
                    Atty. Zimmer.  State by ASA Kalinak.  Court denies the defense motion  Chg  7/12/1999 MEL
                    for a mistrial. Court questions juror based on previous experiences  7/12/1999 MEL
                    with potential State witness.  Court excuses juror and replaces with  Chg  7/12/1999 MEL
                    an alternate juror.  Court excuses 2nd juror and replaces with an  Chg  7/12/1999 MEL
                    alternate juror as well.  State continues it's Case-in-Chief at  Chg  7/12/1999 MEL
                    9:55 AM.  The State rests it's Case.  Defense makes motion for a  Chg  7/12/1999 MEL
                    direct verdict.  Court denies motion.  Defense begins its presentation  Chg  7/12/1999 MEL
                    at 10:00 AM. Court recesses at 1:30pm.                     Chg  7/12/1999 MEL
 7/08/1999          Court reconvenes after lunch at 1:26 PM.  Defense continues it's  CBG
                    presentation.  The Defendant takes the stand and testifies.  Chg  7/12/1999 MEL
 7/08/1999 JTT CD   The Defense rests it's Case.  Testimony of November 17, 1999 by Louis  CBG
                    Pemperton read to jury by the Court. State calls rebuttal witnesses.  CBG
                    The State Rests it's Case.  The Defense Rests.  Jury is excused for  CBG
                    the day.  Court recesses at 2:27 PM and will reconvene at 8:30 AM on  CBG
                    7/9/99.                                                    CBG
```

```
1994CF000649D 001
PEOPLE                             OSBORN, DAVID
VS.
GREER, DAVID ALLEN N72100          ZIMMER, RICHARD A
-----------------------------------------------------------------------------
  ENTERED    JDG CR  TEXT                                            CHANGED USER
-----------------------------------------------------------------------------
                     Defendant remanded on $1,000,000.00 bond.                    CBG
                     Mittimus issued, copy filed.                                 CBG

 7/09/1999 JTT CD    Cause called for Jury Trial. Defendant in court in custody with atty   MEL
                     Zimmer, State by ASA Kalinak. Conference on Instructions held.  Chg  7/12/1999 MEL
                     Conference on Instruction completed. Court calls the Jury in at  Chg  7/12/1999 MEL
                     9:35am. Closing arguments are given. Court gives the Jury Instructions  MEL
                     and the Jury begins deliberating at 10:45am.                 MEL
                     Jury has reached a verdict at 12:00pm. The Jury finds the defendant  MEL
                     GUILTY of First Degree Murder. Sentencing is to be set on 7/13/99 at  MEL
                     11:00am. Defense to file Post-Trial Motion.                  MEL
                     Defendant is remanded. Bond is revoked.                      MEL
                     Mittimus issued, copy filed.                                 MEL
 7/09/1999           PSI is ORDERED.                                    7/12/1999 MEL
                     Jury Instructions filed.                          7/12/1999 MEL
 7/09/1999 JTT CD    (3) Exhibits submitted by State to make Gary Davis a "Court Witness"  7/12/1999 MEL
                     filed.                                            7/12/1999 MEL
                     Judges notes filed.                               7/12/1999 MEL
                     Exhibit logs filed.                               7/12/1999 MEL

 7/13/1999 JTT CDT   Atty. Zimmer appears for defendant.  State by ASA Senko.  Matter set   JKJ
                     for sentencing on 8/6/99 @ 1:30pm.                            JKJ

 7/16/1999 JTT       Order entered and filed re:  County shall pay Atty. Zimmer $416.25     JKJ
                     for reimbursement.  Copy to Court Administration.            JKJ

 7/26/1999           Post trial motion t/w prf. of service filed.                 RLF

 8/02/1999           ***3 Updated PSI's received, original filed. Copies sent to atty  8/03/1999 MEL
                     Zimmer and ASA Senko.                             8/03/1999 MEL

 8/06/1999 JTT PM    Deft. appears in Court with atty Zimmer.  State by ASA Kalinak.        RLF
                     Cause called for Post Trial Motion.  The first 11 points of the motion  RLF
                     were argued at trial.  Atty Zimmer reiterates those arguments and his  RLF
                     closing arguments to the jury .  ASA Kalinak makes his arguments.      RLF
                     Court stands on its ruling of the first 11 points.  Court denies       RLF
                     Post Trial Motion on point 12.  Matter proceeds to Sentencing.         RLF
                     PSI and update are reviewed and considered.  Sentencing alternatives   RLF
                     given.                                                       RLF
                     Deft. sentenced to 50 years IL DOC followed by 3 years MSR.  Credit    DBK
                     for time served.  Costs of these proceedings.                RLF
                     Appeal rights given per 605 (b) (1-6).                       RLF
                     Deft. remanded                                               RLF
                     Mittimus issued, copy filed.                                 RLF

 8/09/1999 JTT       Sentencing order entered and filed.  Copy to SAO, JAIL.      RLF

 8/11/1999           Motion to Reconsider Sentence t/w prf of service filed.      JKJ

 8/16/1999           REPORT OF COURT DISPOSITION SENT TO SOS, COPY FILED.         MEL

 8/24/1999           Notice of hearing for Motion to Reduce Sentence on 9/10/99 @ 9:40am.   DBK
                     t/w affidavit of service filed.                              DBK

 9/10/1999 JTT DR    Atty. Zimmer appears for defendant.  State by ASA Kalinak.  Cause      JKJ
                     called for Motion to Reduce Sentence.  Arguments presented and heard.  JKJ
                     Court stands by ruling at time of sentencing.  Motion to Reduce        JKJ
                     Sentence is denied.  Clerk to file Notice of Appeal.  Court appoints   JKJ
                     the Appellate Defender to represent the defendant.           JKJ

 9/14/1999           NOTICE OF APPEAL FILED.                                      RGB
                     Appointment of Counsel on Appeal filed.                      RGB
                     Affidavit of Service of Copies of Notice of Appeal filed.    RGB

 9/21/1999           Docketing Due Dates filed.                                   RGB
```

```
1994CF000649D 001
PEOPLE                              OSBORN, DAVID
VS.
GREER, DAVID ALLEN N72100          ZIMMER, RICHARD A
------------------------------------------------------------------------------
  ENTERED    JDG CR  TEXT                                            CHANGED USER
------------------------------------------------------------------------------
```

| ENTERED | JDG CR | TEXT | CHANGED | USER |
|---|---|---|---|---|
| 9/23/1999 | | Report of Proceedings filed by Michele Egert for 7-7-99 | | RGB |
| | | Report of Proceedings filed by Diane Reason for 9-10-99 | | RGB |
| 9/24/1999 | | Report of Proceedings filed by Pat DuVall for 5-4-99 | | RGB |
| | | Report of Proceedings filed by Pat DuVall for 7-13-98 | | RGB |
| 10/22/1999 | | Report of Proceedings filed by Diane Reason for 7-17-98 | | RGB |
| 11/12/1999 | | Request for Extension of Time filed by Clara Delle Thompson | | RGB |
| 11/15/1999 | | Report of Proceedings filed by Peggy McDonnell for 7-27-98 | | RGB |
| 11/16/1999 | | Report of Proceedings filed by Peggy McDonnell for 8-6-99 | | RGB |
| | | Report of Proceedings filed by Peggy McDonnell for 12-18-98 | | RGB |
| 11/29/1999 | | Amended Docketing Order Due Dates filed. | | RGB |
| 12/30/1999 | | Correspondence filed by Clara Delle Thompson. | | BLE |
| 1/04/2000 | | Request for extension of time filed by Clara Delle Thompson. | | RGB |
| 1/06/2000 | | Amended Docketing Due Dates filed. | | RGB |
| 2/07/2000 | | Request for extension of time filed by Clara Delle Thompson. | 2/08/2000 | BLE |
| 2/16/2000 | | Docketing due dates filed | | BLE |
| 3/14/2000 | | Request for extension of time filed by Clara Delle Thompson. | | RGB |
| 4/04/2000 | | Amended Docketing Order Due Dates filed. | | RGB |
| 4/18/2000 | | Report of Proceedings filed by Clara Delle Thompson for 7-8-99 | | RGB |
| | | Report of Proceedings filed by Clara Delle Thompson for 7-6-99 | | RGB |
| | | Report of Proceedings filed by Clara Delle Thompson for 7-13-99 | | RGB |
| | | Report of Proceedings filed by Clara Delle Thompson for 7-8-99 | | RGB |
| | | Record to Appellate Court, Transcripts to Deft via Pak Mail. | | RGB |
| 11/13/2000 | | Amended Docketing Order Due Dates filed. | | RGB |
| 12/04/2000 | | Report of Proceedings filed by Clara Delle Thompson for 7-6-99 | | RGB |
| | | Supplemental Record to Appellate Court,Transcript to Deft via Pak Mail | | RGB |
| 12/13/2000 | | Deft's transcripts returned from Menard Correctional Center indicating | | RGB |
| | | Deft is now at Western Illinois Correctional Center.  Transcript sent | | RGB |
| | | to Deft via Pak Mail. | | RGB |
| 12/22/2000 | | Supplemental Record to Appellate Court, People Exhibits 13 and 15. | | RGB |
| 1/11/2001 | | Supplemental Record to Appellate Court, People Exhibits 8 and 11. | | RGB |
| 7/08/2002 | | RECORD RECEIPT FILED. ORIGINAL TO APPELLATE COURT. | 7/10/2002 | RLF |
| | | RECORD RETURNED FROM APPELLATE COURT. | 7/10/2002 | RLF |
| 7/09/2002 | | A NOTICE OF ISSUANCE OF MANDATE FILED.  COPY TO APPELLATE COURT. | | RLF |
| | | MANDATE FILED.  AFFIRMED. | | RLF |
| 7/15/2002 | | Correspondence rec'd from Deft Pro-Se, filed. | 7/17/2002 | KAK |
| | | Notice of Filing/Proof of Service filed. | 7/17/2002 | KAK |
| | | Petition for Post-Conviction Relief filed by Deft pro-se. Copy to | 7/17/2002 | KAK |
| | | State, JTT, and Deft. Chg | 7/17/2002 | KAK |
| 8/21/2002 JTT | | Court appoints Atty Conklin to represent the Deft. | | KAK |
| | | Notice of Court Appointed Attorney Conklin issued, copy filed. | | KAK |
| | | Clerk phoned Atty Conklin and informed him of appointment. | | KAK |
| 12/02/2002 | | Notice of hearing ON 1/21/03 AT 10:45AM FOR STATUS | | KAK |

```
1994CF000649D 001
PEOPLE                                    OSBORN, DAVID
VS.
GREER, DAVID ALLEN N72100                  ZIMMER, RICHARD A
-----------------------------------------------------------------------------------
 ENTERED   JDG CR  TEXT                                             CHANGED USER
-----------------------------------------------------------------------------------
                   t/w affidavit of service filed.                          KAK

 1/21/2003 JTT SS  Cause called for Status. Defendant is not present, atty Conklin for   MEL
                   the defendant. State by ASA Senko. Court continues this matter to     MEL
                   3/4/03 at 10:45am.                                        MEL

 2/03/2003         Amended Post-Conviction Petition filed t/w Attachments.   MEL

 3/03/2003         State's Response to Defendant's Petition for Post-Conviction Relief   MEL
                   filed.                                                    MEL

 3/04/2003 JTT CD  Cause called for Status. ASA Senko and Atty Conklin present.   KAK
                   Court allows the State 30 days to Answer to the Amended Post-   KAK
                   Trial Petition.                            Chg   4/14/2003 KAK

 4/14/2003         Notice of hearing ON 5/15/03 AT 2:00PM FOR HEARING ON POST-CONVICTIONN  KAK
                   T/w affidavit of service filed.                          KAK

 5/15/2003 JTT DR  Atty. Conklin appears in court for defendant.  State by ASA   JKJ
                   Kalinak.  Cause called for hearing on Post conviction.  Court reviews  JKJ
                   facts of the case.  Court hears evidence and arguments from counsel.   JKJ
                   Court continues matter generally.                         JKJ

 6/26/2003         Notice of hearing for Amended Post Conviction Petition on 8/18/03 at  MEL
                   10:00am t/w affidavit of service filed.                   MEL

 8/18/2003 JTT SB  Atty. Conklin apears for defendant.  State by ASA Kalinak.  Cause   JKJ
                   called for Post Conviction Petition.  Court reveiws all evidence   JKJ
                   and further arguments from counsel.  Court denies Post Conviction   JKJ
                   Relief and dismissed.                                     JKJ

 8/21/2003 JTT     Order re:  Court denies defendant's Post Trial Motion.    JKJ
 8/21/2003         Notice 651(b) sent to defendant t/w copy of Order at IL River DOC,  JKJ
                   copy of notice filed.                                     JKJ

 8/29/2003         Correspondence received from the defendant pro se. Copy of letter   MEL
                   sent to Court Administrator Office and Roxanne in appeals.   MEL
                   NOTICE OF APPEAL FILED.  (1)                              RLF

 9/02/2003 JFB     APPOINTMENT OF COUNSEL ON APPEAL ENTERED. (SO) JFB        RLF
 9/02/2003         AFFIDAVIT OF SERVICE OF COPIES OF NOTICE OF APPEAL FILED.  RLF

 9/04/2003         Report of proceedings filed by Diane Reason for 5/15/03   Chg   10/21/2003 RLF
 9/04/2003 JTT     Order Re: Court reporter to prepare transcripts of Post conviction hrg   RLF

 9/11/2003         DOCKETING ORDER DUE DATES FILED. (3-03-0704)             RLF

 9/24/2003         Report of proceedings filed by Sherry Bolt for 8/18/03   RLF

 9/30/2003         Report of proceedings filed by Clara Delle Thompson for March 4, 2003   RLF

10/31/2003         RECORD SENT TO APPELLATE COURT, TRANSCRIPTS TO DEFT. VIA UPS.   12/04/2003 RLF

 3/14/2005         AFFIDAVIT OF INTENT TO FILE A PETITION FOR LEAVE TO APPEAL TO THE   3/16/2005 RLF
                   ILLINOIS SUPREME COURT FILED.                             3/16/2005 RLF

 6/14/2005         Correspondence rec'd from deft. pro se.  - copy to Court Admin.   JKJ

 6/30/2005         NOTICE OF ISSUANCE OF MANDATE FILED.  COPY TO APPELLATE COURT.   RLF
                   MANDATE FILED.  AFFIRMED AND MOTION TO WITHDRAW ALLOWED.   RLF

 8/05/2005         RECORD RECEIPT FILED.  ORIGINAL TO APPELLATE COURT.       RLF
                   RECORD RET'D FROM APPELLATE COURT AND FILED.              RLF

 9/12/2005         Correspondence from Court reporter Clara Delle Thompson to deft.   JKJ
                   rec'd and filed.                                          JKJ
```

```
1994CF000649D 001
PEOPLE                          OSBORN, DAVID
VS.
GREER, DAVID ALLEN N72100       ZIMMER, RICHARD A
```
--------------------------------------------------------------------------------
```
 ENTERED    JDG CR  TEXT                                            CHANGED USER
```
--------------------------------------------------------------------------------

| ENTERED | JDG | CR | TEXT | | CHANGED | USER |
|---------|-----|-----|------|--|---------|------|
| 7/10/2006 | | | Notice of Filing/Application for Leave to Sue or Defend as a Poor | | | MEL |
| | | | Person/Motion for Appointment of Counsel/Motion for Relief from | | | MEL |
| | | | Judgment/Memorandum of Law and Legal Argument in Support of Motion | | | MEL |
| | | | Relief from Judgment filed by the defendant pro se. Copy sent to | Chg | 7/11/2006 | MEL |
| | | | JTT and SAO. | | | MEL |
| 7/11/2006 | JTT | SB | Court appoints atty Zimmer and sets this matter for Status on 8/15/06 | | | MEL |
| | | | at 10:45am. | | | MEL |
| 7/11/2006 | | | Notice of Court Appointed Atty Zimmer filed. Copy sent to office. | | | MEL |
| 7/18/2006 | | | Motion for Relief from judgment filed. | | | NV |
| 8/11/2006 | | | CORRESPONDENCE FROM OFFICE OF THE ATTORNEY GENERAL FILED. | | 8/14/2006 | MLJ |
| 8/14/2006 | | | REQUESTED DOCUMENTS SENT TO OFFICE OF THE ATTORNEY GENERAL BY MAIL. | | | MLJ |
| 8/15/2006 | JTT | FM | Cause called for status.  Deft. appears by atty Zimmer.  State by | | | TAR |
| | | | ASA D. Osborn.  Matter to be set for further status. | | | TAR |
| 8/17/2006 | | | Notice of hearing on 9/26/06 at 2:00pm | | | MEL |
| | | | t/w affidavit of service filed. | | | MEL |
| 9/01/2006 | | | CORRESPONDENCE RECEIVED FROM ATTORNEY GENERAL'S OFFICE REQUESTING | | 9/07/2006 | MLJ |
| | | | COPIES. | | 9/07/2006 | MLJ |
| 9/07/2006 | | | RESPONSE TO ATTORNEY GENERAL'S LETTER FILED. | | | MLJ |

FILE COPY 

RECEIVED

DEC - 2 2004

THIRD DISTRICT
APPELLATE COURT

NO. 3-03-0704

IN THE

APPELLATE COURT OF THE STATE OF ILLINOIS

THIRD JUDICIAL DISTRICT

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court for the 14th Judicial Circuit, Rock Island County, Illinois. |
| Respondent-Appellee, | ) ) | |
| -vs- | ) ) | No. 94 CF 649 |
| DAVID ALLEN GREER, | ) ) ) | Honorable James T. Teros, |
| Petitioner-Appellant. | ) | Judge Presiding. |

## CERTIFICATE OF FILING AND PROOF OF SERVICE

TO:   David Allen Greer N72100, Route 9, Box 999, Canton, Illinois 61520

Lawrence M. Bauer, Deputy Director, State's Attorney's Appellate Prosecutor
628 Columbus, Suite 300, Ottawa, Illinois 61350

Bruce Kirkham, Assistant Defender, OFFICE OF THE STATE APPELLATE DEFENDER, Second Judicial District, hereby certifies that on November 30, 2004, he mailed the original and four copies of a <u>Motion for Leave to Withdraw as Counsel on Appeal</u> to the Clerk of the Appellate Court, Third Judicial District; that he mailed two copies to the State's Attorneys Appellate Prosecutor; and mailed one copy to the petitioner-appellant in envelopes deposited in the U.S. mailbox at Elgin, Illinois, with postage prepaid and addressed as indicated above.

Bruce Kirkham, Assistant Defender
OFFICE OF THE STATE APPELLATE DEFENDER
2010 Larkin Avenue
Elgin, Illinois 60123
(847) 695-8822

EXHIBIT P

NO. 3-03-0704

IN THE

APPELLATE COURT OF THE STATE OF ILLINOIS

THIRD JUDICIAL DISTRICT

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court for the 14th Judicial Circuit, Rock Island County, Illinois. |
| Respondent-Appellee, | ) ) | |
| -vs- | ) ) | No. 94 CF 649 |
| DAVID ALLEN GREER, | ) ) | Honorable James T. Teros, |
| Petitioner-Appellant. | ) | Judge Presiding. |

## MOTION FOR LEAVE TO WITHDRAW AS COUNSEL ON APPEAL

G. Joseph Weller, Deputy Defender, and Bruce Kirkham, Assistant Defender, OFFICE OF THE STATE APPELLATE DEFENDER, Second Judicial District, respectfully move to withdraw as counsel on appeal for the appellant, David Allen Greer, in connection with the above-captioned appeal pursuant to the opinions of the United States Supreme Court in *Pennsylvania v. Finley*, 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987), and the Illinois Appellate Court in *People v. Lee*, 251 Ill.App.3d 63, 621 N.E.2d 287 (2d Dist. 1993), because any request for review in this case would be without merit and wholly frivolous.

IN SUPPORT OF THIS MOTION, Bruce Kirkham states on oath:

1. I have been appointed as counsel on appeal in this case.

2. I have obtained and read the full Record on Appeal in this case.

3. After reviewing the facts and applicable law, I have found no issue in this case which would merit relief in this Court.  Mr. Greer has been informed by telephone and by letter of the opinion of this office regarding the absence of meritorious issues and the necessity for this motion.

4. I have attached a Memorandum of Law to this motion setting forth a full statement of facts, a statement of the potential issues on appeal, and reasons why these issues would not merit relief in this Court.

5. I have mailed a copy of this motion to Mr. Greer and advised him that he will be given an opportunity within 21 days to respond to this motion and raise in this Court any issues he deems reviewable in his case.  Mr. Greer also has been advised that no new attorney will be appointed to represent him.

WHEREFORE, counsel respectfully request permission to withdraw as counsel on appeal in this case.

Respectfully submitted,
G. Joseph Weller, Deputy Defender

Bruce Kirkham, Assistant Defender
OFFICE OF THE STATE APPELLATE DEFENDER
2010 Larkin Avenue
Elgin, Illinois 60123
(847) 695-8822

SUBSCRIBED and SWORN to
before me this 30th  day
of  November           , 2004.

Carol Fowler
Notary Public

Official Seal
Carol S. Fowler
Notary Public State of Illinois
My Commission Expires 05/05/07

NO. 3-03-0704

IN THE

APPELLATE COURT OF THE STATE OF ILLINOIS

THIRD JUDICIAL DISTRICT

| PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court for the 14th Judicial Circuit, Rock Island County, Illinois. |
|---|---|---|
| Respondent-Appellee, | ) ) | |
| -vs- | ) ) | No. 94 CF 649 |
| DAVID ALLEN GREER, | ) ) | Honorable James T. Teros, |
| Petitioner-Appellant. | ) ) | Judge Presiding. |

<u>MOTION FOR LEAVE TO WITHDRAW AS COUNSEL ON APPEAL</u>
<u>MEMORANDUM OF LAW</u>

<u>STATEMENT OF FACTS</u>

David Allen Greer was charged by indictment with first degree murder in the July 13, 1993, shooting death of Brandon Ellison. (C. 2) The Petitioner was convicted of first degree murder following a jury trial in November 1994. (C. 131, R. 801) During the trial, Gary Davis testified he saw the Petitioner shoot Ellison near the Arsenal Courts housing complex in Rock Island. (R. 453-54, 456-58) Following the trial, Davis recanted his testimony in a letter to the Petitioner. The Petitioner moved for a new trial based on Davis' recantation and Davis testified in a hearing on the post-trial motion that he did not see the shooting. (R. 819) The trial court denied

the motion for new trial. (R. 894-97) On appeal, this Court reversed the Petitioner's conviction based on the trial court's improper restriction of cross-examination of a State witness. *People v. Greer*, 293 Ill.App.3d 861, 689 N.E.2d 134 (3d Dist. 1997).

A new trial was conducted before a jury in July 1999. Rock Island police officer Thomas Mulder testified he arrived at the scene of the shooting of Ellison about 7:20 p.m. on July 13, 1993. (R. 1055-57) Mulder found Ellison's body in an alley and a .22 caliber revolver nearby. Dr. Shaku Teas conducted an autopsy and testified Ellison died from a gunshot wound to the back. (R. 1231-37)

Gary Davis testified as a court witness that he knew the Petitioner and Ellison and was present in Arsenal Courts when Ellison was shot. (R. 1179-80) Davis said during questioning by the State that he was aware that Ellison had previously struck the Petitioner's brother on the head and discharged a firearm. After speaking briefly with Ellison about the incident, Davis heard the Petitioner say to Ellison, "Little bitch, I told you I was going to get you." (R. 1182-85) Davis said the Petitioner had a pistol and Ellison ran away. (R. 1185-86) The Petitioner attempted to shoot but the weapon misfired. The Petitioner then fired the weapon and Ellison stumbled. Davis ran to a nearby porch and saw Ellison running and stumbling off the curb. Davis then ran away and heard two more shots. (R. 1186) Davis testified that the day after the shooting, he went to the police station and identified the Petitioner from a photographic lineup. (R. 1191-92)

2

On examination by the defense, Davis testified that in February 1995, he testified under oath that he did not see the Petitioner shoot anybody, that he was not present when the shooting occurred, and that he based his story on information from accounts by other people. (R. 1194-95)  On re-examination by the State, Davis said he recanted his trial testimony because he was concerned for the safety of his family in the Rock Island area. (R. 1215-17) Davis identified Pl.Ex. 11 as a transcript of the statement he gave to police the day after the shooting in which he identified the Petitioner as the person who shot Ellison. (R. 1214)  The trial court admitted the exhibit into evidence. (R. 1215)

Steve Fuhlman testified he was working on a car on the street outside his home about 5:45 p.m. on July 13, 1993, when he heard a disturbance at Arsenal Courts. (R. 1245-46)  Fuhlman saw a man with a gun chasing another man.  When the man with the gun came to the corner of a building, he fired two shots and then fired a third shot. (R. 1245-46)  Fuhlman identified the Petitioner in court as the person he saw with the gun. (R. 1246)  The day after the shooting, a police officer came to his home and Fuhlman identified a photograph of the Petitioner as the shooter from an array of six photographs. (R. 1252-53)  On cross-examination, Fuhlman testified he had earlier told police he was not sure he could identify the shooter because he did not want to get involved. (R. 1259-60)  On redirect examination, Fuhlman testified he told police about an hour after the shooting that he was not sure

3

he could identify the shooter. (R. 1269-70) Outside the presence of the jury, Fuhlman said he was reluctant to identify the Petitioner as the shooter because he knew the Petitioner to be a gang leader. The trial court sustained a defense objection to admission of evidence of gang activity. (R. 1272-73) The trial court admitted into evidence Pl.Ex. 8, the transcript of Fuhlman's statement to police on the day after the shooting. (R. 1271)

The Petitioner, David Allen Greer, denied chasing anyone through the housing complex and denied shooting any person. Greer testified he did not go to the Arsenal Courts on the day Ellison was killed. (R. 1374-75) Greer testified that on the day of the shooting, he spent the day working at the home of Lillie Rhoden painting and preparing to move into the house. (R. 1370) Greer left the house in the morning for about 20 minutes to get painting supplies. Greer again left the house between 5:00 and 5:30 p.m. and went to a convenience store with Lilli Rhoden and Betty Rhoden. Greer returned to Lilli Rhoden's house between 5:00 and 5:30 p.m. (R. 1371-74) Betty Rhoden, the Petitioner's girlfriend, and Henry Rhoden testified they spent the day with the Petitioner working at the house and essentially corroborated the Petitioner's alibi. Lewis Pemberton testified he worked at the Rhoden house installing carpet and painting and left in the late afternoon with the Petitioner still at the house. About ten minutes later, he heard two gun shots. (R. 1355-58)

4

Laverne Bester testified for the State in rebuttal that she lived in Arsenal Courts and knew the Petitioner. (R. 1409-11) Bester said she saw the Petitioner in a park in Arsenal Courts before shots were fired and that the Petitioner left about 20 to 25 minutes before the shooting. Bester saw the Petitioner again about 15 to 20 minutes after the shooting. (R. 1411-12)

Following closing arguments and over defense objection, the trial court permitted Pl.Ex. 11, the transcript of Gary Davis's statement to police, and Pl.Ex.8, the transcript of Steve Fuhlman's statement to police, to go to the jury room during deliberations. (R. 1468)

The jury found the Petitioner guilty of first degree murder on July 9, 1999. (C. 351, R. 1471) On August 6, 1999, the trial court sentenced Greer to 50 years in prison. (C. 387, R. 1491)

On direct appeal to this Court, the Petitioner argued 1) the trial court erred by permitting, over defense objection, the jury to take to the jury room during deliberations the transcripts of the prior consistent statements to police by Gary Davis and Steve Fuhlman; and 2) the trial court erred by permitting Gary Davis to be called as a court witness. This Court on December 28, 2001, affirmed the judgment of the circuit court. *People v. Greer*, No. 3-99-0706 (Dec. 28, 2001) (Rule 23 Order). (C. 413)

5

On July 8, 2002, Greer filed by mailing to the circuit court a *pro se* post-conviction petition. (C. 421, 422)  The circuit court on August 21, 2002, appointed counsel to represent Greer.  (C. 451)  Appointed counsel on February 3, 2003, filed an amended post-conviction petition, (C. 453), and a certificate of compliance with Supreme Court Rule 651(c).  (C. 457)

In the amended post-conviction petition, the Petitioner argued his trial counsel was ineffective for failing to object to the jury being given the written witness statements of prior consistent identification by Davis and Fuhlman because they also contained statements regarding inadmissible evidence of gang affiliation, drug dealing, and other crimes by the Petitioner.  The Petitioner also argued his appellate counsel on direct appeal was ineffective for failing to raise the issue of trial counsel's failure to object to the inadmissible portions of the witness statements being provided to the jury.  (C. 453-56)  The State filed a written response to the amended post-conviction petition.  (C. 470)  Following argument of counsel, the trial court on August 18, 2003, denied the amended post-conviction petition.  (C. 474, R. 1522)

The circuit clerk filed a notice of appeal on behalf of Greer on September 2, 2003.  (C. 477)  The trial court on September 2, 2003, appointed the Office of the State Appellate Defender to represent Greer on appeal.  (C. 478)

6

## POSSIBLE ISSUE PRESENTED FOR REVIEW

Whether David Allen Greer's post-conviction petition claim that his trial and appellate counsel were ineffective by failing to object to jurors being given written witness statements containing inadmissible evidence of gang affiliation and other crimes presented a cognizable claim under the Post-Conviction Hearing Act.

## ARGUMENT

The Post-Conviction Hearing Act, 725 ILCS 5/122-1 *et seq.* (2001), (the Act), provides a mechanism for a criminal defendant to claim that a substantial violation of his federal or state constitutional rights occurred at the proceedings which resulted in his conviction. *People v. Griffin*, 178 Ill.2d 65, 72-73, 687 N.E.2d 820 (1997). Illinois courts long have held that the purpose of post-conviction proceedings is to allow inquiry into constitutional issues relating to the conviction or sentence that were not, and could not have been, determined on direct appeal. Thus, *res judicata* bars consideration of issues that were raised and decided on direct appeal, and issues that could have been presented on direct appeal, but were not, are considered waived. *People v. Barrow*, 195 Ill.2d 506, 519, 749 N.E.2d 892 (2001).

In this cause, the Petitioner's post-conviction claim of ineffective assistance of trial counsel and his related claim of ineffective assistance of appellate counsel are barred where appellate counsel raised on direct appeal the argument that the Gary

Davis statement contained inadmissible evidence of gang affiliation. This Court may take judicial notice of the written briefs filed in the direct appeal in this cause, *People v. Greer*, Gen. No. 3-99-0706.  *See, People v. Alexander*, 40 Ill.App.3d 457, 352 N.E.2d 245 (1st Dist. 1976) (appellate court may take judicial notice of its own records).

In the Petitioner's initial brief on direct appeal, appellate counsel argued that the written statements of Gary Davis and Steve Fuhlman should not have been provided to the jury during deliberations. Counsel included in the argument portion of the brief a subsection entitled, "The prior consistent statement of Gary Davis should not have gone back to the jury because 1) the danger existed that the jury considered the statement as substantive evidence, and 2) the statement contained prejudicial information that the defendant was a gang member." (Brief and Argument for Defendant-Appellant, pages 21-25)  In the argument, counsel argued that the portion of Pl.Ex. 11 referring to the Petitioner's and victim's affiliation with the Vice Lords was unrelated to the shooting and inadmissible. Counsel further noted the trial court had ruled during trial that it would not permit any evidence about gang activity. (Brief and Argument for Defendant-Appellant, page 25)  Accordingly, counsel argued, the Petitioner should be granted a new trial.  (Brief and Argument for Defendant-Appellant, pages 25-27)

8

This Court did not directly address the portion of Davis' statement referencing gang affiliation evidence in its order affirming the Petitioner's conviction. *People v. Greer*, No. 3-99-0706 (Dec. 28, 2001) (Rule 23 Order).  (C. 413)  This Court did, however, find that the written statements were admissible as prior consistent statements of identification under 725 ILCS 5/115-12 (1998).  This Court then stated:

> Since the evidence was in fact admissible, we find nothing in the record to support a conclusion that permitting this evidence to go to the jury was an abuse of discretion.
>
> Although we find no abuse of discretion in the trial court allowing the prior consistent statements to go to the jury room, we also note that any error would have been harmless given the overwhelming evidence of the defendant's guilt.  When it does not appear justice had been denied or that a finding of guilt resulted from an error, a conviction will not be reversed.  (citation omitted)  Here, the evidence of the defendant's guilt is overwhelming.

*People v. Greer*, No. 3-99-0706 (Dec. 28, 2001) (Rule 23 Order at 2-3)  (C. 415-16)

Thus, from the fact that appellate counsel raised the issue of the presence of inadmissible gang activity in Davis' statement and this Court's ruling that nothing in the record indicates an abuse of discretion by the trial court, this post-conviction claim must be considered *res judicata*.

It must be acknowledged that appellate counsel did not specifically argue on direct appeal that Davis' statement contained inadmissible reference to "mug shots" and that Fuhlman's statement contained possible references to drug dealing activity

9

by the Petitioner. The Petitioner claims in his post-conviction petition that trial and appellate counsel were ineffective for failing to argue these portions of the written statements contained inadmissible references to other crimes. (C. 453-55) However, given this Court's rejection of appellate counsel's argument regarding gang affiliation, the Petitioner's additional post-conviction claims of inadmissible evidence of other crimes in the written statement would not succeed in this appeal.

First, the Petitioner's conclusion that the cited portions of Davis' and Fuhlman's statements constitute evidence of other crimes is not a certainty. In Fuhlman's written statement, Pl.Ex. 8, the Petitioner complains of the following passage:

> Q: How often would you say you see him (the Petitioner) in this neighborhood on the average?
>
> A: Daily.
>
> Q: What does he do here?
>
> A:
>
> Q: And how close to your home does he do that?
>
> A: I live on 15th and 5th and he does it on the corner of 5th and 15th, in front of the store.
>
> Q: So he does this right across the street from your residence?
>
> A: Right.
>
> Q: On a regular basis?

10

A:  And across the street in the Courts.

(C. 454-55; 464a)  From this excerpt, the petition alleges the "above questions and answers are an obvious reference to the Defendant selling drugs in the neighborhood." (C. 455)  However, in the statement attached as an exhibit to the post-conviction petition, Fuhlman's answer about the Petitioner's activities is redacted.   The Petitioner's conclusion that Fuhlman refers to drug dealing, while entirely plausible from the context of the statement, remains speculative.

Similarly, in Davis' statement, Pl.Ex. 11, the interviewing police officer on July 14, 1993, refers to "mug photos" in establishing that Davis selected the Petitioner's photograph from a group of photographs.  (C. 468a)  The Petitioner argues the reference to "mug photos" had the effect of "clearly advising the jury that the Defendant had been previously arrested."  (C. 455)  However, the officer interviewing Davis states that "the photo was taken on the 13th day of '93, the month is not clearly displayed on the mug photo." (C. 468a)   Trial evidence showed that Ellison was killed on July 13, 1993. (R. 1055-57).  Thus, it is not clear the photos were taken at a time other than the Petitioner's arrest in connection with Ellison's killing, and the reference to "mug photos" does not conclusively indicate the Petitioner had prior contacts with police other than the offense charged here.

Second, and more significantly, it is clear that appellate counsel examined the prior consistent identification statements of Davis and Fuhlman and considered the

prejudicial effect of other evidence contained in the written statements. Appellate counsel identified the gang affiliation reference in Davis' statement, arguably the most highly prejudicial of the evidence complained of in the post-conviction petition, and raised the issue before this Court. It is indisputable that the issue of inadmissible evidence contained in the statements was brought to this Court's attention and this Court determined that "nothing in the record" supports the conclusion that allowing the evidence to go to the jury was an abuse of discretion by the trial court. *People v. Greer*, No. 3-99-0706 (Dec. 28, 2001) (Rule 23 Order at 2-3) (C. 415-16) Further, this Court considered the gang affiliation evidence and found that any error in permitting the prior consistent statements to go to the jury room was harmless given the overwhelming evidence of the defendant's guilt. *People v. Greer*, No. 3-99-0706 (Dec. 28, 2001) (Rule 23 Order at 2-3) (C. 416) Where this Court previously considered this issue and found any error to be harmless, the Petitioner cannot show prejudice such that the result of his trial would have been different, which is required to support a claim of ineffective assistance of counsel under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and *People v. Albanese*, 104 Ill.2d 504, 473 N.E.2d 1246 (1984). This Court would not reverse its earlier ruling and find that the other crimes evidence provided to the jury constitutes reversible error. *See, Barrow,* 195 Ill.2d at 522 (several arguments concerning trial counsel's

12

effectiveness were *res judicata* because they merely rephrased unsuccessful arguments that had been made on direct appeal).

For these reasons, appellate counsel has concluded it would be frivolous to argue the trial court erred by dismissing the Petitioner's post-conviction pleadings.

## CONCLUSION

For the foregoing reasons, because any request for review would be wholly frivolous and without merit, counsel respectfully request leave to withdraw as counsel on appeal.

Respectfully submitted,

G. Joseph Weller, Deputy Defender

Bruce Kirkham, Assistant Defender
OFFICE OF THE STATE APPELLATE DEFENDER
2010 Larkin Avenue
Elgin, Illinois 60123
(847) 695-8822

Counsel for Appellant

13

FILE COPY

FILED E-FILED
Tuesday, 26 September, 2006  02:05:02 PM
Clerk, U.S. District Court, ILCD

RECEIVED

DEC 0 6 2004

THIRD DISTRICT
APPELLATE COURT

DEC 4 2004

THIRD DISTRICT
APPELLATE COURT CLERK

Third Judicial District Appellate Defender : 12.5.04

today I Received a copy

of my motion to Withdraw from, my Appellate Attorney
Bruce Kirkham pursuant to pennsylvania V. Finley,
481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed. 2d 538 (1987)
regarding the motion of a No meritorious Claim..
How ever I Disagree. my first Appellate Defender Mr.
Kenneth A. Brown Refuse to Raise an ineffective of
Counsel issue on my Direct Appeal, Concerning the
fact that my trial Attorney Richard Zimmer failed to
"object" to Pertinent Unadmissible Evidence concerning
"Gang Affiliation, therefore under the 6th Amendment
of the U.S Constitution I was Denied a Right to a
fair Trial because the Jury took into Consideration
that was Evidence. therefore I am finding Guilt was.
imminent further more, I truly believe that this is a
Pertinent Relevent meritory issue that should be taken
into Consideration. therefore I pray this Court  —
Grant "Petitioner a Evidentiary Hearing" to consider
this issue. Evidence to Support Petitioner merit claim
is within Counselor Bruce Kirkham of the 2nd Judicial
District motion to withdraw, the States Attorney -
filed a Written Respond to Amend post Conviction
Petition ( C.470) P.G. 6. in motion to Withdraw to
Solidify Petitioner merit claim.

EXHIBIT Q

2.    I truly Hope to Get the Chance to Have these
motion Heard because their's merit's in my claim's
As stated thanks!


P.S
this motion was written
within the 21 Day's
Given By the Court's!!

Respectfully submitted,

MR. David A. Green
N. 72100


"Send Copy Back please"

thanks'

NOTICE

E-FILED

Tuesday, 26 September, 2006 05:05:18 PM

Clerk, U.S. District Court, ILCD

The text of this opinion may be changed or corrected prior to the time for filing of a Petition for Rehearing or the disposition of the same.

No. 3--03--0704

*filed 3-1-05*

MAR - 2 2005

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2004

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 14th Judicial Circuit, Rock Island County, Illinois, |
| Plaintiff-Appellee, | ) | |
| v. | ) ) | No. 94--CF--649 |
| DAVID ALLEN GREER, | ) ) | Honorable James Teros, |
| Defendant-Appellant. | ) | Judge Presiding. |

---

ORDER

---

Defendant David Allen Greer was convicted of first degree murder (720 ILCS 5/9--1(a)(2) (West 1992)) and sentenced to 50 years' imprisonment.  He subsequently filed a postconviction petition which was denied.  Defendant appeals.

The State Appellate Defender's Office was appointed to represent defendant in this appeal.  The appointed counsel has now filed a motion indicating that the instant appeal presents no issues of merit upon which defendant could expect to obtain any relief.  This motion, filed in accordance with Pennsylvania v. Finley, 481 U.S. 551, 95 L. Ed. 2d 539, 107 S. Ct. 1990 (1987), requests that appointed counsel be permitted to withdraw. Counsel informed defendant by telephone and by letter of his intention to withdraw.  Counsel also advised defendant of his right to respond to the motion.  Defendant filed a timely

EXHIBIT R

objection, which we have considered in reaching our decision.

We conclude that the postconviction petition was properly denied and that there are no arguable errors to be considered on appeal.  We further find that to continue with this appeal would not possibly result in success and would be wholly frivolous. Accordingly, we affirm the judgment entered in the circuit court of Rock Island County and allow the State Appellate Defender to withdraw as counsel for defendant.  See <u>People v. Lee</u>, 251 Ill. App. 3d 63, 621 N.E.2d 287 (1993).

Judgment affirmed and motion to withdraw allowed.

(LYTTON, J., with HOLDRIDGE,   J., and BARRY, J., concurring.)

2

E-FILED
Tuesday, 26 September, 2006  02:05:58 PM
Clerk, U.S. District Court, ILCD
ORIGINAL

No.101906

| | | |
|---|---|---|
| People State of Illinois, | ) | Appellate Court, Third District, |
| | ) | No. 3-03-0704 |
| Respondent | ) | |
| | ) | Circuit Court, Rock Island County, |
| v. | ) | No. 94CF649 |
| | ) | |
| David Allen Greer, | ) | Hon. James T. Teros, |
| | ) | Judge Presiding |
| Petitioner | ) | |

**PETITION FOR LEAVE TO APPEAL**

**FILED**

JAN 1 3 2006

**SUPREME COURT CLERK**

Mr. David Allen Greer
Reg. No. N-72100
P. O. Box 1900
Canton, IL 61520

R-030105
No RH

EXHIBIT S

## 11553

NO. _____

### IN THE SUPREME COURT OF ILLINOIS

| | | |
|---|---|---|
| People State of Illinois, | ) | Appellate Court, |
| | ) | Third District |
| Respondent | ) | No.    3-03-0704 |
| | ) | |
| v. | ) | Circuit Court, |
| | ) | Rock Island County |
| David Allen Greer, | ) | No.    94 CF 649 |
| | ) | |
| Petitioner | ) | Hon. James Teros, |
| | ) | Judge Presiding. |

MOTION BY PETITIONER FOR LEAVE TO FILE A LATE
PETITION FOR LEAVE TO APPEAL

## FILED

OCT 1 9 2005

### SUPREME COURT CLERK

R-030105
No RH

David Allen Greer
Reg. No. N-72100
P. O. Box 1900
Canton, Illinois  61520

SUPREME COURT OF ILLINOIS
SUPREME COURT BUILDING
SPRINGFIELD, 62701

**RECEIVED**

People State of Illinois Appelle
                    -v-
David Allen Greer, Appellant

SEP 2 2 2005

CLERK
SUPREME COURT

Appellate Court
3RD. District
No.3.03.0704

No.94CF649

**: Motion :**

Dear, Supreme Court Clerk of ILLINOIS,
        I just received a letter from "Suleann Hornyak" the clerk
of the Supreme Court of Illinois stating that I haven't filed
a petition for leave to appeal to the Supreme Court after my
Appellate Court decision on 3-01-05?
I have appealed the decision to the wrong courts. I am doing
the appeal process "PRO-SE", I was not aware of the (21)days
dead line.
So I am incloseing "3-EXHIBIT" letting the Supreme Court know
my intention, was to send my petition to the supreme Court.
        I made a unfortunate error and sent it to the Rock Island
Circuit Court!
Page 4 of the exhibit, I am incloseing states, I filed the petition
for leave to Appeal to the Supreme Court on 3-14-05. It was filed
to the wrong courts.
I am now filing this late petition to leave to the Illinois
Supreme court and hoping you will accept my petition because
I made an error by sending the petition to the wrong courts.

                                            TRULY YOURS

                                            DAVID GREER

Subscribed and sworn to before me
this 16 day of Sept , 2005.

Notary Public

"OFFICIAL SEAL"
Don A. Burkhart
Notary Public, State of Illinois
My Commission Exp. 08/22/2008

IN THE
Supreme Court of Illinois
SUPREME Court Building
Springfield 62701

People of the state of Illinois                )
Plaintiff,                                              )
                                                          )   Case No. 94 - CF - 649
                        v.                             )
                                                          )
David Allen Greer                             )
Defendant

## PROOF/CERTIFICATE OF SERVICE

TO: Supreme Court of Illinois          TO: Attorney General of the
    SUPREME Court Building                 State of Illinois
    Springfield 62701                           Capitol Building
                                                        Springfield, IL 62706-0001

PLEASE TAKE NOTICE that on        Sept. 16 -        20 05, I have placed the
documents listed below in the institutional mail at ILL Rivers Correctional Center,
properly addressed to the parties listed above for mailing through the United States Postal
Service: Affidavit of Intent to file a petition for
leave to Appeal to the Illinois Supreme Court.

Pursuant to 28 USC 1746, 18 USC 1621 or 735 ILCS 5/109, I declare, under penalty of
perjury, that I am a named party in the above action, that I have read the above
documents, and that the information contained therein is true and correct to the best of my
knowledge.

DATE: Sept. 16. 05                          /s/ David Allen Greer
                                                       NAME: David Allen Greer  N-72100
                                                       IDOC#: Illinois River
                                                       Canton  Correctional Center
                                                       P.O. BOX 1900
                                                       Canton                , IL 61520

Revised Jan 2002

IN THE APPELLATE COURT OF ILLINOIS

_____ THiRd _____ JUDICIAL DISTRICT, (DIVISION)

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS,<br>Plaintiff-Appellee, | )<br>)<br>)<br>) | APPEAL FROM THE CIRCUIT<br>COURT OF Rock Island COUNTY,<br>ILLINOIS |
| vs. | )<br>) | NO. 94 - CF - 649 |
| DAvid AllEN GREER ,<br>Defendant-Appellant | )<br>)<br>) | HONORABLE JUDGE JAMES TEROS<br>PRESIDING |

## AFFIDAVIT OF INTENT TO FILE A PETITION FOR LEAVE TO APPEAL TO THE ILLINOIS SUPREME COURT

Pursuant to Supreme Court Rule 315(b), DAvid AllEN GREER , pro se, Defendant-Appellant states as follows:

1.    That the above captioned cause was decided by this Honorable Court on MARCh 1, 05 .

2.    That Defendant-Appellant intends, in good faith to file a Petition for Leave to Appeal to the Illinois Supreme Court in the above captioned cause, Pro se.

3.    That the undersigned, first being duly sworn in oath, deposes and states that he/she has read the foregoing document, by him/her signed, and that the statements contained herein are true in substance and in fact.

David Allen Greer
Signature

Subscribed and sworn to before me
this 16 day of September, 2005.

Don A.
Notary Public

"OFFICIAL SEAL"
Don A. Burkhart
Notary Public, State of Illinois
My Commission Exp. 08/22/2008

Revised Oct 2002

```
1994CF000649D 001
PEOPLE
VS.
GREER, DAVID ALLEN N72100                    CONKLIN
-------------------------------------------------------------------------------
 ENTERED   JDG CR  TEXT                                          CHANGED USER
-------------------------------------------------------------------------------
                   t/w affidavit of service filed.                      KAK

1/21/2003 JTT SS   Cause called for Status. Defendant is not present, atty Conklin for  MEL
                   the defendant. State by ASA Senko. Court continues this matter to    MEL
                   3/4/03 at 10:45am.                                    MEL

2/03/2003          Amended Post-Conviction Petition filed t/w Attachments.  MEL

3/03/2003          State's Response to Defendant's Petition for Post-Conviction Relief  MEL
                   filed.                                               MEL

3/04/2003 JTT CD   Cause called for Status. ASA Senko and Atty Conklin present.  KAK
                   Court allows the State 30 days to Answer to the Amended Post-  KAK
                   Trial Petition.                                      KAK

4/14/2003          Notice of hearing ON 5/15/03 AT 2:00PM FOR HEARING ON POST-CONVICTIONN  KAK
                   T/w affidavit of service filed.                      KAK

5/15/2003 JTT DR   Atty. Conklin appears in court for defendant.  State by ASA  JKJ
                   Kalinak.  Cause called for hearing on Post conviction.  Court reviews  JKJ
                   facts of the case.  Court hears evidence and arguments from counsel.  JKJ
                   Court continues matter generally.                    JKJ

6/26/2003          Notice of hearing for Amended Post Conviction Petition on 8/18/03 at  MEL
                   10:00am t/w affidavit of service filed.              MEL

8/18/2003 JTT SB   Atty. Conklin apears for defendant.  State by ASA Kalinak.  Cause  JKJ
                   called for Post Conviction Petition.  Court reveiws all evidence  JKJ
                   and further arguments from counsel.  Court denies Post Conviction  JKJ
                   Relief and dismissed.                                JKJ

8/21/2003 JTT      Order re:  Court denies defendant's Post Trial Motion.  JKJ
8/21/2003          Notice 651(b) sent to defendant t/w copy of Order at IL River DOC,  JKJ
                   copy of notice filed.                                JKJ

8/29/2003          Correspondence received from the defendant pro se. Copy of letter  MEL
                   sent to Court Administrator Office and Roxanne in appeals.  MEL
                   NOTICE OF APPEAL FILED.  (1)                         RLF

9/02/2003 JFB      APPOINTMENT OF COUNSEL ON APPEAL ENTERED. (SO) JFB   RLF
9/02/2003          AFFIDAVIT OF SERVICE OF COPIES OF NOTICE OF APPEAL FILED.  RLF

9/04/2003          Report of proceedings filed by Diane Reason for 5/15/03  RLF
9/04/2003 JTT      Order Re: Court reporter to prepare transcripts of Post conviction hrg  RLF

9/11/2003          DOCKETING ORDER DUE DATES FILED. (3-03-0704)         RLF

9/24/2003          Report of proceedings filed by Sherry Bolt for 8/18/03  RLF

9/30/2003          Report of proceedings filed by Clara Delle Thompson for March 4, 2003  RLF

10/31/2003         RECORD SENT TO APPELLATE COURT, TRANSCRIPTS TO DEFT. VIA UPS.  RLF

3/14/2005          AFFIDAVIT OF INTENT TO FILE A PETITION FOR LEAVE TO APPEAL TO THE  RLF
                   ILLINOIS SUPREME COURT FILED.                        RLF
```

IN THE

SUPREME COURT

of ILLINOIS

| | |
|---|---|
| PEOPLE of the state of ILLINOIS<br>Plaintiff-Respondent,<br><br>- VS -<br><br>DAVID ALLEN GREER<br><br>Defendant-Petitioner | APPEAL FROM the APPELLATE court<br>of ILLINOIS, Third District<br>Court Docket<br>NO. 3-03-0704<br>CASE NO. 94.CF.649 |

## Late Petition FOR LEAVE to APPEAL

Petitioner, DAVID ALLEN GREER, PRO SE, Respectful Petitions this HONORABLE Court for Leave to APPEAL to the ILLINOIS SUPREME COURT PURSUANT to the SUPREME COURT RULE 315, from the Judgment of the APPELLATE Court of ILLINOIS, third District, Which AFFIRMED His CONVICTION.

IN support there of PETITIONER states the following:

### : Statement of facts:

1. Petitioner WAS Charged with First DEGREE Murder by indictment on 8.24.94 under CASE No 94 CF 649

2. Petitioner WAS found Guilty under CASE NO. 94. CF 649 on 11.18.94

3. Petitioner WAS SENTENCE under CASE NO. 94. CF 649 ON 3.01.95 to A term of '50' YEARS IN the D.O.C.

4. Notice of APPEAL IN CASE NO. 94 CF 649 ON 3.15.95

5. APPELLATE Court issued ORDER to REVERSE and Remand PETITIONER APPEAL ON 6.6.98 Docket No. 3-95-0195

6. MANDATE WAS issued IN 3-95-0195 ON 7.6.98

7. Petitioner was tried by Jury on CASE No. 94.cf.649 and found Guilty of first DEGREE murder 7.9.99

8. Petitioner was Resentenced on CASE No. 94.cf.649 to a term of 50 YEARS IN the I.D.O.C ON 8.6.99

9. Motion to Reconsider sentence WAS filed on CASE No. 94 CF.649 on 8.11.99

10. Motion to Reconsider sentence WAS Denied 9.10.99

11. Notice of APPEAL Field on 9.14.99

12. APPELLATE Court on DEC. 28. 2001 Affirmed the Judgment of the circuit Court IN CASE No. 94 CF 649

13. APPELLATE Court issued Mandate on 7.9.02 in CASE No. 94-CF-649 Affirming the Judgement of the CIRCUIT Court.

14. ON MAY 30. 2002 Defendent's Petition for leave to APPEAL WAS Denied By the Illinois Supreme Court.

15. Petitioner filed timely PRO SE Post-Conviction Petition on July 15. 2002.

16. ON 8.18.03 the circuit court Dismissed Petitioner Post-Conviction Petition.

17. Notice of APPEAL WAS Denied of Petitioner Post-Conviction Petition filed on 8.29.03.

18. APPELLATE Court Affirmed the Judgement and Circuit Court Dismissing Petitioner's Post-Conviction Petition on 3.1.05
Docket No. 3.03.0704

19. On Sept. 22. 2005 Petitioner filed Motion for leave to appeal to the Illinois supreme Court.

## : Reason for Review:

1. Plaintiff argues that at the time of trial a Motine in limine was filed on May 3. 1999 and Granted By the Court. Said Motion specifically made Reference to exclude any mention of Plaintiff being affiliated with the Vice-lords organization. Such motion was Granted By the Court there by- Preventing any mentioning of the Plaintiff being part of the Vice-lord's Gang at any Point in the trial

See Exhibit- A Attached Here to.

2. Although the transcribed statements of these Witnesses were admitted as Prior Consistent statements, the statement Also advised the Jury that Defendant was engaging in illegal activity. Presumably selling Drugs; Had Previously been arrested or Had Prior involvement with the Police department because of mug shots, and was a Member of the Vice lords.

3. the admission of the statements should Have been objected to on this basis. the objection to the statements Going to the Jury Room should have Pointed out to the trial Court that the statement contained improper matter.. Further, Although Appellate Counsel Raised the issue of the Propriety of the statements Going to the Jury Room, Appellate Counsel failed to Raise the issue of whether the statements Contained improper and Prejudicial material.

See Exhibit - B transcripts from Post-Conviction Hearing Attached Here to.

4. MoreoveR the IllinoiS Appellate Court 1st District 5th Division Has Reversed the first Degree MuRder Conviction of "Willie Young" In that it was ARgued that PRosecutorial Misconduct deprived Him of Due Process and a fair trial. the Appeals Court said it found ineffective - Assistance in several places first from the failures of defense counsel to object to the Conduct of the Prosecution.

5. In Addition, the Appeals Court said trial counsel's Representation fell below Minimal standards of effectiveness During cRoss-examination because He not only bolstered the testimony of the experts but Repeatedly Refered to His inability to PRoperly Defend Against these expert opinions. People v. Willie Young No. 1.99.0450
Justice Ellis E. Reid wRote the court's opinion with Justice Mary Jane theis Specially ConcueRing and Justice Dian S. Greiman dissenting.

6. In the Instant Case to the Willie Young Case Defence Counsel Representation fell below Minimal standards of effectiveness is that He failed to Raise this issue of whether the statements Going to the Jury Room contain impRopeR and PreJudicial material.

7. the united states and IllinoiS Constitutions Guarantee the Right to trial By an impartial Jury. U.S. Const. Amends. V I, X IV; Ill. Const. 1970. ART. I § 13. the PuRpose of VoiR diRe is to AssuRe the selection of JuRoRs who aRe free from bias or PReJudice. People v. Neman, 813 Ill. APP. 3d 51, 59, 846 Ill. Dec 20, 729 N.E. 2d 20 (2000).
In People v. STRain, 194 Ill. 2d 252 Ill. Dec. 65, 742 N.E. 2d 315 (2000), the IllinoiS supreme court Held that "when testimony ReGaRding GanG Membership and GanG-Related Activity is to be an integral Part of the Defendant's trial, the Defendant's must be AffoRded an oppoRtunity to - Question the PRospective JuRors, either diRectly or through questions submitted to the trial court, ConceRning GanG Bias. STRain, 194 Ill. 2d At 477, 252 Ill. Dec. 65, 742 N.E. 2d 315.

8. PETITIONER IN this INSTANT CASE should Have been offeeed AN oPPoRTunity to Question the PROSPEctive SuROBS, Either directly or through Question — submitted to the TRial Court, Concerning the GANG Bias, the Court should Have oedeeed those "Instructions" be Given to the JueY especially when the "Court" Geanted said "Motion IN liMINE" to Strike Certain information of GANG testiMONY.

:ConclusioN:

PetitioNER Would RESPectfully REQuest this Honorable Court find in favor of Petitioner REASON foR ReView IN the Illinois SuPReME Court AND Grant said PetitioN.

/s/ TRuLY YouR.S
David ALLEN GReer

David ALLEN Greer
P. o. Box 1900
CANtoN. IL 61520
N◦ 72100

STATE OF ILLINOIS



*BK*

3-03-0704
People v. Greer

**APPELLATE COURT**      **THIRD DISTRICT**

**OTTAWA**

At a term of the Appellate Court, begun and held at

Ottawa, on the 1st Day of January in the year of our Lord

Two thousand five, within and for the Third District of

Illinois:

Present –

HONORABLE KENT SLATER, Presiding Justice

HONORABLE DANIEL L. SCHMIDT, Justice

HONORABLE TOBIAS G. BARRY, Justice                    X

HONORABLE TOM M. LYTTON, Justice                      X

HONORABLE MARY W. McDADE, Justice

HONORABLE MARY K. O'BRIEN, Justice

HONORABLE WILLIAM E. HOLDRIDGE, Justice               X

GIST FLESHMAN, Clerk

BE IT REMEMBERED, that afterwards on

_____March 1, 2005_____ the Order of the Court was filed

in the Clerk's Office of said Court, in the words and figures

following viz:

RECEIVED

MAR - 3 2005

OFFICE OF THE STATE
APPELLATE DEFENDER
ELGIN, ILLINOIS

NOTICE

The text of this opinion may be changed or corrected prior to the time for filing of a Petition for Rehearing or the disposition of the same.

No. 3--03--0704

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2004

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 14th Judicial Circuit, Rock Island County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 94--CF--649 |
| DAVID ALLEN GREER, | ) ) | Honorable James Teros, |
| Defendant-Appellant. | ) | Judge Presiding. |

ORDER

Defendant David Allen Greer was convicted of first degree murder (720 ILCS 5/9--1(a)(2) (West 1992)) and sentenced to 50 years' imprisonment. He subsequently filed a postconviction petition which was denied. Defendant appeals.

The State Appellate Defender's Office was appointed to represent defendant in this appeal. The appointed counsel has now filed a motion indicating that the instant appeal presents no issues of merit upon which defendant could expect to obtain any relief. This motion, filed in accordance with Pennsylvania v. Finley, 481 U.S. 551, 95 L. Ed. 2d 539, 107 S. Ct. 1990 (1987), requests that appointed counsel be permitted to withdraw. Counsel informed defendant by telephone and by letter of his intention to withdraw. Counsel also advised defendant of his right to respond to the motion. Defendant filed a timely

objection, which we have considered in reaching our decision.

We conclude that the postconviction petition was properly denied and that there are no arguable errors to be considered on appeal.  We further find that to continue with this appeal would not possibly result in success and would be wholly frivolous. Accordingly, we affirm the judgment entered in the circuit court of Rock Island County and allow the State Appellate Defender to withdraw as counsel for defendant.  See People v. Lee, 251 Ill. App. 3d 63, 621 N.E.2d 287 (1993).

Judgment affirmed and motion to withdraw allowed.

(LYTTON, J., with HOLDRIDGE,   J., and BARRY, J., concurring.)

2

STATE OF ILLINOIS,    )
APPELLATE COURT,      )    ss.
THIRD DISTRICT        )

        As Clerk of the Appellate Court, in and for said Third District of the State of Illinois, and keeper of the Records and Seal thereof, I do hereby certify that the foregoing is a true, full and complete copy of the opinion of the said Appellate Court in the above-entitled cause, now of record in this office.

        In Testimony Whereof, I hereunto set my hand and affix the seal of said Appellate Court at Ottawa, this 1st day of March in the year of our Lord two thousand five.

_____
Clerk of the Appellate Court

STATE OF ILLINOIS
SUPREME COURT

At a Term of the Supreme Court, begun and held in Springfield, on Monday,
the thirteenth day of March, 2006.

Present: Robert R. Thomas, Chief Justice
Justice Charles E. Freeman        Justice Mary Ann G. McMorrow
Justice Thomas R. Fitzgerald      Justice Thomas L. Kilbride
Justice Rita B. Garman            Justice Lloyd A. Karmeier

On the twenty-ninth day of March, 2006, the Supreme Court entered the
following judgment:

No. 101906

People State of Illinois,

    Respondent

    v.

David Allen Greer,

    Petitioner

Petition for Leave
to Appeal from
Appellate Court
Third District
3-03-0704
94CF649

The Court having considered the Petition for leave to appeal and being fully
advised of the premises, the Petition for leave to appeal is DENIED.

As Clerk of the Supreme Court of the State of Illinois and keeper of the
records, files and Seal thereof, I certify that the foregoing is a true
copy of the final order entered in this case.

IN WITNESS WHEREOF, I have hereunto
subscribed my name and affixed the Seal
of said Court, this twentieth day
of April, 2006.

*Juleann Hornyak*

Clerk,
Supreme Court of the State of Illinois

EXHIBIT T

E-FILED
Tuesday, 26 September, 2006  02:07:10 PM
Clerk, U.S. District Court, ILCD

IN THE
CIRCUIT COURT OF ROCK ISLAND
COUNTY, ILLINOIS FORTEETH
JUDICIAL CIRCUIT
GENERAL DIVISION

FILED in the CIRCUIT COURT
of ROCK ISLAND COUNTY
CRIMINAL DIVISION

JUL 10 2006

Clerk of the Circuit Court

THE PEOPLE OF THE STATE OF ILLIN-
OIS,                              )
            Plaintiff/Respondent, )
                                  )
-Vs-                              )     Case #94 CF 649
                                  )
DAVID A. GREER, pro se,           )     HONORABLE
            Defendant/Petitioner.)      JAMES T. TEROS,
                                  )     JUDGE PRESIDING.
                                  )

## MOTION FOR RELIEF FROM JUDGMENT

NOW COMES,DAVID A. GREER,Pro se, Defendant herein and pursuant to 735 ILCS 5/2-1401 et. Seq. seeking Leave to file the instant Motion for Relief from Judgment, and to address the points of law and constitutional violations, and hereby ask this Honorable Court to grant judgment Relief from the AUTOMATIC CLASSIFICATION/ CATEGORIZATION AS A SEX OFFENDER AND/OR A SEX OFFENDER REGISTRY REQUIRED...PURSUANT TO 730 ILCS 150/2,(C-5) sec. 9-1, that is unreasonable and arbitrary in violation of his fundamental rights.

In support thereof Defendant states the following;

1.)-The Defendant is presently incarcerated in the ILLINOIS DEPARTMENT OF CORRECTIONS, AT THE ILLINOIS RIVER CORRECTIONAL CENTER, under a sentence of serving 50 years, by this Honorable Court, pursuant to 720 ILCS 5/9-1 (a)(2), approx. August 31,1994, followed by 3 years MADATORY SUPERVISOR RELEASE (M.S.R.).

2.)- The Defendant assert the ILLINOIS DEPARTMENT OF CORRECT-IONS,(I.D.O.C.)...Internet Web-site "http://www.idoc.ctate.//. us/subsection/search/inms. asp..."SEX OFFENDER REGISTRY REQUIRED. ..entered April 4,2006,approx. 13 years prematurely before Defend-ants' consideration for M.SR. (SEE EXHIBIT"A")

3.)- The Defendant submit to this Honorable Court his trial transcripts/records from his First Trial in the above cause has been totally destroyed by fire to the porch of his home approx. 1998.

EXHIBIT U

Page (2)

       4.)-The Defendant assert pursunat to the Statute 730 ILCS 150/2 (2-5) 91, is unreasonable ,arbitrary as applied to him in violation of his State of Illinois Constitution Art 1- sec. 2,Due Process and The United States Constitution Double Jeopardy Clause of the Fifth Amendment and Pocedural Due Process and substantive Due Process, both of which are grounded in the Fifth Amendment and the Fourteeth Amendment.

       5.)-The Defendant assert he does not contend that the classification of some individuals as sexual offenders of First Degree Murder is unconstitutional. Moreover Defendant maintain that he does not belong within that classification.

       6.)-The Defendant has attached a <u>Memorandum OF Law and Argument</u> and exhibits to suport his petition for Relief From Judgment.

       WHEREFORE, DEFENDER,DAVID A. GREER, Prays that this Hon- orable Court will order that Defendant do not belong within the category or classification as a "SEX OFFENDER NOR REQUIRED TO REGISTER AS SUCH".

                       Respectfully Submitted

                       /s/ David Greer

                       DAVID A. GREER
                       N-72100

SUBSCRIBED AND SWORN TO
BEFORE ME THIS _____ DAY OF
_____, 2006

_____  "OFFICIAL SEAL"
       NOTARY  Don A. Burkhart
           Notary Public, State of Illinois
           My Commission Exp. 08/22/2008

Page (3)

STATE OF ILLINOIS)
                )SS    A-F-F-I-D-A-V-I-T
COUNTY OF FULTON )


      The Defendant, David A. Greer, being first duly sworn
upon oath or affirmation, hereby avers and depose as follows:

      1.)- That I have read the attached Petition Leave to
file a Motion For Relief From Judgment, 735 ILCS 5/2-1401 et
seq. and believe its contents to be a true and correct account
of facts and law violating his constitutional rights.

      2.)- That Defendant is in custody at Illinois Department
of Corrections (I.D.O.C.), residing at Illinois River Correct-
ional Center.

      3.)- That Defendant submit is not schooled in the school
of law, nor is he with substantial ability to articulate meaning-
ful and effective papers to file within this Honorable Court,
the demands needed to meet the challenges forthcoming in litigation
by this Petition and Motion.

      4.)- That the issues in this claim are constitutional
violations.


AFFIANT SAYETH FURTHER NOT.
                             AFFIANT
                        /S/
                             DAVID A. GREER
                             N-72100

SUBSCRIBED BEFORE ME THIS
5 DAY of
              "OFFICIAL SEAL"
              Don A. Burkhart
        NOTARY Notary Public, State of Illinois
              My Commission Exp. 08/22/2008